**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DAVID KOVACS, RUSSELL ALESI, JULIAN DUCHEINE and DEMIAN LICHTENSTEIN,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID MORADI, DR. CARR BETTIS, JASON HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR. KATHERINE FLEMING, TONY COELHO, KELLY GEORGEVICH, JAMES SPOLAR, MALONEBAILEY LLC, AUDIOEYE, INC. and JOHN DOE 1-50,<br><br>Defendants,<br><br><br>and<br><br><br>ETERNAL SOURCES TECH PARTNERS LLC, FIRST CONTACT ENTERTAINMENT, INC., FORMULUS BLACK, INC.,<br><br><br>Nominal Defendants. | **Case No. 25-CV-10336**<br><br><br><br>**(ORAL ARGUMENT REQUESTED)** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**AUDIOEYE, INC., AND DAVID MORADI'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................6

I.      MR. KOVACS' CLAIMS ARE BARRED BY RES JUDICATA....................................7

II.     PLAINTIFFS' DERIVATIVE CLAIMS FAIL AS A MATTER OF LAW .....................12

        A.      Plaintiffs Fail To Plead Demand Futility.................................................12

        B.      Plaintiffs Lack Standing To Bring A Derivative Claim...........................16

                1.      Mr. Alesi ......................................................................................16

                2.      Mr. Ducheine ...............................................................................16

                3.      Mr. Kovacs ...................................................................................17

III.    THE COMPLAINT FAILS TO ALLEGE ANY PLAUSIBLE CLAIM ..........................20

        A.      Plaintiffs Fail To Plead An Actionable Civil RICO Claim (Count I)....................21

                1.      Plaintiffs Fail To Plead A RICO Enterprise Or Pattern Of
                        Racketeering ................................................................................21

                2.      Plaintiffs Lack Standing To Pursue A RICO Claim .................24

        B.      Plaintiffs Fail To Plead An Actionable Securities Fraud Claim (Count II)...........24

        C.      Mr. Kovacs Fails To Plead An Actionable Whistleblower Retaliation
                Claim (Count III) ........................................................................................28

        D.      Mr. Kovacs Fails To Plead An Actionable Claim For Interference With
                ERISA Benefits (Count IV)........................................................................29

        E.      Mr. Kovacs Fails To Plead An Actionable Breach Of Fiduciary Duty
                Claim (Count V) ..........................................................................................30

        F.      Plaintiffs Fail To Plead Actionable Derivative Breach of Fiduciary Duty
                Claims For ESTP, Formulus Black, and First Contact Entertainment
                (Counts VI, VII)...........................................................................................32

        G.      Mr. Kovacs Fails To Plead An Actionable Claim For Unjust Enrichment
                (Count VIII) .................................................................................................35

        H.      Mr. Kovacs Fails To Plead An Actionable Claim For Malicious
                Prosecution (Count IX)................................................................................36

        I.      Mr. Kovacs and Mr. Ducheine Fail To Plead An Actionable Claim For
                Intentional Infliction of Emotional Distress (Count X) ............................36

        J.      Mr. Lichtenstein Fails To Plead An Actionable Claim For "Common Law
                Torts" (Count XI)........................................................................................37

        K.      Plaintiffs' Claim For Declaratory And Injunctive Relief (Count XII) ..................39

IV.     THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE ...............40

CONCLUSION ........................................................................................................................41

# TABLE OF AUTHORITIES

**Page**

## Cases

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
314 F. Supp. 3d 497 (S.D.N.Y. 2018), *aff'd*, 771 F. Appx. 498 (2d Cir. 2019) ......................40

*Adams v. Intralinks, Inc.*,
2004 WL 1627313 (S.D.N.Y. July 20, 2004) ................................................................29, 30

*In re Agnico-Eagle Mines Ltd. Sec. Litig.*,
2013 WL 144041 (S.D.N.Y. Jan. 14, 2013) (Oetken, J.).........................................................25

*Amadsau v. Bronx Leb. Hosp. Ctr.*,
2005 WL 121746 (S.D.N.Y. Jan. 21, 2005) ...............................................................................9

*In re Amaranth Nat. Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008)......................................................................................35

*Anwar v. Fairfield Greenwich Ltd.*,
676 F. Supp. 2d 285 (S.D.N.Y. 2009).......................................................................................17

*Aries Realty, Inc. v. AGS Columbia Associates*,
751 F. Supp. 444 (S.D.N.Y. 1990) ..........................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................20

*Atas v. New York Times Co.*,
2023 WL 5715617 (S.D.N.Y. Sept. 5, 2023)...........................................................................20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................................27

*AudioEye, Inc. v. Kovacs*,
No. 2024-006401-CA-01 (Fla. 11th Cir. Ct. Jan. 12, 2026) ......................................................4

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000).......................................................................................................17

*Barker v. Huang*,
610 A.2d 1341 (Del. 1992) ......................................................................................................32

*Bauhouse Group I, Inc. v. Kalikow*,
190 A.D.3d 401 (1st Dep't 2021) ...............................................................................................8

*Baxter v. A.R. Baron & Co.*,
  1995 WL 600720 (S.D.N.Y. Oct. 12, 1995) .................................................................26

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  995 F. Supp. 2d 291 (S.D.N.Y. 2014)..........................................................................39

*Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. IBM*,
  110 F.4th 106 (2d Cir. 2024) ...............................................................................7, 8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................20

*Berni v. Int'l Gourmet Rests. of Am., Inc.*,
  838 F.2d 642 (2d Cir. 1988)...................................................................................16, 17

*Blaustein v. Lord Baltimore Cap. Corp.*,
  84 A.3d 954 (Del. 2014) ..............................................................................................15

*Bocock v. INNOVATE Corp.*,
  2022 WL 15800273 (Del. Ch. Oct. 28, 2022) .............................................................34

*Brewer v. Breen*,
  2018 WL 565267 (S.D.N.Y. Jan. 23, 2018) ................................................................13

*Brooks-McCollum v. Emerald Ridge Bd. of Dir.*,
  29 A.3d 245 (Del. 2011) ..............................................................................................16

*Busiello v. Whelan*,
  240 A.D.3d 736 (2d Dep't 2025) .................................................................................39

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014) (Oetken, J.)........................................................21

*In re Campbell*,
  547 B.R. 49 (Bankr. E.D.N.Y. 2016)...........................................................................35

*Canty v. Day*,
  13 F. Supp. 3d 333 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015).............13

*Canty v. Day*,
  599 Fed. App'x 20 (2d Cir. 2015).................................................................................13

*Cellucci v. O'Leary*,
  2021 WL 242806 (S.D.N.Y. Jan. 25, 2021) ................................................................16

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)......................................................................................................12

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)......................................................................................17

*Cornetta v. Town of Highlands*,
  434 F. Supp. 3d 171 (S.D.N.Y. 2020)......................................................................21

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)......................................................................................21

*Cypress Holdings, III, L.P. v. Sport-BLX, Inc.*,
  2024 WL 4265645 (S.D.N.Y. Sept. 23, 2024)......................................................18, 19

*D. Penguin Bros. Ltd. v. City Nat. Bank*,
  587 F. App'x 663 (2d Cir. 2014) ..........................................................................21, 23

*D'Addario v. D'Addario*,
  901 F.3d 80 (2d Cir. 2018)........................................................................................24

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019)......................................................................................28

*David Kovacs v. AudioEye, Inc. et al.*,
  No. 651810/2024 (N.Y. Sup. Ct. Apr. 5, 2024)........................................................3

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019)......................................................................23

*Digital Realty Tr., Inc. v. Somers*,
  583 U.S. 149 (2018)..................................................................................................28

*Dillon v. City of New York*,
  261 A.D.2d 34 (1st Dep't 1999) ...............................................................................37

*Dister v. Cont'l Grp., Inc.*,
  859 F.2d 1108 (2d Cir. 1988).....................................................................................11

*Egan v. TradingScreen, Inc.*,
  2011 WL 4344067 (S.D.N.Y. Sept. 12, 2011).........................................................25

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011).......................................................................30

*Ello v. Singh*,
  531 F. Supp. 2d 552 (S.D.N.Y. 2007).......................................................................30

*Ellul v. Congregation of Christian Bros.*,
  774 F.3d 791 (2d Cir. 2014)......................................................................................38

*Epperson v. Entm't Express, Inc.*,
  242 F.3d 100 (2d Cir. 2001)...........................................................................................9

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017)............................................................................................15

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  2013 WL 6798160 (S.D.N.Y. Dec. 23, 2013) ...............................................................16

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)..........................................................................................22

*In re Forest Labs., Inc. Deriv. Litig.*,
  450 F. Supp. 2d 379 (S.D.N.Y. 2006)............................................................................14

*Fraser v. Fiduciary Tr. Co., Int'l.*,
  2005 WL 6328596 (S.D.N.Y. June 23, 2005) ...............................................................25

*Fraser v. Fiduciary Tr. Co. Int'l*,
  417 F. Supp. 2d 310 (S.D.N.Y. 2006)............................................................................28

*Frommert v. Conkright*,
  433 F.3d 254 (2d Cir. 2006)..........................................................................................29

*Fuschi v. JPMorgan*,
  223 A.D.3d 409 (1st Dep't 2024) ....................................................................................8

*Gabelli v. Sikes Corp.*,
  1990 WL 213119 (S.D.N.Y. Dec. 14, 1990) .................................................................12

*Gitzis ex rel. Galanova v. Chen*,
  2020 WL 1140422 (E.D.N.Y. Mar. 9, 2020)..................................................................40

*Gans v. Wilbee Corp.*,
  199 A.D.3d 564 (1st Dep't 2021) ..................................................................................35

*Georgia Malone & Co., Inc. v. Rieder*,
  19 N.Y.3d 511 (2012) ....................................................................................................35

*Ghorpade v. MetLife, Inc.*,
  2016 WL 3951183 (S.D.N.Y. July 20, 2016) (Oetken, J.) .......................................29, 30

*Giordano v. Thomson*,
  564 F.3d 163 (2d Cir. 2009)..........................................................................................28

*In re Goldman Sachs Mortg. Servicing S'holder Deriv. Litig.*,
  42 F. Supp. 3d 473 (S.D.N.Y. 2012)..............................................................................13

*Gorog v. Musk*,
    2024 WL 4329918 (S.D.N.Y. Aug. 29, 2024) ........................................................................26

*Graulich v. Dell Inc.*,
    2011 WL 1843813 (Del. Ch. May 16, 2011) .........................................................................33

*Guerrero v. FJC Sec. Servs., Inc.*,
    423 F. App'x 14 (2d Cir. 2011) ...........................................................................................29

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) .............................................................................................14

*Harris v. TD Ameritrade Inc.*,
    338 F. Supp. 3d 170 (S.D.N.Y. 2018) ..................................................................................35

*Heinrich v. Dean*,
    655 F. Supp. 3d 184 (S.D.N.Y. 2023) ..................................................................................23

*Holmes v. Secs. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ..............................................................................................................24

*Howell v. N.Y. Post Co., Inc.*,
    81 N.Y.2d 115 (1993) ...........................................................................................................36

*In re Hunter*,
    4 N.Y.3d 260 (2005) ...............................................................................................................7

*Hyman v. Cornell Univ.*,
    721 F. App'x 5 (2d Cir. 2017) ................................................................................................9

*Infanti v. Scharpf*,
    570 F. App'x 85 (2d Cir. 2014) ...........................................................................................20

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*,
    655 F.3d 136 (2d Cir. 2011) .................................................................................................38

*JFURTI, LLC v. Singal*,
    2018 WL 6332907 (S.D.N.Y. Nov. 12, 2018) ...............................................................17, 19

*Jiminian v. Seabrook*,
    760 F. App'x 38 (2d Cir. 2019) ...........................................................................................15

*Kantin v. Metro. Life Ins. Co.*,
    696 F. App'x 527 (2d Cir. 2017) ..........................................................................................11

*Kenneth v. Yeung Chi Shing Holding (Delaware), Inc.*,
    2020 WL 409010 (N.D. Cal. Jan. 24, 2020) ........................................................................19

*Kingsley v. New York City Hous. Auth. (NYCHA), Clarence Gordon, Ashok Kulkarni*,
2016 WL 5939359 (S.D.N.Y. Oct. 6, 2016) ..............................................................12

*Kovacs v. AudioEye, Inc.*,
414 So. 3d 390 (Fla. 3d DCA 2025) ..........................................................................4

*In re Kraft Heinz Co. Deriv. Litig.*,
2021 WL 6012632 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054 (Del. 2022)....................13

*Kuriyan v. Schreiber*,
2024 WL 3539234 (S.D.N.Y. July 25, 2024), *aff'd*, 2025 WL 1065957 (2d Cir. Apr. 9, 2025).........................................................................................10

*United States ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016)..............................................................................40, 41

*LaFleur v. Whitman*,
300 F.3d 256 (2d Cir. 2002)....................................................................................7

*Levy v. Young Adult Inst., Inc.*,
2014 WL 6611454 (S.D.N.Y. Nov. 21, 2014).........................................................29

*Limestone Dev. Corp. v. Vill. of Lemont*,
520 F.3d 797 (7th Cir. 2008) .................................................................................23

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
223 F. Supp. 2d 435 (S.D.N.Y. 2001).....................................................................26

*In re Ltd., Inc.*,
2002 WL 537692 (Del. Ch. Mar. 27, 2002).......................................................14, 35

*Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd sub nom. In re Lululemon Sec. Litig.*, 604 F. App'x. 62 (2d Cir. 2015)..................................................................27

*MacKinnon v. City of New York/Hum. Res. Admin.*,
580 F. App'x 44 (2d Cir. 2014) ..............................................................................40

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
518 F. Supp. 3d 772 (S.D.N.Y. 2021)................................................................20, 26

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,
779 F.3d 102 (2d Cir. 2015)....................................................................................7

*Marciniak-Domingues v. MIT*,
2024 WL 4350826 (S.D.N.Y. Sept. 30, 2024)........................................................24

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) ...................................................................................15

*Matiella v. DIRECTV, Inc.*,
  2012 WL 363037 (S.D.N.Y. Jan. 31, 2012) ...........................................................29

*Matthew v. Laudamiel*,
  2012 WL 605589 (Del. Ch. Feb. 21, 2012) ...........................................................34

*McRitchie v. Zuckerberg*,
  315 A.3d 518 (Del. Ch. 2024) ...............................................................................31

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016) ....................................................................26

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
  54 F.4th 82 (2d Cir. 2022) .....................................................................................25

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) ..................................................................................22

*Moniodes v. Autonomy Cap. (Jersey) LP*,
  2021 WL 3605385 (S.D.N.Y. Aug. 11, 2021) .........................................................28

*Murphy v. Am. Home Products Corp.*,
  58 N.Y.2d 293 (1983) ............................................................................................37

*Murphy v. Kozlowska*,
  217 A.D.3d 455 (1st Dep't 2023) ...........................................................................39

*Naughright v. Weiss*,
  857 F. Supp. 2d 462 (S.D.N.Y. 2012).....................................................................30

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986)........................................................................................8

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ....................................................................................31

*Nygard v. Bacon*,
  2021 WL 4926078 (S.D.N.Y. Oct. 21, 2021) .........................................................20

*of FXCM, Inc. v. Niv*,
  2017 WL 4334149 (Del. Ch. Sept. 29, 2017) .........................................................15

*Pantoja v. Banco Popular*,
  2012 WL 4069297 (S.D.N.Y. Aug. 9, 2012), *aff'd*, 545 Fed. Appx. 47 (2d Cir.
  2013) ......................................................................................................................10

*Papadopoulos v. Amaker*,
  2013 WL 3226757 (E.D.N.Y. June 25, 2013) ..........................................................................40

*Paramount Pictures Corp. v. Allianz Risk Transfer AG*,
  31 N.Y.3d 64 (2018) ................................................................................................................8

*Pasciutti v. LiquidPiston, Inc.*,
  2021 WL 4502950 (D. Conn. Sept. 30, 2021) ........................................................................30

*Polanco v. NCO Portfolio Mgmt., Inc.*,
  23 F. Supp. 3d 363 (S.D.N.Y. 2014)......................................................................................20

*Polur v. Raffe*,
  912 F.2d 52 (2d Cir. 1990).......................................................................................................10

*Prince v. Intercept*,
  634 F. Supp. 3d 114 (S.D.N.Y. 2022)......................................................................................20

*Rahbari v. Oros*,
  732 F. Supp. 2d 367 (S.D.N.Y. 2010)......................................................................................14

*Ret. Sys. v. Deloitte & Touche LLP*,
  919 F. Supp. 2d 321 (S.D.N.Y. 2013)......................................................................................26

*Ret. Sys. v. DocGo Inc.*,
  773 F. Supp. 3d 62 (S.D.N.Y. 2025)........................................................................................25

*Riblet Prods. Corp. v. Nagy*,
  683 A.2d 37 (Del. 1996) ..........................................................................................................31

*Richardson v. New Residential Mortg. Loan Tr. 2019RPL3*,
  2025 WL 2491199 (Del. Ch. Aug. 29, 2025) .........................................................................32

*Rimini v. J.P. Morgan Chase & Co.*,
  2024 WL 4354875 (S.D.N.Y. Sept. 30, 2024)........................................................................28

*Roberto's Fruit Mkt., Inc. v. Schaffer*,
  13 F. Supp. 2d 390 (E.D.N.Y. 1998) .........................................................................................7

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)........................................................................................................20

*Russell v. N.Y.U.*,
  42 N.Y.3d 377 (2024) ..........................................................................................................8, 10

*Russo-Lubrano v. Brooklyn Fed. Sav. Bank*,
  2007 WL 121431 (E.D.N.Y. Jan. 12, 2007) ............................................................................38

*Ryan v. Aetna Life Ins. Co.*,
    765 F. Supp. 133 (S.D.N.Y. 1991) ........................................................................................18

*Sakthivel v. Industrious Staffing Co., LLC*,
    212 A.D.3d 419 (1st Dep't 2023) ........................................................................................37

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004)..................................................................................17

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
    915 F. Supp. 2d 450 (S.D.N.Y. 2013)..................................................................................25

*Schiff v. ZM Equity Partners, LLC*,
    2020 WL 13596542 (S.D.N.Y. Sept. 14, 2020)....................................................................34

*Scottish Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*,
    81 F.3d 1224 (2d Cir. 1996)................................................................................................30

*Seatig, Inc. v. BizLog, LLC*,
    2025 WL 3101250 (S.D.N.Y. Nov. 6, 2025) (Oetken, J.) .....................................................21

*Shabbouei v. Potdevin*,
    2020 WL 1609177 (Del. Ch. Apr. 2, 2020) .........................................................................13

*Shanghai Pearls & Gems, Inc. v. Paul*,
    239 A.D.3d 31 (1st Dep't 2025) ..........................................................................................39

*Sheindlin v. Brady*,
    597 F. Supp. 3d 607 (S.D.N.Y. 2022)..................................................................................32

*Simmons v. Abruzzo*,
    49 F.3d 83 (2d Cir. 1995).....................................................................................................7

*In re Skechers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020)..................................................................................27

*Smith v. Russell Sage Coll.*,
    54 N.Y.2d 185 (1981) ...........................................................................................................9

*Smollar v. Potarazu*,
    2016 WL 3635304 (Del. Ch. June 29, 2016)........................................................................18

*SRM Glob. Master Fund Ltd. v. Bear Stearns Cos.*,
    829 F.3d 173 (2d Cir. 2016)................................................................................................39

*Stevenson v. Thornburgh*,
    2024 WL 645187 (S.D.N.Y. Feb. 14, 2024).........................................................................20

*Stewart v. Fein Such & Crain, LLP*,
    236 A.D.3d 959 (2d Dep't 2025) .................................................................36

*Tammone v. Dorr-Oliver Inc.*,
    84 F. Supp. 2d 291 (D. Conn. 1999) ............................................................38

*Tan v. Goldman Sachs Grp. Inc.*,
    2024 WL 1357354 (S.D.N.Y. Apr. 1, 2024) ..................................................27

*Tatintsian v. Vorotyntsev*,
    2018 WL 2324998 (S.D.N.Y. May 22, 2018) .............................................18, 19

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ..........................................................................33

*In re Trade Desk, Inc. Deriv. Litig.*,
    2025 WL 503015 (Del. Ch. Feb. 14, 2025) ....................................................15

*Travis v. Navient Corp.*,
    460 F. Supp. 3d 269 (E.D.N.Y. 2020) ...........................................................39

*Trickey v. Brolick*,
    2017 WL 2973983 (S.D.N.Y. July 11, 2017) ..................................................13

*Truong v. Marcus*,
    2006 WL 3635319 (S.D.N.Y. Dec. 12, 2006) .................................................40

*Ulrich v. Soft Drink, Brewery Workers & Delivery Emps. Loc. 812*,
    2019 WL 1228056 (S.D.N.Y. Mar. 15, 2019) ................................................30

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
    2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ................................................21

*Wade Park Land Holdings, LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022) ...........................................................23

*Wade v. Montas*,
    2023 WL 5510599 (E.D.N.Y. Aug. 25, 2023) ................................................38

*Watson v. Mayo*,
    2008 WL 538442 (S.D.N.Y. Feb. 26, 2008) ....................................................9

*Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*,
    23 N.Y.3d 448 (2014) .................................................................................11

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ...........................................................35

*Wolst v. Monster Beverage Corp.*,
   2014 WL 4966139 (Del. Ch. Oct. 3, 2014) .......................................................................33, 34

*Zenith Labs., Inc. v. Carter–Wallace, Inc.*,
   530 F.2d 508 (3d Cir. 1976)................................................................................................17


## Statutes

18 U.S.C. § 1514A.................................................................................................................11

18 U.S.C. § 1968...................................................................................................................24

ERISA § 510..................................................................................................................28, 29

New York Labor Law § 740 ..................................................................................................11

SOX § 806.............................................................................................................................28


## Other Authorities

6 Del. C. § 18–805 ................................................................................................................34

Fed. R. Civ. P. 8.................................................................................................................6, 7

Fed. R. Civ. P. 9.............................................................................................................25, 26

Fed. R. Civ. P. 10...........................................................................................................37, 38

Fed. R. Civ. P. 12...........................................................................................................20, 38

Fed. R. Civ. P. 23.1............................................................................12, 13, 15, 16, 32, 33

Local Civil Rule 4.............................................................................................................41, 42

Local Civil Rule 7.1..........................................................................................................41, 42


## Online Sources

*Story*, THE REAL DAVID JK, https://www.realdavidjk.com/story (last visited
   Feb. 27, 2026) ....................................................................................................................17

Defendants AudioEye, Inc. ("AudioEye") and David Moradi respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' complaint.

## PRELIMINARY STATEMENT

Plaintiff David Kovacs is a disgruntled former employee of Defendant AudioEye who was fired in January 2024 after the company learned he lied about his qualifications and defamed the company's CEO, David Moradi. Mr. Kovacs has now sued AudioEye and Mr. Moradi *three times* over that termination. His first two actions were dismissed—the first on the merits and with prejudice, and the second based on *res judicata*. This action, his third, should be dismissed as well.

This Court already expressed doubts over the viability of Plaintiffs' claims when it denied their motion for a temporary restraining order. Those doubts were well founded: Mr. Kovacs' 118-page complaint, filled with wild and sensational claims of "murder plots" and "lawfare," is, at bottom, a rehashing of the same allegations two courts have already rejected. He claims he was fired, not because of his fraud and defamation, but as "retaliation" for being a "whistleblower." Those allegations are deficient now as they were before. Mr. Kovacs is not entitled to a third bite at the apple, and his claims fail on multiple grounds.

*First*, the Court cited "a substantial res judicata issue" when it denied Mr. Kovacs' motion for a temporary restraining order, and that doctrine indeed applies here. TRO Hr'g Tr. at 17:14-15 (Dec. 17, 2025), ECF No. 13 ("TRO Hr'g Tr."). All of Mr. Kovacs' claims arise out of the same factual theory he pursued unsuccessfully in two prior actions. Claim preclusion bars Mr. Kovacs from re-asserting the same "retaliation" claims previously rejected, and from repackaging his old allegations into new claims he could have asserted previously, but did not.

*Second*, Mr. Kovacs and his co-Plaintiffs purport to assert derivative claims for AudioEye, but do not meet the basic prerequisites for doing so. Plaintiffs either fail to allege that they held

1

AudioEye shares during the purported claim period, or that they currently hold shares, or both. That is dispositive.  So is Plaintiffs' failure to make a demand on the AudioEye Board, or to demonstrate that such demand would have been futile.

*Third*, in addition to the above defects across multiple claims, Plaintiffs fail to meet basic pleading requirements for each individual claim.  Plaintiffs' RICO claim, for example, describes a hodge podge of unrelated acts, not a coordinated enterprise marked by a pattern of improper activity; Plaintiffs' securities fraud claim rests on the kind of generalized allegations courts routinely reject; Mr. Kovacs' retaliation claims implausibly allege he was punished for whistleblowing that had not yet happened; and, as New York's Commercial Division already held, Plaintiffs' intentional infliction of emotional distress claim does not nearly meet the high bar for such a claim under New York law.

In the end, Mr. Kovacs is trying to convert an employment dispute—one that two courts have already decided against him—into an elaborate 12-count RICO action, while seeking literally hundreds of millions of dollars in damages.  Mr. Kovacs' claims are not only meritless, they are vexatious and improper.  They should be dismissed with prejudice, and without leave to amend.

## **BACKGROUND**

AudioEye is a technology company that deploys software to make the Internet more accessible to people with disabilities.  *See* Compl., Ex. 30E ¶ 20.  Mr. Moradi is AudioEye's CEO. *Id.* ¶ 13.  Plaintiff David Kovacs started working for AudioEye in 2015, and was fired in January 2024 after it was discovered he had lied about his professional qualifications, and was defaming the company and Mr. Moradi.  *Id.* ¶¶ 22-35.  Mr. Kovacs' termination has given rise to ***four*** litigations—the present action, two prior actions by Mr. Kovacs in New York State Court (both dismissed), and a pending action in Florida by AudioEye and Mr. Moradi asserting fraud and defamation claims against Mr. Kovacs.

### A.    The Dismissal Of Mr. Kovacs' Two Prior Actions

***Mr. Kovacs' first New York action***:   In April 2024, Mr. Kovacs sued AudioEye, Mr. Moradi, and AudioEye's former Chairman, Carr Bettis, in the Commercial Division of New York Supreme Court ("*Kovacs I*"), asserting claims for retaliatory discharge, tortious interference with prospective business relations, defamation, and intentional infliction of emotional distress. **Exhibit 1** (*Kovacs I* Compl., *David Kovacs v. AudioEye, Inc. et al.*, No. 651810/2024 (N.Y. Sup. Ct. Apr. 5, 2024)).   Mr. Kovacs alleged Mr. Moradi directed him to "engage in insider trading, market manipulation, and a pump and dump scheme," and fired him for refusing to participate.  *Id.* ¶¶ 1-2, 25-36.  The Court dismissed the action with prejudice on January 31, 2025, holding, among other things, that Mr. Kovacs had failed to allege "any trades or transactions that were executed as part of the alleged scheme—be it an insider trading, pump-and-dump scheme, or otherwise." Compl., Ex. 83 (*Kovacs I* Dismissal) at 5.

***Mr. Kovacs' second New York action***:   Mr. Kovacs filed his second action against AudioEye and Mr. Moradi in March 2025, less than two months after his first action was dismissed ("*Kovacs II*").   Like *Kovacs I*, Mr. Kovacs' second action arose from his termination from AudioEye.  He claimed he was entitled to restricted stock units when he was fired—which was relief he had sought in his first action.  *See, e.g.*, Compl., Ex. 84 (*Kovacs II* Dismissal) at 2.  On October 8, 2025, the Court dismissed *Kovacs II* on res judicata grounds, holding that Mr. Kovacs' claims "arose out of the same series of transactions" as *Kovacs I* and "could have been raised there."  *Id.*

***The Florida action***:  The one action between the parties that has not been dismissed is an action by AudioEye and Mr. Moradi against Mr. Kovacs in Florida State court.  AudioEye and Mr. Moradi brought that action in April 2024, asserting claims for defamation and fraud.  Compl.,

3

Ex. 37.  As set forth in the Amended Complaint, Mr. Kovacs misrepresented his credentials to get hired, and, when his lies came to light, defamed AudioEye and Mr. Moradi, including with false accusations of racism and fraud.  *Id.*  The case remains pending, with the trial court having denied Mr. Kovacs' motion to dismiss (and the denial affirmed on appeal).  *Kovacs v. AudioEye, Inc.*, 414 So. 3d 390 (Fla. 3d DCA 2025).

The trial court also recently granted a motion by AudioEye and Mr. Moradi to amend their complaint to seek punitive damages, holding that "[t]he evidence demonstrating Mr. Kovacs' ill will and hostility and intent to harm [Mr. Moradi and AudioEye] is unusually compelling." **Exhibit 2** at 6 (Order Granting Pls.' Mot. to Am. Compl. to Add Claim for Punitive Damages, *AudioEye, Inc. v. Kovacs*, No. 2024-006401-CA-01 (Fla. 11th Cir. Ct. Jan. 12, 2026)).  In its written decision, the Court recounted Mr. Kovacs' own words, in a recorded call, describing his plans to "do smear campaigns against Mr. Moradi," and "tear [Mr. Moradi] to shreds in every way I could."  *Id.*  The Court was also troubled by Mr. Kovacs "boasting of his intention to lie about Mr. Moradi," citing Mr. Kovacs' recorded statement that "if 'you say it enough, it becomes true.'" *Id.*

**B.    Mr. Kovacs' Current Action Against AudioEye And Mr. Moradi**

Mr. Kovacs filed this action two months after *Kovacs II* was dismissed.  This time, he repackages the same twice-rejected allegations in a 118-page complaint with 113 exhibits totaling over 1,200 pages.  Mr. Kovacs' core theory rests on the same "retaliatory discharge" he unsuccessfully alleged before:

- Mr. Kovacs alleges here and in his previous actions that Mr. Moradi directed him to post fake reviews of a video game marketed by a company in which they were both investors; *Compare* **Exhibit 1** (*Kovacs I* Compl.) ¶ 26 (alleging Mr. Moradi "instructed [Kovacs]" to use a "VPN" to "publish a series of fake reviews"), *with* Compl. ¶ 17 ("Moradi had pressured Kovacs to use a VPN to post . . . fake . . . reviews."), ECF No. 1.

4

- Mr. Kovacs alleges here and in his previous actions that Mr. Moradi directed Mr. Kovacs to engage in a pump-and-dump securities fraud scheme; *Compare* **Exhibit 1** (*Kovacs I* Compl.) ¶¶ 3, 27-29 (alleging a "pump and dump" scheme involving provision of inside information to "wealthy acquaintances"), *with* Compl. ¶ 136 (alleging a "pump-and-dump" scheme), *and* Compl., Ex. 1 ¶ 75 (Kovacs Decl.) (alleging "market manipulation and insider trading . . . by receiving non-public material information from Moradi and providing it to wealthy tippees[.]").

- Mr. Kovacs alleges here and in his previous actions that he is a whistleblower who Mr. Moradi retaliated against for reporting purported securities fraud; *Compare* **Exhibit 1** (*Kovacs I* Compl.) ¶¶ 28-29, 46 (alleging retaliation because Kovacs "blew the whistle about Moradi's insider trading scheme"), *with* Compl. ¶¶ 26-41 (alleging "retaliation" for "be[ing] a federal whistleblower").

- Mr. Kovacs alleges here and in his previous actions that AudioEye wrongfully forfeited his restricted stock units and health benefits; *Compare* **Exhibit 1** (*Kovacs I* Compl.) ¶ 30 (alleging Mr. Moradi stated "I will not support your healthcare and your salary"), *id.* ¶ 64 (alleging Mr. Kovacs "lost wages and benefits"), *and id.* ¶ 46 ("Mr. Kovacs' … AudioEye stock was forfeited."), *and* Compl., Ex. 47 ¶ 1 (*Kovacs II* Compl.) ("This is an action … which arise[s] from [] Audio[Eye's] failure to deliver to [Mr. Kovacs'] vested, restricted stock units."), *with* Compl. ¶ 142 ("[AudioEye] seized ERISA Benefits including vested RSUs.").

In his current Complaint, Mr. Kovacs and his co-Plaintiffs embellish these core allegations with wild claims that Mr. Kovacs was the target of an attempted murder-for-hire plot—a claim he waited a year to report to police and that resulted in no law enforcement action. Compl. ¶ 165 ("Ducheine disclosed the murder plot to Kovacs on May 8, 2024."), *id.* ¶ 151 ("In an April 26, 2025 text message to NYPD detectives, Kovacs reported that . . . David Moradi [wants] to murder me."). And Mr. Kovacs accuses Mr. Moradi of engaging in "lawfare" and using "law firms . . . to commit legalized extortion"—an accusation evincing an extraordinary lack of self-awareness from a plaintiff who has now filed three lawsuits against the same parties based on the same allegations. *Id.* ¶¶ 5, 8, 110; Compl., Ex. 1 ¶ 289 (Kovacs Decl.).

5

The Complaint sets out a laundry list of claims, including for Civil RICO violations, securities fraud, retaliatory discharge and intentional infliction of emotional distress.  *See generally* Compl. ¶¶ 192-339.  Of 12 total claims, Mr. Kovacs is the sole individual Plaintiff for six (Counts I, III, IV, V, VIII, IX); four are brought derivatively (Counts I, VI, VII, VIII); two are brought by Mr. Kovacs together with co-plaintiffs (Counts II, X); and one, for "common law torts," is brought by Mr. Lichtenstein (Count XI).

### C. This Court's Denial Of Mr. Kovacs' Application For A Temporary Restraining Order

Plaintiffs filed a motion for temporary and preliminary injunctive relief, which the Court denied at a hearing on December 17, 2025.  Following full briefing and lengthy oral argument, the Court held that Plaintiffs could not establish a likelihood of success, including because of "a substantial res judicata issue" and "plausibility issues with a lot of this story."   TRO Hr'g Tr. at 17:10–19, ECF No. 13.  The Court also found no risk of irreparable harm, observing that Mr. Kovacs waited nearly two years after he allegedly learned he was the target of a murder-for-hire plot before seeking injunctive relief.  *Id.* at 7:1-6.[1]

### ARGUMENT

The Complaint suffers from a significant threshold problem.  Plaintiffs are required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  But the Complaint is instead replete with vague, inflammatory, and sensational allegations—allegations of dubious plausibility, as the Court has already observed.  TRO Hr'g Tr.

---

[1]   The Court denied Plaintiffs' application for a temporary restraining order without separately ruling on the request for a preliminary injunction.  TRO Hr'g Tr. at 18:5-8, ECF No. 13. Defendants are therefore filing an opposition to the preliminary injunction motion together with this motion to dismiss.

at 17:17-18, ECF No. 13.  That style of pleading is improper.  *See Roberto's Fruit Mkt., Inc. v. Schaffer*, 13 F. Supp. 2d 390, 395 (E.D.N.Y. 1998) ("When a complaint fails to comply with [Rule 8] requirements, the district court has the power to . . . dismiss") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86–87 (2d Cir. 1995).  The Complaint is even more "excessively long-winded and redundant" than the 108-page pro se civil RICO complaint dismissed in *Roberto's Fruit Market*. *Id.* at 395-96.  Plaintiffs here have filed a 118-page Complaint, with 113 exhibits totaling over 1200 pages, burying Defendants and the Court with vague, nonsensical allegations about "asymmetric lawfare," Compl. ¶ 123, "pressure campaigns," *e.g.*, *id*. ¶¶ 68, 84-85, 87, 119, 129, and "obstruction of justice," *e.g.*, *id.* ¶¶ 161-78.  This "dizzying web" of allegations would, by itself, support dismissal.  *Roberto's Fruit Mkt.*, 13 F. Supp. 2d at 395.

The problems with the Complaint, however, go well beyond inartful pleading.  Even putting aside its rhetoric and irrelevant content, the Complaint suffers multiple defects that require dismissal.

## I.    MR. KOVACS' CLAIMS ARE BARRED BY RES JUDICATA

Res judicata encompasses both claim preclusion and issue preclusion.  *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015).[2]  Claim preclusion forbids a party from bringing claims it raised in a prior litigation, or "could have . . . raised in the prior litigation."  *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) (quoting *In re Hunter*, 4 N.Y.3d 260 (2005)).  A claim "could have

---

[2]  In assessing the preclusive effect of a state court judgment, courts apply "the preclusion law of the state that issued the judgment"—in this case, New York.  *Beijing Neu Cloud Oriental System Tech. Co., Ltd. v. IBM*, 110 F.4th 106, 113 (2d Cir. 2024); *see LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (applying New York law to give preclusive effect to judgment in New York action).

been raised in the prior litigation" when it "arises out of the same transaction or series of transactions as the adjudicated claim," "even if based upon different theories or if seeking a different remedy." *Id.* (cleaned up). Issue preclusion "bars the relitigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," "even if it recurs in the context of a different claim." *Russell v. N.Y.U.*, 42 N.Y.3d 377, 384 (2024) (quoting *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 72 (2018). Both doctrines apply here.

Mr. Kovacs asserts six state law claims, each of which he either raised or could have raised in his prior State Court actions. For instance, Mr. Kovacs asserts a claim for intentional infliction of emotional distress (Count X), which is among the claims the Court dismissed in *Kovacs I*. Compl., Ex. 83 (*Kovacs I* Dismissal) at 6-7. That dismissal was "with prejudice," *id.*, and—as the Court in *Kovacs II* has already held—is therefore final and entitled to preclusive effect. Compl., Ex. 83 (*Kovacs I* Dismissal) at 2-3; *see also Fuschi v. JPMorgan*, 223 A.D.3d 409 (1st Dep't 2024) ("a dismissal with prejudice is a determination on the merits for res judicata purpose"); *Bauhouse Group I, Inc. v. Kalikow*, 190 A.D.3d 401, 402 (1st Dep't 2021) (res judicata applied when prior "complaint was dismissed with prejudice"); *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986) ("A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action."). Mr. Kovacs also asserts a claim for unjust enrichment (Count VIII), which is among the claims the Court in *Kovacs II* has already held is barred by res judicata. Compl., Ex. 84 (*Kovacs II* Dismissal) at 1, 3.[3]

---

[3] Mr. Kovacs cannot escape res judicata by adding AudioEye's Board members, who were not defendants in the prior New York actions, as defendants here. "Res judicata applies not only to claims 'between the same parties,' but to claims such as these, involving parties 'in privity with'

Mr. Kovacs also asserts State law claims for breach of fiduciary duty (Counts V, VI, VII), and malicious prosecution (Count IX)—all premised on allegations that he was "retaliated" against as a "whistleblower."  Compl. ¶¶ 140-155.  Those are the same allegations rejected in *Kovacs I*. **Exhibit 1** (*Kovacs I* Compl.) ¶¶ 43-55; Compl., Ex. 83 (*Kovacs I* Dismissal) at 1.  Mr. Kovacs' current claims thus arise out of the same "transaction or series of transactions" as his prior retaliatory discharge claim, and are precluded.  *Beijing Neu Cloud*, 110 F.4th at 114.  That Mr. Kovacs has embellished his prior allegations with wild claims of "murder for hire" and "lawfare" does not change that conclusion – at bottom, all of these alleged acts are purportedly part and parcel of the "retaliation" that Mr. Kovacs already alleged and that was previously rejected.  *Id.* ("[S]eparately asserted legal theories that 'depend on different shadings of the facts' or that 'emphasize different elements of the facts' may nevertheless arise out of the same transaction or series of transactions if those legal theories are 'grounded on the same gravamen of the wrong upon which the action[s] [are] brought.'") (quoting *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185 (1981)).

Mr. Kovacs' purported RICO claim (Count I) is also subject to claim preclusion.  A State court ruling can have preclusive effect on a federal claim, where the State court was competent to hear the claim.  *Beijing Neu Cloud*, 110 F.4th at 115.  And civil RICO claims are subject to

---

parties to the original action." *Hyman v. Cornell Univ.*, 721 F. App'x 5, 6 (2d Cir. 2017) (quoting *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001)).  AudioEye is in privity with its Board members, and the dismissals against AudioEye in *Kovacs I* and *II* therefore have preclusive effect in favor of those Board members as well. *See Amadsau v. Bronx Leb. Hosp. Ctr.*, 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) (employees at an affiliate of the previous defendant held in privity for purposes of barring a claim by the same plaintiff); *Watson v. Mayo*, 2008 WL 538442, at *8 (S.D.N.Y. Feb. 26, 2008) ("Courts have routinely found privity between co-employees sued in separate suits over allegedly tortious acts that occurred during the course of their employment.").

concurrent state and federal jurisdiction. *See Pantoja v. Banco Popular*, 2012 WL 4069297 (S.D.N.Y. Aug. 9, 2012), *aff'd*, 545 Fed. Appx. 47 (2d Cir. 2013) (dismissing RICO claim that plaintiff could have raised in prior state court action).    Moreover, as with his other claims, Mr. Kovacs bases his RICO claim on the same core allegations, often using the same language, he advanced in *Kovacs I*: that Mr. Moradi directed him to participate in "stock fraud," that "Kovacs refused," that Kovacs "became a whistleblower," and that Defendants "retaliated" against him. *Compare* Compl. ¶¶ 16-29, 141-42, 195, *with* **Exhibit 1** (*Kovacs I* Compl.) ¶¶ 26-29, 43-55.  Thus, Mr. Kovacs' RICO claim arises out of the same transaction or series of transactions as his earlier claims, and is precluded. *See Kuriyan v. Schreiber*, 2024 WL 3539234, at *6 (S.D.N.Y. July 25, 2024) (barring civil RICO claim based on prior New York state court judgment), *aff'd*, 2025 WL 1065957 (2d Cir. Apr. 9, 2025); *Polur v. Raffe*, 912 F.2d 52, 56-57 (2d Cir. 1990) (affirming dismissal of RICO claim on res judicata grounds based on prior state court judgment); *Aries Realty, Inc. v. AGS Columbia Associates*, 751 F. Supp. 444, 451 (S.D.N.Y. 1990) (dismissing RICO claim as precluded by prior South Carolina state court judgment).

Mr. Kovacs' remaining federal claims (Counts II-IV), though subject to exclusive federal jurisdiction, all turn on issues resolved against Mr. Kovacs in his prior State actions. *See Russell*, 42 N.Y.3d at 384 ("If there is identity of issues between the prior determination and the instant litigation, and the precluded party had a full and fair opportunity to contest the prior determination, collateral estoppel applies and the prior determination is binding in the subsequent action."). For instance, Mr. Kovacs' securities fraud claim (Count Two) rests on the same "pump-and-dump" and "painting the tape" allegations the Court rejected with prejudice in *Kovacs I*. *Compare* Compl. ¶¶ 16, 135-136, *with* **Exhibit 1** (*Kovacs I* Compl.) ¶¶ 3, 29, 36, 62.  The Court in *Kovacs I* rejected those allegations for reasons that apply fully here:  because Mr. Kovacs failed to "identify, for

10

example, any trades or transactions that were executed as part of the alleged scheme—be it an insider trading, pump-and-dump scheme, or otherwise." Compl., Ex. 83 (*Kovacs I* Dismissal) at 4.[4]

Mr. Kovacs' whistleblower retaliation claim (Count III) requires a showing that he reported conduct he "reasonably believe[d]" constituted a violation of federal securities laws. 18 U.S.C. § 1514A(a)(1); *see also Kantin v. Metro. Life Ins. Co.*, 696 F. App'x 527, 528 (2d Cir. 2017) ("relief pursuant to § 1514A turns on the reasonableness of the employee's belief that the conduct violated one of the enumerated provisions"). Mr. Kovacs brought a retaliation claim under New York Labor Law § 740 in *Kovacs I*, which turned on the identical issue—whether Mr. Kovacs "allege[d] a reasonable belief that the activity in question was in violation of the law." Compl., Ex. 83 (*Kovacs I* Dismissal) at 5 (citing *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448, 453 (2014)). The Court's dismissal of that claim with prejudice in *Kovacs I*, *id.* at 6, precludes Mr. Kovacs from claiming retaliation here.

*Finally*, to prevail on his ERISA claim (Count IV), Mr. Kovacs must show "specific intent to interfere" with his benefits. *See Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988). Mr. Kovacs alleges the withdrawal of his restricted stock units was in retaliation for whistleblowing. Compl. ¶ 232(d). But the *Kovacs I* Court already held that Mr. Kovacs "does not allege Defendants engaged in any specific activities that Plaintiff reasonably believed were illegal" and that "[a]bsent specific allegations showing Defendants' awareness of Plaintiff's protected

---

[4] The Florida court recognized that Mr. Kovacs' "suggestion that his securities fraud claims have yet to be adjudicated . . . is simply wrong" because his "securities fraud and retaliatory discharge [claims] against Mr. Moradi and AudioEye [] were dismissed" in *Kovacs I* and *Kovacs II*. **Exhibit 2** at 8-9.

activity, there can be no inference of retaliatory intent." Compl., Ex. 83 (*Kovacs I* Dismissal) at 5-6. Mr. Kovacs' allegation of retaliatory intent has already been decided against him, and he is precluded from pursuing it here.[5]

*In sum*, all of the claims brought by Mr. Kovacs (Counts I-X) are precluded by the dismissal of his prior State actions.

## II.    PLAINTIFFS' DERIVATIVE CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' derivative claims fail on two independent grounds. First, Plaintiffs never made a demand on AudioEye's Board and fail to plead demand futility. Second, none of the three derivative plaintiffs has standing.

### A.    Plaintiffs Fail To Plead Demand Futility

Plaintiffs' derivative claims should be dismissed because Plaintiffs have failed to plead demand futility. Federal Rule of Civil Procedure 23.1 "requires that a plaintiff in a shareholder derivative action 'state with particularity . . . any effort by the plaintiff to obtain the desired actions from the directors . . . and . . . the reasons for not obtaining the action or not making the effort.'"

---

[5]    While the State Court dismissals support dismissal here based on res judicata, the ongoing litigation between the parties in Florida separately supports abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Mr. Kovacs openly acknowledges that both cases involve the same subject matter. In fact, he has tried to use that to his advantage. In a brief he recently submitted in the Florida action, Mr. Kovacs invoked this suit to argue that the alleged defamatory statements at issue in Florida should not be "adjudicated as false," because they "form[] the basis of a lawsuit currently pending in the United States District Court for the Southern District of New York, Case No. 25-CV-10336." **Exhibit 3** at 11. Mr. Kovacs should not be permitted to game the system by bringing this later-filed action to try to avoid a negative result in an already pending action. *Gabelli v. Sikes Corp.*, 1990 WL 213119, at *7 (S.D.N.Y. Dec. 14, 1990) (abstaining where conclusion of state court matter "may foreclose any further challenge to the tender offer based upon principles of res judicata and collateral estoppel"); *Kingsley v. New York City Hous. Auth. (NYCHA), Clarence Gordon, Ashok Kulkarni*, 2016 WL 5939359 (S.D.N.Y. Oct. 6, 2016) (abstaining where *pro se* litigant's state court action was filed "more than seven months" earlier and "simultaneous adjudication would risk inconsistent outcomes and clearly would constitute piecemeal litigation").

*Canty v. Day*, 13 F. Supp. 3d 333, 341 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23.1(b)(3)).   Plaintiffs do not allege that they made any demand on AudioEye's Board, and they did not.   They must therefore demonstrate that such a demand would have been futile on the grounds that the directors cannot act impartially.   *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d 473, 480 (S.D.N.Y. 2012); *Shabbouei v. Potdevin*, 2020 WL 1609177, at *6 (Del. Ch. Apr. 2, 2020) ("To wrest control over the litigation asset away from the board of directors, the stockholder must demonstrate that demand on the board to pursue the claim would be futile such that the demand requirement should be excused.").[6]

Plaintiffs do not nearly satisfy the "stringent" pleading requirements for establishing demand futility.   *See Canty v. Day*, 599 Fed. App'x 20, 22 (2d Cir. 2015) ("Satisfaction of these 'stringent requirements of factual particularity' is intended to be 'a difficult feat.'") (citations omitted); *Brewer v. Breen*, 2018 WL 565267, at *5 (S.D.N.Y. Jan. 23, 2018) ("To establish that demand is excused . . . the pleadings must comply with 'stringent requirements of factual particularity'" (citation omitted)).   The Complaint never even addresses demand futility.   To the extent the Complaint says anything relevant on this point at all, it confirms that two of the company's four directors, Dr. Fleming and Mr. Hawkins, are "independent" and do not "lack

---

[6]   AudioEye is a Delaware corporation, *see* Compl. at 69, and Delaware law therefore supplies the standard for whether demand is excused. *See Trickey v. Brolick*, 2017 WL 2973983, at *3 (S.D.N.Y. July 11, 2017) ("Where . . . the corporation at issue is a Delaware corporation, the issue of whether demand is excused is governed by Delaware law."); *In re Goldman Sachs*, 42 F. Supp. 3d at 480 (same).   Delaware's high bar for establishing demand futility is rooted in the "basic principle of the Delaware General Corporation Law . . . that the directors, and not the stockholders, manage the business and affairs of the corporation." *In re Kraft Heinz Co. Deriv. Litig.*, 2021 WL 6012632, at *4 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054 (Del. 2022) (citation and quotations omitted).

13

independence." *See* Compl. ¶ 2; *id*. at Schedule B; *id.* ¶ 59 (alleging Dr. Flemings and Mr. Hawkins have "good reputations").

With Dr. Fleming and Mr. Hawkins out of the equation, Plaintiffs' derivative claims fail unless they can show that *both* remaining Board members, Mr. Tahir and Mr. Moradi, could not act impartially. *See In re Ltd., Inc.*, 2002 WL 537692, at *7 (Del. Ch. Mar. 27, 2002) (holding that a Plaintiff must plead that "half of the board" was interested when the "challenged actions are those of a board consisting of an even number of directors"). The allegations against Mr. Tahir fall far short. They span just two paragraphs and amount to nothing more than conclusory assertions that he "sold $3.0 million of AudioEye stock in December 2024 while possessing material nonpublic information," Compl. ¶ 91; *see also id.* ¶ 139. The complaint fails to identify that purported material nonpublic information, provides no timeline for when Mr. Tahir supposedly learned of it, and offers no explanation for how it rendered his alleged December 2024 sales improper. Such "[c]ursory allegations that a director made sales of company stock in the market at a time when he possessed material nonpublic information are not sufficient to find a director interested for demand-futility purposes." *In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 388 (S.D.N.Y. 2006); *see also Rahbari v. Oros*, 732 F. Supp. 2d 367, 380 (S.D.N.Y. 2010) (dismissing derivative claims where "plaintiff alleges that defendant[] [directors] made trades" but "offers no allegation regarding what [MNPI] they might have been in possession of while trading"); *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) ("it is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information.").

*Finally*, Plaintiffs' conclusory allegations that Mr. Moradi and Mr. Bettis somehow "dominated" the Board, *see* Compl. ¶¶ 262, 334, cannot overcome the absence of allegations indicating any lack of independence by more than half of its members. Board members are "entitled to a *presumption* that they were faithful to their fiduciary duties." *F5 Capital v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017) (applying Delaware law) (emphasis in original). To overcome that presumption and establish domination, a plaintiff "must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'" *Kandell on behalf of FXCM, Inc. v. Niv*, 2017 WL 4334149, at *14 (Del. Ch. Sept. 29, 2017) (citations omitted).

"[V]ague or conclusory allegations do not suffice to challenge the presumption of a director's capacity to consider demand[.]" *In re Trade Desk, Inc. Deriv. Litig.*, 2025 WL 503015, at *9 (Del. Ch. Feb. 14, 2025); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (holding that Plaintiffs must allege particularized facts demonstrating that the director is "'beholden' to an interested director" such that "his or her 'discretion would be sterilized'"). But vague and conclusory allegations are all there is: the Complaint never explains why the remaining directors would have been subject to Mr. Moradi's or Mr. Bettis's control, nor does it describe any instance in which they failed to exercise their independent judgment. *See Blaustein v. Lord Baltimore Cap. Corp.*, 84 A.3d 954, 958 (Del. 2014) ("The mere allegation that there is a control group within the board is insufficient to excuse demand."); *see also Jiminian v. Seabrook*, 760 F. App'x 38, 42 (2d Cir. 2019) (cursory allegations of board domination are insufficient) (applying New York law).

*In sum*, the Complaint has no allegations supporting a finding of demand futility, and dismissal of the purported derivative claims is thus required under Rule 23.1.

15

### B.      Plaintiffs Lack Standing To Bring A Derivative Claim

The Complaint's derivative claims fail for the added reason that none of the three Plaintiffs purporting to assert those claims have standing to do so.

#### 1.      Mr. Alesi

Mr. Alesi lacks standing under Rule 23.1, which requires a derivative plaintiff to allege that he was "a shareholder or member at the time of the transaction complained of."  *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 WL 6798160, at *13 (S.D.N.Y. Dec. 23, 2013); *Cellucci v. O'Leary*, 2021 WL 242806, at *2 (S.D.N.Y. Jan. 25, 2021) (dismissing derivative lawsuit because plaintiffs were not "shareholder[s] at the time of t[he] transaction").  According to his own allegations, Mr. Alesi did not own shares at the time of the alleged wrongdoing.  *See* Compl. ¶ 62 ("Plaintiff Russel Alesi acquired shares of AudioEye *after* the conclusion of the Class Period[.]") (emphasis added).  He therefore cannot claim to have "actually suffered" damages, and cannot "buy" his way into this litigation.  *In re Facebook*, 2013 WL 6798160, at *13 (derivative standing limited to shareholders at the time of the alleged wrongdoing "(1) to prevent potential derivative plaintiffs from 'buying a lawsuit' by purchasing stock; and (2) to ensure that derivative actions are brought by shareholders who have actually suffered and have an interest in the outcome of the case").

#### 2.      Mr. Ducheine

Mr. Ducheine lacks standing because "[o]nce a plaintiff ceases to be a member or shareholder, he or she loses standing to maintain the lawsuit."  *See Brooks-McCollum v. Emerald Ridge Bd. of Dir.*, 29 A.3d 245 (Del. 2011); *see also Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988) ("former shareholders . . . cannot pursue a derivative action[].").  This defect in standing is also clear on the face of the Complaint: Plaintiffs allege that "Ducheine is a *former* shareholder of AudioEye . . ."  Compl. ¶ 64 (emphasis added).

16

### 3.    Mr. Kovacs

Mr. Kovacs lacks standing on multiple grounds.

*First*, he does not plead that he currently owns AudioEye stock—he pleads the opposite, repeatedly alleging that AudioEye deprived him of shares in the company.  Compl., Ex. 1 ¶ 304 ("I have never held any [AudioEye] stock since 2020 or 2021."); Compl. ¶ 142 ("The company seized . . . RSUs worth millions of dollars that Kovacs had earned . . ."); *id.* ¶ 244 ("Defendants . . . seiz[ed] vested and unvested RSUs . . .").  As a self-described non-shareholder, Mr. Kovacs cannot bring a derivative action.  *Berni.*, 838 F.2d at 646.[7]

*Second*, Mr. Kovacs' alleged injuries, which arise from his termination and alleged retaliation against him, are unique to him and not tied to his status as an AudioEye shareholder.[8] *See JFURTI, LLC v. Singal*, 2018 WL 6332907, at *13 (S.D.N.Y. Nov. 12, 2018) (dismissing claims "pleaded as derivative claims" that "are, in fact, direct claims"); *Anwar v. Fairfield*

---

[7]    The failure to include allegations of relevant stock purchases by Mr. Kovacs and Mr. Alesi, in addition to rendering them ineligible to pursue derivative claims, disqualifies them as purported class representatives on the securities fraud claim (Count II).  *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 497 (S.D.N.Y. 2004) ("the claims on behalf of bondholders must be dismissed because no named plaintiff is alleged to have purchased any bonds"); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) ("[t]o have standing to sue as a class representative it is essential that a plaintiff . . . be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.").  Beyond this, Mr. Kovacs faces "unique defenses"—a res judicata bar—that independently disqualifies him.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."); *Zenith Labs., Inc. v. Carter–Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (affirming denial of class certification where the class-representative was subject to a unique res judicata defense).

[8]    Mr. Kovacs recently created a website devoted entirely to his personal grievances—and, ironically, to repeat the defamatory statements for which he faces punitive damages in Florida. *See* David J. Kovacs, *Story*, THE REAL DAVID JK, https://www.realdavidjk.com/story (last accessed Feb. 27, 2026).  The site narrates Mr. Kovacs' saga in four acts: "Disclosure," "Termination," "Retaliation," and "Escalation."  Each centers on Mr. Kovacs' alleged personal injuries—his firing, his equity, and his reputation.

*Greenwich Ltd.*, 676 F. Supp. 2d 285, 300 (S.D.N.Y. 2009) ("This Court will not transform an otherwise direct claim by a single plaintiff into a 'mass action,' simply because the company's shareholders may ultimately derive some benefit from the litigation.").

*Third*, Mr. Kovacs purports to pursue direct claims alongside derivative claims, thereby creating an inherent conflict of interest with the shareholders he purports to represent. *Tatintsian v. Vorotyntsev*, 2018 WL 2324998, at *2 (S.D.N.Y. May 22, 2018) ("[C]ourts in this District have applied a strict standard in scrutinizing simultaneous direct and derivative actions for signs of conflict[.]"); *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 137 (S.D.N.Y. 1991) ("[Class-representative] is subject to a conflict of interest in pursuing both direct and derivative claims in this action, which renders him unable 'fairly and adequately to represent the interests of the shareholders.'") (quotations modified).  Courts look to several factors in identifying such a conflict: "(1) economic antagonism between the representative and class; (2) the remedy sought by the plaintiff in the derivative action; (3) other litigation pending between the plaintiff and the defendants; (4) the relative magnitude of the plaintiff's personal interest in matters beyond the scope of the derivative action, as compared to his or her interest in the derivative action; (5) the plaintiff's vindictiveness towards the defendants and (6) the degree of support the plaintiff receives from other shareholders that he or she purports to represent." *Cypress Holdings, III, L.P. v. Sport-BLX, Inc.*, 2024 WL 4265645, at *4 (S.D.N.Y. Sept. 23, 2024) (dismissing derivative claims "because they are in direct competition with [Plaintiff's] similar direct claims for the same pool of damages, creating an impermissible conflict of interest"); *Smollar v. Potarazu*, 2016 WL 3635304, at *2-3 (Del. Ch. June 29, 2016) (discussing similar factors); *see also Tatintsian*, 2018 WL 2324998, at *3 (dismissing derivative claims because "any recovery for [Plaintiff] on the direct claim might reduce the recovery for the company and its shareholders on the derivative claim").

Mr. Kovacs fails at every level.  There is plainly "economic antagonism" between him and AudioEye's shareholders, including because of the "relative magnitude" of the "remedy" he seeks against the company. *Cypress Holdings*, 2024 WL 4265645, at *4.  Indeed, Mr. Kovacs purports to represent AudioEye's shareholders while simultaneously suing the company directly for Civil RICO (Count I) and other claims, seeking $233.4 million in treble damages, plus $54 million in pre-judgment interest and fees.  Compl. Sched. G at 97.  A plaintiff cannot demand nearly $300 million for himself and claim to represent the interests of shareholders in the same company that would be liable for those damages. *Cypress Holdings*, 2024 WL 4265645, at *4; *Tatinstian*, 2018 WL 2324998, at *3.  Additionally, there has been, and continues to be, "other litigation between the plaintiff and the defendants." *Cypress*, 2024 WL 4265645, at *4.  Mr. Kovacs lost two actions against AudioEye and Mr. Moradi, and is currently a defendant in an action by those parties in Florida.  A plaintiff who has waged a multi-front, multi-year legal war against a company cannot adequately represent that company's shareholders. *See, e.g.*, *Kenneth v. Yeung Chi Shing Holding (Delaware), Inc.*, 2020 WL 409010, at *9 (N.D. Cal. Jan. 24, 2020) (finding derivative plaintiff conflicted where "the numerous lawsuits" he filed "suggest[ed] that this lawsuit was filed in a vindictive manner").  Moreover, the "litigation history" between the parties in Florida makes "perfectly clear" that Mr. Kovacs "is using [the] derivative suit as a device to obtain leverage over the Defendants" in that other litigation. *JFURTI*, 2018 WL 6332907, at *13.  Indeed, Mr. Kovacs began invoking this action before the Court in Florida within days of filing his complaint here. *Compare* Compl. (filed on December 12, 2025), *with* **Exhibit 3** (filed on Dec. 19, 2025).

Finally, if there were any doubt as to whether Mr. Kovacs can fairly represent the interests of AudioEye and its shareholders, he put it to rest with his recorded comments that he is "going to tear that f\*\*cking [AudioEye] to shreds," and drive its stock to a "f\*\*cking penny."  **Exhibit 2** at

19

3. It is difficult to imagine a Plaintiff less suited than Mr. Kovacs to represent AudioEye's interests.[9]

### III. THE COMPLAINT FAILS TO ALLEGE ANY PLAUSIBLE CLAIM

The Complaint also fails to plead allegations sufficient to support any of its purported claims. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims alleging fraud must clear a higher bar: "Under the Federal Rules of Civil Procedure, a party alleging fraud 'must state with particularity the circumstances constituting' that fraud." *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 777 (S.D.N.Y. 2021). Further, the Court may consider, on a motion to dismiss, "documents attached to the complaint as an exhibit or incorporated in it by reference; matters of which judicial notice may be taken; and documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are 'integral' to the complaint."[10] *Polanco v. NCO Portfolio*

---

[9] Beyond the standing defects that bar ***all*** of Plaintiffs' derivative claims, the RICO claim in Count One confronts an additional barrier unique to RICO itself: "It is well-settled that shareholders, officers, and employees lack standing to bring a civil RICO claim for harm to their corporation." *Infanti v. Scharpf*, 570 F. App'x 85, 88 (2d Cir. 2014); *Nygard v. Bacon*, 2021 WL 4926078, at *1 (S.D.N.Y. Oct. 21, 2021) ("Plaintiff cannot bring a RICO action on behalf of a business, even if he is a shareholder of an injured corporation."); *Stevenson v. Thornburgh*, 2024 WL 645187, at *10 (S.D.N.Y. Feb. 14, 2024) ("by virtue of the nature of the injury Plaintiffs seek to redress, Plaintiffs' RICO claims are derivative claims—and Plaintiffs lack standing to bring them. For that reason alone, they must be dismissed with prejudice.").

[10] Of particular relevance to the res judicata arguments in Section I, the Court may take judicial notice of court filings in other litigations. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *see also Atas v. New York Times Co.*, 2023 WL 5715617, at *3 (S.D.N.Y. Sept. 5, 2023) (Oetken, J.) ("It is appropriate to take judicial notice 'of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Prince v. Intercept*, 634 F. Supp. 3d 114, 126 (S.D.N.Y. 2022)).

*Mgmt., Inc.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014); *see Seatig, Inc. v. BizLog, LLC*, 2025 WL 3101250, at *6 (S.D.N.Y. Nov. 6, 2025) (Oetken, J.) (same).

As demonstrated below, each of Plaintiffs' purported claims is insufficiently pled.

### A.    Plaintiffs Fail To Plead An Actionable Civil RICO Claim (Count I)

"[T]he civil provisions of [RICO] are the most misused statutes in the federal corpus of law.'" *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *5 (S.D.N.Y. Sept. 29, 2004).  Courts in this district therefore "strive to flush out frivolous RICO allegations at an early stage of the litigation," *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179 (S.D.N.Y. 2020).  That should be the result here.

### 1.    Plaintiffs Fail To Plead A RICO Enterprise Or Pattern Of Racketeering

"[T]he heart of any civil RICO claim is the enterprise.  There can be no RICO violation without one." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) (Oetken, J.).   In order to have an enterprise, "individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Id*. (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)); *see also D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 667-68 (2d Cir. 2014).  A RICO claim also requires a "pattern of racketeering activity," *i.e*., two or more predicate acts that are "related" and "amount to, or pose a threat of, continuing criminal activity."  *BWP Media*, 69 F. Supp. 3d at 360.  Plaintiffs' allegations do not describe a coherent enterprise nor a coordinated pattern of racketeering activity.

*First*, the alleged "enterprise" is an assemblage of disparate actors.  The Complaint lumps together Mr. Moradi, Dr. Bettis, Mr. Humble, board members, and entities like AudioEye, First Contact, Formulus Black, ESTP, and Vivid Strategies—without alleging how these actors

21

functioned as a unified enterprise with a common structure and purpose. Compl. ¶ 193. The Complaint's RICO Case Statement describes the "Enterprise" as consisting of individuals and the catchall "controlled or affiliated entities," but never explains the relationships among these disparate actors or how they operated as a "continuing unit." Compl., Sched. C at 76; Sched. A at 70. It alleges only in conclusory terms that "Moradi and Bettis served as Enterprise leadership" while "[i]ntermediaries, including Humble, were deployed to recruit capital, transmit threats, apply pressure, and execute retaliatory litigation strategies." *Id.*; Compl. ¶ 196 ("The Enterprise had relationships among its members . . ."). But it offers no facts showing that Mr. Humble took direction from Mr. Moradi, that Dr. Bettis coordinated with Mr. Humble, or that any of these individuals shared a common purpose with the various corporate entities named as enterprise members. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (holding that "conclusory naming of a string of entities does not adequately allege an enterprise").

*Second*, the alleged predicate acts are disconnected and not part of any pattern. The Complaint describes isolated incidents involving different actors at different times for different purposes. The purported murder-for-hire was allegedly commissioned by Mr. Humble alone, with no factual connection to Mr. Moradi. Compl. ¶¶ 43-51, 163-65, 207. The Complaint does not allege that Mr. Moradi directed, authorized, or even knew of Mr. Humble's alleged actions. The "Birkin Bag Letter" involved only Dr. Bettis. *Id*. ¶¶ 32, 143. The "coercive letter" to Mr. Lichtenstein was sent in 2016—nearly a decade before this lawsuit and years before the alleged "enterprise" purportedly began operating at AudioEye. *Id.* ¶ 68. And the securities fraud allegations—which could not qualify as a RICO predicate in any event—focus on Mr. Moradi. *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273 (2d Cir. 2011) ("no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities

22

to establish a violation of section 1962.").  This stew of allegations describes "separate actions involving various pairs of defendants," not a coordinated pattern of racketeering activity.  *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 375 (S.D.N.Y. 2022).

*Third*, the alleged "enterprise" is not distinct from the predicate acts.  *D. Penguin Bros.*, 587 F. App'x at 667 (RICO requires that the enterprise "exist 'separate and apart from the pattern of activity in which it engages.'").  The complaint describes the enterprise's "common purpose" as "the extraction of insider profits . . . the concealment of securities fraud . . . the suppression of internal and external oversight, the retaliation against whistleblowers . . . and the preservation of control through intimidation, misuse of corporate assets, and retaliatory lawfare."  Compl. ¶ 195. But that is the "alleged racketeering activity itself," and does not describe an enterprise "separate and apart" from that activity.  *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 439 (S.D.N.Y. 2019) ("[A]ssert[ing] numerous predicate acts to demonstrate the existence of a pattern of racketeering activity . . . [is] not necessarily sufficient to show an association-in-fact RICO enterprise—the enterprise must have an existence separate and apart from the racketeering activity itself."); *Heinrich v. Dean*, 655 F. Supp. 3d 184, 192 (S.D.N.Y. 2023) (dismissing RICO claim where the alleged enterprise was defined by the "very 'pattern' of activity underlying Plaintiffs' RICO claim" rather than "separate" actions); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 804-05 (7th Cir. 2008) (stating that "[w]ithout a requirement of structure, 'enterprise' collapses to 'conspiracy,'" and holding that plaintiff failed to allege enterprise where complaint "did not identify a structure of any kind") (citations omitted).

*In sum*, the Complaint does not describe an "enterprise" with a structure and purpose independent of the alleged racketeering.  Mr. Kovacs simply attaches that label to a collection of disparate grievances he has been litigating—and losing—for years.

### 2.    Plaintiffs Lack Standing To Pursue A RICO Claim

Mr. Kovacs also lacks RICO standing.  The civil RICO statute only provides a remedy for injuries to "business."  18 U.S.C. § 1968.  Courts strictly construe this language to require allegations of "actual, quantifiable injury," and "concrete financial loss."  *Marciniak-Domingues v. MIT*, 2024 WL 4350826, at *18 (S.D.N.Y. Sept. 30, 2024).  That injury must be "ascertainable" and "definite," *D'Addario v. D'Addario*, 901 F.3d 80, 95 (2d Cir. 2018), and suffered "by reason of" the predicate offenses, meaning the plaintiff must allege both factual and proximate causation.  *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 267-68 (1992).

The complaint's "damages matrix" claims Mr. Kovacs suffered "$2.9M–$7.8M" in "ERISA restoration," "$35.0M–$70.0M" in "Retaliation / IIED / Lawfare" damages, and an additional "$15M–$30M" in "retaliation damages"—yielding a total of "$37.9M–$77.8M" for a single terminated employee.  Compl. Sched. G at 97; Sched. H at 99.  The complaint offers no explanation for how Mr. Kovacs arrives at these fantastical numbers.  The range itself—spanning $35 approximately million—underscores that these figures are not "ascertainable" and "definite," but rather pulled out of thin air.  *D'Addario*, 901 F.3d at 95.  Mr. Kovacs' claimed injuries, whatever the purported dollar amount, are not injuries caused "by reason of" racketeering, but by reason of losing his job.  Compl. ¶ 142.  This is an employment dispute—one two New York courts have already resolved against Kovacs—not a RICO injury.

### B.    Plaintiffs Fail To Plead An Actionable Securities Fraud Claim (Count II)

Plaintiffs' Section 10(b) securities fraud claim fails.  As a threshold matter, the two Plaintiffs who purport to assert it, Mr. Kovacs and Mr. Alesi, lack standing.[11]  Section 10(b) claims

---

[11]  Plaintiffs also bring a Section 20(a) claim.  But that requires an underlying Section 10(b) violation, and dismissal of the Section 10(b) claim therefore requires dismissal of the Section 20(a)

are confined to "purchasers or sellers of securities about which a misstatement was made." *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 84 (2d Cir. 2022). Without such a transaction, a plaintiff cannot "prove a connection between the misrepresentation or omission, and the purchase or sale of a security." *Genesee Cnty. Emps.' Ret. Sys. v. DocGo Inc.*, 773 F. Supp. 3d 62, 91 (S.D.N.Y. 2025); *see also Frutarom*, 54 F.4th at 86. Mr. Alesi lacks standing for the same reason he lacks standing to assert derivative claims on AudioEye's behalf, *see* Section II.B.1, *supra*, because he acquired his shares "***after the conclusion***" of the alleged fraud. Compl. ¶ 62 (emphasis added); Ex. 19 (Alesi Decl.) ¶¶ 2-3.

And while Mr. Kovacs describes himself as "a significant long-term shareholder of AudioEye," Compl. ¶ 61, he admits that he "never held any [AudioEye] stock since 2020 or 2021." Compl., Ex. 1 ¶ 304. Instead, he alleges he was entitled to restricted stock units through his employment, Compl. ¶¶ 142, 241, 244, which is not enough. *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 471 (S.D.N.Y. 2013) ("[Plaintiff-employee] lacks standing to bring claims under the Securities Act or the Exchange Act based on the mere acquisition of options under [an employee stock option plan]."); *Egan v. TradingScreen, Inc.*, 2011 WL 4344067, at *8 (S.D.N.Y. Sept. 12, 2011) (dismissing securities fraud claim because the "acceptance of stock options and grants in exchange for continued employment does not constitute the purchase of a security."); *Fraser v. Fiduciary Tr. Co., Int'l.*, 2005 WL 6328596, at *5 (S.D.N.Y. June 23, 2005) (rejecting securities fraud claim where plaintiff acquired stock through a Restricted Stock Award

---

claim as well. *See In re Agnico-Eagle Mines Ltd. Sec. Litig.*, 2013 WL 144041, at *21 (S.D.N.Y. Jan. 14, 2013) (Oetken, J.) ("Because the Court has dismissed the § 10(b) claims in this case, there is no longer a primary violation upon which the § 20(a) claims might be predicated.").

25

Plan because the plaintiff gave no "consideration in exchange for the [company] stock under these plans other than continued employment").

Plaintiffs also fail to satisfy the heightened pleading requirements for asserting a securities fraud claim under Rule 9(b) and the PSLRA. *See Iowa Pub. Empls.' Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 330 (S.D.N.Y. 2013) ("A complaint asserting securities fraud must [] satisfy the heightened pleading requirement of Federal Rule of Procedure 9(b)."); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC,* 164 F. Supp. 3d 568, 576 (S.D.N.Y. 2016) ("Under the PSLRA, securities fraud complaints must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind . . . [and] must also specify each statement or omission alleged to have been misleading . . . [and] the reason or reasons why the statement or omission is misleading.") (quotation marks omitted); *Maloney*, 518 F. Supp. 3d at 778 (similar). The claim rests on nothing more than the conclusory assertion that Mr. Moradi traded on unspecified material non-public information as part of a "pump-and-dump strategy known as painting the tape." *See, e.g.*, Compl. ¶¶ 16, 17, 71, 80, 91, 94, 135, 139. That is insufficient. *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) (dismissing insider trading claim for failure to plead "adequate specifics regarding . . . Defendants' possession of non-public information"); *Gorog v. Musk*, 2024 WL 4329918, at *1 (S.D.N.Y. Aug. 29, 2024) (dismissing "pump and dump" claim where the court could not "understand the allegations that form the basis of Plaintiffs' conclusion of market manipulation"); *Baxter v. A.R. Baron & Co.*, 1995 WL 600720, at *6-7 (S.D.N.Y. Oct. 12, 1995) ("A claim of market manipulation . . . must [] specify what manipulative acts were performed, which defendants

26

performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue . . . The Complaint . . . is entirely lacking in such detail.").[12]

At bottom, Plaintiffs are inferring that Defendants engaged in securities fraud based on nothing more than the timing of alleged stock sales. *See, e.g.*, Compl. ¶¶ 23, 136 ("The timing reflect[s] advance planning and intent."). Courts have repeatedly rejected that mode of pleading. *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 524 (S.D.N.Y. 2020) ("The timing of those sales alone, however, is insufficient to generate a strong inference of scienter."); *Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 584 (S.D.N.Y. 2014), *aff'd sub nom. In re Lululemon Sec. Litig.*, 604 F. App'x. 62 (2d Cir. 2015) (dismissing Section 20(b) claim premised on "suspicious[] tim[ing]" of stock sales by company executives); *Tan v. Goldman Sachs Grp. Inc.*, 2024 WL 1357354, at *9 (S.D.N.Y. Apr. 1, 2024) (dismissing complaint where Plaintiffs asked the Court "to infer that because trading volume increased and because stock prices fell, it must be because defendants tipped some unidentified preferred clients, who in turn made unidentified trades on the tip."); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 102-103 (2d Cir. 2007) (affirming dismissal of market manipulation claim as "speculative" where based on allegations of "(1) high-volume selling of ATSI's stock with coinciding drops in the stock price, (2) trading patterns around conversion time, (3) the stock's negative reaction to positive news, and (4) the volume of trades in excess of settlement during a 10–day period in 2003").

---

[12]   The Court in *Kovacs I* already rejected Mr. Kovacs' nearly-identical "painting-the-tape" and insider trading allegations specifically because he failed to plead fraud with particularity. *See* Compl., Ex. 83 (*Kovacs I* Dismissal) at 5 ("Plaintiff does not identify, for example, any trades or transactions that were executed as part of the alleged scheme—be it an insider trading, pump-and-dump scheme, or otherwise.").

C.     **Mr. Kovacs Fails To Plead An Actionable Whistleblower Retaliation Claim (Count III)**

Mr. Kovacs is the sole Plaintiff asserting a "whistleblower retaliation" claim under SOX § 806, Dodd-Frank § 21F, and ERISA § 510. To recover under SOX § 806, "an aggrieved employee must exhaust administrative remedies by 'filing a complaint with the Secretary of Labor.'" *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 154 (2018) (quoting § 1514A(b)(1)(A)). This exhaustion requirement is a "jurisdictional prerequisite to suit in federal court," *Daly v. Citigroup Inc.*, 939 F.3d 415, 427 (2d Cir. 2019)—and Mr. Kovacs bears the burden of proving it, *see Rimini v. J.P. Morgan Chase & Co.*, 2024 WL 4354875, at *5-6 (S.D.N.Y. Sept. 30, 2024). Mr. Kovacs does not allege that he filed a complaint with the Secretary of Labor. This Court therefore lacks jurisdiction and must dismiss all SOX-based claims. *See Daly*, 939 F.3d at 428.

All of Plaintiffs' retaliation claims fail for the added reason that the alleged retaliation, *i.e.*, Mr. Kovacs' termination from AudioEye, occurred *before* he allegedly filed the "whistleblowing" reports for which he was supposedly retaliated against. *See Fraser v. Fiduciary Tr. Co. Int'l*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006) (SOX retaliation requires allegations "to suggest that the protected activity was a contributing factor to the unfavorable action."); *Digital Realty*, 583 U.S. at 152-53 (Dodds-Frank "whistleblower" must provide information to the SEC *before* the alleged adverse employment action); *Moniodes v. Autonomy Cap. (Jersey) LP*, 2021 WL 3605385, at *4-8 (S.D.N.Y. Aug. 11, 2021) (dismissing Dodd-Frank claim for failing to report to the SEC in the prescribed manner); *Giordano v. Thomson*, 564 F.3d 163, 169 (2d Cir. 2009) (ERISA retaliation requires "causal connection between the protected activity and the adverse employment action."). The Complaint's own allegations confirm this sequencing problem: Mr. Kovacs learned of his termination on January 17, 2024, but did not report AudioEye's alleged wrongdoing to the DOJ

28

until February 8, 2024, or to the SEC until April 8, 2024.  Compl. ¶¶ 30, 141-42, 144.  A

termination cannot be in retaliation for a report that has not yet been made.[13]

### D.    Mr. Kovacs Fails To Plead An Actionable Claim For Interference With ERISA Benefits (Count IV)

"To state a claim under ERISA, a plaintiff must allege and establish the existence of an

'employee benefit plan' that is governed by ERISA."[14]  *Adams v. Intralinks, Inc.*, 2004 WL

1627313, at *7 (S.D.N.Y. July 20, 2004).  Mr. Kovacs fails to do so.  His chief allegation is that

AudioEye seized "ERISA Benefits including vested RSUs worth millions of dollars," Compl. ¶

142, and that he "earned substantial benefits under these plans, including [RSUs] and related equity

compensation," *id.* ¶ 241.  But equity compensation, such as restricted stock units, does not fall

within ERISA's ambit.  *See Matiella v. DIRECTV, Inc.*, 2012 WL 363037, at *8 (S.D.N.Y. Jan.

31, 2012) ("employee stock option plans are not employee benefit plans subject to ERISA because

their purpose is 'to operate as an incentive and bonus program, and not as a means to defer

compensation or provide retirement benefits.'"); *Intralinks, Inc.*, 2004 WL 1627313, at *8 ("The

[Stock Incentive] Plan does not qualify as an 'employee pension benefit plan'—it is clearly a bonus

---

[13]    Mr. Kovacs attempts to manufacture earlier protected activity by claiming he "became a whistleblower" on November 13, 2023 when he emailed HR, Compl. ¶¶ 20, 141, but the email identifies no wrongdoing, references no insider trading, and provides no details—it is a meeting request, nothing more, Compl., Ex. 31.

[14]    This requirement applies both to §§ 502(a)(1)(B) and 510 claims.  *Ghorpade v. MetLife, Inc.*, 2016 WL 3951183, at *8 (S.D.N.Y. July 20, 2016) (Oetken, J.) ("To succeed on a Section 510 claim, a plaintiff must demonstrate the employer specifically intended to interfere with [ERISA] benefits."); *Guerrero v. FJC Sec. Servs., Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) ("To prevail under § 502(a)(1)(B), a plaintiff must show that [] the plan is covered by ERISA.").  Mr. Kovacs also invokes Section 502(a)(3), a "catch-all" provision that permits equitable relief for ERISA violations that are not adequately remedied elsewhere.  *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006).  A § 502(a)(3) claim is "generally preclude[d]" as duplicative where, as here, a plaintiff pursues benefits under § 502(a)(1)(B).  *Levy v. Young Adult Inst., Inc.*, 2014 WL 6611454, at *5 (S.D.N.Y. Nov. 21, 2014) (Natburn, M.J.).

plan."); *Pasciutti v. LiquidPiston, Inc.*, 2021 WL 4502950, at *3 (D. Conn. Sept. 30, 2021) ("Courts considering similar stock option plans have held that when vesting schedules allow and encourage employees to exercise their options before retirement . . . ERISA does not apply.").

Mr. Kovacs also asserts he is entitled to "ERISA-governed . . . retirement benefits," Compl. ¶ 240, but never identifies a 401(k), pension, or any other retirement vehicle by name. Nor does he allege any facts suggesting Defendants interfered with such benefits—or that he was even entitled to any. These omissions are dispositive. *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps. Loc. 812*, 2019 WL 1228056, at *32 (S.D.N.Y. Mar. 15, 2019) (dismissing ERISA claim where plaintiff failed to allege "what benefits he was entitled to" or "what benefits he stood to receive"); *see Intralinks*, 2004 WL 1627313, at *7. Further, even assuming *arguendo* Mr. Kovacs possessed and was denied ERISA-protected benefits, he does not plead that Defendants "specifically intended to interfere with [those] benefits." *Ghorpade*, 2016 WL 3951183, at *8; *Ello v. Singh*, 531 F. Supp. 2d 552, 570 (S.D.N.Y. 2007) ("Plaintiff . . . must plead that the [employer's] motivation for terminating his employment was to deny him [his benefits]."). All Mr. Kovacs alleges is a "mere consequence" of his termination, which is not actionable. *Ghorpade*, 2016 WL 3951183, at *8.

### E.    Mr. Kovacs Fails To Plead An Actionable Breach Of Fiduciary Duty Claim (Count V)

Mr. Kovacs' breach of fiduciary duty claim fails for three independent reasons.[15]

---

[15]    Delaware law governs this inquiry because "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation." *Scottish Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996). Even if the Court were to apply New York law, the result would be identical. *See, e.g.*, *Naughright v. Weiss*, 857 F. Supp. 2d 462, 470 (S.D.N.Y. 2012) ("employer/employee relationship does not import fiduciary duty under New York law."); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837

*First*, the claim is premised on Mr. Kovacs' employment with AudioEye and is untethered to his status as a shareholder. Compl. ¶ 251 ("At all relevant times, Defendants . . . owed fiduciary duties . . . in matters affecting [Mr. Kovacs] employment, equity, benefits, and business interests."). That theory fails as a matter of law because employers owe no fiduciary duties to their employees. *McRitchie v. Zuckerberg*, 315 A.3d 518, 548 (Del. Ch. 2024) ("directors do not owe fiduciary duties to non-stockholder constituencies."); *Riblet Prods. Corp. v. Nagy*, 683 A.2d 37, 40 (Del. 1996) (holding that directors did not owe any fiduciary duties to employee as stockholder for purposes of exercising termination right).

*Second*, to the extent Mr. Kovacs bases his claim on AudioEye's alleged refusal to honor his restricted stock units, his claim is foreclosed by contract. *See e.g.*, Compl. ¶¶ 255-258. Under Delaware law, "where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). Mr. Kovacs knows this is a contract dispute—he said so himself. The very first paragraph of his complaint in *Kovacs II* described his RSU theories as "***an action for breach of contract*** . . . which arise[s] from defendant Audio[Eye's] failure to deliver to Plaintiff his vested, restricted stock units in violation of the terms of the consulting and employment agreements the parties entered into." Compl., Ex. 47 (*Kovacs II* Compl.) ¶ 1 (emphasis added). Having lost that breach of contract action, Mr. Kovacs now seeks to relitigate the same dispute under a fiduciary duty theory. Delaware law does not permit such repackaging. *Nemec*, 991 A.2d at 1129.

---

F. Supp. 2d 162, 193 (S.D.N.Y. 2011) ("In New York, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." (citation modified)).

31

*Third*, Mr. Kovacs' allegations of "smear campaigns" and "retaliatory litigation" pertain to privileged statements in complaints filed in pending actions in Florida and Arizona.[16]  *See* Compl. ¶ 144 ("The [Florida] complaint asserted multiple False Smears."); *id.* ¶ 255(c) ("retaliatory litigation.").  Mr. Kovacs cannot transform allegations in court filings into an independent tort, as statements made in the course of judicial proceedings are absolutely privileged.  *See Sheindlin v. Brady*, 597 F. Supp. 3d 607, 629 (S.D.N.Y. 2022); *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992).  Nor can Mr. Kovacs use this action to collaterally attack pending litigation since those courts are fully capable of adjudicating the merits of those cases.  *See Richardson v. New Residential Mortg. Loan Tr. 2019RPL3*, 2025 WL 2491199, at *7 (Del. Ch. Aug. 29, 2025) (dismissing complaint where "the heart of the relief Plaintiffs seek directly contradicts and revisits the core issue of the [other action].").  And not only has the Court in Florida never deemed AudioEye's allegations against Mr. Kovacs improper, it denied his motion to dismiss and recently authorized a claim for punitive damages based upon the "unusually compelling" evidence of Mr. Kovacs' ill intent and malice.  **Exhibit 2** at 6.

### F.    Plaintiffs Fail To Plead Actionable Derivative Breach of Fiduciary Duty Claims For ESTP, Formulus Black, and First Contact Entertainment (Counts VI, VII)

Plaintiffs purport to bring derivative claims on behalf of Eternal Sources Tech Partners ("ESTP"), Formulus Black and First Contact Entertainment ("FCE"), but have no derivative standing and allege no actionable misconduct relating to these entities.  The complaint's 118 pages focus almost exclusively on AudioEye—Mr. Kovacs' termination, his forfeited restricted stock

---

[16]   Mr. Kovacs, ironically, accuses Defendants of waging "smear campaigns"—yet he is the one heard on a recording vowing to "destroy that f\*\*king Persian" and conduct "smear campaigns against [Mr. Moradi]."  Compl., Ex. 30B at 7:22-8:1; 9:17-18; 9:11-13.

units, and his supposed whistleblowing.  ESTP, Formulus Black and FCE appear as afterthoughts, named as "Nominal Defendants" without any differentiated allegations of wrongdoing that harmed these corporations.  Compl. ¶¶ 100-102.  Plaintiffs made no demand on the boards of these entities and plead no facts excusing demand.  That alone requires dismissal.  *See* Fed. R. Civ. P. 23.1(b)(3).

Plaintiffs also plead no misconduct that injured ESTP, Formulus Black or FCE as corporate entities.  The Complaint allegations relating to FCE concern Mr. Lichtenstein—a "coercive" letter sent to him in July 2016 and his subsequent ouster from the company.  Compl. ¶¶ 68, 77, 121-125.  These claims cannot be brought derivatively.  *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).  And even if Plaintiffs could recast these claims as derivative, the three-year limitations period would bar them.  *Graulich v. Dell Inc.*, 2011 WL 1843813, at *6 (Del. Ch. May 16, 2011) ("A three-year statute of limitations 'almost universally' applies to stockholder derivative suits for alleged breaches of fiduciary duty in Delaware."); *Wolst v. Monster Beverage Corp.*, 2014 WL 4966139, at *2 (Del. Ch. Oct. 3, 2014) ("The last of the events serving as the basis for [plaintiff's] anticipated derivative action occurred almost seven years ago, well beyond the presumptive three-year limit . . . The passage of seven years . . . would unjustifiably prejudice [the Defendant corporation]."); *see* N.Y.C.P.L.R. § 202 (under New York law, courts apply the shorter of the statute of limitations of either the state where the cause of action accrued or New York).

The allegations relating to Formulus Black are even thinner.  Plaintiffs allege, without differentiation, that the "Enterprise" "usurp[ed] corporate opportunities belonging to the Derivative Entities, including by diverting business opportunities, strategic relationships, and economic value away from the companies."  Compl. ¶¶ 126–29, 267.  They offer no specifics— they identify no corporate opportunity that was usurped, no transaction that harmed Formulus

33

Black, and no act of misconduct directed at the company. Such conclusory allegations fail to state a claim. *See Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at \*18 (Del. Ch. Oct. 28, 2022) (dismissing usurpation claim where plaintiff failed to "identify a single acquisition target by name" or connect "any specific opportunity" to the alleged wrongdoing). And to the extent any wrongdoing is alleged, the claim is time-barred. The alleged misconduct occurred from 2015 through 2018, Compl. ¶¶ 126–29, placing these claims well beyond the three-year limitations period. *See Wolst*, 2014 WL 4966139, at \*2.

The allegations concerning ESTP are just as threadbare. All that is alleged is that Mr. Kovacs was "stripp[ed]" of an unspecified ownership interest—nothing beyond that. Compl. ¶ 131. There is no explanation, and no reason, that Mr. Kovacs' loss of his shares would give rise to a derivative harm to ESTP. The derivative claims against ESTP must be dismissed for the added reason that a certificate of cancellation of ESTP was filed with the Delaware Secretary of State on December 30, 2024—more than two weeks before Mr. Kovacs' termination from AudioEye. **Exhibit 4** (Cert. of Cancellation for Eternal Sources Tech Partners, LLC (Dec. 30, 2024)). "Under Delaware law, an individual may assert derivative claims on behalf of a dissolved and cancelled limited liability company only after following certain procedural steps." *Schiff v. ZM Equity Partners, LLC*, 2020 WL 13596542, at \*1 (S.D.N.Y. Sept. 14, 2020) (citing *Matthew v. Laudamiel*, 2012 WL 605589, at \*21 (Del. Ch. Feb. 21, 2012) (holding that "[a]fter the certificate of cancellation has been filed, suits generally may not be brought by or against an LLC," and that in order to assert such a claim, a would-be derivative plaintiff must first seek the

34

nullification of the cancellation or appointment of a receiver or trustee for the LLC pursuant to 6 Del. C. § 18–805)).[17]  There is nothing in the Complaint suggesting Plaintiffs took those steps.

### G.    Mr. Kovacs Fails To Plead An Actionable Claim For Unjust Enrichment (Count VIII)

Unjust enrichment requires that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Gans v. Wilbee Corp.*, 199 A.D.3d 564 (1st Dep't 2021).  Mr. Kovacs does not—and cannot—allege that Mr. Moradi's purported insider trading profits came at his expense.  Mr. Moradi allegedly sold AudioEye stock on the open market to anonymous third-party purchasers, not to Mr. Kovacs.  *See, e.g.*, Compl. ¶ 71.  Because Mr. Kovacs was not on the other side of those alleged transactions, his unjust enrichment claim fails as a matter of law.  *See, e.g.*, *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 547 (S.D.N.Y. 2008) (dismissing unjust enrichment claim based on alleged market manipulation that had an impact on the price of natural gas futures contracts because Plaintiffs did not "allege[ ] any direct relationship, trading or otherwise, between themselves and any [Defendant]"); *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 517 (2012) ("the relationship between [Plaintiff] and [Defendant] is too attenuated [to support an unjust enrichment claim] because they simply had no dealings with each other."); *In re Campbell*, 547 B.R. 49, 62 (Bankr. E.D.N.Y. 2016) ("Plaintiff alleges that

---

[17]    It is proper for the Court to take judicial notice of the Certificate of Cancellation of ESTP.  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 187 (S.D.N.Y. 2018) ("the Court may take judicial notice of certain matters of public record without converting the motion into one for summary judgment," including "documents publicly filed with the SEC or FINRA, documents filed with a Secretary of State, [and] documents filed with governmental entities and available on their official websites." (alteration in original) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)), *aff'd*, 837 F. App'x 841 (2d Cir. 2021).

35

Defendants were enriched when they sold the Bar Loan on the secondary market . . . However, Plaintiff cannot state [an unjust enrichment claim] by alleging that the Defendants were unjustly enriched at the expense of the third party purchaser.").

### H.  Mr. Kovacs Fails To Plead An Actionable Claim For Malicious Prosecution (Count IX)

Mr. Kovacs cannot credibly cast himself as the victim of vexatious litigation when he is the serial litigant.  Of the four actions between these parties, Mr. Kovacs initiated three: *Kovacs I*, *Kovacs II*, and now this action.  Mr. Kovacs' first two actions were dismissed, and his application for a temporary injunction in this action was promptly denied.  The only proceeding Defendants commenced is the Florida defamation action, in which the Court rejected Mr. Kovacs' motion to dismiss, the appellate court affirmed that ruling, and the trial court authorized AudioEye and Mr. Moradi to assert a claim for punitive damages against Mr. Kovacs based on "compelling" evidence of his bad intent.  **Exhibit 2** at 6.  The Florida action has not terminated in Mr. Kovacs' favor, and thus cannot support a malicious prosecution claim.  *Stewart v. Fein Such & Crain, LLP*, 236 A.D.3d 959, 962 (2d Dep't 2025) (holding that a malicious prosecution claim requires, among other things, that the prior action "terminated in favor of the plaintiff").  Mr. Kovacs is in essence asking this Court to declare that the Florida action is baseless—a determination the Florida court is perfectly capable of making itself, and one it has repeatedly rejected.

### I.  Mr. Kovacs and Mr. Ducheine Fail To Plead An Actionable Claim For Intentional Infliction of Emotional Distress (Count X)

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121–22 (1993).  The Court in *Kovacs I* already rejected this claim, applying the same "stringent" standard under New York law that

applies here.  Compl., Ex. 83 (*Kovacs I* Dismissal) at 6-7.  Nothing in the present Complaint cures that deficiency—the conduct alleged remains well below the "extreme" and "utterly intolerable" threshold New York law requires.  *Compare* Compl. ¶ 302(a) (alleging "sustained retaliation against Kovacs for whistleblowing"), *and* Compl. ¶ 302(c) (alleging "weaponized litigation used to intimidate and financially exhaust him"), *with Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 303 (1983) (affirming dismissal where claim was predicated on termination and reasoning that "plaintiff should not be allowed . . . to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress"), *and Sakthivel v. Industrious Staffing Co., LLC*, 212 A.D.3d 419, 419-20 (1st Dep't 2023) (affirming dismissal where employee "complained of safety law violations after being assaulted by a coworker," finding plaintiff's claim insufficient to "allege extreme and outrageous conduct"), *and Dillon v. City of New York*, 261 A.D.2d 34, 36-37, 41 (1st Dep't 1999) (former supervisor disparaging plaintiff to former coworkers not sufficient to support a claim for intentional infliction of emotional distress).[18]

### J.   Mr. Lichtenstein Fails To Plead An Actionable Claim For "Common Law Torts" (Count XI)

Plaintiff Mr. Lichtenstein purports to assert a claim of "common law torts" against Mr. Moradi for "abuse of process, tortious interference, fraud, coercion," and unspecified "related torts."  This kitchen sink pleading is improper.  With 307 paragraphs preceding this count, neither the Court nor Defendants can determine what facts Plaintiffs allege to support which claims.

---

[18]   Plaintiffs' most inflammatory allegation—the purported murder-for-hire solicitation—is also, as the Court already observed, the least "plausible."  TRO Hr'g Tr. at 17:16-19 ("there are plausibility issues with a lot of this story"), ECF No. 13.  In any event, the Complaint attributes that purported conduct to Mr. Humble, not Mr. Moradi.  Compl. ¶¶ 43–51, 163-65.

Compounding the confusion is Plaintiff's demand for relief for unspecified "Related Torts." Compl. at 61. Federal Rule of Civil Procedure 10(b) prevents this problem precisely, as it requires, where needed for clarity, that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count." *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, 2007 WL 121431, at *5 (E.D.N.Y. Jan. 12, 2007) (dismissing complaint where claims were "distinct and should not be alleged in a single count under Rule 10(b)").

Even with this blunderbuss pleading, it is clear from the Complaint that Mr. Lichtenstein's purported claims fail on two fundamental grounds. *First*, Mr. Lichtenstein admits in his declaration, filed with the Complaint, that he entered into a "full release" with Mr. Moradi. Compl., Ex. 5 ¶ 24 ("[Mr. Moradi] demanded that I accept 2% of the company and approximately $20,000 cash ***in exchange for a full release***." (emphasis added)). Mr. Lichtenstein does not identify any basis for disregarding his own agreement, and the release must be enforced. *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 142 (2d Cir. 2011) ("a valid release constitutes a complete bar to an action on a claim which is the subject of the release."); *Wade v. Montas*, 2023 WL 5510599, at *3-5 (E.D.N.Y. Aug. 25, 2023) (holding that general release barred malicious prosecution claim); *Tammone v. Dorr-Oliver Inc.*, 84 F. Supp. 2d 291, 294 (D. Conn. 1999) (dismissing IIED claim that was covered by a release).

*Second*, Mr. Lichtenstein's claim, again based on his own allegations, is time barred. *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."). He complains that, in July 2016, Mr. Moradi sent a "coercive" letter to Lichtenstein, Compl. ¶ 68, used "coercive tactics" to remove Lichtenstein from his position at FCE, Compl. ¶ 77, and became a required financial signatory of FCE, Compl. ¶ 122. That is all. And Mr.

38

Lichtenstein alleges that he was aware of these events in real time, purportedly confronting Mr. Moradi, asking, "Why are you f\*\*king me like this?"  Compl. ¶ 8; *id*. ¶¶ 68, 77, 122.  That was in 2016, nearly a decade before this action was filed, and vastly exceeds the limitations period for his purported claims.  *See Busiello v. Whelan*, 240 A.D.3d 736, 737 (2d Dep't 2025) ("Abuse of process is an intentional tort and, thus, is governed by a one-year statute of limitations"); *Shanghai Pearls & Gems, Inc. v. Paul*, 239 A.D.3d 31, 34 (1st Dep't 2025) ("tortious interference claims are governed by three-year statutes of limitations."); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 309-10 (S.D.N.Y. 2014) ("Under New York law, the statute of limitations for common law fraud is six years from accrual or two years from actual or imputed discovery . . . The six-year period runs from the commission of the fraud.") (quotation marks omitted), *aff'd sub. nom.*, *SRM Glob. Master Fund Ltd. v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016).[19]

### K.    Plaintiffs' Claim For Declaratory And Injunctive Relief (Count XII)

Plaintiffs' remaining cause of action, for "declaratory and injunctive relief," is not a cognizable cause of action at all.  Rather, it is a remedy that "does not exist independent of a plausible underlying claim for relief."  *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020).  Thus, the fact that Mr. Kovacs' underlying causes of action fail on multiple grounds, including *res judicata*, a lack of derivative standing, and insufficiency of the allegations, also forecloses his demand for declaratory relief.

---

[19]    Mr. Lichtenstein also purports to assert a coercion claim against Mr. Moradi, but New York law does not recognize a civil cause of action for coercion.  *Murphy v. Kozlowska*, 217 A.D.3d 455, 456 (1st Dep't 2023) ("the claim for coercion was correctly dismissed, as it is not a cognizable civil claim.") (citation modified).

## IV.    THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE

A complaint should be dismissed without leave to amend "in instances of futility, undue delay, bad faith or dilatory motive . . . or undue prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016).  All those considerations apply here.

Amendment is futile because *res judicata* bars all of Mr. Kovacs' claims.  Two New York courts have already rejected the same allegations he raises here: that he blew the whistle on securities fraud, that Defendants retaliated against him, and that AudioEye wrongfully forfeited his restricted stock units.  *See supra* § I.  Mr. Kovacs' filing of yet another complaint can hardly remedy an estoppel problem, and, indeed, can only aggravate it.  *MacKinnon v. City of New York/Hum. Res. Admin.*, 580 F. App'x 44, 45-46 (2d Cir. 2014) (affirming that leave would be futile on *res judicata* grounds where the plaintiff sought "to re-litigate claims already adjudicated . . . [and] assert new legal theories based upon the same operative facts at issue in his prior action"); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 509 (S.D.N.Y. 2018) ("Because Plaintiff's RICO claims are barred by the statute of limitations and res judicata, however, this Court found that any amendment would be futile, and denied leave to amend as to those claims."), *aff'd*, 771 F. Appx. 498 (2d Cir. 2019).

Mr. Kovacs' conduct also exemplifies the bad faith, dilatory motive, and vexatiousness that warrant dismissal with prejudice.  *See Gitzis ex rel. Galanova v. Chen*, 2020 WL 1140422, at *3 (E.D.N.Y. Mar. 9, 2020) (dismissing initial complaint without leave to amend where plaintiff had a "history of filing frivolous and vexatious lawsuits"); *Truong v. Marcus*, 2006 WL 3635319, at *4 (S.D.N.Y. Dec. 12, 2006) (dismissing initial complaint without leave to amend because "[p]laintiff continues to waste precious judicial resources and, at some point, this must come to an end"); *Papadopoulos v. Amaker*, 2013 WL 3226757, at *5 (E.D.N.Y. June 25, 2013) (dismissing initial complaint without leave to amend "in light of Plaintiff's extensive litigation history . . . and

40

the frivolous nature of certain allegations"). This marks Mr. Kovacs' third lawsuit arising from the same termination—and his own recorded words reveal his true purpose. Mr. Kovacs vowed to wage "smear campaigns" against Mr. Moradi and to "tear f\*\*king AudioEye f\*\*king into shreds," and Mr. Kovacs explained why: "it's all out of hate." Compl., Ex. 30B at 9:17–18; 8:1–3; 8:6-7. Mr. Kovacs also admitted his lies ("[if] you say it enough, it becomes true"). *Id.* at 9:21-22. A Florida court found these statements to constitute "unusually compelling" evidence of malice and therefore authorized a claim of punitive damages. **Exhibit 2** at 6.

Mr. Kovacs promised a smear campaign based on lies, *id.* at 3, and this lawsuit is that campaign—such bad faith warrants denial of leave to amend. *Exelis, Inc.*, 824 F.3d at 28.

## CONCLUSION

For these reasons, Defendants respectfully request that the Complaint be dismissed with prejudice.

Respectfully submitted,

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

Dated: February 27, 2026
New York, New York

By:  /s/ *Adam M. Abensohn*

Adam M. Abensohn
Corey Worcester
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Email: adamabensohn@quinnemanuel.com
coreyworcester@quinnemanuel.com

*Attorneys for Defendants
AudioEye, Inc. and David Moradi*

41

42

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Adam Abensohn, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 4(c) of Hon. J. Paul Oetken Individual Rules and Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 13,918 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 4(c) of Judge Oetken's Individual Rules.

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 27th day of February in New York, New York.

/s/ *Adam M. Abensohn*

Adam M. Abensohn