UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X
                                 :

DAVID KOVACS, RUSSELL ALESI, JULIAN     :    No. 25-cv-10336 (JPO)
DUCHEINE and DEMIAN LICHTENSTEIN,     :
                                   :

                   Plaintiffs,           :
                                     :

                     v.                 :
                                     :

DAVID MORADI, DR. CARR BETTIS, JASON      :
HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR.    :
KATHERINE FLEMING, TONY COELHO, KELLY    :
GEORGEVICH, JAMES SPOLAR, MALONEBAILEY   :
LLC, AUDIOEYE, INC. and JOHN DOE 1-50,      :
                                     :

                   Defendants,         :
                                     :

           and                      :
                                     :

ETERNAL SOURCES TECH PARTNERS LLC, FIRST   :
CONTACT ENTERTAINMENT, INC., FORMULUS    :
BLACK, INC.,                            :
                                     :

          Nominal Defendants,    :
                                     :

------------------------------------------------------------------------- X

**DEFENDANT JASON HUMBLE'S MEMORANDUM OF LAW IN
<u>SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT</u>**

**DORF NELSON & ZAUDERER LLP**
Grant A. Shehigian, Esq.
90 Park Avenue
New York, New York 10016
Tel: (212) 485-0005
Fax: (212) 922-9072
gshehigian@dorflaw.com
*Attorneys for Defendant Jason Humble*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................. 4

ARGUMENT................................................................................................................... 8

POINT I - KOVACS' CLAIMS AGAINST HUMBLE ARE
 BARRED BY THE RELEASE HE PROVIDED IN THE
 SETTLEMENT AGREEMENT AND MUTUAL RELEASE................................9

 A.  The Release Agreement Can Be Considered On A Motion to Dismiss………10

 B.  The Alleged Conduct Giving Rise to Kovacs' Claims Occurred
  Prior To Execution Of The Release Agreement……………………………....11

 C.  The Release Agreement Is Broad, Clear And Unambiguous…………………12

 D.  The Release Agreement Bars Kovacs' Claims Against Humble……………...14

POINT II - PLAINTIFFS' CLAIMS FOR MALICIOUS PROSECUTION
 AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
 ARE TIME-BARRED ....................................................................................... 17

POINT III - PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR CLAIMS ........ 19

 A.  Civil RICO (Count I)……………………………………………………....19

 B.  Whistleblower Retaliation (Count III)………………………………………..22

 C.  Unjust Enrichment (Count VIII)……………………………………………...23

 D.  Malicious Prosecution and Abuse of Process (Count IX)……………………24

 E.  Intentional Infliction Of Emotional Distress (Count X)……………………...26

CONCLUSION............................................................................................................... 27

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. WestPoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991) .................................................................................................. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 8

*Baram v. Doe*,
    23-cv-1758 (ER), 2024 WL 232319 (S.D.N.Y Jan. 22, 2024) ......................................... 17, 26

*Bell Atlantic Corp. v Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 8

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) ............................................................................... 19, 20

*Callahan v. HSBC Securities (USA) Inc.*,
    723 F. Supp. 3d 315 (S.D.N.Y. 2024) .................................................................................. 22

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*,
    17 N.Y.3d 269 (2011) ........................................................................................................ 12

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ............................................................................................. 9, 10

*Champion v. Moda Operandi, Inc.*,
    561 F. Supp. 3d 419 (S.D.N.Y. 2001) ................................................................................... 9

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ............................................................................................... 20

*Cuillo v. Shupnick*,
    815 F. Supp. 133 (S.D.N.Y. 1993) ...................................................................................... 26

*Delaney v. HC2, Inc.*,
    761 F. Supp. 3d 641 (S.D.N.Y. 2025) .................................................................................. 27

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023) ................................................................... 10

*Eisen v. Norton*,
  13–cv–6226 (KBF), 2015 WL 1055923 (S.D.N.Y. Mar. 11, 2015) ......................................... 16

*Equity Residential v. Kendall Risk Management, Inc.*,
  No. 04 C 3812, 2005 WL 1026686 (N.D. Ill. Apr. 12, 2005) ................................................... 15

*Ghartey v. St. John's Queens Hosp.*,
  869 F.2d 160 (2d Cir. 1989)………………………………………………………………17, 19

*Guzman v. Building Service 32BJ Pension Fund*,
  22-cv-01916 (LJL), 2023 WL 2526093 (S.D.N.Y. Mar. 15, 2023) ........................................ 22

*Halberstadt v. New York Life Ins. Co.*,
  194 N.Y. 1 (1909) ..................................................................................................... 25

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) ........................................................................................ 22

*Howard v. America Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ..................................................................................... 15

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*,
  655 F.3d 136 (2d Cir. 2011) ...................................................................................... 12

*Johnson v. City of New York*,
  23 Civ. 3018 (DEH), 2024 WL 3520445 (S.D.N.Y. July 22, 2024) ...................................... 10

*Karupaiyan v. Experis IT*,
  21 Civ. 4675 (LGS), 2022 WL 4280529 (S.D.N.Y. Sept. 15, 2022) ..................................... 17

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
  711 F.3d 106 (2d Cir. 2013) ...................................................................................... 19

*MBIA Inc. v. Certain Underwriters at Lloyd's, London*,
  33 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................................... 9

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) ...................................................................................... 21

iii

*O'Brien v. Alexander*,
  101 F.3d 1479 (2d Cir. 1996)......................................................................... 24, 25, 26

*Pampillonia v. RJR Nabisco, Inc.*,
  138 F.3d 459 (2d Cir. 1998)...................................................................................... 15

*Pesserillo v. National Grid*,
  78 F. Supp. 3d 551 (E.D.N.Y. 2015)......................................................................... 11

*Pizarro v. U.S. Post Office*,
  17-CV-4409 (ALC), 2020 WL 906191 (S.D.N.Y. Feb. 25, 2020) ........................... 14

*Rolon v. Hennenman*,
  517 F.3d 140 (2d Cir. 2008)......................................................................................... 8

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)........................................................................................... 9

*Rothstein v. Carriere*,
  373 F.3d 275 (2d Cir. 2004)....................................................................................... 25

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos, Inc.*,
  75 F.3d 801 (2d Cir. 1996)........................................................................................... 9

*Schleyer v. Starbucks Corp.*,
  122-CV-10932 (JPO), 2023 WL 5935695 (S.D.N.Y. Sept. 12, 2023) ..................... 24

*Sesto v. Slaine*,
  171 F. Supp. 3d 194 (S.D.N.Y. 2016)....................................................................... 26

*Stephens v. Shuttle Associates, L.L.C.*,
  547 F. Supp. 2d 269 (S.D.N.Y. 2008)....................................................................... 27

*Tammone v. Dorr-Oliver Inc.*,
  84 F. Supp. 2d 291 (D. Conn. 1999) ......................................................................... 16

*Tromp v. City of New York*,
  465 F. App'x 50 (2d Cir. 2012).................................................................................. 12

*U.S. ex rel. Ritchie v. Lockheed Martin Corp.*,
  558 F.3d 1161 (10th Cir. 2009).................................................................................. 16

*Wade Park Land Holdings, LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022) ......................................................... 15, 20, 21

*Wade v. Montas*,
    19-CV-02687 (HG) (AYS), 2023 WL 5510599 (E.D.N.Y. Aug. 25, 2023) ............................ 16

*Warden v. E.R. Squibb & Sons, Inc.*,
    840 F. Supp. 203 (E.D.N.Y. 1993) ............................................................... 15

*Wiest v. Lynch*,
    15 F. Supp. 3d 543 (E.D.Pa. 2014) ............................................................. 22

*Zottola v. Eisai Inc.*,
    564 F. Supp. 3d 302 (S.D.N.Y. 2021) ......................................................... 23, 24

## Rules

CPLR 215(3) ......................................................................................... 17

Fed. R. Civ. P. 12(b)(6) ............................................................. 8, 9, 16, 19, 26

Fed. R. Civ. P. 9(b) ................................................................................ 19, 21

## Statutes

15 U.S.C.A. § 78u-6(h)(1)(A) ......................................................................... 22

Defendant Jason Humble respectfully submits this memorandum of law in support of his motion to dismiss all claims asserted against him in the Complaint (Dkt. 1).  The only claims asserted against him are Counts I, III, VIII, IX and X of the Complaint.

## PRELIMINARY STATEMENT

Plaintiff David Kovacs is an inveterate liar and serial litigant who, through this and other lawsuits, has demonstrated that he knows no bounds and will viciously turn against anyone who disagrees with him.  His most egregious conduct to date has occurred in this very lawsuit, where he absurdly claims that Mr. Humble, at the behest of certain co-defendants, tried to carry out a murder-for-hire plot against Mr. Kovacs because Mr. Kovacs purportedly blew the whistle on an alleged securities fraud scheme at a company Mr. Humble no longer worked for.  As support for this fiction, Mr. Kovacs enlisted the help of two lackeys, including plaintiff Julian Ducheine, who agreed to perjure themselves and submit blatantly false declarations about their purported knowledge of this alleged plot.  But as the Court will see, there are glaring holes and inconsistencies in the plaintiffs' statements, and they cannot even get their story straight.

To be absolutely clear, Mr. Humble vehemently denies the plaintiffs' allegations, and he will pursue all available legal remedies against these individuals for their false smears at the appropriate time.  At this juncture, the only relief that Mr. Humble seeks is dismissal of plaintiffs' claims against him, and the Court does not have to resolve any factual disputes between the parties to grant this relief.  Each claim asserted against Mr. Humble—civil RICO, whistleblower retaliation, unjust enrichment, malicious prosecution, and intentional infliction of emotional distress—fails as a matter of law.

*First*, the claims asserted against Mr. Humble by Mr. Kovacs are barred by a broad general release.  Mr. Kovacs argues that Mr. Humble engaged in two general acts of wrongdoing at the

1

direction of certain co-defendants:  (1) an attempt to carry out a murder-for-hire plot against Mr. Kovacs in December 2023 and January 2024 (which is absolutely false); and (2) the commencement of a defamation action against Mr. Kovacs in May 2024 in bad faith and as a form of "lawfare" (yet another absurd falsehood), as purportedly evidenced by the voluntary dismissal of that action months later.  However, what Mr. Kovacs fails to tell the Court is that Mr. Humble's defamation lawsuit was voluntarily dismissed in July 2024 pursuant to a "Settlement Agreement and Mutual Release" (the "Release Agreement"), which, as the title suggests, included broad mutual general releases.

Pursuant to paragraph 2.D of the Release Agreement, Mr. Kovacs released Mr. Humble "from any and all liability for any and all Claims from the beginning of time until the Effective Date of this Settlement Agreement [June 29, 2024] relating to or arising in any way out of the allegations asserted, or which could have been asserted, by Kovacs (*whether known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or not asserted*) in the Lawsuit."  (A copy of the Release Agreement is attached as Exhibit A to the Declaration of Jason J. Humble, dated February 27, 2026 (the "Humble Decl."))  (emphasis added).  Each of the bad acts that Mr. Kovacs falsely alleges Mr. Humble engaged in would have occurred **prior** to the execution of the Release Agreement on June 29, 2024, and could have been asserted by Mr. Kovacs at that time.

It does not matter whether Mr. Kovacs knew of the alleged wrongdoing, as the Release Agreement expressly acknowledged that each party "may later discover Claims or facts that may be different from, or in addition to, those that he or any other Party now knows or believes to exist," but that the parties nevertheless intended to release such claims, and explicitly waived any rights or claims that might arise from such unknown facts.  (Release Agreement at ¶ 2.B).  In any event, here, the plaintiffs state that Mr. Kovacs knew of the alleged murder-for-hire plot before the

Release Agreement was executed (Complaint at ¶ 165, stating that Mr. Kovacs learned of the alleged plot on May 8, 2024, and Ducheine Declaration, Dkt. 2-2, at ¶¶ 43-44, testifying that Mr. Kovacs was informed of the plot around June 6, 2024), and Mr. Kovacs certainly would have known of the allegedly malicious defamation lawsuit before he signed a Release Agreement settling it.

Thus, Mr. Kovacs released Mr. Humble from any liability relating to the alleged conduct that he argues constitutes racketeering activity and forms the basis of the retaliation claims and state law claims against Mr. Humble. Mr. Kovacs' claims against Mr. Humble should be dismissed for this reason alone.

*Second*, the common law malicious prosecution claim asserted by Mr. Kovacs (the "Prosecution Claim," Count IX), and the common law intentional infliction of emotional distress claim asserted by both Mr. Kovacs and Mr. Ducheine (the "IIED Claim," Count X), are time-barred. Under New York law, both claims are governed by a one-year statute of limitations that accrues upon the dismissal of the underlying lawsuit or at the time of injury. The Prosecution Claim is premised upon Mr. Humble's commencement of a defamation lawsuit in May 2024 and his voluntary dismissal of that lawsuit in July 2024. Thus, the statute of limitations began to run on the Prosecution Claim in July 2024 and expired in July 2025 at the latest.

The made-up events giving rise to Mr. Ducheine's IIED Claim -- which is the only claim in the Complaint asserted by Mr. Ducheine individually against Mr. Humble -- occurred in December 2023 and January 2024 when Mr. Humble allegedly solicited Mr. Ducheine's assistance in a murder-for-hire plot. The statute of limitations would have run from January 2024 at the latest and expired in January 2025, almost a year before this lawsuit was filed. Similarly, the basis of Mr. Kovacs' IIED Claim against Mr. Humble is his knowledge of the fake murder-for-hire plot

3

and the distress it caused him.  The plaintiffs allege that Mr. Kovacs learned of the plot in May 2024 -- or June 2024 or July 2024, depending on which version of the story they tell -- which means that the statute of limitations would have expired between May 2025 and July 2025 at the latest.  Because this lawsuit was not filed until December 2025, the Prosecution and IIED Claims are time-barred.

*Third*, even if Mr. Kovacs had not released his claims against Mr. Humble (he did), the Complaint fails to sufficiently plead the required elements of those claims.  For example, the RICO claim (Count I) does not plead a cognizable pattern of racketeering activity or an actual enterprise.  The federal whistleblower retaliation claim (Count III) fails because Mr. Humble was not an employee or decisionmaker of the relevant company at the time of the alleged whistleblowing and retaliation.  The unjust enrichment claim (Count VIII) does not allege how Mr. Humble was unjustly enriched or how he benefited at Mr. Kovacs' expense.  The Prosecution Claim fails because the underlying lawsuit was voluntarily dismissed pursuant to a settlement, and there was no special injury to Mr. Kovacs.  And the IIED Claim contains nothing more than bare and conclusory assertions of emotional trauma.

For these reasons, and despite plaintiffs' attempt to smear and malign Mr. Humble with absurd lies and sensational allegations, the Complaint fails to state any claim upon which relief can be granted against Mr. Humble.  Accordingly, this motion should be granted, and the Complaint should be dismissed.

## **BACKGROUND**

A party moving to dismiss would typically recite a summary of the background based on the allegations set forth in the complaint.  But incredibly, here, there is almost nothing in the 118-page Complaint that is even remotely true.  Although a full summary of the background is not

necessary to determine the legal issues presented by this motion, a brief summary of the relevant background follows, as set forth in Mr. Humble's accompanying declaration and certain exhibits to the Complaint.

Mr. Humble is the founder of Humble Advisory Group LLC, which offers consultancy services to early-stage (pre-IPO) ventures, such as firms boasting proprietary technology to those trading global commodities, banking instruments, and assets. (Humble Decl. ¶ 3). Over a span of 20 years, Mr. Humble has led consultancy initiatives across various sectors and industries. (*Id.* ¶ 4; Complaint Ex. 39, ¶ 8). Outside of his professional work, Mr. Humble has dedicated a significant part of his career to philanthropy, serving on the board of the Precious Dreams Foundation, and forming Humble Philanthropy to effect positive change in foster care, housing projects, and Christian communities globally. (Humble Decl. ¶ 6; Complaint Ex. 39, ¶ 10).

It was in connection with Mr. Humble's consultancy work when he met Mr. Kovacs at a networking event approximately ten years ago. (Humble Decl. ¶ 7). The two began working together on different projects and then eventually became co-workers at AudioEye, Inc. ("AudioEye"). (*Id.* ¶¶ 8-9). Ultimately, the two had a falling out, and Mr. Humble was subsequently laid off from AudioEye in or around 2020. (*Id.* ¶ 10).

In early-2024, Mr. Humble learned that Mr. Kovacs had made defamatory statements about Mr. Humble to a former investor in one of Mr. Kovacs' other projects, and to certain of Mr. Humble's friends and colleagues. (*Id.* ¶ 20; Complaint Ex. 39, ¶¶ 22, 24). As a result, Mr. Humble commenced a defamation lawsuit against Mr. Kovacs in the Southern District of New York on May 2, 2024. (Humble Decl. ¶ 23; Complaint ¶ 145, Ex. 39).

Shortly after Mr. Humble commenced that lawsuit, Mr. Kovacs reached out to him to discuss settlement. (Humble Decl. ¶ 24). The parties agreed to settle, and they subsequently

entered into the Release Agreement, with an Effective Date of June 29, 2024. (*Id.* ¶ 25; *see also* Ex. A to Humble Decl.). The parties then entered into a stipulation voluntarily dismissing the lawsuit on July 3, 2024. (*Id.* ¶ 26; *see also* Ex. B to Humble Decl.). As part of their settlement, and as reflected in the Release Agreement, Mr. Kovacs released Mr. Humble "from any and all liability for any and all Claims from the beginning of time until the Effective Date of this Settlement Agreement [June 29, 2024] relating to or arising in any way out of the allegations asserted, or which could have been asserted, by Kovacs (*whether known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or not asserted*) in the Lawsuit." (Release Agreement, ¶ 2.D) (emphasis added).

Several months later, in December 2024, Mr. Humble was speaking on the phone with a mutual acquaintance, plaintiff Julian Ducheine, when Mr. Ducheine disclosed that Mr. Kovacs was continuing to smear Mr. Humble, and that Mr. Kovacs was trying to enlist Mr. Ducheine's help in fabricating a story about Mr. Humble working with defendant Dr. Carr Bettis to commit insider trading at AudioEye. (Humble Decl. ¶ 28). Mr. Ducheine also revealed that Mr. Kovacs -- who was engaged in litigation with Dr. Bettis at the time -- attempted to bribe him with up to "20% of all the winnings" that Mr. Kovacs would earn from a potential countersuit against Dr. Bettis in exchange for Mr. Ducheine's assistance. (*Id.* ¶ 29). Mr. Humble was in Texas during their call, and once he heard what Mr. Ducheine was saying about Mr. Kovacs' smears and plans to fabricate a fake insider trading story, he began recording the conversation and asked Mr. Ducheine to repeat himself. (*Id.* ¶ 31).

Concerned by what he heard, including Mr. Kovacs' intent to make up a story about Dr. Bettis engaging in insider trading, Mr. Humble provided the recording to Dr. Bettis. (*Id.* ¶ 32). Mr. Humble understands that Dr. Bettis may have then provided the recording to AudioEye and

its attorneys, and that the recording was disclosed during discovery in one of the lawsuits between them and Mr. Kovacs. (*Id.* ¶ 33).

Within months of the recording being disclosed, Mr. Kovacs and Mr. Ducheine commenced this action against Mr. Humble and others on December 12, 2025. (*Id.* ¶ 34). Mr. Humble was shocked to read the allegations asserted against him in the Complaint, which alleged that Mr. Humble attempted to carry out a murder-for-hire plot against Mr. Kovacs in December 2023 and January 2024 at Dr. Bettis' direction, and that his defamation lawsuit against Mr. Kovacs in May 2024 was nothing more than retaliatory lawfare commenced at the direction of Dr. Bettis or Mr. Moradi. (*Id.* ¶ 35).

The allegations in the Complaint are lies. Mr. Humble never solicited Mr. Ducheine or anyone else to carry out a murder-for-hire plot against Mr. Kovacs. (*Id.* ¶ 36). Nor was he ever asked to do so by Dr. Bettis or anyone else. (*Id.*). The very notion of the plot is preposterous, and any accusation to the contrary is a lie. (*Id.*). As for the lawfare claim, Mr. Humble commenced his defamation lawsuit against Mr. Kovacs because he was defamed by Mr. Kovacs, not because anyone directed him to do so. (*Id.* ¶ 38). If there was some ulterior motive for the lawsuit, then it would not have made sense for Mr. Humble to settle it so quickly. (*Id.*).

Mr. Humble believes that these lies were made up about him, and that he was sued by plaintiffs, only because he recorded a phone call with Mr. Ducheine that incriminated Mr. Kovacs in wrongdoing, and turned that recording over to Mr. Kovacs' adversaries. (*Id.* ¶ 39). It is noteworthy that during the recorded call with Mr. Ducheine, there was no hint of any fearfulness or distress on Mr. Ducheine's part. (*Id.* ¶ 41). Moreover, as reflected in text messages between Mr. Humble and Mr. Ducheine that were attached to the Complaint as Exhibit 51, Mr. Ducheine sent New Years' wishes and a picture of his family to Mr. Humble in January 2025, asked Mr.

7

Humble for a private banking connection weeks later, and then even asked Mr. Humble to make a donation to his child's "Toddler of the Year" campaign in July 2025, which he did.  (Complaint Ex. 51, Dkt. 2-4; Humble Decl. ¶ 42).  These do not appear to be the actions of somebody who was approached to participate in a murder plot and was then fearful of, and emotionally distressed by, Mr. Humble.  (Humble Decl. ¶ 42).

Finally, shortly after the Complaint was filed, plaintiffs moved for a temporary restraining order and a preliminary injunction against certain co-defendants.  (Motion, Dkt. 2).  At a hearing held on December 17, 2025, this Court denied the branch of plaintiffs' motion seeking a temporary restraining order.  (Order, Dkt. 4).  In so ruling, the Court found that plaintiffs could not establish a likelihood of success, observing that plaintiffs presented "a very long and complicated story," and that there were "plausibility issues with a lot of this story."  (Hearing Tr., attached as Exhibit 1 to the accompanying Declaration of Grant A. Shehigian, at 8:15, 17:17–18).

Mr. Humble agrees that there are "plausibility issues" with plaintiffs' sensational story -- because the "story" is not plausible at all -- and he now moves to dismiss the Complaint in its entirety as against him under Rule 12(b)(6).

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a complaint's well-pleaded factual allegations are accepted as true for this purpose, its legal conclusions need not be.  *Rolon v. Henneman*, 517 F.3d 140, 148-49 (2d Cir. 2008).  Likewise, "[a]llegations in the complaint that are contradicted by . . . documentary

evidence are not entitled to a presumption of truthfulness." *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (quotation and citation omitted).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "The court may consider the full text of documents that are cited in, incorporated by reference in, or 'integral' to the complaint." *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 432 (S.D.N.Y. 2001) (citing *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

The Court may also take judicial notice of court filings and other matters of public record, including publicly available filings in other litigations in this and other courts. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

Applying these standards, this Court should dismiss the Complaint in its entirety as against Mr. Humble.

## POINT I

### KOVACS' CLAIMS AGAINST HUMBLE ARE BARRED BY THE RELEASE HE PROVIDED IN THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE

Mr. Kovacs' claims against Mr. Humble are premised on alleged acts that purportedly took place between December 2023 and May 2024, and are barred by the general release that Mr. Kovacs granted to Mr. Humble in the Release Agreement that was entered into in June 2024.

9

**A.   The Release Agreement Can Be Considered On A Motion To Dismiss**

Although courts do not ordinarily consider materials outside of the pleadings on a motion to dismiss, courts may take judicial notice of records of prior litigation, including settlement agreements and releases, particularly "if the Settlement Agreement would dispose of the matter at hand." *Johnson v. City of New York*, 23 Civ. 3018 (DEH), 2024 WL 3520445, at *1 (S.D.N.Y. July 22, 2024) (quotation and citations omitted).  Even if a settlement agreement was not subject to judicial notice, courts may still consider such agreements at this stage because the application of a general release "presents an unfettered question of law that can be resolved on a motion to dismiss and should not be deferred." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023) (citation omitted).

This Court also may consider the Release Agreement at this stage because it is "integral" to the Complaint.  *Chambers*, 282 F.3d at 153.  One of the key allegations asserted against Mr. Humble in the Complaint is that he "initiated the Jason Humble Lawsuit against Kovacs in the Southern District of New York on May 2, 2024, which he voluntarily dismissed with prejudice on July 3, 2024" (Complaint ¶¶ 86, 145), and that the lawsuit was intended to exert "litigation pressure" on Mr. Kovacs (*id.* ¶ 119), and that it constituted "retaliatory and obstructive conduct" (*id.*, Schedule C, Part IX).  Plaintiffs also described the lawsuit as "smear-and-retreat litigation." (*Id.*, Schedule J, p.108).  However, Mr. Humble's lawsuit would not have been voluntarily dismissed but for the parties' settlement and entry into the Release Agreement.  Mr. Kovacs' failure to acknowledge that fact or refer to the Release Agreement does not mean that the Court cannot consider it.  To the contrary, "[g]iven Plaintiff's knowledge of the Agreement and his deliberate decision to omit any reference to it from his Complaint, the Court [should] deem[] the Agreement incorporated into the Complaint by reference, particularly since it is 'integral to

10

[plaintiff's] ability to pursue' his cause of action." *Pesserillo v. National Grid*, 78 F. Supp. 3d 551, 554-55 (E.D.N.Y. 2015) (citation omitted).

Thus, this Court may consider the Release Agreement on this motion because the Court can take judicial notice of it, the agreement presents a question of law, and it is integral to the Complaint.

**B.  The Alleged Conduct Giving Rise To Kovacs' Claims
Occurred Prior To Execution Of The Release Agreement**

The "Effective Date" of the Release Agreement is defined as "the date of the last signature affixed hereto."  (Humble Decl. Ex. A at ¶ 1).  Mr. Kovacs signed the Release Agreement on June 28, 2024, and Mr. Humble signed the Release Agreement on June 29, 2024.  (*Id.* at p.5).  Therefore, the Effective Date of the Release Agreement is June 29, 2024.

Critically, each of the acts that plaintiffs falsely allege Mr. Humble engaged in occurred prior to the Effective Date of June 29, 2024.  The most significant act is Mr. Humble's alleged attempt to carry out a murder-for-hire plot against Mr. Kovacs in December 2023 and January 2024.  (*See, e.g.*, Complaint ¶¶ 43-47, 149, 163-165, 207).  Although Mr. Kovacs' knowledge of the alleged plot is irrelevant, plaintiffs state that Mr. Kovacs learned of the fake plot on or about May 8, 2024 (Complaint ¶ 165) or June 6, 2024 (Ducheine Decl., Dkt. 2-2, ¶¶ 43-44).  Either way, the plaintiffs assert that these events occurred prior to the execution of the Release Agreement (although they did not actually occur at all).

The other significant act complained about is Mr. Humble's commencement of a defamation lawsuit against Mr. Kovacs in May 2024.  (*See, e.g.*, Complaint ¶¶ 36, 86, 119, 145). This lawsuit is defined in the Complaint as the "Jason Humble Lawsuit" (*id.*, Schedule A, p.72), and it is an integral component of plaintiffs' RICO, retaliation and state law claims against Mr.

Humble.  The commencement of the lawsuit in early-May 2024 clearly occurred prior to the execution of the Release Agreement in late-June 2024.

Thus, there can be no question that the alleged conduct giving rise to Mr. Kovacs' claims against Mr. Humble occurred prior to the Effective Date of the Release Agreement.[1]  Therefore, as set forth in Point I.D, below, any claims that are based on these alleged acts are encompassed and barred by the language in the Release Agreement.

### C.  The Release Agreement Is Broad, Clear And Unambiguous

The Second Circuit and the New York Court of Appeals have both emphasized that "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 142 (2d Cir. 2011); *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011).  A release that is clear, unambiguous, and knowingly entered into will be enforced as written (*Centro Empresarial Cempresa*, 17 N.Y.3d at 276), and when "general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) (quotation and citation omitted).

Courts also will enforce a general release even as to claims that were unknown at the time of execution.  *See Centro Empresarial Cempresa*, 17 N.Y.3d at 276 (holding that "a release may encompass unknown claims"); *Tromp*, 465 F. App'x at 52 (holding that a release is "operative" as

---

[1] The only other act concerning Mr. Humble that plaintiffs complain about with any specificity is his recording of a telephone call between him and Mr. Ducheine in December 2024, and then providing that recording to AudioEye or its counsel because of the worrisome and incriminating statements that Mr. Ducheine made about Mr. Kovacs, who was engaged in litigation with AudioEye at the time.  (*See* Complaint ¶¶ 166-67).  However, there is nothing improper about recording a telephone conversation in a one-party state such as Texas (where Mr. Humble was) and then providing that recording to counsel.  The statements in the Complaint about the recording appear to be nothing more than plaintiffs' gripes, and they do not form the basis of any cognizable claims against Mr. Humble.

12

to all "issues which might then have been adjudicated as a result of pre-existent controversies," and not just issues that had "ripened into litigation").

Here, as part of the settlement of Mr. Humble's defamation lawsuit, Mr. Kovacs knowingly entered into a clear and unambiguous, broadly worded general release. The breadth of the release is demonstrated in two ways. First, in Paragraph 2.D of the Release Agreement, Mr. Kovacs released Mr. Humble pursuant to the following language:

> In consideration of the Mutual Releases and other terms as set forth herein, Kovacs, on behalf of himself and his successors, heirs, relatives, assigns, executors, and administrators, hereby irrevocably and unconditionally, *knowingly and voluntarily*, forever *releases and discharges Humble* and his successors, heirs, relatives, assigns, executors, and administrators *from any and all liability for any and all Claims from the beginning of time until the Effective Date of this Settlement Agreement* relating to or arising in any way out of the allegations asserted, or which could have been asserted, by Kovacs (*whether known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or not asserted*) in the Lawsuit.

(Humble Decl. Ex. A at ¶ 2.D (emphasis added)).

Second, in Paragraph 2.B of the Release Agreement, the parties agreed as follows:

> Each Party understands that *he may later discover Claims or facts that may be different from, or in addition to, those that he or any other Party now knows or believes to exist* regarding the subject matter of the release contained in this Section, and *which, if known at the time of signing this Settlement Agreement, may have materially affected this Settlement Agreement and such Party's decision to enter into it and grant the release contained in herein.* Nevertheless, *the Parties intend to fully, finally, and forever settle and release all claims that now exist, may exist, or previously existed*, as set out in the release contained herein, *whether known or unknown, foreseen or unforeseen, or suspected or unsuspected*, and the release given herein is and will remain in effect as a complete release, notwithstanding the discovery or existence of such additional or different facts. The Parties hereby waive any right or claim that might arise as a result of such different or additional claims or facts.

13

(Humble Decl. Ex. A at ¶ 2.B (emphasis added)).  Although the language in Paragraph 2.D of the Release Agreement was sufficiently broad by itself, the parties added this additional provision to make abundantly clear that their intent was to release any and all claims that could have existed at that time, regardless of whether they knew about the claims or the underlying facts giving rise to such claims.

Mr. Kovacs is bound by these terms.  He cannot dispute the authenticity or validity of the Release Agreement.   The agreement also makes clear that Mr. Kovacs "knowingly and voluntarily" entered into it.   (Humble Decl. Ex. A at ¶ 2.D).   Moreover, Mr. Kovacs was represented by counsel in connection with the settlement and dismissal of Mr. Humble's defamation lawsuit.  (Humble Decl. Ex B, Stipulation of Dismissal).   In fact, the Release Agreement's metadata shows that it was Mr. Kovacs' counsel at Greenspoon Marder LLP who drafted the Release Agreement.  (*See* "Document Properties" of Ex. A to Humble Decl.).  Courts have held that when a plaintiff is represented by counsel at the time he signs a general release, it indicates that the plaintiff "understood the scope of the Release and entered into it voluntarily and knowingly." *Pizarro v. U.S. Post Office*, 17-CV-4409 (ALC), 2020 WL 906191, at *2 (S.D.N.Y. Feb. 25, 2020) (citation omitted).

### D.  The Release Agreement Bars Kovacs' Claims Against Humble

Based on the clear and unambiguous language in the Release Agreement -- which Mr. Kovacs is bound by -- any claims arising from any acts that Mr. Humble allegedly engaged in prior to the Effective Date were released.  As demonstrated in Point I.B, above, the alleged acts for which Mr. Humble is purportedly liable took place before the Effective Date, and each of the claims asserted by Mr. Kovacs against Mr. Humble are based on those alleged acts.

The first claim asserted by Mr. Kovacs against Mr. Humble is the civil RICO claim (Count I). The Complaint and its "RICO Predicate Table" make clear that the underlying predicate acts and racketeering activity that Mr. Humble allegedly engaged in include the bogus murder plot and the defamation lawsuit. (*See, e.g.*, Complaint ¶¶ 85-86, 207; Schedule D, RICO Predicate Table, pp. 81, 83). However, it is well-settled that RICO claims must be dismissed when the underlying predicate acts and alleged racketeering activity have been released pursuant to a general release. *See, e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 364-65 (S.D.N.Y. 2022) (dismissing RICO claims on motion to dismiss where the predicate acts were encompassed by releases); *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (affirming dismissal of RICO claims on motion to dismiss because claims "settled in an earlier action . . . could not constitute predicate acts under RICO" and plaintiffs were "barred from using these claims as part of a pattern of racketeering activity"); *Equity Residential v. Kendall Risk Management, Inc.*, No. 04 C 3812, 2005 WL 1026686, at *5 n.5 (N.D. Ill. Apr. 12, 2005) (dismissing RICO claims on motion to dismiss, and observing that "plaintiffs are precluded from using the Released Claims to plead their RICO claims") (citing cases).

The second claim asserted by Mr. Kovacs against Mr. Humble is a statutory whistleblower retaliation claim (Count III). Like the RICO claim, Mr. Humble's alleged retaliatory conduct consists of the made-up murder plot and the defamation lawsuit. (*See, e.g.*, Complaint ¶¶ 145, 148-149). And like the RICO claim, statutory retaliation claims cannot survive where the alleged retaliatory conduct occurred prior to the execution of a release. *See, e.g.*, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) (affirming dismissal where release barred plaintiff's retaliation claim); *Warden v. E.R. Squibb & Sons, Inc.*, 840 F. Supp. 203, 209 (E.D.N.Y. 1993) (dismissing statutory retaliation claims based on whistleblowing activities that were released

15

and barred by settlement agreement); *see also U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1171 (10th Cir. 2009) (holding that general release barred False Claims Act retaliation claims).

The remaining claims asserted by Mr. Kovacs against Mr. Humble for unjust enrichment (Count VIII), common law malicious prosecution (Count IX), and intentional infliction of emotional distress (Count X) similarly fall within the scope of the release. The unjust enrichment claim is defectively thin (*see* Point III.C, *infra*), but it appears that Mr. Humble is included in this claim because the litigation expenses he incurred in connection with his defamation lawsuit were allegedly funded by certain co-defendants. (*See* Complaint ¶ 284). As against Mr. Humble, the Prosecution Claim is obviously based on that same defamation lawsuit, which was commenced against Mr. Kovacs in May 2024 (Complaint ¶¶ 291-93), and the IIED Claim is clearly based on Mr. Humble's alleged attempt to carry out a murder-for-hire plot against Mr. Kovacs in December 2023 and January 2024 (Complaint ¶¶ 302-04). Courts routinely dismiss these types of claims when the acts giving rise to them occurred prior to the execution of a general release. *See, e.g.*, *Eisen v. Norton*, 13–cv–6226 (KBF), 2015 WL 1055923, at *1 (S.D.N.Y. Mar. 11, 2015) (dismissing unjust enrichment claim, among others, when the "conduct that gave rise to the events underlying this lawsuit occurred" prior to release); *Wade v. Montas*, 19-CV-02687 (HG) (AYS), 2023 WL 5510599, at *1 (E.D.N.Y. Aug. 25, 2023) (holding that general release barred plaintiff's claims, including malicious prosecution claim); *Tammone v. Dorr-Oliver Inc.*, 84 F. Supp. 2d 291, 294 (D. Conn. 1999) (dismissing IIED claim that was within scope of release).

Accordingly, because each of his claims falls squarely within the scope of the Release Agreement, Mr. Kovacs' claims against Mr. Humble should be dismissed.

16

## POINT II

### PLAINTIFFS' CLAIMS FOR MALICIOUS PROSECUTION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE TIME-BARRED

The Prosecution Claim and the IIED Claim should be dismissed because they are time-barred under New York law.  Claims for malicious prosecution and intentional infliction of emotional distress are governed by New York's one-year statute of limitations.  *See* CPLR 215(3); *Baram v. Doe*, 23-cv-1758 (ER), 2024 WL 232319, at *9 (S.D.N.Y Jan. 22, 2024) (dismissing malicious prosecution and IIED claims because they were not commenced within New York's one-year statute of limitations).  Malicious prosecution claims generally accrue at the time of dismissal of the underlying lawsuit (*e.g., Baram*, 2024 WL 232319, at *9), and IIED claims generally accrue at the time of injury.  *E.g., Karupaiyan v. Experis IT*, 21 Civ. 4675 (LGS), 2022 WL 4280529, at *4 (S.D.N.Y. Sept. 15, 2022).  Where the untimeliness of a claim is apparent from the face of the complaint, dismissal under Rule 12(b)(6) is warranted.  *Baram*, 2024 WL 232319, at *8; *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

The Complaint alleges that Mr. Humble commenced his defamation lawsuit against Mr. Kovacs on May 2, 2024, and that he voluntarily dismissed the lawsuit on July 3, 2024.  (Complaint ¶¶ 86, 145).  Therefore, a malicious prosecution claim based on the filing of that lawsuit would have accrued upon the lawsuit's dismissal on July 3, 2024, and the one-year statute of limitations would have expired by July 3, 2025.  *See Baram*, 2024 WL 232319, at *9 (malicious prosecution claim expired one year after plaintiff's dismissal).  Plaintiffs did not file this action until December 12, 2025, more than five months after the statute of limitations expired.

The IIED Claim is asserted against Mr. Humble by both Mr. Ducheine and Mr. Kovacs, and it is premised upon the story they made up about Mr. Humble allegedly soliciting Mr.

17

Ducheine's assistance in a murder-for-hire plot. The Complaint alleges that Mr. Humble's solicitation of Mr. Ducheine occurred in December 2023 and January 2024, and it was at that time when Mr. Ducheine experienced "great emotional and psychological distress." (*See, e.g.*, Complaint ¶¶ 43-47; *see also* Ducheine Decl., Dkt. 2-2, ¶¶ 19-23, 26-28). Therefore, Mr. Ducheine's IIED Claim accrued in December 2023, or January 2024 at the latest, and the one-year statute of limitations would have expired by January 2025 at the latest -- almost a full year before this action was filed.

As for Mr. Kovacs, the Complaint alleges that he learned of the fake murder plot on May 8, 2025 (Complaint ¶ 165), and that "[u]pon learning of the murder plot, [he] fled his residence and lived for extended periods at undisclosed locations, taking security precautions for himself and his family" (*id.* ¶ 52). However, because the plaintiffs cannot even get their own made-up story straight, Mr. Ducheine testified in his declaration that he did not disclose the murder plot to Mr. Kovacs until about June 6, 2024, and that Mr. Kovacs became "emotionally distraught" at that time. (Ducheine Decl., Dkt. 2-2, ¶¶ 43-45). In his own declaration, Mr. Kovacs testified that he did not learn of the alleged murder plot until July 2024 -- despite what is asserted in the Complaint and Ducheine Declaration -- and it was at that time when Mr. Kovacs became fearful. (Kovacs Decl., Dkt. 2-2, ¶¶ 161-162, 169). Accordingly, and regardless of which version of plaintiffs' story is being told, Mr. Kovacs' IIED Claim accrued between May 2024 and July 2024 at the latest, and the one-year statute of limitations would have expired by July 2025 at the latest, months before this frivolous action was commenced.

Plaintiffs have not alleged any basis for tolling either the Prosecution Claim or the IIED Claim, nor could any apply under the circumstances alleged. Therefore, because the untimeliness

18

of these claims is apparent from the Complaint itself (*Ghartey*, 869 F.2d at 162), dismissal is warranted under Rule 12(b)(6).

**POINT III**

**PLAINTIFFS FAIL TO PLEAD<br>THE ELEMENTS OF THEIR CLAIMS**

Even if Mr. Kovacs had not released his claims against Mr. Humble (he did), and even if the Prosecution Claim and IIED Claim were not time-barred (they are), the Complaint should be dismissed because it fails to sufficiently plead the required elements of the claims asserted against Mr. Humble.

### A. Civil RICO (Count I)

"To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (citation omitted). To survive a motion to dismiss a RICO claim premised on fraud, the plaintiffs' allegations must also satisfy the heightened pleading standards under Rule 9(b). *Id.* Here, aside from the fact that plaintiffs' allegations are all false, the RICO claim fails because plaintiffs cannot satisfy any of the required elements.[2]

First, plaintiffs fail to plead the "heart of any civil RICO claim," an enterprise. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) (Oetken, J.). To establish an enterprise, the Complaint must demonstrate that an association of individuals "share a common purpose to engage in a particular fraudulent course of conduct and work together to

---

[2] The RICO claim is brought by Mr. Kovacs individually, and all plaintiffs derivatively. It is not clear if the derivative claim is asserted against Mr. Humble, but if it is asserted against him, then Mr. Humble joins in the arguments set forth in the motion to dismiss by AudioEye and Mr. Moradi as to why the plaintiffs lack standing to bring such a claim. (Dkt. 23).

19

achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quotation and citation omitted). Allegations that "merely describe separate actions involving various pairs of defendants" are insufficient. *Wade Park Land Holdings*, 589 F. Supp. 3d at 375.

The Complaint does not establish that Mr. Humble shared a "common purpose" with his co-defendants to "engage in a particular fraudulent course of conduct," or how they "work[ed] together to achieve such purposes." *Cruz*, 720 F.3d at 120. It alleges that he attempted to carry out the bogus murder-for-hire plot "under the direction of Defendant Carr Bettis" (Complaint ¶ 43), and that he filed his defamation lawsuit "at the direction of Bettis and/or Moradi" (*id.* ¶ 86). But there are no allegations sufficiently demonstrating Mr. Humble's relationship with defendants Bettis and Moradi or that they formed an organization together, or why Mr. Humble would participate in a fraudulent scheme with them and for what purpose, or how those alleged acts would help achieve that purpose. Thus, plaintiffs cannot satisfy the "enterprise" element of their RICO claim. *See Wade Park Land Holdings*, 589 F. Supp. 3d at 375 (holding that there is no enterprise where plaintiffs fail to "plead relationships" among the defendants or show how they "formed an ongoing organization"); *BWP Media USA Inc.*, 69 F. Supp. 3d at 360 (Oetken, J.) (holding that there is no enterprise where plaintiffs fail to provide information regarding "Defendants' respective roles" or "the group's organization or hierarchy").

Second, plaintiffs fail to adequately plead a pattern of racketeering activity. To satisfy this element, plaintiffs must show "two or more predicate acts of racketeering," that the "predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *BWP Media USA Inc.*, 69 F. Supp. 3d at 360-61 (quotations and citations omitted). Here, plaintiffs allege several predicate acts, but those acts do not support their RICO claim. As set forth in Point I, above, the claims of "Retaliatory Lawfare," "Witness Retaliation," "Murder-for-Hire" and

20

"Witness Tampering" (Complaint, Schedule D, pp. 81-83), cannot serve as predicate acts because they were released pursuant to the Release Agreement. Nor can securities fraud serve as a predicate act. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 280 (2d Cir. 2011) (holding that civil RICO claims may not be "premised upon predicate acts of securities fraud, including mail or wire fraud"). Plaintiffs also fail to plead Mr. Humble's alleged connection to "Wire Fraud – Formulus Black Capital Raising" (Complaint, Schedule D, p. 81) -- whatever that means -- with the particularity required by Rule 9(b).

Third, plaintiffs fail to satisfy the continuity requirement of a RICO claim. "The continuity necessary to prove a pattern can be either closed-ended continuity or open-ended continuity." *Wade Park Land Holdings*, 589 F. Supp. 3d at 382 (citation omitted). Neither type of continuity is satisfied here. The primary allegations involving Mr. Humble concern the fictional murder-for-hire plot that was allegedly attempted in December 2023 and January 2024, as well as the defamation lawsuit that he filed in May 2024 and dismissed in July 2024 following the parties' settlement. These isolated acts, which occurred between a year-and-a-half and two years ago, clearly cannot demonstrate open-ended continuity. Nor can they constitute closed-ended continuity, which is "satisfied by evidence of 'a series of related predicates extending over a substantial period of time.'" *Id.* (citation omitted). According to the Complaint, Mr. Humble's alleged acts occurred over a seven-month period. Such a short period does not constitute a "substantial period of time." *See id.* (observing that the "Second Circuit 'has never held a period of less than two years to constitute a substantial period of time'") (citation omitted). Plaintiffs therefore "fail to meet the continuity requirement to plead a RICO violation." *Id.* at 384.

Finally, plaintiffs do not adequately allege causation and damages. There are no allegations demonstrating how any purported predicate act allegedly taken by Mr. Humble directly or

21

proximately caused a concrete financial loss. Allegations of loss of employment, reputational harm, emotional distress, or speculative damages are insufficient to establish RICO standing. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (affirming dismissal of RICO claim where injury was not proximately caused by alleged predicate acts).

### B. Whistleblower Retaliation (Count III)

Mr. Kovacs is the only plaintiff asserting a federal statutory whistleblower retaliation claim, and the claim appears to be asserted against all defendants. (*See* Complaint p. 49). This claim fails against Mr. Humble because Mr. Humble was not Mr. Kovacs' employer, or even employed at the same company, at the time of the alleged whistleblowing and retaliation.

To establish a federal whistleblower retaliation claim under the Sarbanes-Oxley Act, a plaintiff must plead that "(1) he . . . engaged in a protected activity; (2) the employer knew that he . . . engaged in the protected activity; (3) he . . . suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Callahan v. HSBC Securities (USA) Inc.*, 723 F. Supp. 3d 315, 323 (S.D.N.Y. 2024) (Oetken, J.) (ellipses in original) (quotation and citation omitted). The Dodd-Frank Act includes similar language to Sarbanes-Oxley, prohibiting retaliation by an "employer" and covering individuals who qualify as whistleblowers  15 U.S.C.A. § 78u-6(h)(1)(A). Retaliation claims under ERISA similarly focus on "prohibited employer conduct" and "require an employer to take an adverse employment action." *Guzman v. Building Service 32BJ Pension Fund*, 22-cv-01916 (LJL), 2023 WL 2526093, at *17 (S.D.N.Y. Mar. 15, 2023) (citations omitted).

The Complaint does not assert any allegations suggesting that Mr. Humble was Mr. Kovacs' employer, or that Mr. Humble had anything to do with Mr. Kovacs' termination from AudioEye. *See Wiest v. Lynch*, 15 F. Supp. 3d 543, 566-67 (E.D.Pa. 2014) (granting motion to

22

dismiss Sarbanes-Oxley retaliation claim against certain individual defendants who were not alleged to be a "decisionmaker" or otherwise involved in plaintiff's termination).  Nor could it. Mr. Humble has never been Mr. Kovacs' "employer," and he never held any type of supervisory responsibility over Mr. Kovacs or decision-making authority over personnel matters at AudioEye. (*See* Humble Decl. ¶ 11).  In fact, Mr. Humble was himself let go from AudioEye, and was no longer employed at AudioEye during the period of Mr. Kovacs' alleged whistleblowing.  (*Id.* ¶ 10).  Because Mr. Kovacs cannot credibly dispute these facts, the whistleblower retaliation claim should be dismissed as against Mr. Humble.

### C.  Unjust Enrichment (Count VIII)

"To state a claim for unjust enrichment under New York law, a plaintiff must allege that '(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'"  *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 317-18 (S.D.N.Y. 2021) (citation omitted).  The claim is "not available where it simply duplicates, or replaces, a conventional contract or tort claim," and it cannot be used as "a catchall cause of action to be used when others fail."  *Id.* at 318 (quotations and citations omitted).[3]

The Complaint does not even make the most basic showing required to support a claim for unjust enrichment.  Plaintiffs fail to allege any facts demonstrating that Mr. Humble received a specific, identifiable benefit.  They do not allege the receipt of money, property, services, or any other concrete enrichment.  Nor do Plaintiffs allege how any purported enrichment came at their expense.

---

[3] As with the RICO claim, the unjust enrichment claim is brought by Mr. Kovacs individually, and all plaintiffs derivatively.  To the extent the derivative claim is asserted against Mr. Humble, he joins in the arguments set forth in the motion to dismiss by AudioEye and Mr. Moradi as to why the plaintiffs lack standing to bring such a claim (Dkt. 23).

Moreover, an unjust enrichment claim should be dismissed as duplicative if it relies on the "same factual allegations and theory of liability" as plaintiffs' other claims, and "is a mere repackaging of [their] other claims." *Schleyer v. Starbucks Corp.*, 22-CV-10932 (JPO), 2023 WL 5935695, at *6 (S.D.N.Y. Sept. 12, 2023) (Oetken, J.) (quotation and citation omitted). Here, plaintiffs' bare-bones recital of the elements refers to the same generalized benefits and alleged wrongful conduct relied on to support their other claims. (*See* Complaint ¶¶ 283-89). Accordingly, plaintiffs' unjust enrichment claim should be dismissed as duplicative of their other claims. *See Zottola*, 564 F. Supp. 3d at 318 (dismissing unjust enrichment claim as duplicative because it "relies on the same theory of liability" as plaintiff's other claims)*; Schleyer*, 2023 WL 5935695, at *6 (same).

### D. Malicious Prosecution and Abuse of Process (Count IX)

A claim for malicious prosecution in New York has four elements: "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). Where, as here, the claim is "based upon a civil action instituted against plaintiff," there must also be "a showing of some interference with plaintiff's person or property, by the use of such provisional remedies as arrest, attachment, replevin or injunction, or other burden imposed on plaintiff beyond the ordinary burden of defending a law suit." *Id.* (internal citations omitted).

Mr. Kovacs is the only plaintiff asserting the Prosecution Claim against Mr. Humble, and he has not come close to satisfying any of these elements beyond the fact that Mr. Humble commenced a defamation lawsuit against him. First, Mr. Kovacs cannot show that Mr. Humble acted with malice or that he lacked probable cause to believe his lawsuit could succeed. Mr.

24

Kovacs alleges that Mr. Humble commenced the lawsuit at the direction of certain co-defendants. (*See* Complaint ¶¶ 86, 145). Although that assertion is not true, even if it was, it would not establish malice or the lack of probable cause for bringing the lawsuit. A simple review of Mr. Humble's complaint (attached as Exhibit 39 to plaintiffs' Complaint) demonstrates that Mr. Kovacs had made defamatory statements about Mr. Humble to others, and that those statements had damaged Mr. Humble's reputation and business. (*See* Ex. 39, Dkt. 2-3). The defamatory statements were about Mr. Humble, and they injured Mr. Humble, so Mr. Humble had both probable cause and the right to commence a civil lawsuit against Mr. Kovacs to seek redress. There was nothing malicious about that.

Second, Mr. Humble's lawsuit against Mr. Kovacs did not "end[] in failure or . . . terminate[] in favor of the plaintiff." *O'Brien*, 101 F.3d at 1484. Rather, it was voluntarily dismissed pursuant to a fully negotiated settlement agreement between the parties. (*See* Release Agreement, Ex. A to Humble Decl.; Stipulation of Dismissal, Ex. B to Humble Decl.). It is well-settled that the "favorable termination" element of a malicious prosecution claim cannot be satisfied "where the proceeding has been terminated without regard to its merits or propriety *by agreement or settlement of the parties.*" *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (quoting *Halberstadt v. New York Life Ins. Co.*, 194 N.Y. 1 (1909)) (emphasis in original). Thus, the fact that Mr. Humble's defamation lawsuit was voluntarily dismissed by agreement, without any determination on the merits, is fatal to the Prosecution Claim. *See Rothstein*, 373 F.3d at 287 (affirming dismissal of malicious prosecution claim where termination resulted from "bargained-for dismissal"); *O'Brien*, 101 F.3d at 1487-88 (affirming dismissal of malicious prosecution claim where termination resulted from voluntary dismissal without any determination on the merits).

25

Third, Mr. Kovacs does not allege that Mr. Humble's defamation lawsuit interfered with his "person or property," or imposed any burden on him "beyond the ordinary burden of defending a law suit." *O'Brien*, 101 F.3d at 1484. Nor could he, as no provisional remedies, such as an injunction, were sought or obtained in that lawsuit, and no extraordinary burden was imposed on him, as the lawsuit was settled within months of its filing. Because "interference from a provisional remedy is a prerequisite to a malicious prosecution claim where the action upon which that claim is founded is a civil action," and no such interference or provisional remedy is alleged here, the Prosecution Claim should be dismissed. *Id.* at 1485-86 (affirming dismissal of malicious prosecution claim on ground that there was no interference or "extraordinary burden").[4]

### E. Intentional Infliction Of Emotional Distress (Count X)

To state a claim for intentional infliction of emotional distress under New York law, the Complaint must allege "'(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201 (S.D.N.Y. 2016) (citation omitted). When analyzing this claim on a motion to dismiss, "'[t]he bar is extremely high, and this highly disfavored cause of action is almost never successful.' Indeed, such claims are 'routinely dismissed on pre-answer motion.'" *Id.* at 201-02 (citation omitted).

---

[4] Although Count IX of the Complaint is titled "Malicious Prosecution and Abuse of Process," the Complaint does not make any distinction between the claims of "malicious prosecution" and "abuse of process," and the Complaint relies on the same factual allegations for both. To the extent the abuse of process claim is analyzed differently, it is "well-settled under New York case law that the filing and serving of only a summons and complaint cannot form the grounds for an abuse of process." *Cuillo v. Shupnick*, 815 F. Supp. 133, 136 (S.D.N.Y. 1993). An abuse of process claim is also governed by the same one-year statute of limitations period as a malicious prosecution claim (*see id.*), which warrants dismissal for the reasons set forth in Point II, *supra*. *See Baram*, 2024 WL 232319, at *9 (dismissing abuse of process claim along with malicious prosecution claim, both of which accrued upon dismissal, as untimely under New York's one-year statute of limitations).

Mr. Kovacs and Mr. Ducheine are the only plaintiffs asserting the IIED Claim against Mr. Humble.  Although the alleged murder plot giving rise to their claim is entirely made up, neither plaintiff alleges anything more than bare and conclusory assertions of emotional trauma and fearfulness.  (*See* Complaint ¶ 47, and Ducheine Decl., Dkt. 2-2, ¶¶ 28, 46, as to Mr. Ducheine; Complaint ¶ 52, and Kovacs Decl., Dkt. 2-2, ¶¶ 169, 366, as to Mr. Kovacs).  Because such conclusory allegations are insufficient to survive a motion to dismiss, the IIED Claim should be dismissed.  *See Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 674 (S.D.N.Y. 2025) (dismissing emotional distress claim on motion to dismiss because allegations were "entirely conclusory"); *Stephens v. Shuttle Associates, L.L.C.*, 547 F. Supp. 2d 269, 274 (S.D.N.Y. 2008) (dismissing IIED claim on motion to dismiss because "conclusory allegation" was "insufficient as a matter of law").

## <u>CONCLUSION</u>

For all the foregoing reasons, the Complaint should be dismissed in its entirety as against Mr. Humble under Rule 12(b)(6), with prejudice and without leave to amend.

Dated: New York, New York
February 27, 2026

DORF NELSON & ZAUDERER LLP

By:____*/s/ Grant A. Shehigian*_____
Grant A. Shehigian
90 Park Avenue
New York, New York  10016
Tel:  (212) 485-0005; Fax:  (212) 922-9072
gshehigian@dorflaw.com

*Attorneys for Defendant Jason Humble*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Grant A. Shehigian, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 4(c) of Hon. J. Paul Oetken's Individual Rules and Practices in Civil Cases (the "Individual Rules"), that this Memorandum of Law was prepared using Microsoft Word and the document contains 8,745 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 4(c) of Judge Oetken's Individual Rules.

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 27th day of February, 2026, in New York, New York.

 */s/ Grant A. Shehigian*
GRANT A. SHEHIGIAN

28