**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID KOVACS, RUSSELL ALESI, JULIAN DUCHEINE and DEMIAN LICHTENSTEIN, <br><br><br> Plaintiffs, <br><br> v. <br><br><br> DAVID MORADI, DR. CARR BETTIS, JASON HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR. KATHERINE FLEMING, TONY COELHO, KELLY GEORGEVICH, JAMES SPOLAR, MALONEBAILEY LLC, AUDIOEYE, INC. and JOHN DOE 1-50, <br><br><br> Defendants, <br><br> and <br><br><br> ETERNAL SOURCES TECH PARTNERS LLC, FIRST CONTACT ENTERTAINMENT, INC., FORMULUS BLACK, INC., <br><br><br> Nominal Defendants. | **Case No. 25-CV-10336** |

**DEFENDANTS' MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION**
**FOR RULE 11 SANCTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    Mr. Kovacs' Two Prior Lawsuits Are Dismissed......................................................2

    B.    The Florida Action and Mr. Kovacs' Recorded Admissions Of Improper Purpose................................................................................................................3

    C.    Mr. Kovacs Files This Action, And The Court Promptly Denies His Motion For A Temporary Injunction ........................................................................4

ARGUMENT.................................................................................................................................5

I.    MR. KOVACS AND HIS COUNSEL SHOULD BE SANCTIONED .............................6

    A.    The Complaint Was Filed For An Improper Purpose...............................................7

    B.    Mr. Kovacs' Claims Are Legally And Factually Baseless .....................................8

II.    THE COURT SHOULD AWARD FULL ATTORNEYS' FEES AND COSTS AND IMPOSE FURTHER APPROPRIATE SANCTIONS.............................................11

CONCLUSION...........................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
  2023 WL 112552 (S.D.N.Y. Jan. 4, 2023) .........................................................................8, 10

*Abdelhamid v. Altria Grp., Inc.*,
  515 F. Supp. 2d 384 (S.D.N.Y. 2007)......................................................................................5

*Allan H. Applestein, et al., v. Howard Kleinhendler., et al.*,
  2024 WL 7009165 (E.D.N.Y. Sept. 8, 2024) ...........................................................................7

*AudioEye, Inc. v. Kovacs*,
  No. 2024-006401-CA-01 (Fla. 11th Cir. Ct. Jan. 12, 2026)..................................................3, 4

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*,
  110 F.4th 106 (2d Cir. 2024) ..................................................................................................9

*China AI Cap. Ltd. v. DLA Piper LLP (US)*,
  2023 WL 5016492 (S.D.N.Y. July 28, 2023) ...........................................................................7

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)................................................................................................................5

*Fuschi v. JPMorgan*,
  223 A.D.3d 409 (1st Dep't 2024) ...........................................................................................9

*Galin v. Hamada*,
  283 F. Supp. 3d 189 (S.D.N.Y. 2017), *aff'd*, 753 Fed. Appx. 3 (2d Cir. 2018) ......................6

*Gong v. Sarnoff*,
  2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023).........................................................................11

*Hong Mai Sa v. Doe*,
  406 F.3d 155 (2d Cir. 2005)...............................................................................................8, 10

*Jay Dees, Inc. v. Def. Tech. Sys., Inc.*,
  2012 WL 13059897 (S.D.N.Y. Feb. 29, 2012).......................................................................6, 8

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
  327 F. Supp. 3d 673 (S.D.N.Y 2018).......................................................................................5

*Kovacs v. AudioEye, Inc.*,
  414 So. 3d 390 (Fla. 3d DCA 2025) ........................................................................................3

*Kovacs v. AudioEye, Inc.*,
No. 651810/2024 (N.Y. Sup. Ct. Apr. 5, 2024) .........................................................................2

*LCS Group, LLC v. Shire Dev. LLC*,
2022 WL 1217961 (2d Cir. Apr. 26, 2022) ...............................................................................8

*O'Malley v. New York City Transit Auth.*,
896 F.2d 704 (2d Cir. 1990)......................................................................................................5

*Papaya Gaming Ltd. v. Fair Play For Mobile Games*,
2026 WL 558698 (S.D.N.Y. Feb. 27, 2026)..........................................................2, 6, 10, 11, 12

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) .......................................................................................................6

*Sibanda v. Elison*,
2024 WL 3835220 (S.D.N.Y. Aug. 14, 2024).............................................................................7

*Streamlined Consultants, Inc. v. EBF Holdings, LLC*,
2023 WL 5835748 (S.D.N.Y. Sept. 8, 2023).........................................................................8, 12

*Usherson v. Bandshell Artist Mgmt.*
2020 WL 3483661 (S.D.N.Y. June 26, 2020) ............................................................................6

## Statutes

28 U.S.C. § 1927.............................................................................................................1, 6, 10, 12

N.Y. Penal Law §§ 250.00, 250.05.......................................................................................................7

Tex. Penal Code Ann. § 16.02 .............................................................................................................7

## Other Authorities

Rule 11 ...........................................................................................1, 5, 6, 7, 8, 10, 11, 12

*Story*, THE REAL DAVID JK, https://www.realdavidjk.com/story (last accessed
Feb. 27, 2026) ............................................................................................................................4

iii

Defendants AudioEye, Inc. ("AudioEye") and David Moradi respectfully submit this memorandum of law in support of their motion for sanctions against Plaintiff David Kovacs and his counsel, John H. Snyder PLLC and Turturro Law, P.C. (collectively, "Plaintiffs' Counsel"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. Defendants request an award of attorneys' fees, costs, and such other sanctions as the Court may deem appropriate.

## PRELIMINARY STATEMENT

This is the third lawsuit that David Kovacs has filed against AudioEye and Mr. Moradi arising from the same allegations: that AudioEye wrongfully terminated him in retaliation for alleged whistleblowing. His last two were dismissed—the first on the merits and "with prejudice" ("*Kovacs I*"), and the second based on res judicata ("*Kovacs II*"). And days after Mr. Kovacs filed this newest action, this Court already identified a "substantial res judicata issue" and expressed concern about "plausibility issues with a lot of this story." TRO Hr'g Tr. at 17:10-19 (Dec. 17, 2025), ECF No. 13. This action never should have been filed—not after Mr. Kovacs' last two cases were dismissed—and, now that it has, it should have been promptly withdrawn.

The decision by counsel to file and continue this action—in the form of an 118-page RICO complaint seeking over $1 billion in damages over an employment dispute—is all the more egregious given recorded statements by Mr. Kovacs declaring his malice and lies. In that recording, which is part of the public record in litigation between the parties in Florida (and known to counsel), Mr. Kovacs is heard declaring that he is engaging in a "smear campaign" against Mr. Moradi and AudioEye, that he is acting out of "hate" and is determined to "destroy" them, and that his accusations against them are lies. The Court in Florida found that those statements constitute "unusually compelling" evidence of Mr. Kovacs' "ill will and hostility and intent to harm."

1

This action is vexatious and harassing, and sanctions are warranted on nearly identical grounds as Judge Cote recently found in *Papaya Gaming Ltd. v. Fair Play For Mobile Games*, 2026 WL 558698, *12 (S.D.N.Y. Feb. 27, 2026)—namely, because this action is being "prosecut[ed] . . . in bad faith after the claims were already dismissed twice" in prior New York actions. As Judge Cote observed, "[i]f the filing of duplicative, vexatious litigation were allowed to escape sanction," then "[t]he administration of justice would suffer." *Id.* at *14. That is certainly the case here, where AudioEye and Mr. Moradi have faced increasing burdens defending and re-defending meritless claims that Mr. Kovacs and his counsel continue to press as part of an admitted "smear campaign" even after multiple courts have, in effect, told them to stop.

## BACKGROUND

David Kovacs began working for AudioEye in 2015 and was fired in January 2024 after the company discovered that he had defamed the CEO, Mr. Moradi, and lied about his own professional qualifications. *See* Compl., ECF. No. 1, Ex. 30E ¶ 22-35. Since his termination, Mr. Kovacs has filed three lawsuits against AudioEye and Mr. Moradi—each recycling the same failed allegations.

### A.    Mr. Kovacs' Two Prior Lawsuits Are Dismissed

In April 2024, Mr. Kovacs sued AudioEye and Mr. Moradi in the Commercial Division of New York Supreme Court, asserting claims for retaliatory discharge and intentional infliction of emotional distress, among others. *See* **Exhibit 1** (*Kovacs I* Compl., *Kovacs v. AudioEye, Inc.*, No. 651810/2024 (N.Y. Sup. Ct. Apr. 5, 2024)). Mr. Kovacs alleged that Mr. Moradi directed him to "engage in insider trading, market manipulation, and a pump and dump scheme," and that he was fired for refusing to participate. *Id.* ¶¶ 1-2, 25-36. The Court dismissed with prejudice on January 31, 2025, holding, among other things, that Mr. Kovacs' allegations failed to describe any "insider

2

trading, pump-and-dump scheme, or otherwise." Compl., ECF. No. 1, Ex. 83 (*Kovacs I* Dismissal) at 5.

Less than two months after *Kovacs I* was dismissed, Mr. Kovacs filed *Kovacs II*. Like *Kovacs I*, Mr. Kovacs' second action against AudioEye and Mr. Moradi also asserted claims arising out of his termination from the company. Mr. Kovacs claimed he was entitled to restricted stock units when he was fired—relief he had sought unsuccessfully in *Kovacs I*. *See, e.g.*, Compl., ECF. No. 1, Ex. 84 (*Kovacs II* Dismissal) at 2. On October 8, 2025, the Court dismissed *Kovacs II* on res judicata grounds, holding that Mr. Kovacs' claims "arose out of the same series of transactions" as *Kovacs I* and "could have been raised there." *Id.*

## B.    The Florida Action And Mr. Kovacs' Recorded Admissions Of Improper Purpose

AudioEye and Mr. Moradi sued Mr. Kovacs in Florida State Court in April 2024, asserting claims for defamation and fraud. Compl., ECF. No. 1, Ex. 37. As set forth in the Amended Complaint, Mr. Kovacs misrepresented his credentials to get hired, and later defamed AudioEye and Mr. Moradi, including with false accusations of racism and fraud. Compl., ECF. No. 1, Ex. 30E. He was therefore fired. Mr. Kovacs' motion to dismiss was denied in October 2024, and that denial was affirmed on appeal. *Kovacs v. AudioEye, Inc.*, 414 So. 3d 390 (Fla. 3d DCA 2025).

The trial court also granted a motion by AudioEye and Mr. Moradi to amend their complaint to seek punitive damages, holding that "[t]he evidence demonstrating Mr. Kovacs' ill will and hostility and intent to harm [Mr. Moradi and AudioEye] is unusually compelling." **Exhibit 2** at 6 (Order Granting Pls.' Mot. to Am. Compl. to Add Claim for Punitive Damages, *AudioEye, Inc. v. Kovacs*, No. 2024-006401-CA-01 (Fla. 11th Cir. Ct. Jan. 12, 2026)). In its written decision, the Court quoted extensively from a recording in which Mr. Kovacs declares that he "hate[s]" Mr. Moradi; that Mr. Moradi "doesn't belong to be f**cking breathing on this

3

f**cking planet;" that he will "tear that f**king company [AudioEye] to shreds;" and that he will do "smear campaigns" against Mr. Moradi and AudioEye. *Id.* at 3, 6. Mr. Kovacs also refers repeatedly to Mr. Moradi in racially derogatory terms and boasts that he plans to lie about Mr. Moradi, stating that "[y]ou say it enough, it becomes true." *Id.*

> **C.     Mr. Kovacs Files This Action, And The Court Promptly Denies His Motion For A Temporary Injunction**

Mr. Kovacs filed this action just two months after *Kovacs II* was dismissed. He repackaged the same twice-rejected allegations into a 118-page complaint with 113 exhibits totaling over 1,200 pages, demanding hundreds of millions of dollars for what is, at bottom, the same "retaliatory discharge" employment dispute two courts have already rejected. *See* Memorandum of Law in Support of Defendants' AudioEye, Inc., and David Moradi's Motion to Dismiss the Complaint ("MTD") (Feb. 27, 2026), ECF No. 23 at 4-5. But Mr. Kovacs did not stop there. He layered onto that failed foundation a series of inflammatory and false allegations that, among other things, Mr. Moradi orchestrated an attempted murder-for-hire plot against him (which Mr. Kovacs, by his own account, waited a year to report to police, with no law enforcement action taken). Compl., ECF. No. 1 ¶¶ 151, 165. Mr. Kovacs also accuses Mr. Moradi of orchestrating "lawfare" and using "law firms . . . to commit legalized extortion." *Id.* ¶¶ 5, 8, 110; Compl., ECF. No. 1, Ex. 1 ¶ 289 (Kovacs Decl.). And Mr. Kovacs even created a website that repeats the defamatory statements for which he faces punitive damages in Florida, and where he touts this lawsuit as support for his claims. *See* David J. Kovacs, *Story*, THE REAL DAVID JK, https://www.realdavidjk.com/story (last accessed Feb. 27, 2026).

On December 17, 2025, just five days after Mr. Kovacs filed this action, the Court denied his application for a temporary restraining order, holding that Mr. Kovacs failed to establish a likelihood of success, including because of "a substantial res judicata issue" and "plausibility

4

issues with a lot of this story." TRO Hr'g Tr. at 17:10–19 (Dec. 17, 2025), ECF No. 13. The Court also found no risk of irreparable harm, observing that Mr. Kovacs waited nearly two years after he supposedly learned he was the target of a murder-for-hire plot before seeking injunctive relief. *Id.* at 7:1–6.[1]

## ARGUMENT

Rule 11(b) requires an attorney filing a pleading to certify that, to the best of his or her knowledge formed after reasonable inquiry: "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)–(3); *see also Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (holding that a pleading violates Rule 11 "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law"); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 689 (S.D.N.Y 2018) (holding that a pleading violates Rule 11 where founded on "a frivolous legal position . . . [which has] no chance of success and no reasonable argument to extend, modify or reverse the law as it stands").

The "central purpose of Rule 11 is to deter baseless filings," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and, consistent with that purpose, it imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading" before filing.

---

[1] Defendants served Plaintiffs' Counsel with this motion and a Rule 11 safe-harbor letter on March 20, 2026. Plaintiffs' Counsel did not withdraw the complaint.

*O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990).  That duty, moreover, is "continuing:" counsel may be sanctioned for refusing to withdraw a pleading "after it [i]s shown to be inaccurate."  *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), *aff'd*, 753 Fed. Appx. 3 (2d Cir. 2018); *Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at *18 (S.D.N.Y. June 26, 2020) (imposing sanctions where counsel maintained lawsuit without any investigation).  Where counsel violates those duties, sanctions are essential to ensure "[t]he administration of justice."  *Papaya*, 2026 WL 558698, at *14.[2]  Sanctions are also available against a party that supports a Rule 11 violation.  Fed. R. Civ. P. 11(c)(1); *see also Jay Dees, Inc. v. Def. Tech. Sys., Inc.*, 2012 WL 13059897, at *7 (S.D.N.Y. Feb. 29, 2012) ("when a party and an attorney both know that signing or filing the paper is wrongful, sanctions against both are appropriate.")

## I.    MR. KOVACS AND HIS COUNSEL SHOULD BE SANCTIONED

Counsel signed an inflammatory federal complaint accusing the CEO of a publicly traded company of murder-for-hire and RICO racketeering, knowing (or having every reason to know) that Mr. Kovacs is pursuing these claims for improper purposes based on allegations that two courts have already rejected.  As set forth below, the Complaint violates Rule 11 in all respects: it was filed to harass Mr. Moradi and AudioEye, as Mr. Kovacs' own recorded words confirm (Rule 11(b)(1)); and it asserts legally frivolous claims based on false factual allegations (Rule 11(b)(2), (3)).

---

[2]  The Court's authority to impose sanctions extends beyond Rule 11.  The Court also has "inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023).  And 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

**A.    The Complaint Was Filed For An Improper Purpose**

Mr. Kovacs, by his own admission, filed this action as part of a "smear campaign" and "all" out of "hate." Compl., ECF. No. 1, Ex. 30B at 8:6-7; 9:17-18. And Mr. Kovacs' counsel, having included the transcript of Mr. Kovacs' recorded statements to that effect as an exhibit to the complaint in this action, was plainly aware of those improper purposes. Counsel is also aware, because the complaint makes repeated reference to the Florida litigation pending between the parties, that the Court in that action granted a motion authorizing a claim against Mr. Kovacs for punitive damages specifically because "[t]he evidence demonstrating [his] ill will and hostility and intent to harm is unusually compelling." **Exhibit 2** at 6.

Mr. Kovacs' admissions of bad intent and lies are disturbingly clear. He was recorded saying all of the following:

- Mr. Kovacs declared that his actions against Mr. Moradi are "**all . . . out of hate**;"

- Mr. Kovacs stated his intent to "**tear [Mr. Moradi] to shreds in every way I could. Him and his little company, that fat little Persian f\*\*k. Everything. He will be at the ashes of my feet**;"

- Mr. Kovacs announced that he is "**going to do smear campaigns**" against Mr. Moradi and "**destroy that little Persian f\*\*k**;"

- Mr. Kovacs said that Mr. Moradi "**doesn't belong to be f\*\*king breathing on this f\*\*king planet**;"

- Mr. Kovacs declared that "**I am going to tear that f\*\*king company to shreds. It will be a f\*\*king penny when I get done**." *Id.* at 3, 6.[3]

---

[3] The Florida court has held the recording is competent evidence. In its order authorizing punitive damages, the Court rejected Mr. Kovacs' challenge to the recording, finding that the call was recorded from Texas while Mr. Kovacs was in New York—both one-party consent jurisdictions. **Exhibit 2** at 6 n.4; Tex. Penal Code Ann. § 16.02(c)(3)(A); N.Y. Penal Law §§ 250.00(1), 250.05; *see also Allan H. Applestein, et al., v. Howard Kleinhendler., et al.*, 2024 WL 7009165, at \*1 (E.D.N.Y. Sept. 8, 2024) ("The recording is permissible because Kleinhendler was recorded in New York, a one-party consent state.").

7

It is difficult to conceive of any clearer indication that this action was filed for improper purposes in violation of Rule 11(b).  *See Sibanda v. Elison*, 2024 WL 3835220, at *5 (S.D.N.Y. Aug. 14, 2024) (imposing Rule 11 sanctions because the complaint was "frivolous" and used "for an 'improper purpose,' namely to harass [Defendant]") (quotation marks omitted); *China AI Cap. Ltd. v. DLA Piper LLP (US)*, 2023 WL 5016492, at *8 (S.D.N.Y. July 28, 2023) (sanctioning Plaintiff where claim "can only be viewed as an attempt to harass Defendants and cause reputational harm").  Mr. Kovacs' pattern of filing multiple lawsuits against the same parties, on the heels of his recorded statements promising lie-based "smear campaigns" against them, is exactly the sort of baseless and vexatious litigation Rule 11 guards against.  *Id.*; *see also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions." (citation omitted)).[4]

## B.    Mr. Kovacs' Claims Are Legally And Factually Baseless

The record is also clear that Mr. Kovacs has asserted claims based on false allegations, and relies on "legal contentions" not "warranted by existing law."  Fed. R. Civ. P. 11(b)(2)–(3).  As to falsity, Mr. Kovacs admitted his factual allegations are false during the same recorded conversation in which he made the vile statements excerpted above.  As the Florida Court observed, Mr. Kovacs in effect "boast[ed]" of his lies—"declaring that if '[y]ou say it enough, it becomes true.'"  **Exhibit**

---

[4]  The frivolous complaint here is especially problematic because it disparages the CEO of a public company with wild and false allegations of "murder for hire" and "lawfare," packaged as a supposed RICO violation.  *See LCS Group, LLC v. Shire Dev. LLC*, 2022 WL 1217961, at *4 (2d Cir. Apr. 26, 2022) (affirming Rule 11 sanctions for RICO claims where the district court held that "even a cursory review of RICO case law would demonstrate to a reasonable attorney that [Plaintiffs] allegations are frivolous"); *Streamlined Consultants, Inc. v. EBF Holdings, LLC*, 2023 WL 5835748, at *11-12 (S.D.N.Y. Sept. 8, 2023) ("imposing [Rule 11] sanctions on 'Plaintiffs and Plaintiffs' counsel" and holding that "Rule 11 is particularly significant in the civil RICO context because commencement of a civil RICO action has an almost inevitably stigmatizing effect on those named as defendants").

**2** at 3, 6 (quoting Mr. Kovacs' recorded statements); Compl., ECF. No. 1, Ex. 30B at 9:21-22. This provides powerful support for sanctions. *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2023 WL 112552, at *2 (S.D.N.Y. Jan. 4, 2023) (sanctioning plaintiff under Rule 11 for filing complaint "without any basis" despite knowing defendant "was complying with its contractual obligations"); *Jay Dees, Inc. v. Def. Tech. Sys., Inc.*, 2012 WL 13059897, at *7 (S.D.N.Y. Feb. 29, 2012) (sanctioning party under Rule 11 who "actively and knowingly participated in the presentation of unsupported factual contentions"). Moreover, Mr. Kovacs' counsel was fully aware of his client's troubling admissions—he appended the transcript from the recorded conversation as an exhibit to Mr. Kovacs' complaint. *See* Compl., ECF. No. 1, Ex. 30B.

Counsel also filed this action even though he recognized (or should have recognized) that the asserted claims are not legally viable. Indeed, Plaintiffs' Counsel ignored the preclusive effect of the dismissal orders in *Kovacs I* and *Kovacs II*. Compl., ECF. No. 1, Ex. 83 (*Kovacs I* Dismissal); Compl., ECF. No. 1, Ex. 84 (*Kovacs II* Dismissal). In *Kovacs I*, the Court dismissed Mr. Kovacs' retaliation claims *with prejudice*. Compl., ECF. No. 1, Ex. 83 at 7. And in *Kovacs II*, the Court dismissed Mr. Kovacs' claims seeking recovery of restricted stock units—relief he had already sought in *Kovacs I*—based on res judicata. Compl., ECF. No. 1, Ex. 84. at 2-3. The filing of this action, which rests on the same allegations of retaliatory discharge as *Kovacs I*, *compare* **Exhibit 1** (*Kovacs I* Compl.) ¶¶ 28-29, 46 (alleging retaliation because Mr. Kovacs "blew the whistle about Moradi's insider trading scheme"), *with* Compl., ECF. No. 1 ¶¶ 26-41 (alleging "retaliation" for "be[ing] a federal whistleblower"), and complains about the same "forfeiture" of restricted stock units as in *Kovacs II*, *compare* Compl., ECF. No. 1, Ex. 47 (*Kovacs II* Compl.) ¶ 1 ("This is an action … which arise[s] from [] Audio[Eye's] failure to deliver to [Mr. Kovacs'] vested, restricted stock units."), *with* Compl., ECF. No. 1 ¶ 142 ("[AudioEye] seized . . . vested

RSUs."), presents a glaring res judicata problem—as this Court already observed when it denied Mr. Kovacs motion for a temporary restraining order, TRO Hr'g Tr. at 17:10-19 (Dec. 17, 2025), ECF No. 13.[5] *See also Fuschi v. JPMorgan*, 223 A.D.3d 409 (1st Dep't 2024) ("a dismissal with prejudice is a determination on the merits for res judicata purpose"); *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) ("[S]eparately asserted legal theories that 'depend on different shadings of the facts' or that 'emphasize different elements of the facts' may nevertheless arise out of the same transaction or series of transactions if those legal theories are 'grounded on the same gravamen of the wrong upon which the action[s] [are] brought.'").

Just last month, the Court in *Papaya Gaming* confronted nearly identical circumstances as present here. *Papaya Gaming, Ltd., v. Fair Play For Mobile Games, et al.*, 2026 WL 558698 (S.D.N.Y. Feb. 27, 2026). After the plaintiff's counterclaims were dismissed twice in this District, the plaintiff filed substantively identical claims in the Eastern District of Virginia, invoking different legal theories in an effort to evade preclusion. *Id.* at *2-3. After the case was transferred back to this District, the Court imposed Rule 11 and Section 1927 sanctions jointly on the plaintiff and its counsel. As the Court explained,

> The Virginia Action was multiplicitous litigation. It repeated in all material respects the counterclaims Papaya filed or attempted to file in the New York Action. If this Court erred in dismissing those counterclaims, Papaya's remedy is to appeal that decision when a final judgment is entered in the New York Action. The remedy was not to bring essentially identical claims against Skillz affiliates in another federal district court. The Virgina claims were a blatant attempt to unreasonably increase the expense and burden of litigation on Skillz.

*Id.* at *14.

---

[5]    AudioEye and Mr. Moradi's Motion to Dismiss sets forth in greater detail the numerous legal deficiencies in Plaintiffs' claims, including that they are barred by res judicata. MTD, ECF No. 23 at 7-12. AudioEye and Mr. Moradi incorporate those arguments here.

The situation here is strikingly similar. As in *Papaya Gaming*, Mr. Kovacs filed this action after two prior dismissals and chose to refile rather than appeal from either one. That decision, especially in light of his recorded admissions, amounts to a "blatant attempt to unreasonably increase the burden and expense" on AudioEye and Mr. Moradi. *Id*. Just as the plaintiff in *Papaya Gaming* was not entitled to "a second bite at the apple," *id.*, Mr. Kovacs is not entitled to a third. *See also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions . . ."); *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2023 WL 112552, at *2 (S.D.N.Y. Jan. 4, 2023) (sanctioning plaintiff under Rule 11 for filing complaint "without any basis" despite knowing defendant "was complying with its contractual obligations"); *Gong v. Sarnoff*, 2023 WL 5372473, at *13-15 (S.D.N.Y. Aug. 22, 2023) (sanctioning plaintiff under Rule 11 where complaint was "legally frivolous and factually flawed" and filed to "harass" defendant, evidenced by plaintiff's "history of lawsuits" against defendant).

## II.    THE COURT SHOULD AWARD FULL ATTORNEYS' FEES AND COSTS AND IMPOSE FURTHER APPROPRIATE SANCTIONS

Multiple considerations support a substantial award here.

*First*, the violations are severe. Plaintiffs' Counsel filed and signed a 118-page RICO and Securities Fraud complaint against the CEO of a Nasdaq-listed company despite full knowledge that two courts had already dismissed the same claims, and that his client in a recorded conversation declared his malice ("it's all out of hate") and his lies ("you say it enough, it becomes true"). **Exhibit 2** at 3, 6. The Complaint itself attaches those dismissal orders as exhibits, yet Plaintiffs' Counsel signed and filed the Complaint anyway. Compl., ECF. No. 1, Exs. 83 (*Kovacs I* Dismissal), 84 (*Kovacs II* Dismissal). That failure is compounded three times over: first, by refusing to withdraw the Complaint after this Court identified a "substantial res judicata issue" at

the TRO hearing; second, by continuing to prosecute the case even after the Court in Florida announced "compelling evidence" of Mr. Kovacs' bad faith; and, third, by refusing to withdraw the complaint in response to Defendants' Rule 11 safe-harbor letter.  Counsel has abandoned the most basic obligations imposed by Rule 11.  *Papaya Gaming*, 2026 WL 558698, at *13-14; *Galin*, 283 F. Supp. 3d at 202-03.

*Second*, the Complaint by its very nature has inflicted serious reputational harm on Mr. Moradi and AudioEye.  Accusations of murder-for-hire and RICO enterprise leadership against a CEO of a public company are among the most damaging that can appear in a judicial filing.  *See Streamlined Consultants*, 2023 WL 5835748, at *11 (noting the "almost inevitably stigmatizing effect" of civil RICO accusations on named defendants).  These allegations cannot be fully erased by a dismissal.

*Third*, deterrence is particularly important here.  In the two years since Mr. Kovacs pledged in a recorded conversation to "destroy" Mr. Moradi and AudioEye through lies and "smear campaigns," Mr. Kovacs has filed three lawsuits against them.  Moreover, he and his counsel filed this one, his third, even after the other two were dismissed.  This serial litigation and harassment of AudioEye and Mr. Moradi will undoubtedly continue if Mr. Kovacs and the people acting on his behalf are not held accountable for their abuse of the court system.  The Court's observation in *Papaya Gaming*, which involved less egregious conduct than here, is apt:  "If the filing of duplicative, vexatious litigation were allowed to escape sanction, the costs would exceed those imposed on the defendants here.  Courts and other parties may be encouraged to undertake burdensome and duplicative litigation.  The administration of justice would suffer."  2026 WL 558698, at *14.

12

## CONCLUSION

For the foregoing reasons, Defendants AudioEye and David Moradi respectfully request that the Court impose sanctions against David Kovacs and his counsel, Mr. Snyder, under Rule 11, 28 U.S.C. Section 1927, and the Court's inherent authority, including: (1) a full award of attorneys' fees and costs incurred in defending this action, and bringing this motion; and (2) such other and further relief as the Court deems just and proper.

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

Dated: April 13, 2026
     New York, New York     By:   */s/ Adam M. Abensohn*
     Adam M. Abensohn
     Corey Worcester
     295 Fifth Avenue
     New York, New York 10016
     Telephone: (212) 849-7000
     Email: adamabensohn@quinnemanuel.com
            coreyworcester@quinnemanuel.com

     *Attorneys for Defendants*
     *AudioEye, Inc. and David Moradi*

# CERTIFICATE OF WORD COUNT COMPLIANCE

I, Adam Abensohn, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 4(c) of Hon. J. Paul Oetken Individual Rules and Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 4,143 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 4(c) of Judge Oetken's Individual Rules.

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 13th day of April in New York, New York.

/s/ Adam M. Abensohn
Adam M. Abensohn

14