UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DAVID KOVACS, RUSSELL ALESI, JULIAN DUCHEINE and DEMIAN LICHTENSTEIN, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID MORADI, DR. CARR BETTIS, JASON HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR. KATHERINE FLEMING, TONY COELHO, KELLY GEORGEVICH, JAMES SPOLAR, MALONEBAILEY LLC, AUDIOEYE, INC. and JOHN DOE 1-50, <br><br> Defendants, <br><br> and <br><br> ETERNAL SOURCES TECH PARTNERS LLC, FIRST CONTACT ENTERTAINMENT, INC., FORMULUS BLACK, INC., <br><br> Nominal Defendants. | **Case No. 25-CV-10336** <br><br> **(ORAL ARGUMENT REQUESTED)** |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS AUDIOEYE, INC., AND DAVID
MORADI'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ..................................................................................................................2

I.     PLAINTIFFS ABANDON MULTIPLE CLAIMS ...............................................2

II.    RES JUDICATA BARS THIS ACTION TWICE OVER......................................3

     A.    *Kovacs I* Bars This Action ................................................................3

     B.    *Kovacs II* Independently Bars This Action..........................................5

III.    THE RICO CLAIM FAILS ..............................................................................7

     A.    The Complaint Fails To Plead A RICO Enterprise or Pattern of

          Racketeering ....................................................................................7

     B.    Plaintiffs Lack RICO Standing Because Their Purported Damages Are

          Unascertainable And Predominantly Grounded In Securities Fraud......................9

IV.    THE SECURITIES FRAUD CLAIM FAILS ....................................................10

     A.    Plaintiffs Concede They Lack Securities Fraud Standing ...................10

     B.    The Securities Fraud Allegations Are Deficient..................................11

V.    THE RETALIATION CLAIMS FAIL ..............................................................11

VI.    THE COURT SHOULD DENY LEAVE TO AMEND....................................12

CONCLUSION................................................................................................................13

## TABLE OF AUTHORITIES

**Page**

**C**ASES

*Abbott Labs. v. Adelphia Supply USA*,
2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...............................................................................9

*Adams v. Intralinks, Inc.*,
2004 WL 1627313 (S.D.N.Y. July 20, 2004) ........................................................................13

*Am. Med. Ass'n v. United Healthcare Corp.*,
588 F. Supp. 2d 432 (S.D.N.Y. 2008)...................................................................................10

*AudioEye, Inc. v. Kovacs*,
No. 2024-006401-CA-01 (Fla. 11th Cir. Ct. Jan. 12, 2026).................................................14

*Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. Int'l Bus. Machines Corp.*,
110 F.4th 106 (2d Cir. 2024) ..................................................................................................5

*Belen v. Herman*,
2024 WL 182588 (S.D.N.Y. Jan. 17, 2024) ...........................................................................9

*Beter v. Murdoch*,
2018 WL 3323162 (S.D.N.Y. June 22, 2018) .........................................................................8

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342, 359-60 (S.D.N.Y. 2014) .........................................................................8

*Cantore v. City of New York*,
2017 WL 11501442 (S.D.N.Y. Sept. 15, 2017).......................................................................6

*Cornetta v. Town of Highlands*,
434 F. Supp. 3d 171 (S.D.N.Y. 2020).....................................................................................7

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000)....................................................................................................3

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
587 F. App'x 663 (2d Cir. 2014) .............................................................................................8

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018).....................................................................................................10

*Digit. Realty Tr., Inc. v. Somers*,
583 U.S. 149 (2018)................................................................................................................12

*Dister v. Cont'l Grp., Inc.*,
    859 F.2d 1108 (2d Cir. 1988)........................................................................12

*Doe v. Columbia Univ.*,
    551 F. Supp. 3d 433 (S.D.N.Y. 2021)...........................................................13

*Donlon v. City of New York*,
    2026 WL 456892 (S.D.N.Y. Feb. 18, 2026)....................................................8

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).............................................................................8

*Fischer v. Brushy Mountain Bee Farm, Inc.*,
    2023 WL 8603027 (S.D.N.Y. Dec. 12, 2023) ..................................................3

*Fuschi v. JPMorgan*,
    223 A.D.3d 409 (1st Dep't 2024) .....................................................................5

*Galinsky v. U.S. Dep't of Labor, Admin. Review Bd.*,
    556 F. App'x 31 (2d Cir. 2014) ......................................................................12

*GAMCO Inv'rs, Inc. v. Vivendi, S.A.*,
    927 F. Supp. 2d 88 (S.D.N.Y. 2013)...............................................................11

*Gordon v. Equitas Cap. Grp., LLC*,
    2025 WL 2771708 (S.D.N.Y. Sept. 29, 2025)...................................................2

*Grayson v. Combs*,
    2026 WL 787787 (S.D.N.Y. Mar. 20, 2026) .................................................8, 9

*Greco v. Local.com Corp.*,
    806 F. Supp. 2d 653 (S.D.N.Y. 2011)...............................................................6

*Hameed v. Aldana*,
    296 F. App'x 154 (2d Cir. 2008) ......................................................................6

*Henderson v. Engstrom*,
    2014 WL 4678262 (D.S.D. Sept. 18, 2014)......................................................7

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)........................................................................................10

*Huebner v. Midland Credit Mgmt., Inc.*,
    897 F.3d 42 (2d Cir. 2018)................................................................................3

*Hull v. Glob. Digit. Sols., Inc.*,
    2017 WL 6493148 (D.N.J. Dec. 19, 2017).......................................................11

*Int'l Bhd. of Teamsters v. Daniel*,
　439 U.S. 551 (1979)...................................................................................................11

*Joffee v. Lehman Bros., Inc.*,
　410 F. Supp. 2d 187 (S.D.N.Y. 2006), *aff'd*, 209 F. App'x 80 (2d Cir. 2006).......................11

*Kovacs v. AudioEye, Inc.*,
　Index No. 651191/2025, Dkt. No. 47 (N.Y. Sup. Ct. Mar. 24, 2026) ......................................6

*Kuriyan v. Schreiber*,
　2024 WL 3539234 (S.D.N.Y. July 25, 2024),
　*aff'd*, 2025 WL 1065957 (2d Cir. Apr. 9, 2025)........................................................5

*U.S. ex rel. Ladas v. Exelis, Inc.*,
　824 F.3d 16 (2d Cir. 2016).........................................................................................14

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
　223 F. Supp. 2d 435 (S.D.N.Y. 2001)........................................................................11

*Lynn v. McCormick*,
　2017 WL 6507112 (S.D.N.Y. Dec. 18, 2017) ...........................................................9

*MacKinnon v. City of New York/Hum. Res. Admin.*,
　580 F. App'x 44 (2d Cir. 2014) ................................................................................13

*Maxim Grp. LLC v. Life Partners Hldgs., Inc.*,
　690 F. Supp. 2d 293 (S.D.N.Y. 2010)........................................................................11

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
　651 F.3d 268 (2d Cir. 2011).......................................................................................10

*Papaya Gaming Ltd. v. Fair Play For Mobile Games*,
　2026 WL 558698 (S.D.N.Y. Feb. 27, 2026)...............................................................13

*Pasciutti v. LiquidPiston, Inc.*,
　2021 WL 4502950 (D. Conn. Sept. 30, 2021) ...........................................................13

*TAL Properties of Pomona, LLC v. Vill. of Pomona*,
　2023 WL 2924571 (2d Cir. Apr. 13, 2023) .................................................................7

*TechnoMarine SA v. Giftports, Inc.*,
　758 F.3d 493 (2d Cir. 2014)........................................................................................6

*United States v. Turkette*,
　452 U.S. 576 (1981).....................................................................................................9

*Verdi v. City of New York*,
　306 F. Supp. 3d 532 (S.D.N.Y. 2018).........................................................................2

iv

*Wade Park Land Hldgs., LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022)....................................................................................8

### RULES & OTHER AUTHORITIES

Fed. R. Civ. P. 11..............................................................................................................................3

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition ("Opp.") concedes fatal defects in—or altogether abandons—several claims, calling into question Plaintiffs' good faith in bringing those claims in the first place. Among other concessions, Plaintiffs acknowledge "procedural challenges" with their derivative claims (Counts I, VI-VIII); Mr. Kovacs never responds to Defendants' showing that his direct unjust enrichment and malicious prosecution claims fail (Counts VIII and IX); and Plaintiffs concede they lack standing to assert their securities claims (Count II). It is now undisputed that these claims are without merit and must be dismissed.

The claims Plaintiffs try to defend fare no better. They argue, for instance, that *res judicata* does not apply because Mr. Kovacs' claims are based on events that happened after he filed *Kovacs I*. In fact, *Kovacs I* rests on the same allegations Mr. Kovacs advances here—namely, that Mr. Moradi directed him to participate in insider trading, that he refused, and that AudioEye retaliated against him. Plaintiffs are wrong, in any event, that anything that postdates the filing of *Kovacs I* is not subject to *res judicata*. The June 2024 amendment of the *Kovacs I* complaint and the March 2025 filing of *Kovacs II* are key benchmarks for *res judicata*, and it is beyond dispute that the allegations Mr. Kovacs lumps into his present claims predate those filings.

Mr. Kovacs' remaining arguments also fail. His RICO claims are textbook examples of the misuse of the RICO statute that this Court guards against. Indeed, he attempts to dress up an employment dispute into a near-billion-dollar conspiracy marked by sensational and, as this Court already signaled when it denied injunctive relief, implausible allegations of "lawfare" and "murder for hire." His retaliation claims fail, among other reasons, because he alleges retaliation for actions he had not yet taken and/or that Defendants did not know about. And his securities fraud allegations fail for the same reason as in *Kovacs I*: He still cannot identify any improper trades or nonpublic information underlying the supposed scheme.

1

Plaintiffs are right about one thing—"[t]his case is part of a sprawling conflict among the parties involving six separate lawsuits in four jurisdictions."  Opp. at 2.  That is exactly the problem.  Mr. Kovacs has converted an employment dispute, which he has already lost, into serial litigation even after two courts have told him to stop.  This case is not only without merit, it is abusive and harassing, which is why Defendants, in addition to seeking dismissal, have simultaneously moved for sanctions against Mr. Kovacs and his counsel.

## ARGUMENT

## I.    PLAINTIFFS ABANDON MULTIPLE CLAIMS

Plaintiffs abandon entire claims and concede or fail to address numerous dispositive arguments, which warrants dismissal with prejudice.  *Gordon v. Equitas Cap. Grp., LLC*, 2025 WL 2771708, at *6 (S.D.N.Y. Sept. 29, 2025) ("Where a plaintiff abandons a claim at the motion to dismiss stage, dismissal with prejudice is appropriate."); *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018) ("Plaintiff abandoned his negligence claims, and they are dismissed with prejudice.").  None of the following claims are disputed:

- The Opposition does not address Count IX, or Mr. Kovacs' direct unjust enrichment claim in Count VIII.  Both are abandoned.

- Mr. Kovacs concedes his Sarbanes-Oxley claim (Count III) by admitting he did not exhaust administrative remedies.  Opp. at 19; Memo. Supp. Mot. Dismiss at 7 (Feb. 27, 2026), Dkt. 23 ("MTD").

- Mr. Lichtenstein, the sole plaintiff for Count XI ("common law torts"), has abandoned that claim by failing to address Defendants' arguments for dismissal.

- Plaintiffs "acknowledge the procedural challenges" in the derivative claims, in Counts I, VI, VII, and VIII, which require dismissal.  Opp. at 23; MTD at 12-20.

- Plaintiffs do not address Defendants' showing that employees lack RICO standing, which defeats their derivative RICO claim (Count I).  MTD at 20 n.9.

- Plaintiffs do not address Defendants' showing that the derivative claims for Formulus Black, First Contact Entertainment, and ESTP (Counts VI, VII, and VIII) are deficient.  *Id.* at 32-34.

2

These concessions require outright dismissal of Counts VI, VII, VIII, IX, and XI, and narrow multiple remaining counts. Plaintiffs' complete abandonment of multiple claims demonstrates their lack of good faith in asserting them in the first place, and supports an award of Defendants' attorneys' fees in having to defend against such frivolous claims. *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 57 (2d Cir. 2018) (affirming the Court's inherent authority to impose sanctions where the lawsuit "was meritless and brought for improper purposes").[1]

## II. RES JUDICATA BARS THIS ACTION TWICE OVER

Defendants demonstrated that all of Mr. Kovacs' claims are barred by *res judicata* because his two prior actions against the same parties (*Kovacs I* and *II*) were dismissed with prejudice. MTD at 7. Plaintiffs' response is to wrongly assert that their claims rest on alleged misconduct that "w[as] not and could not have been asserted in the Commercial Division." Opp. at 9.

### A. *Kovacs I* Bars This Action

Plaintiffs are wrong that "[t]he relevant preclusion date is April 5, 2024, when *Kovacs I* was filed." Opp. at 10. Plaintiffs' own cited authority confirms that the *res judicata* effect of *Kovacs I* is measured instead from the date Mr. Kovacs filed his Amended Complaint in that action, on June 26, 2024. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 139-40 (2d Cir. 2000) (drawing the preclusion line at the amended complaint, not the original complaint); *see also Fischer v. Brushy Mountain Bee Farm, Inc.*, 2023 WL 8603027, at *9 (S.D.N.Y. Dec. 12, 2023) ("[Plaintiff] misstates the date relevant to assessing whether he could have brought the instant claims in *Fischer*

---

[1] Defendants are seeking attorneys' fees and other relief in their separately filed sanctions motion. Memo. Supp. Mot. Rule 11 Sanctions (Apr. 13, 2026), Dkt. 47 (the "Sanctions Motion"). As detailed in the Sanctions Motion, counsel's decision to file this action after Mr. Kovacs' prior two actions were dismissed, and despite Mr. Kovacs' recorded admissions that he is pursuing his claims in bad faith and based on lies, violates Rule 11 of the Federal Rules of Civil Procedure.

3

*I.* That date is December 28, 2015, the date the third and final amended complaint was filed, not February 27, 2014, the date the initial complaint was filed.").

By that time (and even by the earlier date Mr. Kovacs incorrectly invokes), virtually all of the alleged wrongdoing underlying Plaintiffs' claims had already occurred:

- Mr. Moradi allegedly solicited Mr. Kovacs to engage in insider trading by August 2023, Compl. ¶ 16;

- Mr. Kovacs was terminated in January 2024, *id.* ¶ 141;

- Mr. Kovacs allegedly filed his DOJ and SEC whistleblower reports in February and April 2024, *id.* ¶¶ 142, 144;

- Mr. Kovacs was advised by AudioEye that he had forfeited his RSUs in February 2024, *id.* ¶ 142;

- Mr. Kovacs alleges receiving the "Birkin Bag letter," and that Defendants' "stock manipulation [] moved the market," in March 2024, *id.* ¶¶ 23, 32, 143;

- The "Florida defamation action" and "Humble SDNY suit" were filed in April and May 2024, respectively, Opp. at 11; and

- Mr. Kovacs allegedly learned of a "murder-for-hire" plot in May 2024, *id.*; Compl. ¶ 165.

That Mr. Kovacs could have asserted the same allegations and advanced the same claims in *Kovacs I*, as he purports to assert here, is confirmed by the fact that he *did* assert many of those claims and allegations. The Amended Complaint in *Kovacs I* is based on the identical theory advanced here—that Mr. Kovacs was fired in retaliation for refusing to participate in stock fraud. *Compare Kovacs I* Am. Compl., Dkt. 24-1, ¶¶ 25–29, 36–49, *with* Compl., Dkt. 1, ¶¶ 16–29, 108–12, 141–42, 195. And Mr. Kovacs asserts several of the same claims here as before—including his claims for retaliation and "IIED." *See Kovacs I* Am. Compl., Dkt. 24-1, ¶¶ 60–67, 83-87.

Mr. Kovacs is also wrong that *Kovacs I* is not entitled to *res judicata* effect because it was dismissed on the pleadings. Opp. at 12-13. The Court in *Kovacs II* rejected that argument directly. Compl., Ex. 84 (*Kovacs II* Dismissal) at 2. As that Court recognized, *Kovacs I* was expressly

dismissed "with prejudice," Compl., Ex. 83 at 7 *(Kovacs I* Dismissal), which is a dismissal on the merits entitled to full preclusive effect. *See Fuschi v. JPMorgan*, 223 A.D.3d 409 (1st Dep't 2024) ("a dismissal with prejudice is a determination on the merits for res judicata purposes"); *see also Kuriyan v. Schreiber*, 2024 WL 3539234, at *6 (S.D.N.Y. July 25, 2024) (barring RICO claim based on prior grant of a motion to dismiss).

### B.   *Kovacs II* Independently Bars This Action

Even if Mr. Kovacs' claims were not precluded by *Kovacs I* (they are), they would be precluded by *Kovacs II*, which was filed on March 4, 2025—by which time Mr. Kovacs was aware of *all* the operative facts alleged here. The two categories of conduct Mr. Kovacs calls the "core conduct" of this action, Opp. at 9, had already occurred: the purported insider trading as of January 2025, and the alleged witness-tampering in December 2024. Compl. ¶¶ 139, 166. Mr. Kovacs' failure to assert claims in *Kovacs II* based on that alleged wrongdoing, or the supposed retaliation that preceded it, bars him from doing so now. *Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) (holding that *res judicata* precludes not only claims that were brought, but also claims that *could have* been brought).

Mr. Kovacs' response, Opp. at 10, that "Defendants are free to argue that particular claims should have been brought in *Kovacs II*," seemingly concedes the dispositive point—that he could have asserted the same claims he asserts now in *Kovacs II*. *Beijing Neu*, 110 F.4th at 114. Beyond that, Mr. Kovacs argues, without citation to authority, that Defendants "cannot use" *Kovacs II* to support a *res judicata* defense because that action was merely "derivative" of *Kovacs I*, Opp. at 10—but the "derivative" nature of each of his follow-on lawsuits is why *res judicata* applies. And the fact that *Kovacs II* was dismissed on *res judicata* grounds itself gives rise to *res judicata* effect

5

for subsequent actions, like this one.[2]  *Hameed v. Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008) (holding that a New York state court dismissal on *res judicata* grounds "itself creates a preclusive effect"); *Cantore v. City of New York*, 2017 WL 11501442, at *8 (S.D.N.Y. Sept. 15, 2017) ("[T]he dismissal of a prior action on *res judicata* grounds constitutes a final judgment on the merits that is entitled to preclusive effect against later-filed actions.").

Finally, Mr. Kovacs cannot save his claims by throwing in a limited number of allegations purporting to describe events post-dating the filing of his amended complaint in *Kovacs I* and his complaint in *Kovacs II*.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 502 (2d Cir. 2014) ("a few post-[filing] acts [cannot] resurrect a claim, grounded almost entirely upon events preceding the prior litigation" (citations modified)).  Those few allegations do not change that his core allegations—the alleged "whistleblowing," "retaliatory" termination, improper forfeiture of his stock shares, and securities fraud—all predate those actions, and were already alleged in his prior complaints.   MTD at 4-5.  The few alleged events that postdate the March 2025 filing of *Kovacs II* do not change the analysis.  The "Wilkerson meeting" and "Humble voicemail," for instance, are not alleged as new acts of retaliation—they instead purport to corroborate the retaliation that allegedly took place months earlier (well before *Kovacs I* was amended and *Kovacs II* was filed).[3]  *See TAL Properties of Pomona, LLC v. Vill. of Pomona*, 2023 WL 2924571, at *3 (2d Cir. Apr. 13, 2023) ("[T]he newly discovered evidence amounts to 'nothing more than additional instances of what was previously asserted' and would thus have not changed the

---

[2]  Mr. Kovacs removed any ambiguity about the preclusive effect of the *Kovacs II* dismissal when he moved for reconsideration and asked the Court to clarify that very question.  In denying the motion, the Court held that its dismissal was with prejudice.  Decision & Order on Mot. for Reargument at 2 n.1, *Kovacs v. AudioEye, Inc.*, Index No. 651191/2025, Dkt. 47 (N.Y. Sup. Ct. Mar. 24, 2026).

[3]  Mr. Kovacs alleges the murder-for-hire solicitation occurred in December 2023 and that he learned of it by May 8, 2024.  Compl. ¶¶ 149, 165.

6

outcome of TAL 1."); *Henderson v. Engstrom*, 2014 WL 4678262, at \*4 (D.S.D. Sept. 18, 2014) ("[Plaintiff] is not alleging that USD or its employees engaged in any new wrongful conduct. Rather, he is simply offering additional evidence concerning the exact same claim for which he sought redress [earlier]").

In sum, Mr. Kovacs' framing of the issue is wrong:  The question is not whether the "material acts [] postdated the filing of *Kovacs I*," it is whether they postdated the amended complaint in *Kovacs I* and/or the filing of *Kovacs II*.  They did not, and this action is precluded.

## III.    THE RICO CLAIM FAILS

Defendants demonstrated that Plaintiffs' RICO claim, which seeks to elevate an employment dispute into a "sprawling" litigation with hundreds of millions of dollars at stake, represents the kind of misuse of that statute courts "strive to flush out."  MTD at 21 (citing *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179 (S.D.N.Y. 2020)).  Nothing in the Opposition changes that assessment.

### A.    The Complaint Fails To Plead A RICO Enterprise or Pattern of Racketeering

It is not enough to attach the "enterprise" label to a group of defendants, or a disparate set of predicate acts, without also pleading specific facts about the enterprise structure and mechanics. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359–60 (S.D.N.Y. 2014) (Oetken, J.).  Moreover, each RICO defendant "must have played some part in directing [the enterprise's] affairs." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (citation modified).  The Complaint, however, contains no non-conclusory allegation that Mr. Moradi directed Mr. Bettis or Mr. Humble or anyone else. *See Beter v. Murdoch*, 2018 WL 3323162, at \*6 (S.D.N.Y. June 22, 2018) (dismissing RICO claim where the complaint did "not contain any allegation of specific actions [defendant] took or explain why [defendant] should be characterized as a ringleader"); *Wade Park Land Hldgs., LLC v. Kalikow*, 589 F. Supp. 3d 335,

7

375 (S.D.N.Y. 2022).  Neither does it link the disparate alleged acts—ranging from supposed insider trading, to murder-for-hire, to "lawfare"—as part of any coherent pattern.  Dismissal is therefore warranted.  MTD at 22-23.

The Opposition only serves to highlight the conclusory nature of Mr. Kovacs' RICO theory.  He defines the enterprise's purpose as "infiltrat[ing] companies," "centraliz[ing] control," "extract[ing] value through manipulated transactions," and "insulat[ing] participants from accountability."  Opp. at 13.  These are vague, grandiose formulations similar to formulations courts have rejected before.  *See, e.g., Donlon v. City of New York*, 2026 WL 456892, at *8 (S.D.N.Y. Feb. 18, 2026) (dismissing RICO claim based on enterprise allegations that defendants "shared a common purpose of consolidating political power, obstructing justice, and punishing dissent."); *Grayson v. Combs*, 2026 WL 787787, at *4 (S.D.N.Y. Mar. 20, 2026) (enterprise insufficiently pleaded where Plaintiff alleged that "Defendants all share a common purpose: to use deception, coercion, force, and the threat of violence to enrich themselves at the expense of individuals like the Plaintiff").  To the extent these allegations describe anything at all, it is the predicate acts themselves, and not any distinct purpose required to sustain a RICO claim.  *See D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (RICO requires that the enterprise "exist 'separate and apart from the pattern of activity in which it engages.'").  Indeed, "[e]xtract[ing] value through manipulated transactions" is insider trading; and "insulat[ing] participants from accountability" is the alleged retaliation and witness tampering.  Strip those away, and no enterprise remains.  *Belen v. Herman*, 2024 WL 182588, at *5 (S.D.N.Y. Jan. 17, 2024); *Lynn v. McCormick*, 2017 WL 6507112, at *5 (S.D.N.Y. Dec. 18, 2017).[4]

---

[4]    Mr. Kovacs invokes *Turkette*'s "coalesce" language, Opp. at 15, but omits the very next sentence: "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."  *Turkette*, 452 U.S. at 583.

8

Mr. Kovacs alleges an enterprise of eleven named defendants plus John Does 1-50 and three Nominal Defendants.  Compl. ¶¶ 3, 108-112, 193.  He does not plead a relationship among any of them.  The Opposition narrows its defense to three purported "leaders"—Mr. Moradi as "the architect," Mr. Bettis as "the governance stabilizer," and Mr. Humble as "the intermediary"— and says nothing about the relationship among the remaining 58 alleged unspecified "associates."  Opp. at 13-14; Compl. ¶¶ 108, 111.  Even as to the three "leaders," Mr. Kovacs pleads no facts showing any relationship among them or how they functioned as a continuing unit in furtherance of the Enterprise's purported goals, as *Turkette* requires.  *Turkette*, 452 U.S. at 580, 583.  Instead, the Complaint rests the relationship prong on the mere fact that three "leaders" knew each other, which is insufficient.  *Combs*, 2026 WL 787787, at *5 ("No detail is provided regarding the relationship between Delta and any other purported members of the alleged RICO enterprise [and] their various roles in this enterprise."); *Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *4 (E.D.N.Y. Jan. 4, 2017) ("Without factual allegations showing these 300 defendants had an interpersonal relationship in which they worked together for a common illicit interest, Abbott's pleadings constitute nothing more than the 'conclusory naming of a string of entities' combined with legal conclusions." (citation omitted)).

### B.        Plaintiffs Lack RICO Standing Because Their Purported Damages Are Unascertainable And Predominantly Grounded In Securities Fraud

Mr. Kovacs points to Schedule G as evidence that he has provided "clear and definite" damages.  Opp. at 16; *see D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) (finding unripe RICO damages that are not "ascertainable," "clear" and "definite").  But Schedule G mostly describes damages from alleged insider trading and securities fraud, Compl. Sched. G at 92–97, which cannot form the basis of a RICO claim, a point Mr. Kovacs does not contest.  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273 (2d Cir. 2011).  Only three categories remain:

"ERISA restoration" ($7.8 million), "retaliation damages" ($30 million), and "abuse of process" ($40 million).  Compl. Sched. G.  These figures are offered with no explanation for how a single terminated employee suffered $77.8 million in damages—let alone the $233.4 million Mr. Kovacs seeks after trebling.  Such speculative damages cannot support a claim.  *See Am. Med. Ass'n*, 588 F. Supp. 2d at 441 ("Plaintiffs refer to hundreds of millions of dollars or more that Plaintiffs were allegedly deprived of.  This is obviously an estimate on Plaintiffs' part, and therefore neither clear nor definitive." (internal citations omitted)); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265-68 (1992) (holding that the RICO violation must proximately cause damages).

## IV.     THE SECURITIES FRAUD CLAIM FAILS

### A.      Plaintiffs Concede They Lack Securities Fraud Standing

Defendants demonstrated that both Plaintiffs purporting to assert securities fraud claims, Mr. Alesi and Mr. Kovacs, lack standing.  MTD at 24-25.  Plaintiffs concede the point as to Mr. Alesi.  Opp. at 17.  And Plaintiffs' citation to Mr. Kovacs' offer letter confirms that he asserts this claim based on an offer to receive restricted stock units, Opp. at 17 (citing Ex. 45), which, as Defendants have demonstrated, does not constitute a "purchase or sale" of securities.[5]  MTD at 25.  Beyond that, Plaintiffs misleadingly rely on *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551 (1979) for the proposition that the law on this point is "mixed."  But *Daniel* involved a noncontributory pension plan, not RSUs.  *Id.* at 560–61, 570.  And the cases that actually involve grants of stock options uniformly reject standing.  MTD at 25-26 (compiling cases).

---

[5]  Plaintiffs try to cure this standing defect by substituting Mr. Ducheine as a plaintiff, Opp. at 18, which they cannot do. *Maxim Grp. LLC v. Life Partners Hldgs., Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) ("a party cannot amend its pleading through its opposition brief.").  In any event, the claim still fails with Mr. Ducheine as plaintiff.  Plaintiffs allege he sold AudioEye stock based on Humble's oral statement that the company was "on the brink of failure."  Opp. at 18.  Direct reliance on Humble's oral statement, not the market price, defeats Plaintiffs' claims.  *GAMCO Inv'rs, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 101 (S.D.N.Y. 2013) ("Here, Plaintiffs did not rely on the inflated market price . . .").

### B.    The Securities Fraud Allegations Are Deficient

Plaintiffs defend the sufficiency of their securities fraud allegations on grounds that the complaint alleges stock sales by Defendants "while possessing MNPI concerning whistleblower complaints, governance failures, and regulatory exposure."  Opp. at 16–17.  That is circular reasoning—Mr. Kovacs trades one conclusory term ("MNPI") for three others ("whistleblower complaints," "governance failures," and "regulatory exposure"), without ever identifying what the governance failures were, what regulatory exposure existed, or what specific information any Defendant possessed at the time of any specific trade.[6]  *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) (dismissing insider trading claim for failure to plead "adequate specifics regarding . . . Defendants' possession of non-public information").  Without that required particularity, the Complaint's reliance on the amounts Defendants purportedly earned on stock trades is nothing more than an assumption that the mere timing of Defendants' stock sales permits an inference of fraud—a theory courts have repeatedly rejected.  MTD at 27 (citing authority).

## V.    THE RETALIATION CLAIMS FAIL

Defendants demonstrated that Plaintiffs' retaliation claims fail on multiple grounds, MTD at 28-30, and Plaintiffs fail to refute that showing.

---

[6]   Moreover, by the date of the allegedly improper trades, December 4, 2024, Compl. ¶ 139, Mr. Kovacs' "whistleblower" allegations were public.  He had asserted them in his amended complaint in *Kovacs I*, accompanied by a press release touting Defendants' supposed fraud. *Kovacs I* Am. Compl., Dkt. 24-1; LAWSUIT ACCUSES NASDAQ-LISTED AUDIOEYE CEO OF STOCK MANIPULATION, PR Newswire (June 26, 2024), https://www.prnewswire.com/news-releases/lawsuit-accuses-nasdaq-listed-audioeye-ceo-and-its-executive-chairman-of-stock-manipulation-302182937.html.  To the extent this information was relevant to AudioEye investors, it was available to them. *See Hull v. Glob. Digit. Sols., Inc.*, 2017 WL 6493148, at *12 (D.N.J. Dec. 19, 2017) ("[T]here is no question that documents filed with a court are generally presumed to have entered the public domain"); *Joffee v. Lehman Bros., Inc.*, 410 F. Supp. 2d 187, 194 (S.D.N.Y. 2006) (granting motion to dismiss where the market had access to the information), *aff'd*, 209 F. App'x 80 (2d Cir. 2006).

On Dodd-Frank, Mr. Kovacs concedes that his termination preceded his alleged SEC whistleblower report, but argues that "post-SEC retaliatory acts" satisfy the statute.  Opp. at 19. That is wrong under black letter law.  *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 163 (2018) (holding that an employee who did not report to the SEC before his termination was "ineligible to seek relief" under Dodd-Frank).  It also ignores that Plaintiffs never actually allege that Defendants were aware of that post-termination whistleblower report—one the SEC apparently did not find sufficiently concerning to act upon.  *Galinsky v. U.S. Dep't of Labor, Admin. Review Bd.*, 556 F. App'x 31 (2d Cir. 2014) ("an employee must show that . . . the employer knew of that [protected] activity or conduct." (citations modified)).

On ERISA, Mr. Kovacs confirms that the only benefits at issue are his RSUs.  Opp. at 20–21.  He argues that whether RSUs fall outside ERISA is a merits question that cannot be resolved on a motion to dismiss, citing *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108 (2d Cir. 1988).  Opp. at 21.  But *Dister* involved an employee pension plan, the paradigmatic ERISA benefit.  *Dister*, 859 F.2d at 1110.  Courts routinely dismiss ERISA claims at the pleading stage when the "benefits" at issue are RSUs.  *See, e.g.*, *Adams v. Intralinks, Inc.*, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004); *Pasciutti v. LiquidPiston, Inc.*, 2021 WL 4502950, at *3 (D. Conn. Sept. 30, 2021).[7]

## VI.    THE COURT SHOULD DENY LEAVE TO AMEND

Plaintiffs' request for leave to amend exemplifies their failure to face the reality of the present situation.  This action should be dismissed, not because of some technical pleading defect

---

[7]  Plaintiffs offer nothing more than make-weight arguments to defend the fiduciary duty claims in Counts V-VII, the unjust enrichment claim in Count VIII, and the "IIED" claim in Count X. Opp. at 22-23.  As set forth in Defendants' Opening Brief, MTD at 12-20, 35-37, those claims are defective on numerous grounds, including because Plaintiffs made no demands on the Board of any relevant entity; failed to allege any misconduct that purportedly injured ESTP, Formulus Black or FCE; and failed to describe misconduct remotely satisfying the stringent standard for "IIED" claims under New York law—as the Commercial Division has already held.  Compl., Ex. 83 at 7.

12

that can be corrected, but because it is the third action Plaintiffs have filed after two courts rejected their claims.  Plaintiffs cannot cure a *res judicata* defect by trying yet again.  *See Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 477 (S.D.N.Y. 2021) (denying leave to amend "matters precluded under the doctrines of res judicata or collateral estoppel [as] futile"); *MacKinnon v. City of New York/Hum. Res. Admin.*, 580 F. App'x 44, 45–46 (2d Cir. 2014) (affirming denial of leave to amend where the plaintiff sought to "re-litigate claims already adjudicated").

Not only should Plaintiffs not be permitted leave to amend, their decision to file this action in the first place was sanctionable.  As set forth in Defendants' Sanctions Motion, Plaintiffs' conduct here is largely identical to—though worse than—the conduct Judge Cote recently sanctioned in *Papaya Gaming Ltd. v. Fair Play For Mobile Games*, 2026 WL 558698, at *12 (S.D.N.Y. Feb. 27, 2026), where, like here, the plaintiff pursued claims in "bad faith after the [claims] were already dismissed twice."  The only material difference is that Mr. Kovacs, unlike the plaintiff in *Papaya Gaming*, is heard on a recording stating, among other things, that he is lying about Defendants as part of a "smear campaign" against them, and that his adversaries do not "belong to be f**king breathing on this f**king planet."  Sanctions Motion at 3-4 (citing Order Granting Mot. To Add Claim for Punitive Damages, *AudioEye, Inc. v. Kovacs*, No. 2024-006401-CA-01 (Fla. 11th Cir. Ct. Jan. 12, 2026)).  One Court has already deemed Mr. Kovacs' statements "unusually compelling" evidence of his bad faith, *id.* at 7, which is sound reason to deny leave to amend.  *See U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) ("bad faith or dilatory motive" warrants denial of leave to amend).

## CONCLUSION

Defendants respectfully request that the Complaint be dismissed with prejudice.

13

Respectfully submitted,

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

Dated:  April 23, 2026
New York, New York

By:  */s/ Adam M. Abensohn*
     Adam M. Abensohn
     Corey Worcester
     295 Fifth Avenue
     New York, New York 10016
     Telephone: (212) 849-7000
     Email: adamabensohn@quinnemanuel.com
     coreyworcester@quinnemanuel.com

     *Attorneys for Defendants*
     *AudioEye, Inc. and David Moradi*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Adam Abensohn, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 4(c) of Hon. J. Paul Oetken Individual Rules and Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 4,491 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 4(c) of Judge Oetken's Individual Rules.

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 23rd day of April in New York, New York.

*/s/ Adam M. Abensohn*
Adam M. Abensohn

14