UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                       :

DAVID KOVACS, RUSSELL ALESI, JULIAN     :   No. 25-cv-10336 (JPO)
DUCHEINE and DEMIAN LICHTENSTEIN,     :

                                        :

               Plaintiffs,           :

                                        :

                v.                     :

                                        :

DAVID MORADI, DR. CARR BETTIS, JASON     :
HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR.     :
KATHERINE FLEMING, TONY COELHO, KELLY     :
GEORGEVICH, JAMES SPOLAR, MALONEBAILEY     :
LLC, AUDIOEYE, INC. and JOHN DOE 1-50,     :

                                        :

              Defendants,      :

                                        :

        and                       :

                                        :

ETERNAL SOURCES TECH PARTNERS LLC, FIRST    :
CONTACT ENTERTAINMENT, INC., FORMULUS     :
BLACK, INC.,                             :

                                        :

        Nominal Defendants,    :

                                        :

------------------------------------------------------------------------ X

**<u>DEFENDANT JASON HUMBLE'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT</u>**

**DORF NELSON & ZAUDERER LLP**
Grant A. Shehigian, Esq.
90 Park Avenue
New York, New York 10016
Tel: (212) 485-0005
Fax: (212) 922-9072
gshehigian@dorflaw.com
*Attorneys for Defendant Jason Humble*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

POINT I - PLAINTIFFS' POST HOC ATTEMPT TO REFRAME THEIR ALLEGATIONS
            AGAINST MR. HUMBLE CANNOT SAVE THEIR RICO CLAIM ................ 2

    A. Plaintiffs Concede That The Release Agreement Bars Any Liability For
       Humble's Alleged "Pre-Release Conduct" ......................................................... 2

    B. Plaintiffs Do Not Plausibly Allege That Humble Engaged In Witness
       Tampering ........................................................................................................... 6

    C. The Complaint Does Not Allege A Concrete Loss Caused By Humble ............ 9

POINT II - PLAINTIFFS ABANDONED THEIR REMAINING CLAIMS AGAINST
            MR. HUMBLE ............................................................................................... 10

POINT III - THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AND
            WITHOUT LEAVE TO AMEND .................................................................... 11

CONCLUSION ...................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*City of Oakland v. Oakland Raiders,*
  2019 WL 3344624 (N.D. Cal. July 25, 2019) .......................................................................... 10

*E-Distributors, Inc. v. Woitkowski,*
  2026 WL 925829 (E.D.N.Y. Apr. 6, 2026)............................................................................... 11

*Edmondson v. Raniere,*
  751 F. Supp. 3d 136 (E.D.N.Y. 2024)........................................................................................ 7

*Equity Residential v. Kendall Risk Management, Inc.,*
  2005 WL 1026686 (N.D. Ill. Apr. 12, 2005) ......................................................................... 3, 5

*Gonzalez v. New York City Health & Hosp. Corp.,*
  18-CV-2645-JPO, 2019 WL 2435622 (S.D.N.Y. June 11, 2019) ........................................... 11

*Howard v. America Online Inc.,*
  208 F.3d 741 (9th Cir. 2000)................................................................................................... 3, 5

*Long v. Corning Inc.,*
  847 Fed. Appx. 74 (2d Cir. 2021) ............................................................................................ 11

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.,*
  161 F.3d 443 (7th Cir. 1998)...................................................................................................... 5

*Nova v. Rocker,*
  2023 WL 6276504 (W.D.N.Y. Sept. 26, 2023) ....................................................................... 11

*Rajaratnam v. Motley Rice, LLC,*
  449 F. Supp. 3d 45 (E.D.N.Y. 2020)........................................................................................... 7

*Rapaport v. Epstein,*
  2026 WL 878714 (S.D.N.Y. Mar. 31, 2026) ....................................................................... 9, 10

*U.S. v. Aguiar,*
  975 F.2d 45 (2d Cir. 1992)......................................................................................................... 8

*U.S. v. Johnson*,
   585 F.2d 119 (5th Cir. 1978) ............................................................................................. 8

*U.S. v. St. John*,
   267 Fed. Appx. 17 (2d Cir. 2008) ...................................................................................... 8

*Wade Park Land Holdings, LLC v. Kalikow*,
   589 F. Supp. 3d 335 (S.D.N.Y. 2022) ....................................................................... 3, 4, 5

*Zerman v. E.F. Hutton & Co.*,
   628 F. Supp. 1509 (S.D.N.Y. 1986) .................................................................................. 12

**Statutes**

18 U.S.C. § 1512 ....................................................................................................................... 2

18 U.S.C. § 1512(b), (d) .................................................................................................... 6, 7, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 12

**PRELIMINARY STATEMENT**

In response to Mr. Humble's motion to dismiss, plaintiffs abandoned all of their claims against him except their civil RICO claim.  Plaintiffs do not oppose any of Humble's arguments as to why their claims for whistleblower retaliation (Count III), unjust enrichment (Count VIII), malicious prosecution (Count IX), and intentional infliction of emotional distress (Count X) should be dismissed.  Instead, they devote their entire opposition brief to trying to salvage their RICO claim (Count I), but not even that claim can be saved.

There are two primary reasons why plaintiffs' arguments in support of their RICO claim fail.  *First*, plaintiffs expressly concede that their allegations of "solicitation of physical harm and retaliatory litigation" are "covered by the release" that Kovacs provided to Humble in June 2024. (Plaintiffs' Opposition Brief, Dkt. 42 ("Opp. Br."), at 5-6).  Because these allegations are "covered by the release," they cannot form the basis of any claims that would subject Humble to liability, and they cannot be used to establish any element of the RICO claim.

*Second*, recognizing that these alleged acts are "not independently recoverable against Humble because of the release" (*id.* at 15), plaintiffs pivot and argue that their RICO claim against Humble was never based on his alleged "pre-release conduct," but rather, on alleged acts of "post-release witness tampering" (*id.* at 5-6).  It is this alleged witness tampering that plaintiffs argue is "at the center of the RICO claim against Humble."  (*Id.* at 6).

Plaintiffs' contrived, post hoc explanation is nonsense.  Any objective review of the Complaint makes clear that plaintiffs' claims against Humble focused primarily on the made-up murder-for-hire plot and their allegation that Humble's defamation lawsuit against Kovacs was retaliatory "lawfare."  Of the 339 paragraphs in the Complaint, the allegations that plaintiffs argue demonstrate Humble's witness tampering are contained in only **seven** paragraphs.  (*See* Complaint

1

¶¶ 166-67, 170-74). There is not a single reference to this alleged witness tampering in the section of the Complaint titled "Jason Humble," which summarizes plaintiffs' allegations against Humble. (*See id.* ¶¶ 82-87). Nor is there an explicit reference to this so-called witness tampering in the paragraphs setting forth the RICO count (*id.* ¶¶ 193-209), or in the RICO Case Statement attached to the Complaint as Schedule C.

In any event, the conduct that plaintiffs point to as witness tampering is not witness tampering at all. As set forth below, the communications at issue cannot possibly satisfy the elements of witness tampering under 18 U.S.C. § 1512, which generally requires a showing that a defendant improperly intended to hinder, delay or prevent certain testimony in a particular official proceeding.

Thus, the Complaint does not adequately allege that Humble committed any predicate acts that could support their RICO claim, or that he otherwise had any role in the alleged RICO enterprise after he obtained a general release from Kovacs in June 2024. Accordingly, because the Complaint fails to plead an actionable RICO claim against Humble, and because plaintiffs abandoned their other claims against him, this Court should dismiss the Complaint with prejudice.

**ARGUMENT**

**POINT I**

**PLAINTIFFS' POST HOC ATTEMPT TO REFRAME
THEIR ALLEGATIONS AGAINST MR. HUMBLE
CANNOT SAVE THEIR RICO CLAIM**

**A. Plaintiffs Concede That The Release Agreement Bars Any
Liability For Humble's Alleged "Pre-Release Conduct"**

Plaintiffs made several critical concessions that are fatal to their RICO claim against Humble. Among other things, plaintiffs concede that (i) Kovacs provided a broad general release to Humble with an effective date of June 29, 2024 (Opp. Br. 1, 6, 9); (ii) any conduct by Humble

2

before June 29, 2024 is covered by the release and cannot subject him to liability (*id.* at 6, 9, 17); and (iii) plaintiffs' allegations of "solicitation of physical harm and retaliatory litigation" are "covered by the release" and are "barred" as claims against Humble (*id.* at 5-6, 12, 15).  In light of these concessions, plaintiffs may not rely on their allegations relating to Humble's alleged pre-release conduct to support their RICO claim, and without these allegations, plaintiffs' RICO theory against Humble crumbles and falls apart.

As set forth in Humble's moving brief (Dkt. 26), it is well-settled that RICO claims must be dismissed when the underlying predicate acts and alleged racketeering activity have been released pursuant to a general release.  *See, e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 364-65 (S.D.N.Y. 2022) (dismissing RICO claims where predicate acts were encompassed by releases); *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (affirming dismissal of RICO claims because claims "settled in an earlier action . . . could not constitute predicate acts under RICO" and plaintiffs were "barred from using these claims as part of a pattern of racketeering activity"); *Equity Residential v. Kendall Risk Management, Inc.*, 2005 WL 1026686, at *5 n.5 (N.D. Ill. Apr. 12, 2005) (observing that "plaintiffs are precluded from using the Released Claims to plead their RICO claims") (citing cases).  Thus, as plaintiffs now concede, the made-up allegations about Humble engaging in a wild murder-for-hire plot and retaliatory lawfare cannot serve as predicate acts for their RICO claim.  (Opp. Br. 5-6, 12, 15).[1]

---

[1] Plaintiffs incorrectly assert that "Humble argues that Paragraph 2.B of the Release Agreement – which addresses unknown claims – expands the release beyond the Effective Date."  (Opp. Br. 9).  This is a strawman argument.  Humble never argued that the release bars future claims; it bars claims that are based on conduct alleged to have occurred prior to the release.  Here, the RICO claim should be dismissed not because the release reaches "future conduct" (*id.*), but because the alleged conduct primarily relied upon by plaintiffs to impose RICO liability on Humble occurred prior to the release.

3

Plaintiffs attempt to argue around this by referring to their numerous allegations about this alleged "pre-release conduct" as simply "context for understanding Humble's role and the Enterprise's pattern." (*Id.* at 12). However, this argument cannot withstand scrutiny for at least two reasons.

*First*, contrary to plaintiffs' post hoc revisionist history, the Complaint and its "RICO Predicate Table" make clear that the underlying predicate acts and racketeering activity that Humble allegedly engaged in include the bogus murder plot and the defamation lawsuit. (*See, e.g.*, Complaint ¶¶ 85-86, 207; Schedule D, RICO Predicate Table, pp. 81, 83). These allegations were not included merely for "context," but rather, because they were the guts of plaintiffs' claims against Humble.

*Second*, there is no support for the proposition that released conduct may be used to prove Humble's "role" in the alleged enterprise or "the Enterprise's pattern." (Opp. Br. 12). Although plaintiffs cite *Wade Park* as standing for that proposition (*id.*), it is clear that *Wade Park* does not support their argument. Plaintiffs state that "Courts routinely hold that prior acts are admissible to prove enterprise and pattern in RICO cases. *See Wade Park*, 589 F. Supp. 3d at 364-65." (Opp. Br. 12). However, the cited pages state no such thing. Instead, consistent with Humble's argument, they state that "Plaintiffs' claims almost completely rely on allegations that precede at least one of the releases," and that as a result, their RICO claims "were encompassed by the releases" and would be dismissed. *Wade Park*, 589 F. Supp. 3d at 364-65. The Court later addressed the RICO claims on the merits, not because it held that released conduct can prove enterprise and pattern, but because the Court found that "even if the claims were not released, the claims would fail for . . . additional reasons." *Id.* at 369-70, 373-84.

Plaintiffs also fail to acknowledge the other authorities cited in Humble's moving brief that make clear that released conduct cannot be used to prove enterprise and pattern. For example, in *Howard*, the Ninth Circuit expressly held that plaintiffs were "barred from using [released] claims as part of a pattern of racketeering activity." 208 F.3d at 746. In *Equity Residential*, the Court observed that "plaintiffs are precluded from using the Released Claims to plead their RICO claims," which would necessarily mean that plaintiffs could not rely on released claims to prove any element of their RICO claims. 2005 WL 1026686, at *5 n.5. Similarly, in *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, which was cited in *Equity Residential*, the Seventh Circuit affirmed the dismissal of a RICO claim because the plaintiffs could not establish each element with post-release conduct. 161 F.3d 443, 448-49 (7th Cir. 1998).

Here, too, plaintiffs cannot establish each element of their RICO claim against Humble with post-release conduct. Other than the alleged witness tampering (which was not witness tampering at all), all of the allegations regarding Humble and his role in the non-existent enterprise are based on alleged acts that took place prior to the release. For example, plaintiffs describe Humble's role as follows: "he recruited investors for Formulus Black under written agreements providing equity-linked compensation (Compl. ¶¶ 82-83); he transmitted instructions between Enterprise members (Compl. ¶ 119)[2]; he applied pressure tactics to advance Bettis and Moradi's objectives (Compl. ¶ 84); he filed retaliatory litigation at their direction (Compl. ¶ 86); and he escalated to violence solicitation and then to witness suppression when other methods failed (Compl. ¶¶ 85, 163-65, 166-74)." (Opp. Br. 13).[3]

---

[2] The Complaint is silent as to what "instructions" were allegedly transmitted by Humble. *See* Complaint ¶ 119.

[3] Plaintiffs argue that these allegations demonstrate that Humble was part of an enterprise, but these allegations do no such thing. At most, these allegations describe the predicate acts themselves, but they do not explain in non-conclusory fashion the "relationships" among defendants or how they "formed an ongoing organization." *Wade Park*, 589 F. Supp. 3d at 375.

However, other than a few communications with Ducheine in December 2024 and 2025, all of this alleged conduct took place prior to the release. The alleged recruitment of investors for Formulus Black occurred in April 2021 (Ducheine Decl., Dkt. 2-2, ¶ 15); Formulus Black began liquidation proceedings in November 2021 (Humble Decl., Dkt. 27, ¶ 18); the alleged "pressure tactics" is apparently a reference to communications with Ducheine in 2023 as well as the fake murder plot (Complaint ¶ 84, citing Ducheine Decl. ¶¶ 16-20, and DiMaggio Decl., Dkt. 2-2, ¶¶ 8-16); the allegation of "retaliatory litigation" is a reference to the defamation lawsuit that was settled by the Release Agreement (Complaint ¶ 86); and the allegation of "violence solicitation" is yet another reference to the made-up murder plot (Complaint ¶ 85).

Plaintiffs also argue that Humble's financial interest in the non-existent enterprise is directly alleged (Opp. Br. 13), but all they point to is his alleged compensation arrangement with Formulus Black (Complaint ¶¶ 82-83). However, it is undisputed that Formulus Black went into liquidation in November 2021, and that Humble lost hundreds of thousands of dollars as a result of its collapse. (Humble Decl. ¶¶ 18-19). And this all happened *years before* the Release Agreement.

### B. Plaintiffs Do Not Plausibly Allege That Humble Engaged In Witness Tampering

In a stunning departure from how their claims are plead in the Complaint, plaintiffs now argue that their RICO claim against Humble was never based on a sensational murder-for-hire plot or malicious lawfare, but instead, that the "conduct at the center of the RICO claim against Humble" was a few communications with Ducheine that are barely mentioned in the Complaint. (Opp. Br. 6; *see supra* at 1-2). Plaintiffs argue that these communications constitute witness tampering under 18 U.S.C. § 1512(b) and (d). Plaintiffs are wrong.

6

Under the federal witness tampering statute, it is an offense to knowingly intimidate, threaten or corruptly persuade another person with the intent to influence, delay or prevent the testimony of that person in an official proceeding, or to intentionally harass another person and thereby hinder, delay or prevent that person from testifying in an official proceeding. 18 U.S.C. § 1512(b), (d). The acts by Humble that plaintiffs argue constitute witness tampering do not come remotely close to satisfying these standards.

Plaintiffs allege that Humble engaged in three acts of witness tampering: (i) Humble's recording of a telephone call with Ducheine in December 2024; (ii) Humble's text messages to Ducheine in January 2025; and (iii) Humble's voicemail message to Ducheine in July 2025. (*See* Opp. Br. 1, 10-11). However, merely calling something "witness tampering" does not make it so. Beyond describing the communications themselves, plaintiffs do nothing more than allege a formulaic recitation of the elements. (Opp. Br. 10-11; Complaint ¶¶ 166-67, 170-74). They do not allege any facts purporting to demonstrate Humble's intent, or that he acted knowingly, or that he had a corrupt purpose, or how the communications were intimidating, threatening or harassing, or in what particular official proceeding he was attempting to hinder Ducheine's participation. For this reason alone, the Court should reject plaintiffs' witness tampering argument and dismiss the RICO claim. *See Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 75 (E.D.N.Y. 2020) (dismissing RICO claim where "Plaintiff has adduced no factual basis for his assertions of witness tampering, and, instead, alleges a 'formulaic recitation of the elements'"); *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 166 (E.D.N.Y. 2024) (holding that witness tampering was not adequately alleged where plaintiffs did not identify the "particular official proceeding" in which the defendant was attempting to hinder participation).

In any event, the communications themselves are not intimidating, threatening or harassing in any way, and they do not otherwise satisfy any of the elements of the witness tampering statute. Plaintiffs' gripe with these communications is that Humble recorded a conversation that he had with Ducheine, that he then provided that recording to counsel, and that he then tried to facilitate a call between Ducheine and counsel so that Ducheine could tell them what he had told Humble. In doing this, Humble did nothing more than encourage Ducheine to tell the truth and to do what Ducheine was legally entitled to do:  speak with counsel.

It is well-settled that encouraging a witness to tell the truth or to do something lawful, such as speaking with counsel, is not witness tampering.  *See, e.g.*, *U.S. v. St. John*, 267 Fed. Appx. 17, 20 (2d Cir. 2008) ("it is lawful for a defense lawyer or a representative to contact a prosecution witness"); *U.S. v. Aguiar*, 975 F.2d 45, 48 (2d Cir. 1992) (holding that it is not witness tampering if defendant "engaged in lawful conduct" and intention was to encourage witness "to testify truthfully"); *U.S. v. Johnson*, 585 F.2d 119, 128-29 (5th Cir. 1978) (holding that it is not obstruction to make "a good faith effort to obtain the presence of a reluctant witness or to urge truthful testimony").  And that is all Humble did here.  A brief analysis of the communications demonstrates this.

**December 2024 Recording.**  It is undisputed that the recording in December 2024 was of Ducheine explaining that Kovacs had tried to enlist him to fabricate a story about  Humble working with Carr Bettis to commit insider trading at AudioEye, and that Kovacs attempted to bribe Ducheine with up to "20% of all the winnings" that Kovacs would earn from a potential suit against Bettis in exchange for Ducheine's assistance.  (Humble Decl. ¶¶ 28-29).  In light of the seriousness of the accusations, Humble had every right to share the recording with counsel.

**January 2025 Text Messages.** Humble's text messages to Ducheine in January 2025 demonstrate that Humble tried to facilitate calls between Ducheine and counsel. (*See* Complaint Ex. 51, Dkt. 2-4). Humble explained that Ducheine had him worried about Kovacs' attempt to link him "with insider trading" at AudioEye, which is why he "brought the attorney on." (*Id.*). He later thanked Ducheine for speaking with counsel and for being "honest." (*Id.*).

**July 2025 Voicemail Message.** Humble had apparently received some message from Ducheine indicating that Kovacs informed Ducheine that the December 2024 recording was used in the New York state court action that Kovacs had commenced against AudioEye and others. Humble then called Ducheine and left a voicemail message stating that Kovacs was lying because, as far as he knew, the recording was never used in that lawsuit, and the lawsuit had been dismissed by the Court before the recording could even be considered. (*See* Ducheine Decl. Appendix A). Humble then reassured Ducheine that there was nothing to worry about because he had "told the truth," and the recording "was not even used in [the Court's] decision" to dismiss the case. (*Id.*).

Plaintiffs bizarrely attempt to tout this message as the "roadmap of the witness-tampering campaign." (Opp. Br. 8). If anything, the message should be a "roadmap" to dismissal. The message does not satisfy any of the elements under 18 U.S.C. § 1512(b) and (d). It does not demonstrate Humble's knowledge of any *pending* official proceeding; it is not intimidating, threatening or harassing; and it does not demonstrate any intent to influence, delay or prevent future testimony.

### C.  The Complaint Does Not Allege A Concrete Loss Caused By Humble

Plaintiffs' new RICO theory also fails because the Complaint does not adequately allege a "concrete financial loss" caused by Humble's communications. *See Rapaport v. Epstein*, 2026 WL 878714, at *12 (S.D.N.Y. Mar. 31, 2026) ("'[C]onclusory allegations of injury to pecuniary

interest' will not suffice; rather, a plaintiff must allege a 'concrete financial loss.'") (citations omitted).

Plaintiffs argue that Humble's recording caused them to "expend resources responding to that false accusation," and that "Ducheine's willingness to cooperate as a witness was chilled, impairing Plaintiffs' ability to prosecute claims with substantial economic value." (Opp. Br. 16). However, these allegations are not contained in the Complaint, and "attorney argument in a brief cannot substitute for allegations of a complaint." *City of Oakland v. Oakland Raiders*, 2019 WL 3344624, at *10 (N.D. Cal. July 25, 2019).

The Complaint contains no allegations regarding the "resources" that plaintiffs were forced to expend. Not does it allege why Ducheine was unwilling to cooperate with Kovacs, despite Ducheine testifying that he freely cooperated with Kovacs both before and after the recording (*see* Ducheine Decl. ¶¶ 17, 32-35, 41, 43-44, 66). Nor does the Complaint allege how Ducheine's alleged unwillingness to cooperate with Kovacs caused any actual harm, considering that Ducheine cooperated with Kovacs and submitted a perjurious declaration about Humble in this action within a few months of Humble's communications. Thus, without more, plaintiffs' vague and conclusory assertions of injury are plainly insufficient to satisfy the injury element of a RICO claim. *See Rapaport*, 2026 WL 878714 at *12.

## POINT II

### PLAINTIFFS ABANDONED THEIR
### REMAINING CLAIMS AGAINST MR. HUMBLE

In response to Humble's motion to dismiss, plaintiffs abandoned all of their non-RICO claims against him. They refer to their RICO claim as the "load-bearing claim," and all of the other claims against Humble as "secondary claims," which they acknowledge are "vulnerable." (Opp. Br. 2). Plaintiffs then go even further, and state that they "do not rely on those [secondary]

10

claims for purposes of defeating this motion." (*Id.* at 17).  Plaintiffs do not otherwise address any

of Humble's arguments as to why these "secondary claims" should be dismissed.

"At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the

defendant's arguments in support of dismissing that claim."  *Gonzalez v. New York City Health &*

*Hosp. Corp.*, 18-CV-2645-JPO, 2019 WL 2435622, at *5 (S.D.N.Y. June 11, 2019) (Oetken, J.)

(quotation and citations omitted).  When a claim has been abandoned, it should be dismissed with

prejudice.  *See id.* (holding that abandoned claims should be "dismissed as a matter of law").

**POINT III**

**THE COMPLAINT SHOULD BE DISMISSED WITH
PREJUDICE AND WITHOUT LEAVE TO AMEND**

*First*, any amendment is futile because Kovacs' claims against Humble are barred by a

broad general release.  *See, e.g.*, *Long v. Corning Inc.*, 847 Fed. Appx. 74, 76 (2d Cir. 2021)

(affirming District Court's order "denying Long leave to amend his complaint, in light of the

release of claims to which Long agreed").

*Second*, even apart from the release, amendment would be futile because each claim

asserted by plaintiffs against Humble fails as a matter of law for the reasons set forth above and in

Humble's moving papers.

*Third*, as discussed in Point II above, plaintiffs intentionally abandoned their "secondary

claims" against Humble.  Abandoned claims should be dismissed with prejudice and without leave

to amend.  *See, e.g.*, *E-Distributors, Inc. v. Woitkowski*, 2026 WL 925829, at *9-10 (E.D.N.Y. Apr.

6, 2026) (dismissing abandoned claims "with prejudice and without leave to amend"); *Nova v.*

*Rocker*, 2023 WL 6276504, at *3 (W.D.N.Y. Sept. 26, 2023) ("abandoned claims are dismissed

without leave to amend").

11

*Finally*, as set forth in defendants' opposition to plaintiffs' separate motion to amend, plaintiffs' approach to this litigation reeks of bad faith.  (Dkts. 37-39).  Such conduct should not be countenanced, and plaintiffs should be denied leave to amend.  *See Zerman v. E.F. Hutton & Co.*, 628 F. Supp. 1509, 1513 (S.D.N.Y. 1986) (denying leave to amend where plaintiffs "have established a pattern of bringing meritless, unfounded, extravagant and unsupported claims").

## CONCLUSION

The Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

Dated: New York, New York
April 23, 2026

DORF NELSON & ZAUDERER LLP

By:____*/s/ Grant A. Shehigian*_____
Grant A. Shehigian
90 Park Avenue
New York, New York  10016
Tel:  (212) 485-0005; Fax:  (212) 922-9072
gshehigian@dorflaw.com

*Attorneys for Defendant Jason Humble*

12

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Grant A. Shehigian, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 4(c) of Hon. J. Paul Oetken's Individual Rules and Practices in Civil Cases (the "Individual Rules"), that this Reply Memorandum of Law was prepared using Microsoft Word and the document contains 3,494 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 4(c) of Judge Oetken's Individual Rules.

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 23rd day of April, 2026, in New York, New York.

_/s/ Grant A. Shehigian_
GRANT A. SHEHIGIAN

13