UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID KOVACS, RUSSELL ALESI,
JULIAN DUCHEINE and DEMIAN
LICHTENSTEIN,

     *Plaintiffs,*

       v.

DAVID MORADI, DR. CARR BETTIS,
JASON HUMBLE, JAMIL TAHIR, JAMES
HAWKINS, DR. KATHERINE FLEMING,
TONY COELHO, KELLY GEORGEVICH,
JAMES SPOLAR, MALONEBAILEY LLC,
AUDIOEYE, INC. and JOHN DOE 1-50,

     *Defendants,*

       and

ETERNAL SOURCES TECH PARTNERS
LLC, FIRST CONTACT
ENTERTAINMENT, INC., FORMULUS
BLACK, INC.,

     *Nominal Defendants.*

Case No. 25-CV-10336 (JPO)

MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

JOHN H. SNYDER PLLC

John H. Snyder, Esq.
157 East 81st Street, Suite 3A
New York, NY 10028
(917) 292-3081
john@jhs.nyc

*Counsel for Plaintiffs*

*April 27, 2026*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT .......................................................................................................................... 5

I. Rule 11 Does Not Authorize Parallel Litigation of a Pending Rule 12(b)(6) Motion.............. 5

II. Defendants' Res Judicata Theory Is a Contested Merits Argument, Not a Sanctions Basis. 7

    A. Plaintiffs' Preclusion Position Is Objectively Colorable. ................................................... 7

    B. Neither State-Court Decision Adjudicated the Federal Claims. ....................................... 9

    C. The Rule 11 Inquiry Ends With Objective Colorability. ................................................ 10

III. Papaya Does Not Apply Because This Is Not a Cloned-Litigation Case. .......................... 10

IV. The Federal Claims Are Objectively Colorable. ................................................................ 12

V. Sussman Forecloses the Improper-Purpose Theory. .......................................................... 16

    A. Subjective Animus Does Not Sanction an Objectively Warranted Filing. ...................... 16

    B. The January 2024 Recording Predates the Conduct at Issue. ........................................ 17

VI. The TRO Ruling Does Not Establish Rule 11 Frivolousness. ........................................... 20

VII. § 1927 and Inherent-Authority Sanctions Fail for Lack of Bad Faith. .............................. 21

VIII. The Safe-Harbor Notice Did Not Identify Discrete Sanctionable Conduct. .................. 21

RESERVATION OF RIGHTS ............................................................................................... 22

CONCLUSION .................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. IBM*, 110 F.4th 106 (2d Cir. 2024) .......................... 12, 19

*Boyle v. United States*, 556 U.S. 938 (2009) ................................................................. 15, 16

*Cantore v. City of New York*, 2017 WL 11501442 (S.D.N.Y. Sept. 15, 2017) ................................. 13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ................................................................. 27

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) ........................................................ 9, 10, 19

*Fischer v. Brushy Mountain Bee Farm, Inc.*, 2023 WL 8603027 (S.D.N.Y. Dec. 12, 2023) ................. 10

*Gross v. Glick*, 183 A.D.2d 748 (2d Dep't 1992) .............................................................. 11

*Hameed v. Aldana*, 296 F. App'x 154 (2d Cir. 2008)........................................................... 13

*LCS Group, LLC v. Shire Dev. LLC*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022)............................. 16

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)........................................................... 27

*Papaya Gaming, Ltd. v. Fair Play For Mobile Games*, 2026 WL 558698 (S.D.N.Y. Feb. 27, 2026)  3, 13, 14, 15, 21

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003) ........................................... 9, 10, 13, 19

*Sussman v. Bank of Israel*, 56 F.3d 450 (2d Cir. 1995) ..................................................... 20, 21

*TAL Properties of Pomona, LLC v. Vill. of Pomona*, 2023 WL 2924571 (2d Cir. Apr. 13, 2023) ......... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ....................................... 17

*Kovacs v. AudioEye, Inc., et al.* (Sup. Ct. N.Y. Cnty.) (Patel, J.) ("*Kovacs I*") ................................ passim

*Kovacs v. AudioEye, Inc., et al.* (Sup. Ct. N.Y. Cnty.) (Cohen, J.) ("*Kovacs II*")............................ passim

**Statutes & Rules**

15 U.S.C. § 78j(b) (Securities Exchange Act § 10(b)) ........................................................ passim

18 U.S.C. § 1512.................................................................................................. 11, 15, 19

18 U.S.C. § 1961 et seq. (RICO) ................................................................................ passim

28 U.S.C. § 1927.................................................................................................. 26, 27

29 U.S.C. § 1140 (ERISA § 510)................................................................................. 11

Dodd-Frank § 21F (15 U.S.C. § 78u-6)........................................................................ 5, 11

CPLR 3211(a)(4) ................................................................................................. 11

CPLR 3211(a)(5) ................................................................................................. 13

CPLR 3211(a)(7) ................................................................................................. passim

Fla. Stat. § 768.72................................................................................................ 3

Fed. R. Civ. P. 11................................................................................................ passim

Fed. R. Civ. P. 12(b)(6)......................................................................................................... passim

Fed. R. Civ. P. 15....................................................................................................................... 9

N.Y. Labor Law § 740 ....................................................................................................... passim

**PRELIMINARY STATEMENT**

Defendants' Rule 11 motion is a second bite at their fully-briefed, but undecided, motion to dismiss — masquerading as a sanctions motion. It restates the arguments already pending under Rule 12(b)(6) and asks the Court to resolve them as sanctions before deciding whether the Complaint states a claim. A Rule 11 motion is not supposed to be an exclamation mark following a motion to dismiss to emphasize how badly the Defendants want that motion to be granted.

Defendants are explicit in their tandem-motion approach. The sanctions memorandum incorporates the motion-to-dismiss arguments. ECF No. 47 at 10 n.5. Defendants' April 23, 2026 reply on the motion to dismiss then points back to the separate sanctions motion as part of the same fee-shifting effort. ECF No. 50 at 3 n.1. The same arguments are asserted in two parallel motions.

Rule 11 does not authorize such a procedure. The Second Circuit and this Court have repeatedly cautioned against using Rule 11 as a substitute for Rule 12(b)(6), particularly before the merits motion has been decided. Where, as here, the same arguments are pending under Rule 12(b)(6), the proper course is to decide the merits motion first and address fee-shifting, if at all, on the record that follows.

The sanctions theory also fails on its own terms. Defendants' April 23 reply brief on the motion to dismiss acknowledges that the Complaint asserts claims based on events postdating *Kovacs I*. Conceding this, Defendants fall back to claiming those allegations are merely additional instances or corroboration of conduct already alleged. Defendants also change position on the preclusion date, claiming for the first time the relevant date is June 26, 2024 and not April 5, 2024. ECF No. 50 at 3. That shift underscores the point: Defendants are making a contested merits argument, not identifying sanctionable conduct.

1

Even allowing for Defendants' preferred date, the principal conduct underlying the Complaint postdates June 26, 2024. That conduct includes $35.2 million in coordinated insider sales, with approximately $30 million in single-day sales on December 4, 2024; the witness-tampering campaign from December 2024 through July 2025; the April 2025 Arizona collection action; the June 3, 2025 home-address confirmation; the July 24, 2025 Humble voicemail; and the November 2025 interference with a senior advisor to Mayor Adams. The demonstrative attached as Schedule A traces that chronology against AudioEye's daily share price.

The two state-court decisions Defendants invoke did not adjudicate the federal claims pleaded here. Justice Patel dismissed *Kovacs I* on a pleading-stage CPLR 3211(a)(7) record directed to New York Labor Law § 740 retaliation and IIED, after the defamation and tortious-interference claims had been abandoned, and expressly framed the matter as "not a securities fraud action" but "an employment case." *Kovacs I* Op. at 3–4. The decision involved no discovery, no factfinding, and no adjudication of the factual merits of any federal securities, RICO, Dodd-Frank, or ERISA claim. The federal Complaint addresses the deficiencies Justice Patel did identify: it identifies the "trades or transactions that were executed as part of the alleged scheme" and pleads disclosure of the purported illegal activity. *Id.* at 5–6. Justice Cohen dismissed *Kovacs II* — a state-law RSU compensation action — on res judicata and prior-action-pending grounds, and expressly declined to reach the separate CPLR 3211(a)(7) arguments. *Kovacs II* Op. at 1–3. Whatever preclusive effect Defendants contend those decisions should have, neither state court adjudicated the federal claims pleaded here, and Defendants have not shown that the later conduct, additional defendants, and federal predicates pleaded here were claims Plaintiffs could have brought in the prior state actions.

Defendants' factual theory fares no better. It rests primarily on a recorded January 17, 2024 telephone call — months before Mr. Kovacs reported the conduct to the SEC, before the $35.2 million in insider sales, and before the witness-tampering predicates that anchor the federal claims.

2

Mr. Kovacs, speaking on January 17, 2024, could not logically admit the purported falsity of allegations about occurrences six, twelve, or even eighteen months into the future. Defendants' reliance on a Florida punitive-damages proffer under Fla. Stat. § 768.72 is equally misplaced. That ruling addressed a permissive pleading-stage threshold in a Florida defamation action. It did not adjudicate federal claim sufficiency, securities fraud, insider trading, or obstruction.

Defendants' lead authority — *Papaya Gaming, Ltd. v. Fair Play For Mobile Games*, 2026 WL 558698 (S.D.N.Y. Feb. 27, 2026) — confirms the distinction. *Papaya* sanctioned a plaintiff who refiled in another district claims that "repeated in all material respects" claims already rejected by the same federal court. This Complaint presents federal causes of action no court has previously adjudicated, predicated in substantial part on conduct postdating the prior state actions and on additional defendants who never appeared in either prior case.

For purposes of this motion, the Court need not decide whether the Complaint survives Rule 12(b)(6). It need decide only whether the filing was so objectively baseless that no competent lawyer could have filed it after reasonable inquiry. It was not. Plaintiffs respectfully request that the motion be denied.

## BACKGROUND

Plaintiffs filed the Complaint on December 12, 2025. ECF No. 1. The Court denied Plaintiffs' application for a temporary restraining order on December 17, 2025. ECF No. 10. On February 27, 2026, three separate motions to dismiss were filed: Defendants AudioEye and Moradi (ECF Nos. 22, 23); Defendant Humble (ECF Nos. 25, 26); and Defendant Bettis (ECF No. 32). Plaintiffs opposed on April 6, 2026. ECF Nos. 41, 42. On April 23, 2026, Defendants filed three replies: the AudioEye/Moradi reply, ECF No. 50; Mr. Humble's separate reply, ECF No. 51; and Mr. Bettis's three-page reply adopting the AudioEye/Moradi reply, ECF No. 52. The motions to dismiss are fully briefed and undecided.

3

On March 20, 2026 — three weeks after filing their motion to dismiss — Defendants served a Rule 11 notice and draft sanctions motion. The notice consists of a one-page cover letter incorporating the draft motion by reference. It identifies neither any discrete factual contention they claim to be unsupported nor any specific legal argument outside Rule 11(b)(2). The draft motion papers, substantially identical to the motion now before the Court (ECF Nos. 45, 46, 47), restate the same arguments Defendants advanced under Rule 12(b)(6).

Plaintiffs responded by letter on April 6, 2026, the same day Plaintiffs' motion-to-dismiss oppositions were filed. The letter explained that the principal federal claims — civil RICO, securities fraud under § 10(b), and whistleblower retaliation under Dodd-Frank § 21F — arise from conduct substantially postdating both prior state actions. It also explained that the deficiency identified in *Kovacs I* — failure to identify specific trades — had been cured by the identification of $35.2 million in insider sales by specific insiders on specific dates. Plaintiffs declined to withdraw the Complaint and identified the substantive basis for that decision. Defendants filed this motion seven days later. The April 6 letter included the demonstrative annexed to the end of this brief.

Plaintiffs' oppositions to the motions to dismiss set out the factual sequence in detail. See ECF No. 41 at 5–8; ECF No. 42 at 3–9. Two points bear emphasis here.

First, the Complaint alleges a course of retaliation and obstruction that escalated over two years. The great majority of that conduct postdates the April 5, 2024 filing of *Kovacs I* or even the June 26, 2024 amended complaint. The principal post-filing events include $35.2 million in alleged coordinated insider sales between June 2024 and January 2025, Compl. ¶ 139; the December 2024 secret recording of Julian Ducheine and ensuing pressure campaign through July 2025, Compl. ¶¶ 166–73; the April 2025 Arizona collection action over a 2017 loan that had been repaid, Compl. ¶ 147; the June 3, 2025 meeting confirming knowledge of Mr. Kovacs's home address, Compl. ¶ 153; the July 24, 2025 Humble voicemail confirming ongoing coordination with Bettis, Compl. ¶

4

172; and the November 2025 interference with a senior advisor to Mayor Adams, Compl. ¶¶ 175–76. Those allegations are supported by nineteen sworn declarations, more than 100 exhibits, Form 4 trading data drawn from public SEC filings, contemporaneous communications, business records, and other materials.

Second, the January 17, 2024 call on which Defendants rely must be understood in context. Mr. Kovacs had worked for AudioEye for approximately a decade. The call occurred while a senior company figure was informing him that he would be terminated, at a moment when Mr. Kovacs understood that he was losing employment, stock rights, and, most notably, his health coverage. He reacted with agitation in a moment of obvious personal and professional crisis. But the call predated his SEC whistleblower complaint, the $35.2 million in insider sales, the alleged witness-tampering campaign, and the other post-termination events that form the core of the federal claims. The stock rose in the weeks after the call.

## ARGUMENT

### I. Rule 11 Does Not Authorize Parallel Litigation of a Pending Rule 12(b)(6) Motion.

Defendants' sanctions motion should be denied because it asks the Court to decide the pending motion to dismiss under a sanctions standard before deciding the motion to dismiss itself. The two motions rest on the same arguments. Rule 11 cannot be used that way.

Rule 11 sanctions are an extraordinary remedy, not a parallel fee-shifting mechanism for disputed merits arguments. The Advisory Committee Notes emphasize that Rule 11 sanctions are designed "to deter rather than to compensate," and that any fee award should be limited to expenses and attorneys' fees "directly and unavoidably caused" by the alleged certification violation. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. The rule also remains objective: courts must "avoid using the wisdom of hindsight" and instead "test the signer's conduct

5

by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. That framework applies directly here because Defendants ask the Court to convert contested Rule 12 arguments into sanctions before the Rule 12 motions have been decided.

That standard reflects Rule 11's limited role. The 1993 Note states the limitation directly: Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Rule 12(b)(6) is the mechanism for testing legal sufficiency. Rule 11 polices conduct, not outcomes.

Where a Rule 12(b)(6) motion attacks the same claims as legally insufficient, courts routinely deny or defer Rule 11 motions until the merits motion is decided. The reason is practical and doctrinal. If the claims survive Rule 12(b)(6), that will strongly confirm they are not sanctionably frivolous. If they do not, the Court can address fee-shifting, if appropriate, on the record that follows.

Defendants' own filings confirm the overlap. Their sanctions memorandum incorporates the motion-to-dismiss arguments. ECF No. 47 at 10 n.5. Their reply on the motion to dismiss points to the sanctions motion as part of the same fee-shifting effort. ECF No. 50 at 3 n.1. Plaintiffs have twice consented to Defendants' requests for additional pages as a matter of professional courtesy — first when the AudioEye/Moradi Defendants sought leave to file a 14,000-word memorandum in support of their motion to dismiss (ECF Nos. 19, 20), and again when those Defendants sought leave to file a 4,500-word reply (ECF Nos. 48, 49). Plaintiffs do not object to reasonable accommodations of that kind. The requests are relevant here only because they illustrate the nature of Defendants' motion. A position requiring 14,000 words of opening merits briefing, a separate sanctions schedule, and incorporation of the Rule 12(b)(6) arguments by

6

reference is not the kind of self-evident frivolousness Rule 11 addresses. It is a merits dispute. If Defendants prevail on those arguments, they will prevail on the motion to dismiss. That is the proper vehicle. Rule 11 is especially inappropriate where, as here, Plaintiffs have already signaled an intent to refine the pleading through ordinary Rule 15 procedures. *See* ECF Nos. 36, 40. The sanctions motion should be denied on that basis alone.

## II. Defendants' Res Judicata Theory Is a Contested Merits Argument, Not a Sanctions Basis.

Defendants' res judicata theory presents a contested merits question: which date marks the relevant preclusion line, and how far the two state-court decisions reach. That dispute is for the pending motion to dismiss. It does not establish objective frivolousness.

The theory fails as a sanctions basis for two reasons. First, the principal claims arise from conduct that postdates any plausible preclusion line. Second, neither state-court decision adjudicated the federal causes of action pleaded here, and the question whether they could have been brought turns on contested issues of preclusion scope, additional defendants, and post-filing conduct. Second Circuit law confines claim preclusion to claims the prior court could have heard when the prior action was filed. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139–40 (2d Cir. 2000); *Storey*, 347 F.3d at 383. Claim preclusion may bar claims not actually litigated if they could have been raised. But Rule 11 asks a narrower question: whether Plaintiffs' contrary position was objectively frivolous. Given the later conduct, additional defendants, federal theories, and post-filing predicates alleged here, it was not.

### A. Plaintiffs' Preclusion Position Is Objectively Colorable.

Plaintiffs' preclusion position rests on Second Circuit authority and a dated chronology. Even under Defendants' newly preferred line — June 26, 2024 — the principal conduct alleged in the Complaint postdates the line. That is enough to defeat sanctions.

Defendants' April 23 reply attempts to move the preclusion line from the April 5, 2024 filing of *Kovacs I* to the June 26, 2024 amended complaint, relying on *Curtis* and *Fischer v. Brushy Mountain Bee Farm, Inc.*, 2023 WL 8603027 (S.D.N.Y. Dec. 12, 2023). ECF No. 50 at 3. Whether that line is correct is a merits question. For Rule 11 purposes, the point is narrower: Plaintiffs' position rests on *Storey*, *Curtis*, a paragraph-by-paragraph chronology, and nineteen sworn declarations. A competent attorney could reasonably adopt it.

Even if the Court uses June 26, 2024, the central events remain outside the line: the bulk of the $35.2 million in Form 4 insider sales, including the December 4, 2024 transactions; the December 2024 through July 2025 witness-tampering campaign; the April 2025 Arizona collection action; the June 3, 2025 home-address confirmation; the July 24, 2025 Humble voicemail; and the November 2025 interference with a senior advisor to Mayor Adams.

Defendants label this conduct "additional instances of what was previously asserted." ECF No. 50 at 6 (citing *TAL Properties of Pomona, LLC v. Vill. of Pomona*, 2023 WL 2924571 (2d Cir. Apr. 13, 2023)). The label does not fit. The pre-amendment retaliation alleged in *Kovacs I* concerned Mr. Kovacs's January 2024 termination and immediate aftermath. The later witness tampering concerns the alleged suppression of third-party testimony eight months later, involving different acts, different actors in many respects, and independent statutory predicates under 18 U.S.C. § 1512. These are not mere additions to an employment dispute.

Nor is the later conduct merely "corroboration." ECF No. 50 at 6. The December 2024 Ducheine recording is alleged as a foundational § 1512 act. The July 24, 2025 voicemail is alleged as an obstruction predicate confirming the secret recording and its use in litigation. The June 3, 2025 Wilkerson meeting is alleged to establish that Mr. Kovacs's home address had been provided to a third party in connection with the solicitation of harm. None of those events could have appeared in a pleading filed before they happened.

8

**B. Neither State-Court Decision Adjudicated the Federal Claims.**

Neither *Kovacs I* nor *Kovacs II* reached the federal RICO, § 10(b), Dodd-Frank, or ERISA claims pleaded here. Whether those decisions nonetheless preclude this action is a merits question. It is not so plain that no competent lawyer could conclude otherwise.

Justice Cohen dismissed *Kovacs II* on October 8, 2025 under CPLR 3211(a)(5) and CPLR 3211(a)(4), without reaching the separate CPLR 3211(a)(7) merits arguments. *Kovacs II* Op. at 3. *Kovacs II* was a narrow state-law RSU contract action asserting breach of contract, breach of the implied covenant, unjust enrichment, quantum meruit, and conversion. *Id.* at 1. It did not assert civil RICO, § 10(b), Dodd-Frank § 21F, or ERISA § 510. It named only AudioEye and Moradi — not Bettis, MaloneBailey, or the other federal defendants. Justice Cohen relied on *Gross v. Glick*, 183 A.D.2d 748 (2d Dep't 1992), a state-law employment-adjacent preclusion decision. *Kovacs II* Op. at 2. Defendants cite no authority extending *Gross* to bar federal RICO, securities, Dodd-Frank, and ERISA claims against different defendants based on later conduct.

*Kovacs I* was likewise limited. Justice Patel expressly framed the case before her as "not a securities fraud action" but "an employment case" addressing whether the amended complaint stated a New York Labor Law § 740 retaliation claim. *Kovacs I* Op. at 4. The decision adjudicated two claims: § 740 retaliation and IIED. *Id.* at 1. It did not consider federal RICO, § 10(b), Dodd-Frank, or ERISA. That framing alone gave Plaintiffs' counsel a reasonable basis to conclude that later federal securities and RICO claims, supported by specific post-pleading trades and later alleged obstruction, were not precluded.

New York's transactional test does not suggest a different result. The test asks whether claims "arise out of the same transaction or series of transactions" and considers whether "the facts are related in time, space, origin, or motivation, that they form a convenient trial unit, and that their treatment as a unit conforms to the parties' expectations." *Beijing Neu Cloud Oriental Sys. Tech.*

9

*Co. v. IBM*, 110 F.4th 106, 114 (2d Cir. 2024). This Complaint names eight individual defendants, an auditor, and three nominal defendants who never appeared in *Kovacs I* or *Kovacs II*. It alleges an enterprise operating across four entities over more than a decade. And substantial conduct underlying the federal claims postdates the *Kovacs II* filing. Plaintiffs could not have pleaded events before they occurred.

Defendants' citations to *Hameed v. Aldana*, 296 F. App'x 154 (2d Cir. 2008), and *Cantore v. City of New York*, 2017 WL 11501442 (S.D.N.Y. Sept. 15, 2017), do not change the result. Those cases stand for the unremarkable proposition that a res judicata dismissal can qualify as a final judgment for preclusion purposes. Neither holds that a CPLR 3211(a)(5) dismissal of a narrow RSU contract action precludes later federal RICO, securities, Dodd-Frank, and ERISA claims against different defendants based on later conduct.

### C. The Rule 11 Inquiry Ends With Objective Colorability.

The Court need not decide the preclusion issue now. It need decide only whether Plaintiffs' position was objectively colorable. It was. Plaintiffs' position rests on *Storey* and *Curtis*; a detailed chronology; nineteen sworn declarations; the SEC-filed Form 4 record; and the text of two state-court decisions that did not adjudicate the federal claims at issue. The mere possibility that Defendants' res judicata theory may succeed on the merits is no basis for sanctions.

### III. Papaya Does Not Apply Because This Is Not a Cloned-Litigation Case.

Defendants' reliance on *Papaya* fails because *Papaya* sanctioned a plaintiff who refiled claims that "repeated in all material respects" claims already rejected by the same federal court. This Complaint presents federal causes of action no court has previously adjudicated, predicated in substantial part on conduct postdating the prior state actions and on additional defendants who were not parties to those proceedings and whose alleged roles are tied in substantial part to later conduct.

10

*Papaya Gaming, Ltd. v. Fair Play For Mobile Games*, 2026 WL 558698 (S.D.N.Y. Feb. 27, 2026), was a second-bite case. The plaintiff first asserted counterclaims in the same federal action. Judge Cote dismissed them. Papaya moved for leave to amend; that motion was denied. Papaya then filed a new action in the Eastern District of Virginia asserting essentially the same Website and Interview Scheme allegations against Skillz-related actors. The transferring judge described the maneuver as a "blatant[] attempt to get a second bite at the apple" after rejection of "virtually identical claims." *Id.* When the case returned to Judge Cote, she sanctioned Papaya and its counsel for filing claims that "repeated in all material respects" the already-rejected counterclaims. Defendants quote that rule. ECF No. 47 at 10–11.

This case is different. Plaintiffs have not refiled claims already rejected by this Court in another district. No federal court has adjudicated the RICO, § 10(b), Dodd-Frank, or ERISA claims. The prior state cases were an employment retaliation case and an RSU contract case. This action rests on later alleged obstruction, later trading data, additional defendants, and federal statutory theories never adjudicated before.

Four distinctions defeat the analogy. First, the conduct is not the same. *Papaya* involved counterclaims based on the same alleged conduct already adjudicated; this case centers on conduct postdating *Kovacs I*. Second, the procedural history is different. *Papaya* was the same federal court's third encounter with the same claims; this is the first federal action to consider these federal causes of action. Third, the defendant set is materially different. This Complaint names eight individual defendants, an auditor, and three nominal defendants who never appeared in *Kovacs I* or *Kovacs II* and are not analogous Skillz affiliates. Fourth, the posture is different. Judge Cote imposed sanctions only after twice rejecting the claims on the merits. Defendants here seek sanctions before the Court has decided the motion to dismiss.

Held to its actual rule, *Papaya* does not reach this Complaint.

11

## IV. The Federal Claims Are Objectively Colorable.

Rule 11 asks whether counsel had a reasonable factual and legal basis to file. Counsel had nineteen sworn declarations, more than 100 exhibits, the SEC-filed Form 4 record, and contemporaneous documents. The federal claims are not just objectively colorable. They rest on a substantial record assembled before filing.

Defendants characterize the Complaint as a "118-page RICO complaint" over an "employment dispute," as if size and subject matter were sanctionable. They are not. Rule 11 asks whether the claims are well grounded in fact and warranted by law. They are.

**Civil RICO.** Plaintiffs' April 6 oppositions set out how the Complaint pleads each element. ECF No. 41 at 13–16; ECF No. 42 at 12–17. The Complaint alleges an association-in-fact enterprise — Moradi as architect, Bettis as governance stabilizer, Humble as intermediary — operating through four entities over more than a decade, with predicate acts including witness tampering under 18 U.S.C. § 1512 and wire fraud. *Boyle v. United States*, 556 U.S. 938, 944–48 (2009), rejected the argument that a RICO enterprise must have formal structure or hierarchy. The Complaint pleads role differentiation, longevity, common purpose, and continuing coordination.

Defendants dispute that characterization. ECF No. 50 at 8–9; ECF No. 52 at 2. That is a merits dispute. The substantive allegations against Bettis, for example, allege formal leadership positions, control over access to boards, auditors, and counsel, and gatekeeping authority over whether internal complaints advanced or were suppressed. Compl. ¶ 118. Those allegations track the structural attributes *Boyle* identifies. *Boyle*, 556 U.S. at 945–48. Defendants may argue they are insufficient. They cannot fairly call them sanctionable.

Defendants' reliance on *LCS Group, LLC v. Shire Dev. LLC*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022), is misplaced. *LCS Group* affirmed sanctions where the RICO theory was frivolous on

12

"even a cursory review of RICO case law." This Complaint pleads a *Boyle*-compliant association-in-fact enterprise, post-release witness-tampering predicates, and alleged financial harms. It is not *LCS Group*.

**Securities fraud.** The Complaint identifies $35.2 million in specific insider trades by specific insiders on specific dates, with no disclosed Rule 10b5-1 plans. Compl. ¶ 139; Schedule E. It includes approximately $30 million in single-day sales on December 4, 2024. Approximately three weeks before the December 4 cluster, AudioEye's CEO and CFO sold substantial personal AudioEye shares in November 2024. Mr. Moradi made personal sales in November 2024 in addition to approximately $21.6 million in December 2024, none disclosed under any Rule 10b5-1 plan. Compl. ¶ 71. Ms. Georgevich, AudioEye's CFO, sold more than $300,000 of AudioEye stock in or about November 2024 while alleged to have been in possession of material nonpublic information. Compl. ¶ 94. The Complaint's scienter theory rests on the magnitude, concentration, and temporal sequence of those Form 4 trades — factors that contribute to the "cogent and at least as compelling" inference *Tellabs* requires. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Justice Patel dismissed the *Kovacs I* § 740 claim in part because the prior pleading "does not allege that any activity related to th[e] proposed scheme occurred." *Kovacs I* Op. at 5. The federal Complaint pleads that activity, based on SEC filings that came into existence after the *Kovacs I* amended complaint. At minimum, the sworn declaration of Mario Rodriguez supplied counsel with a nonfrivolous factual basis to plead that Mr. Kovacs had raised and refused to participate in proposed insider-trading conduct before his termination. Mr. Rodriguez attests that on or about August 30, 2023 — within the August 26 through September 5, 2023 window Justice Patel identified, *see Kovacs I* Op. at 2 — he was physically present and overheard a speakerphone conversation between Mr. Moradi and Mr. Kovacs in which Mr. Moradi discussed using a VPN to avoid detection of insider trading in AudioEye stock and Mr. Kovacs refused to participate.

13

Compl. Ex. 7 ¶¶ 3–8. Whether such testimony ultimately establishes securities fraud is for the merits. For Rule 11 purposes, it is more than enough to support reasonable belief at filing.

**Whistleblower retaliation.** Justice Patel also found that Mr. Kovacs had failed to allege that he threatened to disclose or disclosed the purported illegal activity. *Kovacs I* Op. at 6. The federal Complaint cures that deficiency. The Dodd-Frank retaliation theory is anchored in Mr. Kovacs's April 8, 2024 SEC report. The Complaint also pleads earlier internal and DOJ disclosures — including the November 13, 2023 HR report, the January 17, 2024 disclosure to AudioEye's Executive Chairman, and the February 8, 2024 DOJ report — as context, notice, and evidence of retaliatory motive. The January 17, 2024 disclosure to Mr. Bettis is preserved on the recording Mr. Bettis himself made of that call — the same recording Defendants now invoke as the basis for this sanctions motion. AudioEye and Moradi filed the Florida defamation action two days after the SEC report. The Dodd-Frank theory rests in part on temporal proximity between the SEC report and retaliatory litigation conduct, which is a recognized method of pleading retaliatory inference at the threshold stage.

Defendants also point to Plaintiffs' narrowing of certain secondary claims. ECF No. 50 at 2–3. But ordinary refinement is not frivolousness. Plaintiffs' April 6 oppositions identified claims they would not press as standalone causes of action, including SOX § 806 because of administrative-exhaustion concerns, and acknowledged procedural challenges with derivative claims. ECF No. 41 at 19, 22–23. That is exactly the kind of narrowing Rule 11 is designed to encourage.

Plaintiffs' April 6 oppositions to the motions to dismiss already addressed the authorities Defendants now invoke as grounds for sanctions. ECF Nos. 41, 42. Plaintiffs briefed *Beijing Neu Cloud*, *Curtis*, and *Storey* on the preclusion line and the rule that later-arising claims are not barred. Plaintiffs briefed the governing association-in-fact enterprise authorities and the § 1512 witness-

14

tampering framework. The merits questions Defendants now reframe as sanctions theory were squarely confronted in 50 pages of merits briefing before this motion was filed. Defendants may disagree with Plaintiffs' position on the merits. Disagreement with a developed, authority-based claim is not Rule 11 frivolousness.

**Sanctions Against Counsel.** Defendants seek sanctions not only against Mr. Kovacs, but also against undersigned counsel. ECF Nos. 45, 47. As to counsel, the Rule 11 question is whether counsel had an objectively reasonable basis to file after reasonable inquiry. The purpose for filing was set forth in the Complaint and in the TRO record already before the Court: to present a serious, escalating factual record, preserve evidence, protect witnesses, and obtain process-protective relief. *See* Compl., ECF No. 1; TRO Mot., ECF No. 2; TRO Mem., ECF No. 3.

Counsel did not file on a bare client narrative. The Snyder Declaration describes counsel's pre-filing investigation: review of sworn declarations, contemporaneous communications, official filings, public records, and other materials; direct communications with numerous witnesses possessing firsthand knowledge; and evaluation of witness reluctance and withdrawal arising from fear of retaliation, lawfare, reputational attack, and economic harm. Snyder Decl., ECF No. 2-12 ¶¶ 8, 13–16. The declaration also explains that two witnesses declined to execute prepared declarations after detailed interviews without disputing the truth of the statements, citing fear of retaliation as the reason. *Id.* ¶ 14. Those facts do not ask the Court to resolve credibility on a sanctions motion. They show a documented investigation before filing.

The TRO memorandum confirms the same point. Plaintiffs explained that the evidentiary submission served three legitimate functions: protection of parties and witnesses, promotion of responsible governance review, and provision of a factual basis for interim relief. TRO Mem., ECF No. 3 at 2–3. The memorandum also included Schedule L, a Load-Bearing Facts table mapping twenty-five core factual propositions to primary sources, indicating whether each fact was

15

reasonably disputed, whether it was credibility-dependent, and what independent corroboration existed. *Id.* at 12–15. That table identified support from recordings, HR emails, termination letters, Akin Gump correspondence, court filings, SEC Forms 4, government submissions, UPS records, and other documents. *Id.* The matrix reflects counsel's effort to identify, before seeking relief, the factual foundation for each core proposition with precision.

Defendants' remaining arguments are merits arguments. The pending motion to dismiss is the proper vehicle for them.

## V. Sussman Forecloses the Improper-Purpose Theory.

Defendants' improper-purpose theory fails because the Second Circuit has held that "a determination of improper purpose must be supported by a determination of frivolousness when a complaint is at issue." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). Once the underlying claims are objectively colorable, subjective animus does not make the filing sanctionable.

Defendants rely on statements plucked out of context from the January 17, 2024 phone call that Bettis secretly recorded without Mr. Kovacs's knowledge. During that call, Mr. Kovacs was in an agitated state after learning of his firing and possible loss of health coverage. The argument fails twice. As a matter of law, hostility toward an adversary does not support Rule 11(b)(1) sanctions where the claims are objectively warranted. As a factual matter, a January 2024 call cannot admit the falsity of allegations about events that had not yet occurred.

### A. Subjective Animus Does Not Sanction an Objectively Warranted Filing.

*Sussman* is dispositive. Where the underlying claims are objectively warranted, subjective hostility — even substantial hostility — does not make the filing sanctionable. 56 F.3d at 457–59. The Second Circuit has expressly addressed mixed motives: "A party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple

16

purposes in seeking that relief may have been improper." *Id.* at 459. Otherwise, Rule 11(b)(1) would reach any hard-fought case in which a litigant expressed anger toward an adversary.

The federal claims here clear the colorability threshold. Sections II through IV explain why the preclusion theory is contested, why *Papaya* does not control, and why the federal claims are grounded in law and fact. Once that threshold is met, Rule 11(b)(1) is unavailable. Statements from a January 2024 call cannot supply an improper purpose for an objectively warranted Complaint filed nearly two years later.

## B. The January 2024 Recording Predates the Conduct at Issue.

The January 17, 2024 call predates the post-termination events that anchor the federal claims. Mr. Kovacs could not, on that date, admit the falsity of allegations about events six, twelve, and eighteen months later.

The call occurred during a contentious termination after approximately a decade of employment, when Mr. Kovacs understood that he was losing employment, stock rights, and required health coverage. It was a hot phone call, but importantly, it predated the SEC report, the $35.2 million in insider sales, the alleged witness-tampering campaign, and the other later conduct pleaded in the Complaint.

The supporting record is substantial. Plaintiffs rely on sworn declarations from Mr. Kovacs, Julian Ducheine, Nicky DiMaggio, Mario Rodriguez, Paul Arena, Richard Tannenbaum, among others, each addressing distinct aspects of the alleged obstruction or the underlying scheme. The June 3, 2025 confirmation that a third party associated with Mr. Humble's circle knew Mr. Kovacs's home address — "[y]ou're the guy who lives at the start of Park Avenue" — is reflected in the DiMaggio declaration and a contemporaneous police report. Compl. ¶ 153 & Ex. 93. The July 24, 2025 Humble voicemail is alleged to confirm ongoing coordination with Bettis. Compl. ¶

17

172. Mr. Kovacs filed his December 17, 2025 emergency application publicly on ECF, subjecting the allegations to Rule 11, adversary testing, and judicial review.

The information underlying the Complaint came from multiple independent sources. Each declarant executed a sworn declaration after being told that the declaration was made under penalty of perjury. The Complaint was based on a several-month investigation, with sworn testimony and corroborating documents and public records.

Defendants disagree about certain facts stated in the Complaint. That is a merits dispute. Mr. Humble's reply on the motion to dismiss characterizes Mr. Ducheine's sworn declaration in this action as "perjurious." ECF No. 51 at 10. Humble's argument illustrates the key point. Defendants and Plaintiffs disagree about the credibility of sworn testimony filed in this Court. Credibility disputes about sworn testimony are contested merits questions, not a basis for Rule 11. Rule 11 does not authorize sanctions because the moving party disputes a declaration; resolving such disputes is the function of discovery, summary judgment, and, ultimately, the jury.

Defendants do not show that Plaintiffs' factual record was so objectively deficient that no competent attorney could rely on it. Plaintiffs have placed the supporting record before the Court: nineteen sworn declarations from witnesses with firsthand knowledge of the events at issue, more than 100 exhibits, and the SEC-filed Form 4 record reflecting $35.2 million in clustered insider sales by Mr. Moradi, Mr. Bettis, and other insiders. Defendants' motion does not address the sufficiency of that record. It addresses preclusion theory and the characterization of other proceedings — questions for the motion to dismiss, not for Rule 11. Mr. Moradi and AudioEye placed the underlying conduct at issue on a public court record by suing Mr. Kovacs in Florida for defamation on the precise question whether Mr. Moradi engaged in stock fraud. Having placed that issue in dispute, Moradi and AudioEye cannot now recast Plaintiffs' record-based response as

18

sanctionable. The federal record now before this Court reflects the SEC-filed trading data that has emerged since.

The Florida record also undercuts Defendants' sanctions theory. AudioEye and Moradi placed on the Florida public record the accusation that Mr. Kovacs had fabricated his résumé. The federal record before this Court documents Mr. Kovacs's actual credentials through more than a dozen exhibits and supporting declarations. (*See* Compl. Exs. 1–29.) The Florida record reflects that Mr. Moradi subsequently retreated from the accusation and attributed it to information from a private investigator. The same Florida proceeding in which that factual narrative was withdrawn is the proceeding Defendants now invoke as authority for sanctioning Plaintiffs here.

By December 2025, the record had developed consistent with Mr. Kovacs's pre-termination concerns. The SEC-filed Form 4 record showed $35.2 million in coordinated insider sales between June 2024 and January 2025 — approximately $25 million attributable to Mr. Moradi — including approximately $30 million in single-day sales on December 4, 2024, none disclosed under any Rule 10b5-1 plan. The stock that had risen from approximately $5 to approximately $35 later fell substantially after the December 4, 2024 sales. Mr. Kovacs raised concerns about insider trading in November 2023 and January 2024, before any of these events occurred. The objective record that emerged after his reports supplied counsel with a nonfrivolous basis to view those concerns as well-founded.

The January 17, 2024 recording also confirms a protected whistleblower disclosure. Justice Patel dismissed the *Kovacs I* § 740 claim in part because Mr. Kovacs had not adequately pleaded that he disclosed his concerns to AudioEye's senior leadership. *Kovacs I* Op. at 6. The recording Defendants now invoke as the centerpiece of their sanctions motion is itself contemporaneous evidence of that disclosure. On the same January 17, 2024 call, Mr. Kovacs raised insider-trading

19

concerns directly with AudioEye's Executive Chairman, Mr. Bettis — the senior officer Justice Patel found Mr. Kovacs had not been alleged to have informed. The substance of that disclosure tracks the conduct Mr. Rodriguez witnessed five months earlier on a separate Moradi–Kovacs speakerphone call: Mr. Moradi's discussion of using a VPN to avoid detection of insider trading in AudioEye stock, and Mr. Kovacs's refusal to participate. Compl. Ex. 7 ¶¶ 3–8. The recording does the opposite of what Defendants argue. It confirms the protected disclosure on which the federal whistleblower-retaliation claim rests, made by Mr. Kovacs to a senior officer who recorded the call and preserved the disclosure on Defendants' own evidence.

Nor does the Florida punitive-damages ruling establish otherwise. The order authorized the addition of a punitive damages claim under Fla. Stat. § 768.72, a permissive pleading-stage threshold. It did not decide whether securities fraud occurred, whether insider sales were unlawful, whether witness tampering occurred, or whether the federal claims are sufficient. It merely allowed Moradi and AudioEye to plead a claim of malice. No findings of fact have been made.

## VI. The TRO Ruling Does Not Establish Rule 11 Frivolousness.

Defendants' reliance on the December 17, 2025 TRO ruling fails because that ruling addressed likelihood of success on a five-day emergency record. ECF No. 10. Rule 11 addresses objective frivolousness at the time of filing.

The Court denied the TRO five days after Plaintiffs filed the Complaint, before any responsive pleading and before factual development. The Court's observations — including references to a "substantial *res judicata* issue" and "plausibility issues with a lot of this story" — addressed likelihood of success under the demanding TRO standard. TRO Hr'g Tr. at 17:10–19, ECF No. 13. They did not decide Rule 12(b)(6), much less Rule 11.

Plaintiffs' April 6 oppositions respond directly to the *res judicata* and plausibility concerns flagged at the TRO stage. Those are issues for the motion to dismiss. The TRO ruling does not supply the objective frivolousness required for sanctions.

## VII. § 1927 and Inherent-Authority Sanctions Fail for Lack of Bad Faith.

Defendants also invoke 28 U.S.C. § 1927 and the Court's inherent authority. Those theories require a clear showing of subjective bad faith. Defendants' arguments fall short.

Section 1927 applies only when counsel "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The Second Circuit requires a "clear showing of bad faith," and sanctions are appropriate only where counsel's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). The same bad-faith limitation governs inherent-authority sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

Defendants make no separate showing under either standard. Their § 1927 and inherent-authority arguments rest on the same premise as their Rule 11 motion: that the Complaint repeats *Kovacs I* and *Kovacs II* and was filed for an improper purpose. For the reasons already stated, that theory does not establish Rule 11 frivolousness. It necessarily fails under the higher bad-faith standards.

Filing a federal complaint asserting new federal causes of action against additional defendants based on later conduct, supported by sworn declarations and SEC filings, is not bad faith. Nor is opposing a motion to dismiss. Nor is narrowing claims in response to further analysis. Those acts are ordinary federal civil practice.

## VIII. The Safe-Harbor Notice Did Not Identify Discrete Sanctionable Conduct.

21

Rule 11(c)(2) requires a sanctions motion to identify "the specific conduct alleged to violate Rule 11." The 1993 Advisory Committee Note explains the purpose of that requirement: "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. The defect here is not that Defendants served a draft motion and waited the required period. The defect is that the draft demanded wholesale withdrawal of the Complaint on the same global Rule 12 arguments pending under Rule 12(b)(6), rather than identifying discrete factual or legal contentions capable of correction during the safe-harbor period.

The March 20 letter incorporated the draft motion by reference. The draft motion was substantially the same as the motion now before the Court and substantially restated the motion-to-dismiss arguments. Defendants' later filings confirm the overlap: the sanctions memorandum incorporates the motion-to-dismiss arguments, ECF No. 47 at 10 n.5, and the motion-to-dismiss reply points to the sanctions motion for fee-shifting, ECF No. 50 at 3 n.1.

Plaintiffs responded substantively. Their April 6 letter explained the post-*Kovacs I* chronology, the cure of the deficiency Justice Patel identified, and the legal authorities supporting the federal causes of action. Plaintiffs also invited coordination of any Rule 11 motion with the pending motion to dismiss and noted their intent to seek leave to amend. Defendants filed their Rule 11 motion a week later.

The Court need not decide the safe-harbor issue to deny the motion. The motion fails on the merits for the reasons set forth above.

## RESERVATION OF RIGHTS

Plaintiffs reserve all rights to seek attorneys' fees, costs, and other appropriate relief at the conclusion of this matter. Plaintiffs do not press any such request at this time.

22

## CONCLUSION

For the foregoing reasons, Defendants' motion for sanctions should be denied.

Dated: New York, New York
      April 27, 2026

Respectfully submitted,

JOHN H. SNYDER PLLC


/s/ John H. Snyder

John H. Snyder, Esq.
157 East 81st Street, Suite 3A
New York, NY 10028
(917) 292-3081
john@jhs.nyc

*Counsel for Plaintiffs*

23

EXHIBIT — STOCK PRICE & EVENT TIMELINE

## AudioEye, Inc. (AEYE) — Daily Close with Litigation Event Overlay

November 1, 2023 through April 2, 2026 · Source: Yahoo Finance daily closing prices



## EVENT TIMELINE

### WHISTLEBLOWING & RETALIATION

1  Nov 13 '23 — **Report to HR**
2  Jan 17 '24 — **Fired / Bettis recorded call**
3  Feb 8 '24 — **DOJ whistleblower report**
4  Feb 20 '24 — **RSUs seized / benefits retaliation**
5  Mar 20 '24 — **Birkin Bag Letter**
K  Apr 5 '24 — **KOVACS I FILED**
SEC  Apr 8 '24 — **SEC whistleblower complaint**
6  Apr 10 '24 — **Florida defamation** (2 days post-SEC)
7  May 2 '24 — **Humble SDNY suit** (dism'd w/ prej. Jul 3)
8  May 8 '24 — **ESTP interest stripped**

### INSIDER SALES & OBSTRUCTION

CB  Jun 12 '24 — **Bettis sells 7,330 shs**; Fleming buys same
10  Aug 5 '24 — Wilkerson meeting
KG  Nov '24 — **Georgevich sells $300K+**
11  Dec 4 '24 — **$30M dump:** DM $21.6M · CB $5.4M · JT $3.0M
12  Dec '24 — Blackstone pressure / Quinn campaign

### WITNESS TAMPERING & LAWFARE

13  Jan 2 '25 — Humble "Juju" texts
14  Jan 21 '25 — Quinn emails to Ducheine
15  Jan 24 '25 — Quinn false bribery letter
K-I  Jan 31 '25 — **KOVACS I DISMISSED**
16  Feb 4 '25 — **AEYE litigation PR** (republishes smears)
K-II  Mar 4 '25 — **KOVACS II FILED**
18  Apr 14 '25 — **Arizona retaliation**
19  Apr 26 '25 — NYPD report
20  Jun 3 '25 — Wilkerson sit-down
21  Jul 8 '25 — Quinn settlement demand
22  Jul 24 '25 — **Humble voicemail** (obstruction)
23  Sep 3 '25 — ESTP final K-1
K-II  Oct 8 '25 — **KOVACS II DISMISSED**
24  Nov '25 — Employment verification interference
25  Nov 13 '25 — **FL Motion to Amend**

### FEDERAL ACTION

S  Dec 12 '25 — **SDNY COMPLAINT FILED**

**Figure.** AEYE daily close, Nov. 1, 2023 – Apr. 2, 2026, with event overlay. Red = retaliation/fraud. Green = insider sales. Blue = Quinn Emanuel / obstruction. Gray = corroborating. Gold = Kovacs filings. Maroon = SDNY. Last close: **$6.63**