# John H. Snyder
157 East 81st Street, #3A · New York, NY 10028 · john@jhs.nyc · jhs.nyc

May 11, 2026

VIA ECF

Hon. J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

     Re: *Kovacs et al. v. Moradi et al.*, No. 25-cv-10336 (JPO)

Dear Judge Oetken:

     I write in reply to ECF No. 58, which is Defendants' opposition to Plaintiffs' letter-motion, ECF No. 57, both filed today.

     Defendants' response is perplexing.

     It was Defendants who contacted me on Friday, May 8, 2026, seeking to submit a preliminary version of the Florida deposition transcript of David Kovacs in their reply papers.

     Plaintiffs agree with Defendants on the premise. The final version of the Kovacs deposition should be considered by the Court — right along with the final versions of the Moradi deposition and the Georgevich deposition.

     Plaintiffs' original letter-motion seeks an orderly and fair procedure for the Court to consider the parties' testimony under oath, taken just a few weeks ago, addressing issues squarely relevant to this case. During his deposition, Mr. Kovacs answered every question asked of him.

     Defendants say in a footnote on page 3 that, if the Court were to consider the Kovacs deposition, Defendants would make an "overwhelming showing" that the testimony undercuts Mr. Kovacs's position. ECF No. 58, at 3 n.2.

     If so, why are Defendants opposing my motion?

     The question answers itself: the Moradi and Georgevich transcripts are a disaster for them.

To be clear, Defendants and Plaintiffs agree that the Florida deposition transcripts are relevant to the pending motions. That is why Defendants contacted me on Friday seeking Plaintiffs' consent to submit Mr. Kovacs's transcript. I am trying to say yes to Defendants — but on terms that are even-handed. If the Florida testimony comes in, all of it comes in.

A word on Defendants' "serial litigation" rhetoric.

This SDNY action was filed in large part because of documented, substantiated threats to Mr. Kovacs's physical safety and a sustained pattern of witness intimidation. The supporting record — sworn declarations from multiple percipient witnesses, police reports, contemporaneous communications, and other documentary evidence — is on the docket and was summarized in my December 15, 2025 declaration in support of Plaintiffs' application for a temporary restraining order. See Snyder Decl., ECF No. 2-12, ¶¶ 8–32. This case is about David Moradi's extreme pattern of retaliation against a whistleblower who reported stock fraud and insider trading.

But for the threats of violence to Mr. Kovacs, Plaintiffs likely would have proceeded by sending a draft complaint to AudioEye's board and counsel rather than filing in this Court at all. Defendants' own conduct led to this filing.

Defendants' attempt to play the victim of serial litigation is absurd. Mr. Moradi is a wealthy and litigious party who has cultivated a reputation for being a highly aggressive litigant. Over the years, he has used that reputation to cow many people into submission.

The Court might ask why Mr. Moradi enlisted AudioEye, Inc., a publicly traded company, as a co-plaintiff in his Florida defamation case, where the record is clear that AudioEye suffered no corporate injury. Millions of dollars in AudioEye legal fees are being deployed to prosecute a personal vendetta against a whistleblower who was threatening to get in the way of a $35.2 million insider sale, of which Mr. Moradi personally extracted approximately $26.3 million.

The Florida action rests in substantial part on the theory that Mr. Kovacs defamed Mr. Moradi by accusing him of securities fraud. Based on the trading record, Mr. Kovacs appears to have been right.

Attached as Exhibit A is a one-page demonstrative showing the basic sequence Plaintiffs have been asking Defendants to address: a thinly traded public software company, a sharp stock-price increase of approximately 6x for no apparent corporate reason, insider sales, and a subsequent collapse. I provided this demonstrative to Quinn Emanuel over a month ago and asked for an explanation of how a CEO of a thinly traded software company can lawfully accomplish what is reflected on Exhibit A. If there is a lawful way for a CEO to

engineer a six-fold increase in his stock price and then personally extract roughly $26 million as part of a $35 million insider sale, we would love to learn how that can be done legally.

Defendants opened this door. Plaintiffs ask only that the Court not be shown a curated fragment of the record. If the Florida depositions are relevant — and both parties say they are — then the Court should see the full testimony from Mr. Kovacs, Mr. Moradi, and Ms. Georgevich.

Plaintiffs respectfully renew their request that the Court hold open the record for the limited purpose of receiving the final transcripts of the Kovacs, Moradi, and Georgevich depositions, and permit limited supplemental briefing after the transcripts become final.

Respectfully submitted,

/s/ John H. Snyder

John H. Snyder Counsel for Plaintiffs

cc: Counsel of Record (via ECF)



EXHIBIT — STOCK PRICE & EVENT TIMELINE

## AudioEye, Inc. (AEYE) — Daily Close with Litigation Event Overlay

November 1, 2023 through April 2, 2026 · Source: Yahoo Finance daily closing prices

EVENT TIMELINE

### WHISTLEBLOWING & RETALIATION

1. Nov 13 '23 — **Report to HR**
2. Jan 17 '24 — **Fired / Bettis recorded call**
3. Feb 8 '24 — **DOJ whistleblower report**
4. Feb 20 '24 — **RSUs seized / benefits retaliation**
5. Mar 20 '24 — **Birkin Bag Letter**
K. Apr 5 '24 — **KOVACS I FILED**
SEC. Apr 8 '24 — **SEC whistleblower complaint**
6. Apr 10 '24 — **Florida defamation** (2 days post-SEC)
7. May 2 '24 — **Humble SDNY suit** (dism'd w/ prej. Jul 3)
8. May 8 '24 — **ESTP interest stripped**

### INSIDER SALES & OBSTRUCTION

CB. Jun 12 '24 — **Bettis sells 7,330 shs**; Fleming buys same
10. Aug 5 '24 — Wilkerson meeting
KG. Nov '24 — **Georgevich sells $300K+**
11. Dec 4 '24 — **$30M dump:** DM $21.6M · CB $5.4M · JT $3.0M
12. Dec '24 — Blackstone pressure / Quinn campaign

### WITNESS TAMPERING & LAWFARE

13. Jan 2 '25 — Humble "Juju" texts
14. Jan 21 '25 — Quinn emails to Ducheine
15. Jan 24 '25 — Quinn false bribery letter
K-I. Jan 31 '25 — **KOVACS I DISMISSED**
16. Feb 4 '25 — **AEYE litigation PR** (republishes smears)
K-II. Mar 4 '25 — **KOVACS II FILED**
18. Apr 14 '25 — **Arizona retaliation**
19. Apr 26 '25 — NYPD report
20. Jun 3 '25 — Wilkerson sit-down
21. Jul 8 '25 — Quinn settlement demand
22. Jul 24 '25 — **Humble voicemail** (obstruction)
23. Sep 3 '25 — ESTP final K-1
K-II. Oct 8 '25 — **KOVACS II DISMISSED**
24. Nov '25 — Employment verification interference
25. Nov 13 '25 — **FL Motion to Amend**

### FEDERAL ACTION

S. Dec 12 '25 — **SDNY COMPLAINT FILED**

**Figure.** AEYE daily close, Nov. 1, 2023 – Apr. 2, 2026, with event overlay. Red = retaliation/fraud. Green = insider sales. Blue = Quinn Emanuel / obstruction. Gray = corroborating. Gold = Kovacs filings. Maroon = SDNY. Last close: **$6.63**