UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID KOVACS, RUSSELL ALESI, JULIAN DUCHEINE and DEMIAN LICHTENSTEIN,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAVID MORADI, DR. CARR BETTIS, JASON HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR. KATHERINE FLEMING, TONY COELHO, KELLY GEORGEVICH, JAMES SPOLAR, MALONEBAILEY LLC, AUDIOEYE, INC. and JOHN DOE 1-50,<br><br>    Defendants,<br><br>    and<br><br>ETERNAL SOURCES TECH PARTNERS LLC, FIRST CONTACT ENTERTAINMENT, INC., FORMULUS BLACK, INC.,<br><br>    Nominal Defendants. | Case No. 25-CV-10336 (JPO)<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AUDIOEYE, INC. TO RETAIN UNCONFLICTED COUNSEL |

JOHN H. SNYDER PLLC
John H. Snyder, Esq.
157 East 81st Street, Suite 3A
New York, NY 10028
(917) 292-3081
john@jhs.nyc
*Counsel for Plaintiffs*

May 26, 2026

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

    A. Procedural Posture – A Dispute With Three Pending Actions......................................... 3

    B. The Moradi and Georgevich Depositions.......................................................................... 4

    C. The Settlement Demand..................................................................................................... 6

    D. AudioEye Has No Disinterested Decisionmaker. ............................................................. 7

    E. AudioEye's Shareholders Have Not Been Told the Claim Exists..................................... 8

    F. Twelve Positions Taken in AudioEye's Name................................................................... 8

ARGUMENT.............................................................................................................................. 11

    I. Quinn Emanuel Cannot Serve the Opposed Interests of Mr. Moradi and AudioEye. ... 11

    II. The Court Has Authority To Order AudioEye To Retain Its Own Counsel................ 12

    III. Plaintiffs Do Not Seek Quinn Emanuel's Disqualification as Mr. Moradi's Counsel... 14

REBUTTAL TO QUINN EMANUEL'S OBJECTIONS............................................................ 15

    A. Joint Representation at the Pleading Stage Does Not Answer This Motion. ................. 15

    B. The Standing Objection Does Not Defeat This Motion.................................................. 18

    1. Mr. Kovacs's Shareholder Standing Is Contested, Not Decided. ................................... 19

    2. Mr. Alesi Is a Current Shareholder Entitled to Rule 23.1(c) Protection. ........................ 20

    C. The Reasonableness of the Deadline Is Beside the Point. .............................................. 21

    D. The Lapse of the Offer Does Not Moot the Motion. ...................................................... 21

    E. This Motion Does Not Depend on Mr. Kovacs. ............................................................. 22

REQUEST FOR RELIEF........................................................................................................... 23

CONCLUSION .......................................................................................................................... 25

SCHEDULE A ........................................................................................................................... 27

    Demonstrative – AudioEye, Inc. (AEYE) Stock Price and Litigation Event Timeline......... 27

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) — 19, 20

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) — 22

*Bushansky v. Armacost*, No. 12-cv-01597-JST (N.D. Cal. June 25, 2014) (ECF No. 49) — 18, 23

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127 (2d Cir. 2005) — 19

*In re Oracle Sec. Litig.*, 829 F. Supp. 1176 (N.D. Cal. 1993) — 16-18, 21

*In re Resource Capital Corp. S'holder Deriv. Litig.*, Nos. 17 Civ. 00253 & 17 Civ. 1381 (LLS) (S.D.N.Y. Mar. 22, 2019) (Prelim. Approval Order) — 18

*Kovacs v. AudioEye, Inc.*, No. 651810/2024, 2025 N.Y. Slip Op. 30403(U) (Sup. Ct. N.Y. Cnty. Jan. 31, 2025) — 24

*Papilsky v. Berndt*, 466 F.2d 251 (2d Cir. 1972) — 16, 23

*Respler v. Evans*, 17 F. Supp. 3d 418 (D. Del. 2014) — 19, 20, 22

*Ross v. Bernhard*, 396 U.S. 531 (1970) — 15

*Scattered Corp. v. Chi. Stock Exch., Inc.*, 1997 WL 187316 (Del. Ch. Apr. 7, 1997), aff'd, 701 A.2d 70 (Del. 1997) — 19, 20, 22

*United Food & Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034 (Del. 2021) — 8

*Voss v. Sutardja*, No. 14-CV-01581-LHK, 2015 WL 349444 (N.D. Cal. Jan. 26, 2015) — 21

*Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981) — 8, 17

**<u>Rules and Other Authorities</u>**

Fed. R. Civ. P. 23.1 — passim

Fed. R. Civ. P. 23.1(c) — passim

Fed. R. Civ. P. 24 — 23

Fed. R. Evid. 408 — 19

**PRELIMINARY STATEMENT**

This motion asks the Court to direct AudioEye, Inc. ("AudioEye" or the "Company") to retain its own counsel.

AudioEye is a Nasdaq-listed company dominated and controlled by its largest shareholder and Executive Chairman, David Moradi. Since late 2024, the Company has lost about 70% of its value. Today its market cap is about $90 million.

AudioEye's most valuable asset is its claim against Moradi and other insiders for usurpation of a corporate opportunity. This claim arises from more than $35 million in insider stock sales reflected in the Company's own SEC filings. Moradi is the principal defendant on that claim, which is worth about 40% of AudioEye's market capitalization. Quinn Emanuel represents both AudioEye and Mr. Moradi as counsel of record in this action.

During 2024, AudioEye's stock price rose sixfold. Whatever drove that sharp price increase, it was a corporate opportunity to raise capital on favorable terms. As Delaware law requires, and as AudioEye's CFO confirmed under oath, fiduciary duties exist to ensure that value belonging to the company flows to the company and its shareholders, not to an individual officer.

Yet it was the insiders, primarily Moradi, who seized that opportunity, selling $35 million of their own shares while AudioEye received none of the proceeds. AudioEye needed that money. The sequence is depicted in the stock-price and event timeline attached as Schedule A.

Quinn Emanuel's concurrent representation of Mr. Moradi and AudioEye is creating a direct and inescapable conflict of diametrically opposed interests. AudioEye's interest is to recover the $35 million. Mr. Moradi's is to keep it. One client wants the money; the other has it. A single firm cannot serve both. The correct remedy is not to disqualify Quinn Emanuel from Mr. Moradi's defense, but to require AudioEye to engage its own unconflicted counsel.

1

Plaintiffs have objected to this conflict since Quinn Emanuel appeared as AudioEye's counsel, and have raised it repeatedly. Plaintiffs make this motion now because the conflict is no longer theoretical. In April 2026, AudioEye's officers were deposed; AudioEye produced its Chief Financial Officer, a defendant on the derivative claim, as its corporate representative on the insider transactions, with no counsel of her own – over Plaintiffs' written warning. The conflict is now actively prejudicing Plaintiffs, the Company, its shareholders, and the integrity of the adversary process.

On May 17, 2026, Quinn Emanuel demanded, on one business day's notice, that Plaintiffs release AudioEye's $35 million claim — with no one at the table answerable to AudioEye. Quinn Emanuel's own email acknowledged that the Company and its Board would act "with appropriate representation." The difficulty is timing: the release was demanded before AudioEye had any such representation in the room.

Quinn Emanuel stated that the lawyers should not stand in the way of settlement, and accused Plaintiffs' counsel of lacking an ethical basis to "frustrate" the settlement – a settlement none of the four plaintiffs ever agreed to. Plaintiffs disagree. A derivative claim cannot be released without the Court's approval and notice to shareholders, and counsel's duty is to see that any compromise goes through the process Rule 23.1 requires. Plaintiffs put the question before the Court: if the Company's $35 million claim is to be compromised, it must be through an adequate process, not a rushed settlement under pressure.

Nor can AudioEye answer for itself. A majority of its current board sold the stock subject to disgorgement. It has no independent counsel, no special committee, and has not disclosed this action to its shareholders. The corporation has no disinterested decisionmaker of any kind.

The relief is narrow. The Court is not asked to decide the merits, to predetermine any pending motion, or to disqualify Quinn Emanuel as Mr. Moradi's counsel. It is asked to direct

AudioEye to engage independent counsel to evaluate whether the derivative claim should be prosecuted, settled, or released. Rule 23.1 assumes such a lawyer exists. Here, none does.

## BACKGROUND

### A. Procedural Posture – A Dispute With Three Pending Actions.

Plaintiffs filed this action on December 12, 2025. ECF 1. Count VI is a derivative claim for breach of fiduciary duty, brought on behalf of AudioEye against Mr. Moradi, Dr. Carr Bettis, the AudioEye Board, and Ms. Georgevich. ECF 1 ¶¶ 260–271. It alleges that AudioEye insiders usurped a corporate opportunity by selling more than $35 million of their own shares in 2024, and seeks disgorgement of those proceeds to AudioEye. ECF 1 ¶¶ 71, 139, 271. AudioEye is named as a nominal defendant because the claim belongs to it and the relief can be implemented only with the Company before the Court. ECF 1 ¶ 99.

Defendants moved to dismiss on February 27, 2026. ECF Nos. 22, 25, 32. Plaintiffs opposed on April 6, 2026. ECF Nos. 41, 42. The motions are fully briefed and *sub judice*. Quinn Emanuel represents both AudioEye and Mr. Moradi on those motions.

This case is part of a larger legal battle that currently involves two other pending actions.

AudioEye and Mr. Moradi sued Mr. Kovacs in Florida state court on April 10, 2024, asserting defamation. *AudioEye, Inc. v. Kovacs*, No. 2024-006401-CA-01 (Fla. 11th Jud. Cir.) (the "Florida Action"). Discovery is actively proceeding in the Florida Action.

Dr. Bettis, through an entity he controls, sued Mr. Kovacs in Arizona in April 2025 over a purported $100,000 loan from 2017. *CSB IV US Holdings LLC v. JDLK Partners, Inc.*, No. CV2025-013285 (Ariz. Super. Ct., Maricopa Cnty.) (the "Arizona Action").

As described below, the settlement Quinn Emanuel has pressed would resolve all three actions together – and would use the Florida and Arizona resolutions as the vehicle to extinguish AudioEye's SDNY derivative claim.

Measured against AudioEye's size and reported liquidity, the claim is not incidental; it is a corporate asset of first-order significance. The Company's Q1 2026 Form 10-Q reports roughly $8.6 million in cash and roughly $440,000 in working capital; the claim Plaintiffs value at $35 million is the largest asset on AudioEye's balance sheet and roughly 40% of its market capitalization. A claim of that magnitude cannot be released through counsel who also represents the defendant from whom recovery would come. That is the conflict this motion seeks to address.

AudioEye's stock rose more than sixfold across 2024 before the principal December 4 insider-sale cluster; the relationship between that price movement and those sales is depicted in the demonstrative attached as Schedule A, previously filed in this action at ECF Nos. 53 and 60. AudioEye's own Chief Financial Officer and Rule 30(b)(6) representative testified that the Company had prepared no internal analysis of that price movement, and that neither its audit committee nor its outside auditors had done so. KG Tr. 84:16–22.

Plaintiffs do not ask the Court to determine why the price moved. The point is narrower and undisputed: the rise created a capital-raising opportunity that was the corporation's to use, and the corporation never examined it.

## B.  The Moradi and Georgevich Depositions.

AudioEye insiders David Moradi and Kelly Georgevich were recently deposed in the Florida Action. Mr. Moradi, who appeared as AudioEye's corporate representative under the Florida analogue to Rule 30(b)(6), was deposed on April 21, 2026, and Ms. Georgevich, AudioEye's Chief Financial Officer, was deposed on April 22, 2026. The testimony concerns the same insider

sales, the same corporate claim, and the same forfeiture of Mr. Kovacs's equity at issue here. A letter-motion concerning those deposition transcripts is before this Court at ECF 57–61.

Ms. Georgevich testified to three things in sequence. First, the Company needed the money. Asked whether an additional $21 million in AudioEye's accounts at year-end 2024 would have materially improved the Company's ability to invest in product development, she answered yes, and testified that an amount of that order was what the Company had determined it required. KG Tr. 72:12–18. The same additional capital, she testified, would have materially reduced AudioEye's need for outside financing and dilutive equity issuances, improved its access to debt financing on favorable terms, improved its ability to pursue strategic acquisitions, and strengthened its balance sheet. KG Tr. 71:14–73:25.

Second, she confirmed the legal premise of the claim: Mr. Moradi, as CEO and director, owes AudioEye fiduciary duties including the duty of loyalty, KG Tr. 80:6–11; the corporate-opportunity doctrine generally requires an officer to present an opportunity to the corporation before taking it personally, KG Tr. 80:15–23; and the purpose of those duties, she agreed, is to ensure that value belonging to the company flows through the company to its shareholders rather than to an individual officer. KG Tr. 81:3–7.

Third, Ms. Georgevich confirmed her own position. Asked whether Mr. Moradi is her boss, she answered that he is. Asked whether he has influence over her future at the company, she again answered that he does. KG Tr. 81:8–12. AudioEye's designated representative on the transactions at issue was, by her own account, economically subordinate to the defendant from whom the corporation would recover.

When the questioning turned to Mr. Moradi himself, the corporation went silent. Mr. Moradi appeared as AudioEye's corporate representative and was asked about the corporate-opportunity claim directly – the prospectus supplement, the December 4, 2024 resale, his personal

5

sales of AudioEye stock, the November 2024 sales, and whether he traded on inside information. He did not answer. Counsel appearing for both AudioEye and Mr. Moradi instructed the witness not to answer, question after question, repeating the same instruction each time. DM Tr. 184:4–186:2.

It is remarkable that AudioEye would send Ms. Georgevich – who sold more than $300,000 of AudioEye stock in November 2024 – to create a binding testimonial record without counsel of her own. In correspondence before the deposition, the undersigned asked Quinn Emanuel whether Ms. Georgevich had her own attorney and asked to speak with that attorney before she testified. The undersigned stated that putting Ms. Georgevich in that chair, on that topic, in Mr. Moradi's stead was an "act of cruelty," and offered to take whatever adjournments were necessary so that she could obtain independent advice before giving testimony she could not later retract. Defendants did not adjourn, did not identify separate counsel for her, and produced her as designated. Snyder Decl. ¶¶ 24, 33, 39–42.

### C.  The Settlement Demand.

In April 2026, after the depositions, the parties began discussions aimed at resolving all three actions together. In those discussions, Quinn Emanuel – purporting to act for both Mr. Moradi and AudioEye – demanded that Plaintiffs agree to a global settlement that would dismiss this action with prejudice, release AudioEye's derivative claims, and identify no consideration flowing to AudioEye for that release. Quinn Emanuel set a deadline of one business day.

No one evaluated that demand on AudioEye's behalf. AudioEye has no independent counsel, a board of directors with a three-to-two majority of interested directors – directors who personally sold shares and usurped a corporate opportunity – no special committee, no SEC

6

disclosure of this lawsuit, and no notice to shareholders. Mr. Moradi's lawyer made that proposal – to release the Company's largest claim – with no one across the table speaking for the Company.

### D. AudioEye Has No Disinterested Decisionmaker.

AudioEye cannot supply that voice through its board. Mr. Moradi and Mr. Jamil Tahir, an AudioEye director who sold $3.0 million of stock in the same 2024 insider sales, ECF 1 ¶ 91, both sold into the transaction the claim challenges. When the Complaint was filed, the four-member board split two interested directors against two independent directors – Dr. Katherine Fleming and Mr. James Hawkins – with no disinterested majority. ECF 1 ¶¶ 89–91.

The balance has since shifted further. Ms. Georgevich – AudioEye's CFO, a defendant on the derivative claim, ECF 1 ¶¶ 260, 268, and a participant in the challenged insider sales, ECF 1 ¶ 94 – became Chief Executive Officer and joined the Board in May 2026, making the interested directors a three-to-two majority.

Delaware law, which governs the internal affairs of this Delaware corporation, draws the line precisely: a director who received a material personal benefit from a challenged transaction, or who faces a substantial likelihood of liability on the claims at issue, cannot supply the disinterested judgment a decision to prosecute or release those claims requires. *United Food & Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021).

Delaware also supplies the cure: a board lacking a disinterested majority may act through a special litigation committee of disinterested directors, empowered to retain independent counsel. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981). AudioEye has formed no special committee and retained no counsel of its own. The corporation has no disinterested decisionmaker of any kind.

7

## E.  AudioEye's Shareholders Have Not Been Told the Claim Exists.

AudioEye has not disclosed this action to its shareholders. Its 2025 Form 10-K (filed March 12, 2026), its Form 10-K/A (April 30, 2026), its Q1 2026 Form 10-Q (May 12, 2026), and its Definitive Proxy Statement for the 2026 Annual Meeting (May 13, 2026) each omit any mention of it. The Proxy asks shareholders, at the June 22, 2026 Annual Meeting, to elect five directors, including Mr. Moradi, Mr. Tahir, and Ms. Georgevich – the three current directors who sold AudioEye stock in November and December 2024 – without disclosing that a derivative claim valued at $35 million is pending against three of the five nominees.

That omission matters here for a single, procedural reason: Rule 23.1(c) conditions any release of the derivative claim on notice to the shareholders for whose benefit the claim exists. The people the claim belongs to do not yet know they have it.

## F.  Twelve Positions Taken in AudioEye's Name.

Across this litigation, counsel jointly representing AudioEye and Mr. Moradi has taken a series of concrete positions in AudioEye's name – in motion practice, in deposition, and in the contemplated settlement. Each position resolves the divergence between the corporation's interest in recovering the insider-sale proceeds and Mr. Moradi's interest in retaining them. Each resolves it the same way.

| # | Position taken in AudioEye's name | Record | Why corporate counsel would not take it |
|---|---|---|---|
| 1 | AudioEye was named as a plaintiff, alongside Mr. Moradi, in the Florida defamation action against Mr. Kovacs – asserting reputational claims and personal accusations later withdrawn – although AudioEye suffered no corporate injury and held no corporate interest in the personal accusations against Mr. Kovacs. | *AudioEye, Inc. v. Kovacs*, No. 2024-006401-CA-01 (Fla. 11th Jud. Cir.); Florida amended complaint, Compl. Exh. 30; see ECF 1 ¶ 144. | No lawyer for AudioEye lends the corporate name to prosecuting its controller's personal grievance. AudioEye was exposed to cost and distraction in a case with no corporate injury. |

8

| # | Position taken in AudioEye's name | Record | Why corporate counsel would not take it |
|---|---|---|---|
| 2 | A Rule 11 sanctions motion was filed in AudioEye's name calling the Complaint's securities-fraud and insider-trading allegations "frivolous" and "factually baseless." | Defs.' Mem. ISO Mot. for Rule 11 Sanctions (served Mar. 20, 2026). | AudioEye's recovery depends on proving the very misconduct this motion calls baseless. No corporate counsel certifies, in the corporation's name, that the foundation of the corporation's own $35 million claim is a fiction. |
| 3 | At the April 22, 2026 Rule 30(b)(6) deposition, counsel for "AudioEye and David Moradi" let the corporate representative confirm the corporate-benefit predicate – that an additional $21 million in treasury would have materially improved AudioEye's financing, liquidity, debt access, balance sheet, and product development. | KG Tr. 4:18–19; 71:14–73:25. | Counsel let the witness establish corporate benefit, then blocked every question tying that benefit to Mr. Moradi's proceeds. The corporation was allowed to prove its injury and forbidden to name its source. |
| 4 | The same counsel then instructed the representative not to answer whether the December 4, 2024 transaction was a registered resale, whether the proceeds went to insiders rather than AudioEye, whether AudioEye could have raised capital in that window itself, or whether AudioEye ever conducted a corporate-opportunity analysis. | KG Tr. 76:24–78:17. | Those four questions are the elements of AudioEye's corporate-opportunity claim. Counsel recovering for the corporation elicits that testimony. Counsel protecting Mr. Moradi suppresses it. Here it was suppressed. |
| 5 | The same counsel instructed the representative not to answer whether any insider Form 4 in the trading window claimed the Rule 10b5-1(c) defense, or whether the December 4 prospectus supplement disclosed any 10b5-1 plan. | KG Tr. 58:23–59:8. | An unclaimed Rule 10b5-1 defense is worth money to AudioEye and only to AudioEye. The single party served by leaving that question unanswered is the insider who kept the proceeds. |
| 6 | The same counsel instructed the representative not to answer whether AudioEye, rather than Mr. Moradi personally, was paying the legal expenses of this litigation. | KG Tr. 17:16–25. | Whether the corporation is financing the defense of claims against its own controller is a fact corporate counsel demands. Only the controller benefits from concealing it. |
| 7 | The same counsel instructed the representative not to answer questions about AudioEye's stock-price history and the late-2024 price movement. | KG Tr. 74:11–21. | The price record is how AudioEye proves the financing opportunity was the corporation's to take. Counsel for AudioEye builds that record; here, counsel closed it off. |

9

| # | Position taken in AudioEye's name | Record | Why corporate counsel would not take it |
|---|---|---|---|
| 8 | On May 17, 2026, counsel purporting to act for both AudioEye and Mr. Moradi demanded that Plaintiffs accept, in one business day, a global settlement dismissing this action with prejudice and releasing the derivative claims, with no consideration identified as flowing to AudioEye. | Quinn Emanuel email, May 17, 2026 (Snyder Decl. ¶¶ 14–15). | No properly counseled corporation surrenders a claim worth 40% of its market value for nothing. A release for zero consideration is a transaction with exactly one beneficiary – the defendant who pays nothing. |
| 9 | The terms of the contemplated global settlement, including release of AudioEye's derivative claims, were negotiated through Florida counsel in the parallel personal-defamation action – to which AudioEye's lead SDNY counsel for the derivative claims was not party. | Quinn Emanuel email, May 17, 2026 (Snyder Decl. ¶ 15) ("settlement terms have been negotiated with Florida counsel, including dismissal with prejudice of the NY action"). | Counsel for AudioEye insists the corporation's $35 million claim be valued and negotiated on its own track. Folding it into the controller's personal defamation settlement is how a claim disappears without anyone pricing it. |
| 10 | As a settlement condition, on May 7, 2026 Florida counsel for AudioEye and Mr. Moradi transmitted a proposed sworn apology requiring Mr. Kovacs to swear that his accusations of "fraud" and "securities manipulation" against Mr. Moradi were "false claims" he "knew lacked a proper factual basis." | Brodsky transmittal to Cody German, May 7, 2026 (Snyder Decl. ¶¶ 49–50). | A sworn retraction of accusations that, if true, prove AudioEye's recovery is worthless to AudioEye and decisive for Mr. Moradi. Corporate counsel resists that condition; here, counsel made it a demand. |
| 11 | AudioEye designated Ms. Georgevich – a named defendant who personally sold AudioEye stock that the derivative claim challenges – as its Rule 30(b)(6) representative on stock-transaction topics, without separate counsel for her, after Plaintiffs warned in writing of the risk. | Snyder Decl. ¶¶ 24, 33, 39–42 (Apr. 17, 2026 letter and response); KG Tr. 4:18–21. | Counsel pursuing recovery does not make one of the insiders the money would come from the corporation's own sworn voice on the transactions at issue – least of all uncounseled, and over a written warning. |
| 12 | Counsel advanced, as AudioEye's operative position, that the insiders "did not engage in any securities fraud," that the allegations are barred, and that inquiry into the trading record is itself improper – without AudioEye having investigated the allegations at all. | Snyder Decl. ¶¶ 41, 45, 46(a), 46(c); KG Tr. 59:10–15, 70:6–9, 99:8–17. | A corporation with a potential $35 million claim against its controller investigates before it concludes. Declaring the question closed – unexamined – is not a corporate judgment. It is the controller's defense, asserted in the corporation's name. |

**ARGUMENT**

Section F catalogs twelve positions taken in AudioEye's name across motion practice, deposition, and settlement. Every time Quinn Emanuel has been presented with a choice between the Company's interest and Mr. Moradi's, Quinn Emanuel has favored Mr. Moradi. This includes filing the Rule 11 motion on behalf of AudioEye, which seeks to undercut the factual predicate of AudioEye's own claim. It also includes committing AudioEye, a company with no corporate injury of its own, as a plaintiff in the Florida action, where its name was lent to personal accusations against a whistleblower – including the now-withdrawn charge that Mr. Kovacs fabricated his résumé – that served Mr. Moradi's interests and not the Company's.

## I.  Quinn Emanuel Cannot Serve the Opposed Interests of Mr. Moradi and AudioEye.

A derivative claim belongs to the corporation, which is the real party in interest; the shareholder sues only because the corporation, controlled by the wrongdoers, will not sue for itself. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). Any recovery on Count VI runs to AudioEye.

The claim runs against Mr. Moradi. He is the principal defendant and the insider from whom AudioEye would recover. AudioEye's interest is to recover; Mr. Moradi's is to pay nothing. These interests cannot be reconciled. A firm defending Mr. Moradi against the derivative claim cannot also be the firm that decides, for AudioEye, whether to pursue that claim, settle it, or release it. The Company needs a lawyer of its own.

Consider whom AudioEye put forward to speak for it. AudioEye's Rule 30(b)(6) representative on the stock-transaction topics was its Chief Financial Officer – a certified public accountant who spent the first seven years of her career in audit, and who as CFO led the

11

Company's financial reporting and SEC-compliance functions – and who had herself sold AudioEye shares whose proceeds the derivative claim seeks to disgorge.

She was produced to give the corporation's binding testimony on the very transactions in which she was personally implicated, in a company with no disinterested board, no special committee, and no counsel of its own, while the senior insider who supervises her, and from whom the bulk of the recovery would come, was instructed not to answer.

A corporation with counsel of its own does not testify through such a witness on such a topic. The arrangement was not a corporate decision; it was the product of the conflict this motion asks the Court to cure.

## II.  The Court Has Authority To Order AudioEye To Retain Its Own Counsel.

The Court's authority rests on Rule 23.1(c) and on its inherent power to manage the cases before it. Rule 23.1(c) provides that a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval," and that notice of any proposed disposition must be given to shareholders as the court directs. Fed. R. Civ. P. 23.1(c).

The Rule exists because a derivative claim belongs to the corporation and the absent shareholders, and must not be bargained away by the named parties without the Court's oversight. *Papilsky v. Berndt*, 466 F.2d 251, 258 (2d Cir. 1972). A settlement negotiated while the corporation had no independent counsel cannot satisfy Rule 23.1(c)'s fairness review, because the process that produced it was structurally inadequate.

That is not a theoretical concern, and a federal court has acted on it. In *In re Oracle Securities Litigation*, the corporation's board attempted to approve a derivative settlement through a committee of its non-defendant directors – but that committee was advised by the corporation's own counsel rather than counsel independent of the individual defendants. The court disapproved

12

the settlement. Applying the *Zapata* framework, it held that the settlement failed at the threshold because the directors had not acted with the required independence and good faith, and that dual representation of the corporation and the individual defendants is impermissible "particularly at the settlement stage," because "[a]n increased recovery for the corporation is wholly incompatible with the goal of limiting the defendants' liability." *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188–89 (N.D. Cal. 1993). The court then ordered that the corporation "must, before proceeding further with the derivative action, retain independent counsel having no prior relationship with the corporation or the individual defendants." *Id.* at 1190. That is the order Plaintiffs ask this Court to enter. The conflict in *Oracle* was in-house counsel; the conflict here is more direct still – the same firm of record for the principal defendant and for the corporation from which he would pay. The reasoning applies with greater force.

The *Oracle* court put the point at the outset of its opinion: the derivative settlement "must be disapproved because, although plaintiffs' claims appear to be weak and the consideration offered by Oracle to settle the class action is relatively large, the court is unable to conclude that the Oracle directors who approved the derivative settlement acted with the independence required under Delaware law." *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1177 (N.D. Cal. 1993). This case is much stronger than *Oracle*. In *Oracle* the court thought the derivative claim was weak; here, the corporate usurpation is proven by the sworn testimony of AudioEye's own Chief Financial Officer. In *Oracle* the corporation at least received the administrative changes the derivative litigation had prompted; here, the contemplated release delivers AudioEye zero. And the corporate-process failure is more complete here than there: a board with no disinterested majority, no special committee, no notice to shareholders, and no independent counsel of any kind. If the *Oracle* settlement could not be approved for lack of independent counsel, then *a fortiori* this one – a proven

13

claim, no consideration, a conflicted board, no shareholder notice, no special committee – requires it.

The Court's inherent authority to manage its docket supplies the same power. The Advisory Committee Notes to Rule 23.1 confirm that the Court "has inherent power to provide for the conduct of the proceedings in a derivative action," including the power to require appropriate notice to shareholders.

Courts routinely exercise that power to order public companies to file current reports on Form 8-K disclosing the pendency and proposed disposition of derivative actions. See, e.g., *In re Resource Capital Corp. S'holder Deriv. Litig.*, Nos. 17 Civ. 00253 (LLS) & 17 Civ. 1381 (LLS), Preliminary Approval Order (S.D.N.Y. Mar. 22, 2019) (Stanton, J.) (ordering the company to "provide notice of the Settlement by filing with the SEC a Form 8-K"); *Bushansky v. Armacost*, No. 12-cv-01597-JST, slip op. at 11 (N.D. Cal. June 25, 2014) (ECF No. 49) (ordering notice by 8-K filing, an investor-relations webpage, and a press release).

Directing a nominal corporate defendant to appear through counsel of its own is a modest exercise of the same authority. It does not require the Court to decide the merits of any claim. It ensures only that the Court will not be asked to approve the disposition of a corporate asset without the Company or its shareholders being heard.

## III.  Plaintiffs Do Not Seek Quinn Emanuel's Disqualification as Mr. Moradi's Counsel.

Plaintiffs do not impugn Quinn Emanuel's professionalism or the ability of its lawyers. The problem is structural, not personal. No lawyer, however able, can at the same time advance AudioEye's $35 million claim against Mr. Moradi and protect Mr. Moradi's interest in defeating

14

it. The conflict inheres in the dual representation itself, and it would exist whatever firm undertook it.

Plaintiffs do not ask the Court to remove Quinn Emanuel from Mr. Moradi's defense. Rather, Plaintiffs ask the Court to direct that AudioEye – which today has no independent voice – retain counsel of its own.

Plaintiffs therefore do not invoke *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005), or the cases governing the disqualification of counsel. The requested relief is different: Mr. Moradi may keep his lawyer. AudioEye needs one of its own.

AudioEye simply may not be left to speak through Mr. Moradi's lawyer when the question before the Court is whether AudioEye should recover $35 million from Mr. Moradi.

## REBUTTAL TO QUINN EMANUEL'S OBJECTIONS

Plaintiffs raised this issue with Mr. Adam Abensohn of Quinn Emanuel by letter dated May 18, 2026, and received a reply on May 21, 2026. Snyder Decl. ¶¶ 14–18. Mr. Abensohn raised four objections, which Plaintiffs address in Parts A through D. Part E addresses a further line of attack – directed at Mr. Kovacs personally – that Plaintiffs expect Defendants to renew in opposition to this motion. Plaintiffs describe the settlement communications recounted here not to establish the validity or amount of any claim, but to establish the conflict and the need for the relief sought – a purpose for which such communications are properly considered. See Fed. R. Evid. 408(b).

## A. Joint Representation at the Pleading Stage Does Not Answer This Motion.

Quinn Emanuel's first objection is that it is settled practice for one firm to represent a corporation and its individual directors on a motion to dismiss a derivative action, citing *Scattered*

15

*Corp. v. Chicago Stock Exchange*, *Respler v. Evans*, and *Bell Atlantic Corp. v. Bolger*. Read for what they hold, those authorities do not support what Quinn Emanuel is doing here. The first of them affirmatively requires the relief Plaintiffs seek.

Start with *Bell Atlantic*, the case Quinn Emanuel leads with. The Third Circuit did permit one firm to represent the corporation and the director-defendants there – but it was explicit about why, and the reason defeats Quinn Emanuel here. The claim in *Bell Atlantic* alleged only mismanagement, a breach of the duty of care. On that kind of claim, the court explained, the corporation and the directors may share an interest. But the court drew the line clearly: except in patently frivolous cases, allegations that directors committed fraud, engaged in intentional misconduct, or engaged in self-dealing require separate counsel for the corporation. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993). The derivative claim here is a corporate-opportunity claim against a controlling stockholder. That is a claim of disloyalty, not mere mismanagement. The contrast does not end there. The Third Circuit also stressed that, in *Bell Atlantic*, the corporation's board had appointed a special committee, advised by independent counsel, that investigated the shareholders' demand before the corporation took a litigation position. AudioEye has done none of this: it has formed no special committee, conducted no independent investigation, and retained no counsel of its own. *Bell Atlantic* thus permitted joint counsel where a mere duty-of-care claim was paired with an independent corporate process; this case has a disloyalty claim and no independent process at all. *Bell Atlantic* does not permit joint counsel for a claim of this kind; it requires the corporation to have counsel of its own.

*Respler* and *Scattered* are narrower still. *Respler* states only that "in derivative actions, there exists no conflict of interest between a corporation and individual director defendants at the motion to dismiss stage, [and] therefore a law firm may represent all defendants without impropriety." *Respler v. Evans*, 17 F. Supp. 3d 418, 421 (D. Del. 2014) (emphasis added). *Scattered* stands on the

16

same ground: it is a Rule 23.1 demand-pleading case, decided at the pleading stage. The reasoning of both cases is specific to that stage. At the pleading stage the corporation and the director-defendants share one genuinely common interest – resisting a complaint that seeks to take control of a corporate claim away from the board – and a single firm may advance that procedural interest for everyone.

But that shared interest lasts only as long as the pleading stage does, and the cases themselves say so. Even the authority most favorable to joint representation builds in the exit. In *Voss v. Sutardja*, the court permitted one firm to represent the corporation and the individual defendants on a motion to dismiss, and in the same breath observed that the corporation "would be advised to obtain independent counsel in the future" – citing *In re Oracle Securities Litigation* for the proposition that a corporation must "retain independent counsel having no prior relationship with the corporation or the individual defendants" before proceeding with a settlement. *Voss v. Sutardja*, No. 14-CV-01581-LHK, 2015 WL 349444, at \*15 (N.D. Cal. Jan. 26, 2015). The line is the same one Section II describes: joint representation that is unobjectionable on a motion to dismiss becomes improper once the corporation moves from testing a complaint to deciding the fate of the claim.

This motion is not about the pleading stage. The conflict here is not about a motion to dismiss; it is about the disposition of the corporate claim. When Quinn Emanuel demanded, on AudioEye's behalf, that AudioEye release a $35 million claim against Mr. Moradi with no consideration identified for the corporation, the shared interest those cases assume disappeared. Resisting a complaint and surrendering a $35 million asset are not the same act, and they do not implicate the same interests.

None of Quinn Emanuel's cases involved anything like this record. None of them involved a present demand that the corporation compromise a $35 million derivative claim with no

17

consideration identified for the corporation. None involved a corporation with no disinterested board majority, no special committee, and no independent counsel. None involved an undisclosed derivative claim being released without notice to shareholders. The cases Quinn Emanuel cites approve joint representation at the pleading stage and nowhere else; not one of them holds that counsel for the alleged wrongdoer may negotiate the corporation's release of its own claim. The Court should take note of what those cases do not say.

Finally, the timing of this motion answers Quinn Emanuel's objection on its own. Plaintiffs did not move the moment Quinn Emanuel appeared for both AudioEye and Mr. Moradi on the motion to dismiss. Plaintiffs did not move to disqualify Quinn Emanuel at all. Plaintiffs accepted the pleading-stage practice that *Respler* and *Scattered* describe and urged Defendants in good faith to reconsider the conflict as it deepened. Plaintiffs did not move even when Quinn Emanuel filed a Rule 11 motion in AudioEye's name attacking the factual predicate of AudioEye's own claim. Plaintiffs moved only when the conflict began to inflict concrete prejudice – when AudioEye produced its Chief Financial Officer, uncounseled, as its corporate representative on the insider transactions; when joint counsel instructed the corporation's witnesses not to answer the questions that would prove the corporation's claim; and when Quinn Emanuel demanded, on one business day's notice, that the corporation release that claim. That is not the pleading stage. That is the disposition of the claim, and it is precisely the point at which the cases require the corporation to have counsel of its own.

## B.  The Standing Objection Does Not Defeat This Motion.

Quinn Emanuel's second objection is that Plaintiffs lack derivative standing and that the claims are meritless. Standing is not before the Court on this motion. Defendants' Rule 12 motions are fully briefed and *sub judice*, and whether the named plaintiffs have derivative standing is

18

committed to those motions. It is not a question the parties may resolve between themselves, and it is not one the Court must resolve to decide this one.

Two consequences follow, and neither helps Quinn Emanuel. First, a pending standing challenge does not extinguish the corporate claim or the Court's authority over its disposition. Rule 23.1(c)'s protections exist to safeguard the corporation and the absent shareholders, not the named plaintiff. *Papilsky*, 466 F.2d at 258. A court retains power to require Rule 23.1 process even where a named plaintiff's standing is contested or lost.

See *Bushansky*, slip op. at 4 (post-filing loss of standing did not strip the court of authority to order notice; permitting evasion of the requirement "would defeat the purpose of the rule, which seeks to discourage collusive settlements and provide other shareholders the opportunity to continue a potentially meritorious suit").

Second, the objection refutes itself. If a contested standing challenge freed counsel to release a derivative claim, every derivative defendant could evade Rule 23.1 by asserting one. A successful standing challenge does not mean the defendant keeps the proceeds of the challenged transaction. It means the corporation, through unconflicted counsel, decides whether to prosecute, compromise, or release the claim. That is the relief this motion seeks.

Two points about the named plaintiffs bear noting, because Quinn Emanuel argues its standing challenge as already won. It is not.

### 1.  Mr. Kovacs's Shareholder Standing Is Contested, Not Decided.

Mr. Kovacs's claim to shareholder status rests on AudioEye's own award agreements, which obligated the Company to settle his restricted stock units and enter him on its books as a record holder no later than March 15, 2021 – years before the conduct the derivative claims

challenge. Snyder Decl. ¶¶ 47–48. Whether AudioEye performed that obligation is a question of fact, and the proof lies in AudioEye's own stock ledger, which Defendants have not produced.

The for-cause forfeiture Quinn Emanuel relies on, moreover, rested on the premise that Mr. Kovacs's insider-trading allegations were false – a premise AudioEye's own Chief Financial Officer and Rule 30(b)(6) representative testified the Company never investigated. KG Tr. 70:6–9, 99:8–17.

Nor does any prior ruling decide the point. The first Kovacs action was, in the New York court's own words, "not a securities fraud action — it is an employment case" confined to a Labor Law § 740 retaliation claim; it neither reached nor decided Mr. Kovacs's shareholder status. *Kovacs v. AudioEye, Inc.*, No. 651810/2024, 2025 N.Y. Slip Op. 30403(U), at 4 (Sup. Ct. N.Y. Cnty. Jan. 31, 2025). Mr. Kovacs's standing is a live, contested question. It is not a decided one.

**2. Mr. Alesi Is a Current Shareholder Entitled to Rule 23.1(c) Protection.**

The derivative claims do not, in any event, depend on Mr. Kovacs. Mr. Russell Alesi is, and remains, a current holder of AudioEye common stock who asserts claims solely in a derivative capacity on the Company's behalf. ECF 1 ¶ 62. The contemporaneous-ownership requirement Quinn Emanuel invokes governs who may prosecute a derivative claim; Rule 23.1(c) governs the disposition of one, and conditions any release on notice "to shareholders." As a current shareholder, Mr. Alesi is among the people to whom that notice is owed and who are entitled to be heard before the corporate claim is released – whatever the outcome of the prosecution-standing question.

The standing question belongs to the Rule 12 motions and to the Court. It does not belong to Quinn Emanuel, and it does not permit the corporate claim to be released before the Court has ruled.

20

## C.  The Reasonableness of the Deadline Is Beside the Point.

Quinn Emanuel's third objection is that the one-business-day deadline was reasonable because it followed weeks of negotiation among Florida counsel, and that the undersigned counsel's refusal to accept the settlement reflects an interest in a fee. The motives of Plaintiffs' counsel do not bear on whether AudioEye needs its own lawyer. The governing rule does: a derivative claim cannot be settled, dismissed, or compromised without the Court's approval. Fed. R. Civ. P. 23.1(c). Plaintiffs' counsel is not free to accept a settlement of AudioEye's claim on any timetable, however long the negotiations that preceded it.

The objection in fact confirms the motion's premise. Quinn Emanuel says the settlement terms were negotiated among the parties' Florida counsel and were acceptable to Mr. Moradi. That is the difficulty. However many weeks those negotiations ran, no one in them represented the corporation whose asset was being traded away. This motion asks the Court to supply what those negotiations lacked.

## D.  The Lapse of the Offer Does Not Moot the Motion.

Quinn Emanuel's fourth objection is that there is no offer of settlement currently on the table, and therefore no basis for relief. The objection misreads the Rule. Rule 23.1(c) is not triggered by a live offer to a named plaintiff; it governs the settlement, voluntary dismissal, or compromise of the derivative action itself. The operative question is whether the parties intend to dispose of AudioEye's claim – not whether a particular offer remains open on a particular afternoon.

Quinn Emanuel's own correspondence answers that question. After the asserted lapse, it continues to describe the contemplated resolution as a jointly stipulated dismissal of the derivative claims as part of a wider settlement. So long as Defendants intend to obtain that dismissal, Rule

21

23.1(c) applies, and the protections it affords – court approval, shareholder notice, and a corporation able to speak for itself – are needed now. The deadline passed. The conflict did not. AudioEye needs counsel of its own for as long as its $35 million claim remains in this case and exposed to disposition. That is the case today.

### E.  This Motion Does Not Depend on Mr. Kovacs.

Defendants' principal response to this litigation has been a campaign of ad hominem attacks on Mr. Kovacs. Their motion to dismiss calls him a "disgruntled former employee," ECF 23 at 1, and a "serial litigant," ECF 23 at 36. The pattern is not new. In the Florida Action, AudioEye and Mr. Moradi accused Mr. Kovacs of fabricating his education and employment history and compared him in their complaint to George Santos. They have since abandoned that accusation: AudioEye's November 13, 2025 motion to amend the Florida complaint withdrew it, along with most of the other allegations attacking Mr. Kovacs's background. See ECF 1 ¶ 144. Plaintiffs expect the opposition to this motion to return to the same well.

The Court should disregard the personal smears. This motion has nothing to do with Mr. Kovacs – whether he was a good employee, when he graduated from college, or whether the Court finds him sympathetic. It does not ask the Court to credit his account of anything.

It asks a different question: whether AudioEye – the nominal corporate defendant and the real party in interest on a $35 million claim – has counsel of its own to evaluate that claim. The answer does not change with the Court's view of any plaintiff. The conflict is established by AudioEye's own record: the sworn Rule 30(b)(6) testimony of the Company's Chief Financial Officer, the Company's SEC filings, the composition of its board, and the twelve positions catalogued in Section F. None of it rests on Mr. Kovacs's account, and none of it is answered by impugning him.

22

This motion is about three things: the integrity of the adversary process, the requirements of Rule 23.1, and fairness to the Company and its shareholders. The ad hominem attacks on Mr. Kovacs and his counsel bear on none of them. The Court should treat them as the distraction they are.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order:

1. **Directing AudioEye to retain unconflicted counsel.** Within thirty days of this Order, AudioEye, Inc. shall retain counsel independent of Mr. Moradi, Ms. Georgevich, and Mr. Tahir; of Quinn Emanuel Urquhart & Sullivan, LLP and Brodsky Fotiu-Wojtowicz, PLLC; and of any other counsel representing the individual insider defendants – for the limited purpose of representing AudioEye, and only AudioEye, with respect to the derivative claims asserted in this action, including the corporate-opportunity claims arising from the November and December 2024 insider sales and the potential recovery from Mr. Moradi and the other selling insiders; evaluating any proposed settlement, voluntary dismissal, compromise, release, or Rule 23.1(c) submission concerning those claims; and advising the Court, as appropriate, regarding AudioEye's independent corporate position. The identity of such counsel and the manner of retention are left to AudioEye. Nothing in this Order shall disqualify Quinn Emanuel from continuing to represent Mr. Moradi in his individual capacity.

2. **Staying disposition of the derivative claims until unconflicted counsel appears.** Until counsel retained under Paragraph 1 has appeared on AudioEye's behalf, no party shall execute, notice, seek approval of, or present to this Court any settlement,

23

voluntary dismissal with prejudice, compromise, release, or Rule 23.1(c) submission affecting AudioEye's derivative claims asserted in this action.

3. **Directing notice to AudioEye's shareholders.** AudioEye shall provide notice to its shareholders of record, in a form and by a method approved by the Court, disclosing (a) the pendency of this action, including the caption, docket number, date of filing, and a summary of the claims, including the derivative claims valued by Plaintiffs at approximately $35 million; (b) the absence to date of any disclosure of this action in any SEC filing by AudioEye; (c) the Court's order requiring AudioEye to retain independent counsel before any further proceedings on the derivative claims; and (d) a procedure by which any AudioEye shareholder may request additional information or seek leave to intervene under Rule 24. A current report on Form 8-K filed with the Securities and Exchange Commission, posted to AudioEye's investor-relations website, is one appropriate method, and a method courts have ordered in comparable derivative proceedings. Before any settlement, voluntary dismissal, or compromise of the derivative claims is approved, AudioEye shall further disseminate notice of the material terms of the proposed disposition – including all consideration flowing to AudioEye, all consideration flowing to the named plaintiffs individually, all releases, side agreements, insurance contributions, and fee provisions – and the Court shall hold the Rule 23.1(c) fairness hearing only after the notice period closes and any motions to intervene are resolved.

4. **Preserving the claim against dismissal for no consideration.** If the Court declines to grant the foregoing relief and is instead inclined to permit the derivative claims to be dismissed or compromised for no consideration to AudioEye, any such dismissal or compromise shall be without prejudice to AudioEye and to any other shareholder of

24

AudioEye who may elect to assert those claims in the future, whether directly, derivatively, or through any corporate-process mechanism AudioEye may adopt.

5. **Granting such other and further relief** as the Court deems just and proper.

### CONCLUSION

AudioEye is the real party in interest on a $35 million claim, and no one speaks for it. Its board has no disinterested majority, and it has formed no special committee; it is represented by the firm that also represents the principal defendant from whom the claim would recover. On that record, the Company's largest asset is being negotiated toward a release with no consideration identified for the corporation. Rule 23.1 assumes a corporation able to speak for itself. Plaintiffs respectfully request that the Court order AudioEye to retain the counsel that assumption requires, and grant the related relief set out above.


Dated:    New York, New York
          May 26, 2026


Respectfully submitted,

**JOHN H. SNYDER PLLC**


John H. Snyder, Esq.
157 East 81st Street, Suite 3A
New York, NY 10028
(917) 292-3081
john@jhs.nyc

*Counsel for Plaintiffs*

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel certifies that this memorandum of law contains 7,658 words, excluding the caption, table of contents, table of authorities, signature block, and certificate of service. Counsel determined the word count using the word-count function in Google Docs.

EXHIBIT — STOCK PRICE & EVENT TIMELINE

# AudioEye, Inc. (AEYE) — Daily Close with Litigation Event Overlay

November 1, 2023 through April 2, 2026 · Source: Yahoo Finance daily closing prices



## EVENT TIMELINE

### WHISTLEBLOWING & RETALIATION

1 Nov 13 '23 — **Report to HR**

2 Jan 17 '24 — **Fired / Bettis recorded call**

3 Feb 8 '24 — **DOJ whistleblower report**

4 Feb 20 '24 — **RSUs seized / benefits retaliation**

5 Mar 20 '24 — **Birkin Bag Letter**

K Apr 5 '24 — **KOVACS I FILED**

SEC Apr 8 '24 — **SEC whistleblower complaint**

6 Apr 10 '24 — **Florida defamation** (2 days post-SEC)

7 May 2 '24 — **Humble SDNY suit** (dism'd w/ prej. Jul 3)

8 May 8 '24 — **ESTP interest stripped**

### INSIDER SALES & OBSTRUCTION

CB Jun 12 '24 — **Bettis sells 7,330 shs**; Fleming buys same

10 Aug 5 '24 — Wilkerson meeting

KG Nov '24 — **Georgevich sells $300K+**

11 Dec 4 '24 — **$30M dump:** DM $21.6M · CB $5.4M · JT $3.0M

12 Dec '24 — Blackstone pressure / Quinn campaign

### WITNESS TAMPERING & LAWFARE

13 Jan 2 '25 — Humble "Juju" texts

14 Jan 21 '25 — Quinn emails to Ducheine

15 Jan 24 '25 — Quinn false bribery letter

K-I Jan 31 '25 — **KOVACS I DISMISSED**

16 Feb 4 '25 — **AEYE litigation PR** (republishes smears)

K-II Mar 4 '25 — **KOVACS II FILED**

18 Apr 14 '25 — **Arizona retaliation**

19 Apr 26 '25 — NYPD report

20 Jun 3 '25 — Wilkerson sit-down

21 Jul 8 '25 — Quinn settlement demand

22 Jul 24 '25 — **Humble voicemail** (obstruction)

23 Sep 3 '25 — ESTP final K-1

K-II Oct 8 '25 — **KOVACS II DISMISSED**

24 Nov '25 — Employment verification interference

25 Nov 13 '25 — **FL Motion to Amend**

### FEDERAL ACTION

S Dec 12 '25 — **SDNY COMPLAINT FILED**

**Figure.** AEYE daily close, Nov. 1, 2023 – Apr. 2, 2026, with event overlay. Red = retaliation/fraud. Green = insider sales. Blue = Quinn Emanuel / obstruction. Gray = corroborating. Gold = Kovacs filings. Maroon = SDNY. Last close: **$6.63**