UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID KOVACS, RUSSELL ALESI, JULIAN DUCHEINE and DEMIAN LICHTENSTEIN, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID MORADI, DR. CARR BETTIS, JASON HUMBLE, JAMIL TAHIR, JAMES HAWKINS, DR. KATHERINE FLEMING, TONY COELHO, KELLY GEORGEVICH, JAMES SPOLAR, MALONEBAILEY LLC, AUDIOEYE, INC. and JOHN DOE 1-50, <br><br> Defendants, <br><br> and <br><br> ETERNAL SOURCES TECH PARTNERS LLC, FIRST CONTACT ENTERTAINMENT, INC., FORMULUS BLACK, INC., <br><br> Nominal Defendants. | Case No. 25-CV-10336 (JPO) <br><br> DECLARATION OF JOHN H. SNYDER IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AUDIOEYE TO RETAIN UNCONFLICTED COUNSEL |

I, John H. Snyder, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I. INTRODUCTION

1. I am the principal of John H. Snyder PLLC, counsel of record for Plaintiffs David Kovacs, Russell Alesi, Julian Ducheine, and Demian Lichtenstein in the above-captioned action. I am admitted to practice before this Court. I submit this declaration in support of Plaintiffs' Motion to Compel AudioEye to Retain Unconflicted Counsel.

2. Except where otherwise indicated, I make this declaration on personal knowledge. The matters stated herein are based on my participation in the litigation described, my review of the documents identified, and my receipt or transmission of the correspondence described.

1

3. This declaration sets forth the factual matters supporting the accompanying memorandum of law. It is organized by Background section of the brief for ease of cross-reference. No exhibits are attached to this declaration. The documents referenced are either (a) already in the record of this action (including the Complaint at ECF No. 1, which annexes ten schedules and 113 exhibits comprising the 19 sworn affidavits and declarations and the operative Florida and Arizona complaints), (b) publicly available SEC filings on EDGAR, (c) FRE 408 settlement communications described and quoted as necessary, or (d) deposition transcripts that have been prepared by the court reporter but are not yet final, as described in paragraphs 25 and 26 below. If Defendants dispute any characterization, the underlying materials may be submitted in connection with their opposition; Plaintiffs do not object on FRE 408 or non-final-transcript grounds in that event.

## II. THE THREE PENDING ACTIONS

### A. The SDNY Action

4. Plaintiffs filed the operative Complaint in this action on December 12, 2025 (ECF No. 1). The Complaint annexes ten schedules (A through J) and one hundred thirteen (113) exhibits, including nineteen (19) sworn affidavits and/or declarations.

5. Defendants moved to dismiss the Complaint on February 27, 2026. ECF Nos. 22, 25, 32. Plaintiffs opposed on April 6, 2026 (ECF Nos. 41, 42), Defendants replied on April 23, 2026 (ECF Nos. 50, 51, 52), and the motion remains sub judice.

6. On April 13, 2026, Defendants moved for Rule 11 sanctions. ECF No. 45. Plaintiffs opposed on April 27, 2026 (ECF No. 53), and Defendants replied on May 8, 2026 (ECF No. 56). The Rule 11 motion remains sub judice.

**B. The Florida Action**

7. On April 10, 2024 – two days after Mr. Kovacs submitted a whistleblower complaint to the SEC – AudioEye, Inc. and David Moradi filed a defamation action against Mr. Kovacs in the Eleventh Judicial Circuit, Miami-Dade County, captioned AudioEye, Inc. et al. v. Kovacs, No. 2024-006401-CA-01. The original Florida defamation complaint is in the record at Compl. Exh. 37.

8. On November 13, 2025, AudioEye and Mr. Moradi moved to amend their Florida complaint and attached a proposed amended complaint, which has since been granted and is now the operative complaint. The amended pleading abandons nearly all of the original "false qualifications" allegations. The motion to amend, with the proposed amended complaint, is in the record at Compl. Exh. 30.

9. The Florida action is pending. Discovery is open. The April 21–22, 2026 depositions of Mr. Moradi and Ms. Georgevich described in this brief and below were taken in that action.

10. Florida counsel for Plaintiff Kovacs is Cody German of Cole, Scott & Kissane.

11. Florida counsel for AudioEye and Mr. Moradi is Brodsky Fotiu-Wojtowicz. Mr. Benjamin Brodsky is the lead attorney from that firm with whom Plaintiffs' Florida counsel has corresponded on the matters described below.

**C. The Arizona Action**

12. On April 14, 2025, Dr. Carr Bettis filed a debt-collection action against Mr. Kovacs in the Superior Court of Arizona, Maricopa County, captioned CSB IV US Holdings, LLC v. JDLK Partners, Inc., et al., No. CV2025-013285. The action seeks repayment on a $100,000 loan

extended in 2017 that Mr. Kovacs contends was repaid in 2019. The Arizona complaint is in the record at Compl. Exh. 74.

**D. The Global Settlement Demand**

13. Beginning in April 2026, Plaintiffs and Defendants initiated discussions of a global settlement that would resolve all three actions on a coordinated basis.

14. On Sunday, May 17, 2026, at 11:47 a.m., I received an email from Adam Abensohn of Quinn Emanuel Urquhart & Sullivan, LLP. The email demanded that Mr. Kovacs accept, by 5:00 p.m. the following business day, a global settlement that would dismiss this SDNY action with prejudice – including the derivative claims belonging to AudioEye – and release the corporate-recovery claim against Mr. Moradi and the other selling insiders, with no consideration identified as flowing to AudioEye. I asked Mr. Abensohn in reply, that same day, on whose behalf Quinn Emanuel was writing. At 2:44 p.m. on May 17, 2026, Mr. Abensohn responded: "we are counsel to Mr. Moradi and AudioEye in both pending actions, which is clear from the pleadings. To the extent the Company or the Board requires separate counsel to evaluate and approve final settlement terms, they will have it."

15. The 11:47 a.m. May 17 email stated that settlement terms had been "negotiated with Florida counsel, including dismissal with prejudice of the NY action," and that Mr. Kovacs had "until 5 pm Monday to accept." The email further stated that Quinn Emanuel was "highly confident that the Court will approve dismissal of the derivative claims"; that "the Company and its Board, with appropriate representation, will provide any necessary approvals and notices"; that "the parties want to settle, and the lawyers should not stand in the way"; and that Plaintiffs' counsel's asserted interest in a fee award was "not a proper or ethical basis to frustrate the

4

finalization of a settlement." None of the four Plaintiffs authorized acceptance of that demand, and I did not communicate any acceptance of it on any Plaintiff's behalf.

16. On May 18, 2026, I responded to Mr. Abensohn's email, reiterated the six-prong proposal Plaintiffs had transmitted on May 16, 2026, and set a deadline of noon on Friday, May 22, 2026 for Quinn Emanuel to commit to the conditions Plaintiffs had proposed.

17. The May 17 email and my May 18 response were transmitted on FRE 408 settlement terms. The characterizations of those communications in the accompanying brief are accurate. Should the Court direct in camera production or should Defendants elect to submit the correspondence in connection with their opposition, Plaintiffs do not object on FRE 408 grounds.

18. On May 21, 2026, at 9:45 p.m., I received a further email from Mr. Abensohn responding to my May 18 letter. The email objected to Plaintiffs' position on four principal grounds. First, it asserted that Quinn Emanuel's joint representation of Mr. Moradi and AudioEye was proper at the current stage of the proceedings, citing Scattered Corp. v. Chicago Stock Exchange, Respler v. Evans, and Bell Atlantic Corp. v. Bolger. Second, it asserted that Plaintiffs' derivative claims were meritless and that Plaintiffs lacked derivative standing, which Mr. Abensohn described as a point Plaintiffs had already conceded. Third, it asserted that the one-business-day deadline was reasonable in light of prior weeks of negotiation between Florida counsel, and that Plaintiffs' counsel's refusal to accept the settlement was motivated by counsel's own interest in a fee rather than by the client's interest. Fourth, it asserted that no offer of settlement remained on the table and that there was therefore no basis for a motion under Rule 23.1. The email further stated that Quinn Emanuel would continue to represent both AudioEye and Mr. Moradi through the motion-to-dismiss phase of these proceedings, would continue to pursue the pending sanctions motion, and would seek additional sanctions if Plaintiffs made the contemplated filing.

5

### III. AUDIOEYE INSIDER SALES AND THE TRADING RECORD

19. Between June 2024 and January 2025, AudioEye insiders sold $35,218,799 of AudioEye common stock, with the bulk of the proceeds taken in a coordinated cluster on December 4, 2024. Mr. Moradi sold approximately $21.6 million in December 2024, plus additional sales in November 2024; Dr. Bettis sold approximately $5.4 million; Mr. Tahir sold approximately $3.0 million; and Ms. Georgevich sold over $300,000. The largest sales occurred on December 4, 2024, when Mr. Moradi, Dr. Bettis, and Mr. Tahir collectively sold approximately $30 million on a single day. No insider disclosed trading pursuant to a Rule 10b5-1 plan in any of the contemporaneous Forms 4.

20. The relevant Forms 4 filed by AudioEye insiders during the November 2024 – January 2025 period are publicly available on EDGAR. See also Compl. Exhs. 71 (Shelf Offering Prospectus, Feb. 13, 2024), 72 (ATM Agreement, June 6, 2024), and 73 (Prospectus Supplement, Dec. 4, 2024).

21. The Rule 10b5-1 record warrants brief description because the trades have repeatedly been characterized in correspondence as lawful:

    a. Ms. Georgevich's November 14, 2024 Form 4 reports 10,000 shares sold November 12, 2024 at $29.00 per share and 500 shares sold November 14, 2024 at $27.00 per share, for total proceeds of approximately $303,500.

    b. Mr. Moradi's November 14, 2024 Form 4 reports 134,043 shares sold through Sero Capital LLC on November 12–14, 2024 at weighted average prices of $25.72–$32.68 per share.

    c. Mr. Moradi's December 6, 2024 Form 4 reports 900,000 shares sold through Sero Capital on December 4, 2024 at $24.00 per share.

d. On each Form 4, the Rule 10b5-1(c) affirmative-defense checkbox is unchecked, and each Form 4 was executed under the penalty provisions of 18 U.S.C. § 1001 and 15 U.S.C. § 78ff(a).

e. AudioEye's 2024 Form 10-K, filed March 12, 2025 and signed under Section 302 by Ms. Georgevich, states in Item 9B that "[d]uring the three months ended December 31, 2024, no director or executive officer adopted, modified or terminated a '10b5-1 trading arrangement' or 'non-Rule 10b5-1 trading arrangement.'"

f. The first Rule 10b5-1 plans covering Mr. Moradi or Ms. Georgevich were adopted in May and June 2025 – six months after the December 4, 2024 sale – and were terminated in March 2026 without producing any disclosed sales.

22. The stock-price-with-event-overlay demonstrative I first transmitted to Quinn Emanuel on April 6, 2026, as an attachment to Plaintiffs' response to Defendants' Rule 11 notice dated March 20, 2026, in which Plaintiffs declined to withdraw the Complaint, is reproduced as Schedule A to the accompanying memorandum of law and was previously filed in this action at ECF Nos. 53 and 60.

## IV. JOINT REPRESENTATION OF AUDIOEYE AND MR. MORADI

23. Quinn Emanuel Urquhart & Sullivan, LLP appears in this action as counsel for both AudioEye, Inc. and David Moradi. The firm signed the motion to dismiss filed at ECF No. 22 on behalf of both AudioEye and Mr. Moradi.

24. At the April 22, 2026 deposition of Ms. Georgevich in the Florida action, counsel appeared on the record on behalf of both AudioEye and David Moradi. KG Tr. 4:18-19. No separate counsel appeared for Ms. Georgevich in her individual capacity at that deposition.

25. Ms. Georgevich's April 22, 2026 Rule 30(b)(6) deposition was transcribed by the court reporter. The transcript is in my possession and is cited in this declaration and in the accompanying brief as "KG Tr." The transcript is not yet final: the witness's read-and-sign period under the applicable Florida rule has not closed, and the testimony remains subject to any errata the witness may submit. Plaintiffs have therefore refrained from filing the transcript on the SDNY docket. See ECF Nos. 57, 60, 61. If Defendants dispute any characterization of the testimony, the transcript may be submitted in connection with their opposition or as the Court directs.

26. The same applies to Mr. Moradi's April 21, 2026 deposition: the transcript was prepared by the court reporter and is in my possession (cited as "DM Tr."), it is not yet final because the witness's read-and-sign period has not closed, and it may be submitted in connection with Defendants' opposition or as the Court directs if any characterization is disputed.

## V. AUDIOEYE BOARD COMPOSITION AND THE SERO CAPITAL ARRANGEMENT

27. AudioEye has a five-member board. Three of those directors – Mr. Moradi, Mr. Tahir, and Ms. Georgevich – personally sold AudioEye stock during the November and December 2024 insider sales. The two remaining directors – Dr. Katherine Fleming and Mr. James Hawkins – did not.

28. Two of the three interested directors hold their seats through arrangements involving Mr. Moradi's affiliated entity, Sero Capital LLC:

a. AudioEye's May 13, 2026 Definitive Proxy Statement, publicly available on EDGAR, discloses that Mr. Moradi and Mr. Tahir were "initially appointed by the Board in November 2019 following the exercise of director designation rights by Sero Capital

8

LLC," pursuant to a Letter Agreement dated August 14, 2019 between AudioEye and Sero Capital.

b. Mr. Moradi is the founder, Chief Executive Officer, and beneficial owner of Sero Capital.

c. Sero Capital is also the entity through which Mr. Moradi personally sold AudioEye stock during the November 2024 trading window now at issue. AudioEye's November 14, 2024 Form 4 (publicly available on EDGAR) reports 134,043 shares sold through Sero Capital on November 12, 13, and 14, 2024.

d. The same entity through which Mr. Moradi placed himself and Mr. Tahir on the board is the entity through which Mr. Moradi conducted the trading the derivative claims challenge.

## VI. THE DEMAND HISTORY

29. Plaintiffs have demanded that AudioEye install an independent corporate process to evaluate the derivative claims at issue since the Complaint was filed on December 12, 2025.

30. The Complaint identifies Dr. Katherine Fleming and Mr. James Hawkins by name as the two disinterested AudioEye directors capable of acting and annexes proposed Board resolutions as Schedule B providing a ready-made path for those directors to form a special committee and retain independent counsel. Compl. ¶ 2 and Schedule B.

31. Between December 29, 2025 and May 18, 2026, I transmitted ten (10) FRE 408 letters to Quinn Emanuel on behalf of Plaintiffs, each of which proposed or reiterated a path to resolution that began with AudioEye's retention of independent counsel and the formation of an independent corporate-decisionmaking mechanism. The letters were dated December 29, 2025; January 24,

9

2026; April 13, 2026; April 15, 2026; April 17, 2026; April 18, 2026; April 22, 2026; May 9, 2026; May 16, 2026; and May 18, 2026. Mr. Abensohn and I exchanged many additional emails as well.

32. Plaintiffs also identified the conflict on the public docket before the present motion. On April 6, 2026, in Plaintiffs' opposition to Defendants' motion to dismiss (ECF No. 41 at 23), I wrote: "AudioEye and Moradi are represented by the same counsel in this action. Moradi personally sold approximately $21.6 million of AudioEye stock during the relevant period. It is obviously in Moradi's interest that those proceeds remain undisturbed. It is in AudioEye's interest – and the interest of its shareholders – to recover them. Those interests are not aligned."

33. The April 17, 2026 letter is the first FRE 408 communication addressing Ms. Georgevich's individual position. In that letter, I asked Quinn Emanuel to identify independent personal counsel for Ms. Georgevich before her deposition, observed that her designation as AudioEye's Rule 30(b)(6) representative on stock-transaction topics "deepens my concerns about differing interests," and warned that placing her in the corporate-representative chair on those topics, in Mr. Moradi's stead, was "an act of cruelty" and presented "a serious risk she is being taken advantage of."

34. The April 18, 2026 letter transmitted a draft reliance-opinion form, annexed as Schedule B to that letter, in standard reliance-opinion form, with the customary assumptions, reliance language, continuing-duty clause, and signature block, ready for Quinn Emanuel to sign if the firm was prepared to stand behind the November and December 2024 trading under Section 10(b), Rule 10b-5, and the other federal securities laws. As of the date of this declaration, over a month after transmission, the opinion remains unsigned and unacknowledged.

35. The April 22, 2026 letter was transmitted on the day Ms. Georgevich was deposed and proposed a structural alternative under which AudioEye, acting through a special committee of

Dr. Fleming and Mr. Hawkins, would step in as plaintiff against Mr. Moradi directly. Quinn Emanuel did not respond.

36. The May 16, 2026 letter transmitted the six-prong proposal addressing the disposition of the SDNY action and the related Florida and Arizona matters. The proposal included a sixty-day mutual standstill across the three jurisdictions; mediation before a retired judge at JAMS or comparable provider; AudioEye's identification of a conflict-free corporate voice within thirty days; documentation of the non-derivative and derivative claims in separate instruments; full disclosure to this Court of the material terms of any global settlement; and FRE 408 confidentiality and process-record protections.

37. AudioEye has taken no action in response to any of these demands. No special committee has been formed. No independent counsel has been retained. To my knowledge, Ms. Fleming and Mr. Hawkins have not been provided with the documentary record summarized in the accompanying brief or with the proposed resolutions annexed as Schedule B to the Complaint.

38. The FRE 408 letters described in paragraphs 31 through 37 above are not attached to this declaration. The quoted language ("act of cruelty"; "serious risk she is being taken advantage of"; the six-prong proposal) accurately reflects the operative content of those letters. If Defendants dispute any characterization, the letters may be produced in connection with their opposition; Plaintiffs do not object on FRE 408 grounds in that event.

## VII. THE APRIL 17, 2026 EXCHANGE AND THE GEORGEVICH DEPOSITION

39. After Quinn Emanuel designated Ms. Georgevich (rather than Mr. Moradi) as AudioEye's Rule 30(b)(6) corporate representative on stock-transaction topics, I wrote to Mr. Abensohn on April 17, 2026, identified the deepening conflict, asked whether Ms. Georgevich had

her own counsel, requested that her personal counsel contact Plaintiffs' counsel before the deposition, and urged that "any adjournments necessary be taken so that she receives very good independent advice before giving testimony she cannot take back."

40. Quinn Emanuel responded the same day. The response declined to identify independent counsel for Ms. Georgevich, refused any adjournment, and asserted that inquiry into the November 2024 trading record would itself be improper because the underlying allegations were "barred in these proceedings by res judicata."

41. Mr. Abensohn's April 17, 2026 response stated:

> In response to your letter earlier today, there is no basis for concern over any exposure to Mr. Moradi or Ms. Georgevich. They did not engage in any securities fraud, and Mr. Kovacs' allegations of such misconduct have already been rejected in his failed litigation in New York. As such, those allegations are barred in these proceedings by res judicata, and will not be a proper area of inquiry in deposition. Those allegations are also part and parcel of the improper "smear campaign" that Mr. Kovacs admitted in a recording that the Court in Florida has already recognized as "compelling evidence" of his bad faith.
>
> Given that history, the only thing that would be improper here would be for Mr. Kovacs' counsel to pursue those improper and harassing allegations in deposition.

If Defendants dispute the text, the underlying email may be produced in connection with their opposition.

42. The April 22, 2026 deposition then proceeded with counsel appearing on the record on behalf of both AudioEye and David Moradi. KG Tr. 4:18-19. No counsel appeared separately for Ms. Georgevich in her individual capacity. On the Rule 10b5-1, insider-proceeds, registered-resale, and corporate-opportunity questions identified in the accompanying memorandum, counsel jointly representing AudioEye and Mr. Moradi instructed Ms. Georgevich not to answer. KG Tr. 58:23-59:8, 76:24-78:17.

43. Ms. Georgevich testified that she was unaware of the settlement offers Plaintiffs' counsel had transmitted to Quinn Emanuel over a period of months. KG Tr. 26:16-18.

44. As noted at paragraphs 25–26 above, the deposition transcripts have been prepared by the court reporter but are not yet final because the witnesses' read-and-sign periods have not closed, and Plaintiffs are refraining from filing them on the SDNY docket pending finalization. See ECF Nos. 57, 60, 61.

45. Ms. Georgevich's Rule 30(b)(6) testimony also placed in dispute the factual premises underlying AudioEye's February 20, 2024 letter (transmitted by Akin Gump Strauss Hauer & Feld LLP on AudioEye's behalf) purporting to cancel Mr. Kovacs's vested AudioEye equity. The forfeiture rested on the premise that Mr. Kovacs's November 13, 2023 whistleblower report to AudioEye's human resources function was not made in good faith and therefore did not qualify for protection under AudioEye's whistleblower policy.

46. With respect to that premise, Ms. Georgevich testified:

a. AudioEye conducted no investigation of whether Mr. Kovacs's concerns were made in good faith. KG Tr. 70:6-9.

b. AudioEye's whistleblower policy prohibits retaliation against employees who make good-faith reports, and the rule applies regardless of whether the underlying report ultimately proves substantiated. KG Tr. 68:7-20.

c. In the quarterly audit-committee meetings she attended from November 2023 through the date of her deposition, Mr. Kovacs and his allegations were never discussed. KG Tr. 99:8-17.

d. The management representation letters she signed in connection with the MaloneBailey audits of AudioEye's financial statements did not reference Mr. Kovacs or his allegations. KG Tr. 99:18-25.

e. She – the Chief Financial Officer who signed the Section 302 certifications for the relevant period – was unaware of the February 20, 2024 forfeiture letter cancelling Mr. Kovacs's equity. KG Tr. 50:21-52:11.

47. The equity that the February 20, 2024 letter purported to cancel was the subject of two original restricted stock unit awards and three later amendments between Mr. Kovacs and AudioEye, copies of which are annexed to the Complaint as Exhibits 80–82. The first, dated March 27, 2018, granted Mr. Kovacs units under the AudioEye, Inc. 2016 Incentive Compensation Plan. Compl. Exh. 81. The second, dated May 20, 2020, granted Mr. Kovacs 20,000 units under the AudioEye, Inc. 2019 Equity Incentive Plan. Compl. Exh. 80. On December 20, 2020, Mr. Kovacs and AudioEye executed three amendments, each signed for AudioEye by Mr. Moradi as Chief Executive Officer, that restructured three tranches of units – 16,501 units, 18,000 units, and 18,000 units. Compl. Exh. 82. Each amendment advanced the settlement date: for the two tranches under the 2016 Plan, the amended Settlement Date is the date of execution of the amendment – December 20, 2020 – and in any event no later than March 15 of the following calendar year; for the tranche under the 2019 Plan, the units vested on December 28, 2020 and were to be settled promptly thereafter, and in any event no later than March 15 of the following calendar year. By the terms of those AudioEye-drafted agreements, settlement of all three tranches was contractually due no later than March 15, 2021 – approximately three years before Mr. Kovacs's January 2024 termination and the February 2024 forfeiture letter.

14

48. Settlement, under those agreements, was the act by which units became shares of AudioEye common stock. Section 6.1 of the 2019 Plan restricted stock unit agreement provides that, on settlement, AudioEye "shall (a) issue and deliver to the Participant the number of shares of Common Stock equal to the number of Vested Units and (b) enter the Participant's name on the books of the Company as the shareholder of record" with respect to those shares. Whether AudioEye performed that obligation – whether it issued the shares and entered Mr. Kovacs on its books as a record holder when settlement came due in 2020–2021 – and whether any shares so issued were ever validly cancelled, are matters established by AudioEye's stock ledger, its transfer-agent records, and Mr. Kovacs's tax records. AudioEye holds the corporate records. At her Rule 30(b)(6) deposition, Ms. Georgevich, AudioEye's then-Chief Financial Officer, was unable to state how many AudioEye shares Mr. Kovacs held or whether any such shares had been cancelled. Those questions have not been resolved on the present record.

## VIII. THE BRODSKY APOLOGY

49. On May 7, 2026, Mr. Brodsky transmitted to Mr. German proposed apology language that AudioEye and Mr. Moradi have made a condition of any Florida settlement.

50. The proposed apology language requires Mr. Kovacs to swear, under oath in Florida, that he made "false claims of racism, fraud, and securities manipulation" against Mr. Moradi and Dr. Bettis, and that he directed the issuance of a press release containing allegations "that [he] knew lacked a proper factual basis." If Defendants dispute the text, the underlying transmission may be produced in connection with their opposition.

51. The documentary record on which AudioEye's $35 million corporate-recovery claim depends includes: (a) the Forms 4 reflecting the November and December 2024 insider trading at

issue (publicly available on EDGAR; see also Compl. Exhs. 71–73); (b) the stock-price-with-event-overlay demonstrative (reproduced as Schedule A to the accompanying memorandum of law; previously filed at ECF Nos. 53 and 60); (c) the depositions of Mr. Moradi and Ms. Georgevich (transcripts as described in paragraphs 25–26 above); and (d) the nineteen (19) sworn declarations annexed to the Complaint (see Compl., Sched. J, listing Compl. Exhs. 1–19).

52. The nineteen sworn affidavits and declarations annexed to the Complaint include, among others, the Declaration of Mario Rodriguez (Compl. Exh. 7, concerning a speakerphone call in August 2023 in which Mr. Moradi discussed using a VPN to short AudioEye stock without attribution); the Declaration of Julian Ducheine (Compl. Exh. 3, describing Mr. Humble's solicitation of harm against Mr. Kovacs and subsequent Quinn Emanuel pressuring of a witness); and the Declaration of Demian Lichtenstein (Compl. Exh. 5, describing the coercive tactics used to seize First Contact Entertainment).

## IX. SEC NONDISCLOSURE

53. AudioEye has not disclosed this action in any filing with the Securities and Exchange Commission. The following filings, each of which I have reviewed on EDGAR, contain no reference to this action:

  a. AudioEye's Annual Report on Form 10-K for the fiscal year ended December 31, 2025, filed on March 12, 2026;

  b. AudioEye's Amendment No. 1 to the Form 10-K, filed April 30, 2026;

  c. AudioEye's Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2026, filed May 12, 2026;

16

d. AudioEye's Definitive Proxy Statement for the 2026 Annual Meeting, filed May 13, 2026.

54. The Q1 2026 Form 10-Q reports approximately $8.6 million in cash and cash equivalents, approximately $17.0 million in term-loan principal outstanding, and approximately $440,000 in working capital. AudioEye's Definitive Proxy Statement for the 2026 Annual Meeting reports that 12,493,415 shares of common stock were outstanding as of the May 6, 2026 record date. AudioEye's common stock closed at $7.26 on May 18, 2026, the trading day after Quinn Emanuel transmitted the Sunday ultimatum, implying a market capitalization of approximately $90.7 million.

55. AudioEye's Annual Report on Form 10-K for the fiscal year ended December 31, 2025, filed March 12, 2026, is publicly available on EDGAR. As noted in the accompanying brief, the filing omits any mention of this action.

56. AudioEye's Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2026, filed May 12, 2026, is publicly available on EDGAR. The cash, term-loan, and working-capital figures referenced above appear in the condensed consolidated balance sheet and accompanying notes.

57. AudioEye's Definitive Proxy Statement for the 2026 Annual Meeting, filed May 13, 2026, is publicly available on EDGAR. Proposal No. 1 seeks stockholder approval to elect five directors, including Mr. Moradi, Mr. Tahir, and Ms. Georgevich. The proxy states that all director nominees were elected at AudioEye's 2025 Annual Meeting except Ms. Georgevich, who was elected by the Board on May 4, 2026 in connection with her appointment as Chief Executive Officer. Proposal No. 2 seeks a non-binding advisory vote approving AudioEye's 2025 executive

17

compensation. The Summary Compensation Table reports that Mr. Moradi was paid or earned total 2025 compensation of $2,979,528, including $2,879,528 in stock awards.

## X. THE MAY 9, 2026 ENGAGEMENT INQUIRY

58. During the settlement discussions described above, Defendants' Florida counsel and I discussed the need for the Company to have separate counsel, for the reasons discussed herein. That discussion included AudioEye's placement of Ms. Georgevich as Chief Executive Officer. In that context, the topic of AudioEye engaging my firm for future institutional advisory work came up briefly and was rejected by Mr. Brodsky. I raised it to gauge his candid response and to assess whether Ms. Georgevich's elevation to Chief Executive Officer reflected an actual shift in the Company's leadership or a continuation of Mr. Moradi's control. I followed with a letter on May 9, 2026 to make a record. I stated that any such future engagement would be a matter for AudioEye's own corporate decision, made through AudioEye's own process and on its own timeline, and that it formed no part of the settlement consideration and did not appear in, affect, or depend upon the settlement framework. The fee reimbursement set forth in the settlement framework is a separate and conventional settlement term, payable to Plaintiffs. The relief sought in the accompanying motion is that AudioEye retain independent counsel of its own – not my firm, not Quinn Emanuel, and not anyone controlled by Mr. Moradi. The May 9, 2026 letter was transmitted on FRE 408 settlement terms and is not attached; the characterizations above are accurate, and if Defendants dispute any characterization, the letter may be produced in connection with their opposition, and Plaintiffs do not object on FRE 408 grounds in that event.

18

## XI. CONCLUSION

59. The factual statements made in this declaration and in the accompanying memorandum of law are supported by the documents and testimony described above, by the docket of this action (including the Complaint at ECF No. 1 and the 113 exhibits annexed thereto), and by the publicly available SEC filings on EDGAR identified at paragraphs 53–57. As noted in the body of this declaration, the FRE 408 correspondence and non-final deposition transcripts referenced are not attached; the characterizations are accurate, and if any characterization is disputed, Defendants may produce the underlying materials in connection with their opposition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New York, New York on May 26, 2026.

 

_____

John H. Snyder

## DOCUMENTS REFERENCED IN THIS DECLARATION

No exhibits are attached to this declaration. All documents referenced are either (a) already in the record of this action, (b) publicly available SEC filings on EDGAR, (c) FRE 408 settlement communications described and quoted as necessary in the body above, or (d) deposition transcripts prepared by the court reporter that are not yet final.

### (a) In the record of this action (Complaint exhibits, ECF No. 1)

Schedule B – Draft Special Committee Resolutions → Compl., Schedule B

Forms 4 and stock-trading documentary record → Schedules E, G to the Complaint

Nineteen (19) sworn affidavits and declarations → Compl. Exhs. 1–19 (Kovacs Decl. at Compl. Exh. 1; DiMaggio Decl. at Compl. Exh. 2; Ducheine Decl. at Compl. Exh. 3; Arena Decl. at Compl. Exh. 4; Lichtenstein Decl. at Compl. Exh. 5; Anderson Decl. at Compl. Exh. 6; Rodriguez Decl. at Compl. Exh. 7; Wagers Decl. at Compl. Exh. 8; Wieczorek Decl. at Compl. Exh. 9; Destin Decl. at Compl. Exh. 10; Tannenbaum Decl. at Compl. Exh. 11; Said Decl. at Compl. Exh. 12; Tanzer Decl. at Compl. Exh. 13; Kovacs Decl. (2024) at Compl. Exh. 14; Newlin Decl. at Compl. Exh. 15; Withrow Decl. at Compl. Exh. 16; Arena Decl. (2024) at Compl. Exh. 17; McGlashan Decl. at Compl. Exh. 18; Alesi Decl. at Compl. Exh. 19)

HR Emails – internal whistleblower report (Nov. 13, 2023) → Compl. Exh. 31

Spolar "For Cause" Email (Jan. 19, 2024) → Compl. Exh. 32

DOJ Whistleblower Report (Feb. 8, 2024) → Compl. Exh. 33

Akin Gump forfeiture letter (Feb. 20, 2024) → Compl. Exh. 34

Birkin Bag Letter (Mar. 20, 2024) → Compl. Exh. 35

SEC Whistleblower Submission (Apr. 8, 2024) → Compl. Exh. 36

Florida defamation complaint (Apr. 10, 2024) → Compl. Exh. 37

Quinn Settlement Demand (July 8, 2025) → Compl. Exh. 68

Insider Trading Policy → Compl. Exh. 70

Shelf Offering Prospectus (Feb. 13, 2024) → Compl. Exh. 71

ATM Agreement (June 6, 2024) → Compl. Exh. 72

Prospectus Supplement (Dec. 4, 2024) → Compl. Exh. 73

Arizona debt-collection complaint (Apr. 14, 2025) → Compl. Exh. 74

AudioEye 2023 Form 10-K → Compl. Exh. 86

AudioEye 2024 Form 10-K → Compl. Exh. 87

Florida motion to amend complaint (Nov. 13, 2025) → Compl. Exh. 30

### (b) Publicly available on EDGAR (cited, not attached)

AudioEye 2025 Form 10-K (filed March 12, 2026)

AudioEye Form 10-K/A, Amendment No. 1 (filed April 30, 2026)

AudioEye Q1 2026 Form 10-Q (filed May 12, 2026) – cash, term-loan, and working-capital
figures

AudioEye Definitive Proxy Statement (filed May 13, 2026) – director-election and advisory
executive-compensation proposals

Forms 4 filed by AudioEye insiders, November 2024 – January 2025 – trading record
underlying the $35 million corporate-opportunity claim

21

**(c) FRE 408 settlement communications (described and where indicated quoted; not attached)**

May 7, 2026 transmission from Mr. Brodsky to Mr. German (Brodsky apology language; pertinent text quoted at ¶ 50)

April 17, 2026 letter from Mr. Snyder to Mr. Abensohn (Georgevich representation; "act of cruelty"; "serious risk she is being taken advantage of")

April 17, 2026 response from Mr. Abensohn (quoted in full at ¶ 41)

April 18, 2026 letter from Mr. Snyder to Mr. Abensohn (reliance-opinion form, with Schedule B)

April 22, 2026 letter from Mr. Snyder to Mr. Abensohn (special-committee structural alternative)

May 9, 2026 letter from Mr. Snyder (response to Florida counsel's engagement inquiry; described at ¶ 58)

May 16, 2026 letter from Mr. Snyder to Mr. Abensohn (six-prong proposal)

May 17, 2026 email from Mr. Abensohn (demand for global settlement on 5:00 p.m. next-business-day deadline)

May 18, 2026 letter from Mr. Snyder (response; noon-Friday-May-22 deadline)

May 21, 2026 email from Mr. Abensohn (response to May 18 letter; four objections; described at ¶ 18)

### (d) Deposition transcripts prepared by the court reporter but not yet final

Rule 30(b)(6) deposition of Kelly Georgevich on behalf of AudioEye, Inc. (April 22, 2026) – cited as "KG Tr."; prepared by the court reporter, not yet final pending the witness's read-and-sign period

Deposition of David Moradi (April 21, 2026) – cited as "DM Tr."; prepared by the court reporter, not yet final pending the witness's read-and-sign period

### (e) Attached to the accompanying brief (not to this declaration)

Stock-price-with-event-overlay demonstrative – reproduced as Schedule A to the accompanying memorandum of law; previously filed at ECF Nos. 53 and 60