# John H. Snyder

157 East 81st Street, #3A · New York, NY 10028 · john@jhs.nyc · jhs.nyc

May 28, 2026

VIA ECF

Hon. J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

Re:    *Kovacs et al. v. Moradi et al.*, No. 25-CV-10336 (JPO) —
        Plaintiffs' Opposition to ECF 65

Dear Judge Oetken:

This letter responds to Mr. Abensohn's letter dated May 27, 2026, submitted on behalf of Mr. Moradi and AudioEye, wherein Defendants request that the Court defer ruling on our recently-filed Motion to Compel AudioEye to Retain Unconflicted Counsel (ECF 62–64).

The Court should deny Defendants' letter-motion, order that the parties brief the "Unconflicted Counsel" motion per the Local Rules, and set the matter down for a hearing as soon as practicable.

Defendants do not dispute that they are "continuing to pursue settlement negotiations" with Mr. Kovacs's Florida counsel "without AudioEye being separately represented." ECF 65 at 2.

The conflict of interest described in ECF 63 and 64 is actively prejudicing the parties, the Company, its shareholders, and the adversarial process.

Earlier today, Florida counsel for Moradi and AudioEye circulated a proposed settlement agreement. The proposed terms would release AudioEye's $35 million corporate claim against Mr. Moradi and the insiders for zero consideration.

Particularly troubling, Section 3.1 of the proposed terms requires Plaintiffs to file an "Agreed Motion" dismissing this action "pursuant to Federal Rule of Civil Procedure 23.1" and to represent to this Court that the derivative claims "lack merit and are of limited value to the shareholders and/or members of AudioEye."

Let me be perfectly clear. Prior to filing this case on December 12, 2025, Plaintiffs performed an exhaustive pre-filing investigation over several months. We submitted 19 sworn witness

statements and 113 exhibits that corroborate the allegations. Since filing, discovery in Florida has confirmed and reinforced the allegations of the Complaint. We stand behind our pleading. That includes the derivative claim asserted against Moradi and the other insiders for usurpation of corporate opportunity. This claim is not "without merit" and it appears to have considerable value if prosecuted on AudioEye's behalf.

We have prepared Schedule A, which is an outline of proof showing specific evidence proving every element of a usurpation of corporate opportunity claim. That claim belongs to AudioEye. The claim exists regardless of whether Kovacs and/or Alesi are ultimately determined to have standing to litigate it. AudioEye is a public company. The $35 million usurpation has not been disclosed to shareholders. Plaintiffs are not allowed to release AudioEye's $35 million claim without the Rule 23.1 process, which requires disclosure to shareholders and an independent voice speaking for AudioEye.

Defendants' fictitious "Agreed Motion" amounts to a collusive effort to manufacture a misleading history on the dockets of two courts. It highlights the need for independent counsel. AudioEye has no corporate interest in (i) compromising its $35 million claim; or (ii) constructing a false history to justify it. If properly counseled, AudioEye would oppose these efforts.

Rule 23.1(c) exists to prevent the surrender of derivative claims through a collusive or conflicted process. Its notice-and-approval requirement guards against resolutions that benefit the plaintiff and the defendants to the exclusion of the corporation and absent shareholders. *See Papilsky v. Berndt*, 466 F.2d 251, 258 (2d Cir. 1972); *Bushansky v. Armacost*, No. 12-cv-01597, 2014 WL 2902246, at *2–3 (N.D. Cal. June 25, 2014). The protection it provides cannot be supplied after the dismissal has already been negotiated, drafted, signed, and presented as an agreed disposition. AudioEye needs independent counsel now.

Defendants argue that the Motion to Compel may be rendered "moot" if the Court grants the pending motion to dismiss or Rule 11 motion. ECF 65 at 1. That premise is wrong.

Defendants' letter refers to "Plaintiff" in the singular, as if Mr. Kovacs were the only plaintiff. He is not. Russell Alesi is also a Plaintiff. He is a current AudioEye shareholder. He appears in this case to protect AudioEye's derivative claims. Compl. ¶ 62. His status as a current shareholder triggers the Rule 23.1(c) protections at issue. Those protections do not turn on Mr. Kovacs's individual claims and are not disposed of by arguments directed to Mr. Kovacs's standing.

Whether Mr. Kovacs or Mr. Alesi has standing to lead the action determines only who may prosecute the claim; it does not determine whether the claim exists, what it is worth, or whether Rule 23.1 can be ignored. Any settlement or dismissal of a derivative action requires

notice to shareholders under Rule 23.1(c), and those shareholders should have a right to be heard before the company's largest asset is compromised for zero consideration.

Defendants' reliance on *Respler ex rel. Magnum Hunter Resources Corp. v. Evans*, 17 F. Supp. 3d 418 (D. Del. 2014), is misplaced. *Respler* concerned representation at the pleading stage, where the corporation and individual defendants shared a common procedural interest in seeking dismissal. It involved no proposed settlement, no voluntary dismissal, no Rule 23.1(c) notice process, and no effort by conflicted counsel to secure a release of derivative claims against the insiders they also represented.

Defendants raise confidentiality only in a footnote, and only in passing. It does not bear on the question before the Court. Schedule A rests on the Complaint, its exhibits, and publicly filed SEC documents. The limited transcript references are the subject of Plaintiffs' pending letter-motion at ECF 57, and if Defendants believe any relief is warranted, they may move for it. We will not litigate it here.

Plaintiffs respectfully request that the Court:

(a) deny Defendants' letter-motion at ECF 65;

(b) require opposition to Plaintiffs' Motion to Compel to be filed on the ordinary schedule under Local Civil Rule 6.1(b), with Plaintiffs' reply due seven days thereafter.

Respectfully submitted,

John H. Snyder

cc: All counsel of record via ECF

**SCHEDULE A**

**Elements of the Breach of Fiduciary Duty / Usurpation of Corporate Opportunity Claim on Behalf of AudioEye, Inc.**

Real party in interest: AudioEye, Inc. (Delaware corporation). Defendants: David Moradi (CEO, director, 10% owner; sold through Sero Capital LLC), Dr. Carr Bettis (Executive Chairman / Chairman of the Board; sold through CSB IV US Holdings LLC and directly), Jamil Tahir (director; sold through TurnMark Partners L.P.), and Kelly Georgevich (CFO) — the insider sellers — and possibly others. Because AudioEye is a Delaware corporation, Delaware law supplies the elements.

**Controlling standard.** Under *Broz v. Cellular Information Systems, Inc.*, 673 A.2d 148, 154–55 (Del. 1996), and *Guth v. Loft, Inc.*, 5 A.2d 503, 510–11 (Del. 1939), a corporate fiduciary may not take for himself an opportunity where (1) the corporation is financially able to exploit it, (2) the opportunity is within the corporation's line of business, (3) the corporation has an interest or reasonable expectancy in it, and (4) by taking it the fiduciary is placed in a position inimical to his duties. No single factor is dispositive; the doctrine is applied flexibly under the duty of loyalty. Formal presentation to the board is a recognized safe harbor, but the inquiry turns on the circumstances as a whole. *Broz*, 673 A.2d at 155, 157.

| Element | How Satisfied on the Record |
|---|---|
| **Threshold: Fiduciary relationship** | Moradi is AudioEye's CEO and director (Georgevich 30(b)(6) Tr. 80:1–8); owed fiduciary duties including the duty of loyalty (Tr. 79:18–80:11); duty of loyalty requires placing the corporation's interests ahead of his own (Tr. 79:21–25); AudioEye is the beneficiary, with value flowing to the company and its shareholders rather than to any individual officer (Tr. 81:1–7). Bettis (Executive Chairman / Chairman of the Board), Tahir (director), and Georgevich (CFO) are likewise fiduciaries who sold during the same window. *See* Compl. ¶¶ 80, 91, 94, 139; Form 4 (Moradi) (filed Nov. 14, 2024); Form 4 (Moradi) (filed Dec. 6, 2024); Form 4 (Bettis) (filed Dec. 6, 2024); Form 4 (Tahir) (filed Dec. 6, 2024). |

| 1. Corporation financially able to exploit the opportunity | The CFO agreed that AudioEye was not a cash-rich company at year-end 2024 and that additional cash would have benefited liquidity (Georgevich 30(b)(6) Tr. 70:22–71:1; 71:10–12). An additional $21M would have reduced the need for outside financing (Tr. 71:14–19), improved access to debt on favorable terms (Tr. 72:4–10), funded product development the company had determined was required (Tr. 72:12–18), and strengthened the balance sheet in a way an investor would likely view positively (Tr. 73:19–25; 79:4–10). AudioEye's 2024 Form 10-K reported $5.7 million in cash and working capital of $549,000. *See* AudioEye, Inc., Form 10-K (fiscal year 2024) (filed Mar. 12, 2025) ("Exh. 87"). |
|---|---|
| 2. Opportunity within the corporation's line of business | AudioEye is a public issuer that raises capital through registered offerings under its shelf, Reg. No. 333-276937. *See* AudioEye, Inc., Prospectus filed pursuant to Rule 424(b)(3), Reg. No. 333-276937 (Feb. 14, 2024) ("Exh. 71") (up to $150M company securities; no proceeds to AudioEye from selling-stockholder sales). AudioEye also maintained an at-the-market facility for its own treasury. *See* AudioEye, Inc., Prospectus Supplement filed pursuant to Rule 424(b)(5), Reg. No. 333-276937 (June 6, 2024) ("Exh. 72") (up to $7M company stock through Craig-Hallum). The December 2024 resale used the same registration structure for selling stockholders, not AudioEye. *See* Exh. 73 (Dec. 4, 2024 prospectus supplement). Stock rose from ~$5 to over $30 in 2024. *See* Compl. ¶ 139. |
| 3. Corporation had an interest or expectancy in the opportunity | The CFO agreed that the corporate-opportunity doctrine requires presenting an opportunity that belongs to the corporation before taking it personally (Georgevich 30(b)(6) Tr. 80:12–23). The December 2024 market window, registered under AudioEye's own shelf, was an opportunity in which the company had a direct interest: it could have conducted a primary raise for its treasury. The offering documents state that AudioEye would not sell shares and would receive no proceeds, while the selling stockholders would receive all net proceeds. *See* Exh. 73 (Dec. 4, 2024 prospectus supplement). Asked whether AudioEye conducted any internal analysis of whether the company should use the window to raise capital, or whether insiders were taking an opportunity the company could have used, the witness was instructed not to answer (Tr. 82:5–25; 83:16–21). |

| | |
|---|---|
| **4. Fiduciary placed in a position inimical to his duties (took it for himself; no presentation; no disinterested process)** | Per Forms 4, Moradi (through Sero Capital LLC) sold ~1,034,043 shares Nov. 12–Dec. 4, 2024 for ~$25.37M, including 900,000 shares in the Dec. 4 secondary at $24 for $21.6M. Co-sellers in the same Dec. 4 offering: Bettis (through CSB IV) 225,000 shares at $24 ($5.4M); Tahir (through TurnMark Partners L.P.) 125,000 shares at $24 ($3.0M); Georgevich (CFO) 10,500 shares Nov. 12–14. The Dec. 4 transaction was a resale by selling stockholders — 1,250,000 shares at $24, no proceeds to AudioEye. *See* Form 4 (Moradi) (filed Nov. 14 and Dec. 6, 2024); Form 4 (Bettis) (filed Dec. 6, 2024); Form 4 (Tahir) (filed Dec. 6, 2024); Exh. 73; Compl. ¶ 139; Schedule G. Asked about the offering mechanics, the witness was instructed not to answer (Georgevich 30(b)(6) Tr. 82:5–25; 83:16–21). AudioEye retained no independent outside counsel to investigate. No Form 4 disclosed trading under a Rule 10b5-1 plan. *See* Compl. ¶ 139. |
| **Damages / remedy (accounting & disgorgement)** | A fiduciary who usurps a corporate opportunity must account for the profit. *Guth*, 5 A.2d 503; *Broz*, 673 A.2d 148. The corporate opportunity here exceeds $35 million; the insiders' proceeds are disclosed on the Forms 4 and the December 4, 2024 offering documents. *See* Compl. ¶¶ 139, 159; Schedule G; Exh. 73; Forms 4 (Moradi, Bettis, Tahir). |

**Source note.** Transcript citations are to the Georgevich Rule 30(b)(6) deposition dated April 22, 2026. Plaintiffs will provide certified transcript citations if the Court grants Plaintiffs' pending letter-motion for leave to file the relevant deposition transcripts. Documentary citations are to the Complaint, its exhibits, and publicly filed SEC documents, including Exh. 71 (Feb. 14, 2024 prospectus), Exh. 72 (June 6, 2024 ATM prospectus supplement), Exh. 73 (Dec. 4, 2024 prospectus supplement), Schedule G, AudioEye's 2024 Form 10-K, and insider Forms 4.