UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KOVACS, derivatively on behalf of
AUDIOEYE, INC.; RUSSELL G. ALESI,
derivatively on behalf of AUDIOEYE, INC.;
and DAVID KOVACS, individually,

     *Plaintiffs,*

     v.

DAVID MORADI; SERO CAPITAL LLC;
DR. CARR BETTIS; CSB IV US
HOLDINGS LLC; JAMIL TAHIR;
TURNMARK PARTNERS L.P.; KELLY
GEORGEVICH; and JASON HUMBLE,

     *Defendants,*

     and

AUDIOEYE, INC.,

     *Defendant and Nominal Defendant.*

Case No. 25-CV-10336 (JPO)

MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO FILE AMENDED
COMPLAINT AND RELATED RELIEF

## PRELIMINARY STATEMENT

Plaintiffs move under Federal Rules of Civil Procedure 15(a)(2) and 21 for leave to file the

proposed Amended Complaint submitted with the motion as Exhibit A. Plaintiffs also seek

approval under Rule 23.1(c), to the extent required, for the without-prejudice dismissal of

derivative claims not carried forward. In the alternative, proposed plaintiff Daniel Kovacs moves

under Rule 24(b) for leave to intervene as a plaintiff.

Exhibit B is a redline against the original Complaint. The Amended Complaint

substantially restructures the original pleading in light of intervening events. Section C of the

Background summarizes the significant changes.

Two developments supply good cause.

1

First, the Amended Complaint removes the threshold derivative-standing dispute. Plaintiffs continue to allege that David Kovacs was and remains an AudioEye shareholder. But the Court need not resolve that issue to allow AudioEye's derivative claim to proceed. The Amended Complaint adds Daniel Kovacs, a continuous AudioEye shareholder whose ownership is documented by brokerage records and spans the challenged transactions. See Exhibit C (Daniel Kovacs Declaration) ¶ 3. Daniel Kovacs has been an AudioEye investor since 2014. His records show a December 2023 purchase of AudioEye stock that he has held continuously through the present.

Second, the Amended Complaint pleads facts developed in April 2026 from AudioEye witnesses in the related Florida action. Since the original Complaint was filed in December 2025, the factual record has developed materially. As described in ECF No. 66 and alleged in the proposed Amended Complaint, Moradi and Georgevich confirmed core facts supporting the corporate-opportunity claim: AudioEye needed capital; the December 2024 financing window was available to the Company; and the insiders consumed that opportunity for themselves while AudioEye received nothing.

The proposed Amended Complaint accounts for these developments and sharpens the pleading. It focuses the case on three questions:

1.     Did AudioEye's insiders usurp an approximately $34 million corporate opportunity by using the Company's own registration machinery to sell their shares – including a $30 million block on December 4, 2024, at $24 per share – while AudioEye received nothing?

2.     Did Moradi, Bettis, and Humble operate a RICO enterprise, as illustrated by the repeating pattern at Formulus Black, First Contact, and AudioEye?

3.     Did AudioEye retaliate against David Kovacs for his protected whistleblower activity, i.e., his April 8, 2024 report to the Securities and Exchange Commission?

This motion follows the conference on June 1, 2026, where the Court denied Plaintiffs' oral request to amend "as untimely, unless I find that there is good cause for it as I go through the papers." June 1, 2026 Conf. Tr. ("Tr.") 18:3–5. The Court also explained that newly developed facts "just goes to the pleading." Tr. 16:12–15.

The proposed Amended Complaint presents a clean path to adjudicating the live federal and derivative disputes and delivering peace. Consistent with counsel's obligations under Rule 23.1, this approach protects AudioEye's corporate-opportunity claim, separating it from David Kovacs's individual claims and preventing conflicted insiders and counsel from compromising AudioEye's claim through a conflicted process.

## BACKGROUND

### A.      The action and the pending motions.

Plaintiffs filed the original Complaint on December 12, 2025. ECF No. 1. Defendants moved to dismiss under Rule 12(b), ECF Nos. 22, 25, and 32, and moved separately for Rule 11 sanctions, ECF No. 45. Plaintiffs opposed the motions to dismiss on April 6, 2026; Defendants replied, ECF Nos. 50–52, and filed a Rule 11 reply on May 8, 2026, ECF No. 56. The motions are fully briefed and sub judice.

Plaintiffs also moved to compel AudioEye to retain unconflicted counsel. ECF Nos. 62–64. That motion arose from a structural conflict: the same counsel represents both AudioEye and Moradi. AudioEye's interest is to recover the insider-sale proceeds; the insiders' interest is to keep them. The record underlying that motion shows the conflict is not theoretical. Moradi dominates AudioEye and has used the Company's funds and authority to advance his own interests, including litigation against the whistleblower who reported him. Through conflicted counsel, Defendants were urgently pressing a settlement that would have released AudioEye's corporate

3

claim against Moradi and the selling insiders with no consideration identified as flowing to the Company. The facts underlying that motion show why AudioEye's corporate-recovery claim cannot safely be left to a process Moradi controls. The Court has deferred that motion until after resolution of the motions to dismiss. The proposed amendment addresses the same problem from a different perspective. The proposed amendment will preserve the corporate claim, separate it from David Kovacs's individual claims, and place the derivative claim in the hands of shareholders with no personal damages stake in AudioEye's recovery.

On April 21 and 22, 2026 – after Plaintiffs' opposition – the parties deposed Defendant Moradi and Kelly Georgevich, AudioEye's Chief Financial Officer, in the related Florida action. David Kovacs was deposed in the same action on April 28, 2026. On May 11, 2026, Plaintiffs moved for leave to place the final Florida transcripts before the Court and for limited supplemental briefing on their effect on the pending motions. ECF No. 57. Plaintiffs have not submitted those transcripts. The Court indicated it would "take a look at that" with the motion-to-dismiss papers. Tr. 17:18–20.

### B.    The June 1, 2026 conference.

At the June 1, 2026 conference, the Court stated that it would "resolve the motion to dismiss and then we go from there." Tr. 11:17–18. It also denied Plaintiffs' oral requests for a surreply and for leave to amend, the latter as untimely absent good cause. Plaintiffs make that showing here.

Plaintiffs, for their part, proposed a consensual path: in their counsel's letters of May 29 and June 1, 2026 (ECF Nos. 67, 69), they asked the Court to refer the derivative claims to a Magistrate Judge and to supervise a resolution satisfying Rule 23.1. Defendants refused on the record. Their counsel stated that "we, the defendants, no longer have any interest whatsoever in

4

trying to negotiate" a settlement, that they "much prefer to simply let [their] motion to dismiss be decided," and that, being "not interested in negotiating" and "not interested in settling," they saw "no possible basis upon which to bring a magistrate judge in to oversee settlement negotiations." They confirmed they have "no intention to negotiate a settlement until resolution of the motion to dismiss" and asked "that the Court decide the dispositive motion." Tr. 7–11. Defendants did, however, acknowledge that if the motion to dismiss does not dispose of the derivative claim, "the parties at that time may elect to re-engage." Id.

After demanding that Plaintiffs agree to a collusive settlement on less than one day's notice, Defendants now insist that they are totally unwilling to discuss settlement until the motion to dismiss is decided. The Court should grant leave to amend so that it can consider the updated pleading that takes account of intervening developments. The amended pleading cures the standing dispute, substitutes derivative plaintiffs whose standing is not reasonably disputed, and focuses the case on the corporate-opportunity claim that the record, as developed, now amply supports.

**C.     The proposed amendment.**

The Amended Complaint makes five substantive changes. First, it adds Daniel Kovacs as the transaction-standing derivative plaintiff and places AudioEye's corporate claim in the hands of shareholders with no personal damages stake in that recovery (Daniel Kovacs, whose ownership spans the challenged transactions, and Russell G. Alesi, who carries the shareholder-governance and Rule 23.1 process role). Second, it separates David Kovacs's individual federal claims from the derivative recovery, so that David Kovacs can negotiate his own personal peace without compromising AudioEye's claim. Likewise, it drops Julian Ducheine and Demian Lichtenstein as plaintiffs, whose derivative claims on behalf of Formulus Black and First Contact

5

have become peripheral to the core RICO, whistleblower, and corporate-opportunity claims. Third, it narrows the defendant roster to the insiders and the recipient entities that took or hold the proceeds – Sero Capital LLC, CSB IV US Holdings LLC, and TurnMark Partners L.P., each controlled by a named individual defendant – plus Jason Humble on the civil RICO claim. Fourth, it reduces twelve counts to six and drops the ERISA, securities-class, auditor, oversight, and collateral derivative theories. Fifth, it corrects and focuses the pleading: the disgorgement figure is now $34,070,724.65, documented to the dollar on the insiders' Forms 4, in place of the prior $35,218,799 figure, with damages otherwise reserved for proof at trial; the murder-for-hire predicate is corrected from 18 U.S.C. § 1959 to § 1958; RICO is pleaded around a defined association-in-fact enterprise; and demand futility is pleaded director-by-director.

## ARGUMENT

### I.      Leave to amend should be freely granted under Rules 15(a)(2) and 21.

Rule 15(a)(2) directs courts to "freely give leave when justice so requires." Leave may be denied for undue delay, bad faith, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). None is present here. The amendment narrows the action, adds a shareholder with documented derivative standing, removes collateral claims and parties, and centers AudioEye's claim on public filings, transaction documents, and sworn testimony. Nor is the amendment futile: the proposed pleading states a corporate-opportunity claim under Delaware law, *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996), pleads demand futility director-by-director under *United Food & Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021), and asserts claims based on later conduct that claim preclusion does not bar, *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000).

The same standard governs the addition of Daniel Kovacs. Fed. R. Civ. P. 21; 20(a)(1). No Rule 16 scheduling order has been entered, so Rule 15(a)(2) governs. Plaintiffs meet the required showing. The proper course is to plead the facts confirmed by the Florida testimony, rather than press that testimony as extrinsic evidence on the pending motion.

**No undue delay, bad faith, or prejudice.** The case is at the pleading stage – no Defendant has answered – and the amendment follows the April 2026 depositions and was raised at the first conference after them. Tr. 16:18–17:7. It drops the ERISA and securities-class claims, four individual defendants, the auditor, the entity nominal-defendants, and the Doe defendants. The only parties added are the entities that conducted the Insider Sales and hold the proceeds: Sero Capital LLC (Moradi), CSB IV US Holdings LLC (Bettis), and TurnMark Partners L.P. (Tahir). They are joined so the Court can afford complete relief, because the disgorgement and constructive trust the Amended Complaint seeks run to the proceeds they hold. The conduct and proceeds are documented in the insiders' Forms 4 and in the nineteen sworn declarations at ECF No. 3. No Defendant faces surprise or burden, and no trial date or discovery deadline is disturbed. Nor does the amendment reflect bad faith. Defendants moved for Rule 11 sanctions on the theory that this action is David Kovacs's personal vendetta. An amendment that narrows the case and places the corporate claim in the hands of shareholders with no individual damages claim is not sanctionable conduct. The Rule 11 points are developed in the Snyder Declaration ¶¶ 11–12.

Nor is the amendment improper for being narrower than the original Complaint. Defendants may call the narrowing a retreat. It is not. Amendment exists so that parties can refine their claims in light of the record, drop collateral disputes, and conserve judicial and party resources. That reduces the burden on Defendants and the Court. The derivative claim, in particular, is confined to the concrete, document-based corporate-opportunity claim. Broader

and more fact-intensive potential claims – including claims against third-party service providers and claims arising from the Company's internal-control history – are left for a special committee of disinterested directors to identify and evaluate with independent counsel, rather than litigated piecemeal here. Defendants remain free to contest the claims that remain; they suffer no Rule 15 prejudice from Plaintiffs' decision to focus the case.

**The amendment is not futile. The corporate-opportunity claim is pleaded from AudioEye's public filings and reinforced by the April 2026 testimony. AudioEye had an effective registration statement it could use to raise capital for itself; the insiders used that same registration machinery to sell for themselves. On December 4, 2024, they sold $30 million in one day. During November and December 2024, they took $34,070,724.65 in sales proceeds, to the exclusion of AudioEye's taking advantage of the same opportunity. See Exh. 73. AudioEye needed capital, and its own testimony confirms that at least $21 million of additional cash would have materially improved its financial condition. AudioEye's own $7 million at-the-market program confirms market access; it does not explain why the far larger December window was routed to insiders rather than to the Company. On those facts, the proposed Amended Complaint states a corporate-opportunity claim under Delaware law.**

**Plausibility does not mean probability, and extraordinary facts are not grounds for dismissal.** Futility is measured by the standard that governs a Rule 12(b)(6) motion: the proposed pleading is not futile if it states a claim that is plausible on its face. The standard requires plausibility, not probability. A well-pleaded complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable," and even where recovery appears remote. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see Ashcroft v. Iqbal*, 556 U.S.

8

662, 678–79 (2009). The Court accepts the well-pleaded facts as true and draws all reasonable inferences for Plaintiffs. It does not weigh which competing account is more likely. Where the complaint and the defense each offer a plausible version of events, the Court may not adopt the defense's. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019) (the test "is whether the complaint is plausible, not whether it is less plausible than an alternative explanation").

Defendants are expected to argue that the conduct alleged – insiders routing the Company's financing window to themselves, retaliation across three states against the executive who reported it, and the solicitation of his murder – is too extreme to be credited. That is not the Rule 12 inquiry. Factual allegations are taken as true even where the court doubts them, and may be set aside as factually frivolous only when they are "fanciful, fantastic, [or] delusional" or otherwise wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). These allegations are documented, not fanciful. They rest on the insiders' own Forms 4, the December 4, 2024 prospectus supplement, AudioEye's 2024 Form 10-K, the Company's own testimony that it needed at least $21 million, and the nineteen sworn declarations and 113 exhibits placed before the Court at ECF No. 3. The most extreme allegation – the solicitation of Kovacs's murder – is also among the most corroborated. It does not rest on Kovacs's word. Julian Ducheine swears that Humble, acting for Bettis, asked him to find someone to kill Kovacs. When Ducheine refused, Humble turned to a former NFL player who had lost roughly $1 million in Formulus Black. Humble offered to repay that loss in exchange for the killing. Nicky DiMaggio swears that he met that man and obtained his assurance that Kovacs would not be harmed. At a June 3, 2025 meeting attended by counsel, asked about the solicitation, the same man named the address where Kovacs was then living – an address he had no legitimate reason to know. Three people heard him: DiMaggio, Richard

Tannenbaum, and Kovacs. Each understood the same thing: he had been told who Kovacs was and where he lived, and the threat was real. Kovacs reported the plot to the New York City Police Department, and Mario Rodriguez corroborates the trading demand that set the retaliation in motion. See Proposed Am. Compl. ¶¶ 35, 42–43, 70(c). Everyone who learned of the threat treated it seriously. Four sworn witnesses describe it, including the person the Enterprise first tried to recruit. The participants discussed it as it unfolded, and Kovacs moved to an undisclosed location in response. A threat of physical harm corroborated by named witnesses, a solicited participant, contemporaneous discussion, and a police report is not fanciful. Facts pleaded with dates, actors, documents, admissions, and named witnesses are not implausible because they are unusual. They are corroborated by documents and sworn testimony. The extreme character of the conduct reflects the stakes: tens of millions of dollars, control of a public company, and the silencing of the whistleblower.

Daniel Kovacs's addition removes the threshold derivative-standing dispute Defendants pressed against David Kovacs. Daniel Kovacs is a long-time AudioEye supporter and investor. Plaintiffs continue to allege that David Kovacs was and remains an AudioEye shareholder, but the Court need not resolve that dispute to permit AudioEye's corporate claim to proceed. Daniel Kovacs has documented contemporaneous and continuous ownership spanning the challenged transactions, and he has no individual damages claim against any Defendant. See Exhibit C. The Amended Complaint thus resolves the issue of derivative standing.

Demand futility is pleaded director-by-director. The Amended Complaint identifies AudioEye's five-member board and alleges that three members – Moradi, Tahir, and Georgevich – are interested, face a substantial likelihood of liability, or lack independence. A majority therefore cannot impartially consider a demand. Fed. R. Civ. P. 23.1(b)(3).

10

This is not *Kovacs III*. The Amended Complaint avoids claims that could arguably be barred by res judicata broadly construed. The corporate-opportunity claim belongs to AudioEye, is brought by Daniel Kovacs (a party to neither prior action), and arises from the December 2024 Insider Sales – distinct from the termination litigated in *Kovacs I* and *Kovacs II*. The § 21F claim rests on adverse acts that followed David Kovacs's April 8, 2024 SEC report: principally the November 2025 interference with his employment verification and the May 2026 demand that he recant under oath. Both postdate the dismissal of both prior actions. The RICO claim is pleaded as a pattern visible only in sequence. It rests on a multi-entity enterprise and conduct that continued after the April 5, 2024 filing of *Kovacs I*.

**The release does not bar the narrowed racketeering claim against Humble.** The proposed Amended Complaint asserts one claim against Humble: civil RICO. It no longer pleads the unjust-enrichment, malicious-prosecution, emotional-distress, or retaliation claims the original Complaint asserted against him, and the statute-of-limitations and employment-based defenses directed at those claims fall away with them. Humble contends that the June 2024 "Settlement Agreement and Mutual Release" that ended his defamation action bars what remains. The release does not bar the amended claim. By its terms, the release reaches only claims through its June 29, 2024 effective date that "relat[e] to or aris[e] … out of the allegations … in the Lawsuit" – Humble's defamation action – together with claims that could have been asserted in that action. The amended claim against Humble includes allegations of witness tampering and obstruction that postdate the release. That conduct arises not from the defamation allegations, but from an effort to corrupt and suppress testimony in this action: the December 23, 2024 recording of Ducheine and its delivery to counsel for AudioEye and Moradi; the January 2, 2025 effort, through that counsel, to script a false account that Kovacs had paid Ducheine for testimony; the January 20–21, 2025 threat to compel Ducheine's testimony by

11

formal process; and Humble's July 24, 2025 voicemail acknowledging the recording and its review by "Carr and his attorney." Proposed Am. Compl. ¶¶ 44, 70(b). A release executed in June 2024 cannot reach conduct that had not occurred, in a controversy that did not yet exist. *Curtis*, 226 F.3d at 139. Whether Humble recorded the call lawfully is beside the point. The predicate is not the recording itself. It is the use of the recording, with counsel, to manufacture false testimony and pressure a witness – conduct that 18 U.S.C. § 1512 reaches regardless of whether the recording was lawful. The release, moreover, runs only between Kovacs and Humble. It does not touch the predicate acts pleaded against Moradi and Bettis, who are alleged to have directed him, and the pre-release solicitation remains evidence of the enterprise's pattern and motive. In any event, whether and when Humble interfered with these witnesses is a question of fact. On a Rule 12(b)(6) motion, the Court accepts the Amended Complaint's account of that conduct as true and does not weigh it against Humble's contrary declaration. A release is an affirmative defense. It warrants dismissal at the pleading stage only where its application is apparent from the face of the complaint. The post-release obstruction pleaded here is not within the release. This post-release conduct also answers any continuity objection. It carries the Enterprise's pattern through July 2025.

**In any event, the release cannot reach AudioEye's derivative claim.** The RICO claim against Humble is asserted not only by David Kovacs individually but by Daniel Kovacs derivatively on behalf of AudioEye. AudioEye was not a party to the David Kovacs–Humble settlement. It released nothing. One shareholder's settlement of his own claims cannot extinguish the corporation's claims. The Amended Complaint alleges that Moradi and Bettis used Humble as an instrumentality of the enterprise to silence the whistleblower who threatened to expose and halt their extraction of value from AudioEye – conduct of which the Company is itself a victim. That corporate claim belongs to AudioEye and is unaffected by the release,

whatever the release's effect on David Kovacs's individual claim. Humble's motion does not establish otherwise. His motion directs the release at David Kovacs's claims. It addresses the derivative claim only by joining his co-defendants' standing arguments. The amendment resolves that issue by adding Daniel Kovacs as the derivative plaintiff.

## II.   The Court should approve the Rule 23.1(c) dismissal of the omitted derivative claims.

The Amended Complaint does not carry forward the ESTP, Formulus Black, or First Contact derivative claims as standalone counts. Their facts remain as RICO pattern and enterprise evidence. The ESTP facts also remain as evidence of retaliation and as a measure of David Kovacs's damages. To the extent Rule 23.1(c) applies to the omission of any derivative claim, Plaintiffs request approval of a without-prejudice dismissal and respectfully submit that no shareholder notice beyond the motion itself is necessary unless the Court orders otherwise. Notice of a voluntary dismissal is given "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Plaintiffs are proposing to drop the derivative claims related to Formulus Black, First Contact, and ESTP on a without-prejudice basis, which will not affect the substantive rights of any absent shareholder. The written consents of the Formulus Black and First Contact derivative plaintiffs are submitted herewith. The ESTP derivative claim was David Kovacs's to assert, and he consents to omitting that claim from the Amended Complaint.

## III.   In the alternative, Daniel Kovacs should be permitted to intervene under Rule 24(b).

If the Court concludes that Daniel Kovacs should be added by intervention rather than amendment, the same facts establish permissive intervention. His derivative claim shares common questions of law and fact with the main action. It is the same corporate-opportunity claim, on the same facts, against the same fiduciaries. Fed. R. Civ. P. 24(b)(1)(B). The application

is timely: the case is at the pleading stage, no Defendant has answered, and intervention would neither delay the proceedings nor prejudice any party. Fed. R. Civ. P. 24(b)(3). Intervention secures Daniel Kovacs's participation as a derivative plaintiff with documented standing, independent of the Court's view of any other plaintiff's standing.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant leave to file the proposed Amended Complaint or, in the alternative, permit Daniel Kovacs to intervene as a plaintiff. Plaintiffs also request such other and further relief as the Court deems just and proper.

Dated: New York, New York
        June 11, 2026

Respectfully submitted,

**JOHN H. SNYDER PLLC**

_____

John H. Snyder
157 East 81st Street, Suite 3A
New York, New York 10028
(917) 292-3081 · john@jhs.nyc
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I certify that this Memorandum of Law contains 3,952 words, exclusive of the caption, signature block, and this certificate, as counted by the word-processing system used to prepare it. The Memorandum therefore complies with the word-count limitation of Local Civil Rule 7.1(c).

/s/ John H. Snyder
John H. Snyder