UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KOVACS, derivatively on behalf of AUDIOEYE, INC.; RUSSELL G. ALESI, derivatively on behalf of AUDIOEYE, INC.; and DAVID KOVACS, individually, <br> Plaintiffs, <br> v. <br> DAVID MORADI; SERO CAPITAL LLC; DR. CARR BETTIS; CSB IV US HOLDINGS LLC; JAMIL TAHIR; TURNMARK PARTNERS L.P.; KELLY GEORGEVICH; and JASON HUMBLE, <br> Defendants, <br> and <br> AUDIOEYE, INC., <br> Defendant and Nominal Defendant. | Case No. 25-CV-10336 (JPO) <br><br> DECLARATION OF RUSSELL G. ALESI |

I, Russell G. Alesi, declare under penalty of perjury:

1.  I am a stockholder of AudioEye, Inc. ("AudioEye" or the "Company"). I submit this declaration in connection with the proposed amended complaint in this action and to verify the complaint for purposes of Federal Rule of Civil Procedure 23.1.

2.  I previously submitted a declaration in this action, executed on December 11, 2025 and filed on December 15, 2025 (ECF No. 2-2) (the "December Declaration"). I have reviewed the December Declaration. The statements in it remain true, and I reaffirm and incorporate it here by reference.

3.  I am, and at all times since approximately October 7, 2025 have been, a beneficial owner of 4 shares of AudioEye common stock. I hold my shares in street name through Merrill Lynch, Pierce, Fenner & Smith Incorporated. I have held those shares continuously since approximately October 7, 2025, and I continue to hold them as of the date of this declaration. I was a holder as of the Company's May 6, 2026 record date for the June 22, 2026 Annual Meeting. I have provided counsel with documentary evidence of my ownership.

4.    My interest in this litigation is in sound corporate governance and the preservation of corporate assets, not in any individualized monetary recovery. As I stated in the December Declaration, I seek corporate governance reforms and related equitable relief designed to protect AudioEye, its stockholders, and its ongoing operations – including independent and effective board oversight, compliance with securities laws and fiduciary duties, the proper handling of whistleblower reports, the preservation of corporate assets, and the restoration of sound internal controls and governance practices.

5.    On June 4, 2026, I made a written demand on the Company under 8 Del. C. §§ 219 and 220 (the "Demand"). In the Demand I sought to inspect the Company's stockholder list and certain books and records under Section 220; to inspect the list of stockholders entitled to vote at the June 22, 2026 Annual Meeting under Section 219; to obtain access to that meeting; and to obtain corrective proxy disclosure concerning the derivative claim asserted in this action. I made the Demand in good faith and solely in my capacity as a current stockholder, to protect the Company and its stockholders generally. A true and correct copy of the Demand, including its sworn verification and the documentary proof of ownership enclosed with it, is attached as Exhibit 1.

6.    One purpose of the Demand is to obtain stockholder-list materials so that AudioEye stockholders may communicate with one another in advance of the June 22, 2026 Annual Meeting. The matters I raised in the Demand bear on the value of the derivative claim asserted in this action and on the integrity of any process by which the Company would dispose of that claim, including any proposed settlement, compromise, or release of it. I intend to exercise my rights as a current stockholder under Rule 23.1(c), including the right to notice of, and to be heard upon, any such disposition before it occurs.

7. I have read the proposed amended complaint. To the extent it states facts within my personal knowledge, I believe those facts are true. To the extent it states facts based on documents, public filings, testimony, investigation, or information provided by counsel, I believe those facts to be true based on that information and investigation.

8. I am willing to serve as a stockholder plaintiff on behalf of AudioEye and its stockholders. I understand that a derivative plaintiff acts on behalf of the Company and similarly situated stockholders, and that my responsibility in that capacity is to AudioEye and its stockholders. I am willing to review pleadings, stay informed, communicate with counsel, and consider the interests of AudioEye and its stockholders. I believe I can fairly and adequately represent the interests of AudioEye and similarly situated stockholders, and I welcome the involvement of other stockholders who wish to join in seeking relief for the Company.

9. I have no interests antagonistic to other AudioEye stockholders with respect to the relief sought. I have not assigned my claim to anyone. Other than my written engagement agreement with counsel, I have no agreement, arrangement, or understanding concerning this litigation that gives me any personal benefit or that requires me to act other than in the interests of AudioEye and its stockholders. I have not been promised any personal payment, benefit, or consideration for serving as a plaintiff.

10. This action is not collusive. It is not brought for the purpose of conferring jurisdiction on this Court. It is brought because I believe AudioEye and its stockholders have been harmed, and because the Company should have an independent and conflict-free opportunity to recover for that harm and to correct the governance and disclosure failures described in the complaint.

11.     I verify the proposed amended complaint for purposes of Federal Rule of Civil Procedure 23.1.

12.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Las Vegas, Nevada on June _____, 2026.

DocuSigned by:

*Russell ale*

6E517C457BCC4D8...

RUSSELL G. ALESI

6/7/2026

# EXHIBIT 1

*Stockholder Demand of Russell G. Alesi*

*Pursuant to 8 Del. C. §§ 219 and 220, dated June 4, 2026*

**RUSSELL G. ALESI**
4487 Sawyer Ridge Street
Las Vegas, Nevada 89147
(516) 361-6929 · russellalesi@gmail.com

June 4, 2026

**VIA UPS**

AudioEye, Inc.
5210 East Williams Circle, Suite 750
Tucson, Arizona 85711
Attn: Corporate Secretary and Board of Directors

National Registered Agents, Inc. (Registered Agent)
1209 Orange Street
Wilmington, Delaware 19801

**cc (via electronic mail):**

Tom Colton, Gateway Group, Inc. (Investor Relations), AEYE@gateway-grp.com
Adam M. Abensohn, Esq., adamabensohn@quinnemanuel.com
Daniel Humphrey, Esq., danielhumphrey@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
(counsel for AudioEye, Inc. and David Moradi)
John H. Snyder, Esq. (counsel for Russell G. Alesi), john@jhs.nyc

**Re:    Stockholder Demand of Russell G. Alesi Pursuant to 8 Del. C. §§ 219 and 220 to Inspect the Stockholder List and Books and Records; Demand for Access to the June 22, 2026 Annual Meeting; and Demand for Corrective Proxy Disclosure**

Ladies and Gentlemen:

I am Russell G. Alesi, a stockholder of AudioEye, Inc. (the "Company"). By this letter I make three demands: (1) to inspect the Company's stockholder list and certain books and records under 8 Del. C. § 220; (2) to inspect the list of stockholders entitled to vote at the June 22, 2026 Annual Meeting under 8 Del. C. § 219; and (3) that the Company correct its proxy materials for that meeting to disclose the derivative claim described below. My sworn verification and documentary proof of my stock ownership are enclosed.

**I. The Stockholder.**

I am, and at all relevant times since approximately October 7, 2025 have been, a beneficial owner of 4 shares of the Company's common stock, which I have held continuously since that date. I hold my shares in street name through Merrill Lynch, Pierce, Fenner & Smith Incorporated, and I was a holder as of the Company's May 6, 2026 record date for the Annual

1

Meeting. Documentary evidence of my ownership is enclosed as Exhibit A. I make this demand solely in my capacity as a current stockholder, in good faith, and to protect the Company and its stockholders generally; my interest is in sound corporate governance and the preservation of corporate assets, not in any individualized monetary recovery.

## II. The Matter Giving Rise to These Demands.

In 2024, the Company's common stock rose sharply. In November and December 2024, Company insiders — including David Moradi (then Chief Executive Officer, now Executive Chairman), director Jamil Tahir, and Kelly Georgevich (then Chief Financial Officer, now Chief Executive Officer) — sold more than $35 million of their personally held shares. The Company received none of those proceeds.

A derivative action is now pending in the United States District Court for the Southern District of New York, *Kovacs et al. v. Moradi et al.*, No. 25-CV-10336 (JPO) (the "SDNY Derivative Action"), asserting on the Company's behalf that those insiders usurped a corporate opportunity belonging to the Company, and seeking disgorgement to the Company of the proceeds of the 2024 sales. The claim alleges at least $35 million in insider sales that the plaintiffs contend should be disgorged to the Company — a sum equal to roughly forty percent of the Company's market capitalization, and a substantial corporate asset.

Although no settlement has been executed, Defendants have pursued, and settlement discussions have included, a global resolution that would release the derivative claim for no consideration to the Company. A derivative claim may not be settled, voluntarily dismissed, compromised, or released except through the process Rule 23.1(c) requires, including notice to stockholders and the Court's approval. As a current stockholder, I am entitled to notice of, and to be heard upon, any such disposition — and the prospect that a substantial corporate asset would be released for nothing, before stockholders have received any disclosure of it, is the immediate occasion for this demand.

The Company has not disclosed the SDNY Derivative Action, or the claim, in any public filing. Its 2025 Form 10-K (filed March 12, 2026), its Form 10-K/A (April 30, 2026), its Q1 2026 Form 10-Q (May 12, 2026), and its Definitive Proxy Statement for the 2026 Annual Meeting (May 13, 2026) each omit any mention of it. So does the Company's most recent corporate announcement: on May 4, 2026, the Company issued a Current Report on Form 8-K and accompanying press release announcing a "leadership evolution" — touting adjusted EBITDA margins approaching thirty percent and elevating two of the derivative defendants, Mr. Moradi to Executive Chairman and Ms. Georgevich to Chief Executive Officer — without any mention of the approximately $35 million claim pending against them on the Company's behalf. The Definitive Proxy Statement, issued nine days later, post-dates that announcement and still says nothing of the claim.

At the June 22, 2026 Annual Meeting, the Company asks stockholders to elect five directors. Three of them — Mr. Moradi, Mr. Tahir, and Ms. Georgevich — are among the insiders who sold shares in the 2024 transactions and against whom the derivative claim runs. The proxy discloses none of this.

2

I received the Company's proxy solicitation for the Annual Meeting, and the vote is pending, with shares to be voted by June 21, 2026. Because the Company has not disclosed the derivative claim, I believe my fellow stockholders are being asked to vote — including upon the election of the three nominees who sold into the 2024 transactions — without knowledge of it. Given the importance of a $35 million claim that runs against or directly implicates three of the five nominees, and the contemplated release of that claim for no consideration, I believe the Company's stockholders should be informed of these matters before they vote.

## III. Demand Pursuant to 8 Del. C. § 220.

I demand the right, in person or through my designated agents and counsel and at the Company's reasonable cost, to inspect and copy the records described below. My purposes are proper and reasonably related to my interest as a stockholder. They are:

(a) to evaluate, and to object as I deem appropriate to, any proposed settlement, voluntary dismissal, compromise, or release of the derivative claim asserted on the Company's behalf — including the release of that claim for no consideration that Defendants have pursued in settlement discussions — and to exercise my rights as a current stockholder under Rule 23.1(c), including the right to notice of, and to be heard upon, any such disposition before it occurs;

(b) to evaluate, and to object as I deem appropriate to, the Company's failure to disclose the pendency and value of the derivative claim to its stockholders, including the omission of the claim from the Company's SEC filings and from its Definitive Proxy Statement for the June 22, 2026 Annual Meeting;

(c) to assess the value of the derivative claim and the integrity of the process by which the Company would dispose of it — including the Board's consideration or non-consideration of the claim, the insiders' compliance or non-compliance with the Company's insider-trading policy in connection with the 2024 sales, the conflict in the Company's representation, and the Company's expenditure of corporate funds on related litigation — so that I may determine whether and how to object;

(d) to cast an informed vote at the June 22, 2026 Annual Meeting, including an informed assessment of the three nominees who sold shares in the 2024 transactions;

(e) to communicate with my fellow stockholders concerning the foregoing matters; and

(f) to prepare and present any objection I may make under Rule 23.1(c).

These purposes are reasonably related to my interest as a stockholder, and the records I seek are necessary to them. The derivative claim is a substantial corporate asset: it alleges at least $35 million in insider sales that the plaintiffs contend should be disgorged to the Company, and Defendants have pursued a disposition that would release it for no consideration before stockholders have received any disclosure of the claim. The insiders' Forms 4 reflect more than $35 million in sales during the relevant period, none disclosing a Rule 10b5-1 plan, and the

3

Company has disclosed neither the claim nor the SDNY Derivative Action asserting it in any SEC filing or in its proxy.

The substance of sworn deposition testimony given by the Company's Rule 30(b)(6) designees reinforces these concerns. A designee testifying on the Company's behalf acknowledged that an additional approximately $21 million in the Company's treasury would have improved the Company's overall financial condition during the relevant period — including by improving liquidity, reducing the need for outside financing and for dilutive equity issuance, improving access to debt financing, supporting product development, and increasing the Company's strategic flexibility — and that AudioEye was not a cash-rich company at year-end 2024. The Company nonetheless prepared no internal analysis comparable to the timeline of its 2024 stock-price increase, the insider-sale window, and the subsequent decline; and, according to the Company's representative, neither its audit committee nor its outside auditors prepared any similar analysis. And when the inquiry turned to whether the Company itself should have used the December 2024 window to raise capital, whether the insiders were taking for themselves an opportunity the Company could have used, and whether the insider resale raised a corporate-opportunity issue, counsel appearing for the Company instructed the corporate representative not to answer. The Company thus has offered no explanation for a roughly sixfold increase in the price of its own stock across 2024, even as its insiders sold more than $35 million of their personally held shares into that rise.

The Company's need for capital during this period was heightened by its own discretionary uses of cash. AudioEye ended 2024 with approximately $5.7 million in cash and cash equivalents and only approximately $549,000 in working capital. During 2024, AudioEye paid approximately $2.02 million in cash to repurchase 299,371 shares of its own common stock. Plaintiffs further allege, based on the litigation record and materials cited herein, that AudioEye spent approximately $2.7 million prosecuting litigation against Mr. Kovacs. Those two uses together approximate most of the Company's entire year-end 2024 cash balance. The Company was, moreover, actively raising treasury capital through the public markets during this same period: it used its at-the-market offering program in full, raising only approximately $6.6 million in net proceeds for its own account in 2024 — roughly one-fifth of the more than $35 million the insiders extracted for themselves through the December 2024 registered resale. Against that backdrop, the December 4, 2024 registered offering was not an immaterial opportunity; it was the Company's best available chance to place tens of millions of dollars into its own treasury. The insiders instead diverted that corporate financing opportunity and captured the market window for themselves, leaving AudioEye with only a small fraction of the liquidity they personally extracted.

The Company's own recent disclosures sharpen these concerns. In announcing Mr. Moradi's elevation to Executive Chairman on May 4, 2026, the Company stated that in that role he "will help determine capital allocation" — publicly vesting authority over the Company's capital-raising in the very insider alleged to have diverted the 2024 financing opportunity from the Company to himself. The same announcement holds out Mr. Tahir as the Company's "Lead Independent Director" and credits Mr. Moradi with the Company's transformation, even though Mr. Tahir is one of the three nominees who sold into the 2024 transactions and against whom the

4

derivative claim runs. These facts bear directly on the value of the claim and on the integrity of the process by which the Company would dispose of it.

The November and December 2024 sales also raise the distinct question whether the insiders complied with the Company's own insider-trading policy. That policy requires the Company's directors and executive officers to obtain written pre-clearance before any personal transaction in Company securities, imposes trading-window and related restrictions, and treats matters such as possible offerings and major litigation developments as material information. Pre-clearance authority under the policy rests with the Chief Executive Officer — a position held during the relevant period by Mr. Moradi, who was himself among the selling insiders. Whether the 2024 sales were pre-cleared, by whom, and whether they complied with the Company's trading-window and other policy requirements bears directly on the value of the claim, on the Company's oversight of the transactions, and on the integrity of any process by which the Company would now release the claim.

A related and more specific question is whether the November 2024 sellers traded while in possession of material nonpublic information. The insiders' sales on or about November 12–14, 2024 preceded by roughly three weeks the December 4, 2024 registered resale, through which the same insider group placed approximately $30 million of additional stock on the market. The Company's insider-trading policy treats a possible offering as material information. Whether Mr. Moradi, Ms. Georgevich, or any other November seller sold while aware that the insiders were preparing the December resale — and whether the Board or any committee ever investigated that question — bears directly on the value of the derivative claim and on the integrity of the process by which the Company would release it.

I cannot meaningfully evaluate whether to object to the release of that claim, or to the Company's failure to disclose it, without inspecting the records that bear on its value and on the Company's handling of it. As used below, "insiders" means David Moradi, Dr. Carr Bettis, Jamil Tahir, and Kelly Georgevich, the entities through which they sold (Sero Capital LLC, CSB IV US Holdings LLC, and TurnMark Partners L.P.), and any other Section 16 filer; the "relevant period" means January 1, 2024 through the date of this demand.

I seek this inspection to inform myself, as a current stockholder, before deciding whether and how to exercise my rights under Rule 23.1(c). A stockholder confronted with the proposed release of a corporate claim is entitled to evaluate the claim and the proposed disposition before objecting or acquiescing, rather than do either uninformed. This inspection concerns the value of the claim and the fairness of its proposed disposition — matters committed to the stockholders and the Court under Rule 23.1(c) — not the merits of the underlying claim, and it seeks records within the Company's possession that bear on that question.

**Stockholder-list materials.** I demand inspection of:

1. The Company's stock ledger;
2. A complete list of the Company's stockholders of record, certified by the Company or its transfer agent, stating each holder's name and address, the number and class of shares held, and the date of acquisition to the extent reflected in the Company's records;

5

3. All "stocklist materials," including any list of non-objecting beneficial owners (a "NOBO list"), any "Cede breakdown" identifying the participants in The Depository Trust Company that hold shares, any daily transfer sheets, the transfer agent's transaction journals and transfer records reflecting acquisitions, transfers, and dispositions of Company shares during the relevant period, and any other stockholder-identifying information in the possession, custody, or control of the Company, its transfer agent, or its proxy solicitor.

**Books and records.** On the standard inspection track, and subject to a reasonable schedule to be agreed, I further demand inspection of:

*The 2024 sales and the corporate opportunity:*

4. Minutes, resolutions, and meeting materials of the Board of Directors and any committee thereof concerning (i) the November and December 2024 sales of Company stock by insiders, (ii) the December 4, 2024 prospectus supplement and the registered resale, and (iii) any opportunity for the Company to raise capital during 2024, including any consideration of a primary offering for the Company's treasury;
5. Any analysis prepared by or for the Company, its audit committee, or its independent auditors concerning the increase in the Company's stock price during 2024 or the Company's capital needs during that period;

*The Company's oversight of the 2024 insider sales:*

6. The Company's insider-trading policy and related compliance materials in effect during the relevant period, including any blackout-period or trading-window calendars and notices; any written pre-clearance request submitted in connection with the 2024 sales and any approval or denial of such request, including documents sufficient to show who granted any pre-clearance; and any documents reflecting the Company's assessment of whether the 2024 sales complied with that policy;
7. Documents in the Company's possession, custody, or control sufficient to show whether any 2024 sale by an insider was made pursuant to a Rule 10b5-1 trading plan, or showing the absence of any such plan;
8. Documents concerning any inquiry, review, or investigation by the Board of Directors, any committee, or the Company into whether any November 2024 sale of Company stock by an insider — including the sales made on or about November 12–14, 2024 — was made while the seller possessed material nonpublic information, including information that the insiders were then preparing the December 4, 2024 registered resale of approximately $30 million of additional insider shares;
9. Documents concerning any inquiry, investigation, subpoena, or request for information from the Securities and Exchange Commission, FINRA, the Department of Justice, or any other governmental or self-regulatory authority concerning the 2024 sales or trading in Company stock;

*The Company's litigation expenditures and its role as a Florida plaintiff:*

6

10. Documents sufficient to show the legal fees and litigation expenses the Company has incurred or paid from January 1, 2024 to the present in connection with the SDNY Derivative Action; *AudioEye, Inc. and David Moradi v. Kovacs*, No. 2024-006401-CA-01 (Fla. 11th Jud. Cir.) (the "Florida Action"); the Arizona action involving Mr. Kovacs (the "Arizona Action"); and any other matter concerning Mr. Kovacs or the 2024 sales, broken down by matter and by the nature of the services rendered, together with the related engagement letters and invoices (which may be produced with privileged narrative redacted);

11. Documents sufficient to show the amounts the Company has incurred or paid to prosecute the Florida Action, and all documents concerning the corporate purpose, corporate benefit, or corporate injury, if any, on which the Company relied in joining or maintaining the Florida Action as a plaintiff, including any Board or committee authorization of the Company's participation and any analysis of the Company's own interest in the claims asserted there;

12. Documents concerning whether the Company, rather than any individual, has paid or advanced the legal fees or expenses of any individual defendant in the SDNY Derivative Action or of any party in the Florida Action, including any advancement or indemnification request, determination, or undertaking;

*The Company's handling of related whistleblower reports:*

13. The Company's Whistleblower Protection Policy and related compliance materials in effect during the relevant period;

14. Documents sufficient to identify each report, complaint, or allegation — received by the Company, its audit committee, its compliance function, or any reporting hotline during the relevant period — that concerns insider trading, the 2024 sales, the Company's capital-raising or disclosure practices, compliance with the securities laws, or Mr. Kovacs, and to show the Company's investigation, response, and disposition of each, including any adverse action taken against, or the separation of, the individual who made the report; and

15. Documents concerning audit-committee or Board oversight of the Company's response to any report described in the preceding item. The Company may produce the whistleblower materials in this group with the identity and personal information of any reporting individual redacted or anonymized, subject to a reasonable confidentiality agreement; this demand does not seek the personal contact information of any reporting individual.

*Governance, disclosure, and the derivative claim:*

16. Documents concerning the Company's consideration of the derivative claim, the formation or non-formation of any special litigation committee, and the retention or non-retention of counsel independent of the individual defendants;

17. The Company's directors-and-officers liability insurance policies in effect from January 1, 2024 to the present, and any notice of claim or of circumstances submitted under those policies;

18. Director-independence determinations, questionnaires, and related materials concerning the five nominees standing for election at the June 22, 2026 Annual Meeting; and

19. Documents concerning the decision not to disclose the SDNY Derivative Action in the Company's 2025 Form 10-K, Form 10-K/A, Q1 2026 Form 10-Q, or Definitive Proxy Statement.

Given the proximity of the Annual Meeting, I request that the Company make the stockholder-list materials (items 1–3) available within five business days, as Section 220(c) contemplates, and that the parties promptly meet and confer on a schedule for the books and records (items 4–19). I will conduct the inspection through my designated agents and counsel, at a mutually convenient location or by electronic production at the Company's election, and will bear the reasonable cost of reproduction. I am prepared to discuss a reasonable confidentiality agreement governing the books and records in items 4–19; the stockholder-list materials, which I seek in order to communicate with my fellow stockholders, are not properly subject to restrictions that would defeat that purpose.

## IV. Demand Pursuant to 8 Del. C. § 219 and for Access to the Annual Meeting.

This demand is independent of, and not contingent upon, the Section 220 demand above. Section 219 entitles me to inspect the list of stockholders entitled to vote at the Annual Meeting, which the Company must make available beginning ten days before the meeting. I demand access to that list as soon as it is available, and in any event no later than that statutory date.

Separately, and as a matter of the Company's own meeting procedures, the Annual Meeting is to be held virtually on June 22, 2026 at 10:00 a.m. Eastern, with no physical location. I intend to attend and to be heard on matters properly before the meeting. I demand that the Company confirm the means by which I may participate — including the use of my 16-digit control number to log in beginning at 9:30 a.m. Eastern and to submit questions or a statement — and the rules of conduct governing stockholder participation.

## V. Demand for Corrective Proxy Disclosure.

The Company's Definitive Proxy Statement solicits votes to elect Mr. Moradi, Mr. Tahir, and Ms. Georgevich without disclosing that a derivative claim valued at approximately $35 million runs against or directly implicates them on the Company's own behalf, that the SDNY Derivative Action exists at all, or that the Company has made no disclosure of it in any filing with the Securities and Exchange Commission. The omission of those facts appears to render the proxy materially misleading in the respects governed by Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 thereunder.

I demand that, before the vote, the Company disseminate corrective disclosure — by a Current Report on Form 8-K and supplemental soliciting materials filed with the Commission and posted to the Company's investor-relations website — describing the pendency of the SDNY Derivative Action, the nature and approximate value of the claim, the identity of the nominees against whom it runs, and the absence of any prior disclosure. I reserve all rights, including the right to seek corrective and injunctive relief in advance of the meeting, and the right to challenge the validity of the election and of any action taken by directors elected through an uncorrected proxy, should the Company decline to correct these omissions.

8

## VI. Preservation of Records.

Pending the Company's response and any resulting inspection, I demand that the Company preserve, and instruct its agents to preserve, all documents relevant to the matters described in this letter, including board and committee materials, legal invoices and billing records, communications with Quinn Emanuel, Herrick, and counsel in the Florida Action and the Arizona Action concerning these matters, directors-and-officers insurance notices and communications, settlement communications, materials concerning the Company's SEC disclosures, stockholder-list and proxy-solicitation materials, and documents concerning the 2024 sales. This obligation extends to electronically stored information and to any documents that would otherwise be subject to routine deletion.

## VII. Response.

Please direct your response, and all communications regarding these demands, to me by electronic mail at russellalesi@gmail.com, with a copy to my counsel, John H. Snyder, Esq. (john@jhs.nyc). Given the proximity of the Annual Meeting, time is of the essence. I ask that the Company respond to the Section 220 stockholder-list demand within five business days of the date of this letter, and to the balance of this letter promptly thereafter. Nothing in this letter waives, and I expressly reserve, all rights and remedies available to me.

Very truly yours,

Russell Alesi

Russell G. Alesi

*Enclosures:*

Verification of Russell G. Alesi
Proof of Stock Ownership

State of Nevada
County of Clark

This instrument was acknowledged before me on
June 4, 2026 by Russell G Alesi

Mary Carmen Colon

MARY CARMEN COLON
Notary Public, State of Nevada
Appointment No. 21-4544-01
My Appt. Expires Jan 8, 2030

9

**VERIFICATION**

STATE OF NEVADA          )
                         ) ss.:
COUNTY OF CLARK          )

RUSSELL G. ALESI, being duly sworn, deposes and says:

1.  I am the stockholder who makes the foregoing demand. I am a beneficial owner of 4 shares of common stock of AudioEye, Inc., which I have held continuously since approximately October 7, 2025.

2.  The documentary evidence of beneficial ownership enclosed with this demand is a true and correct copy of what it purports to be.

3.  I have read the foregoing demand. The statements in it concerning me and my ownership of the Company's stock are true, and the purposes stated are my true and actual purposes for the demand.

4.  I make this demand under oath pursuant to 8 Del. C. § 220.


_____

RUSSELL G. ALESI



Sworn to before me this _____ day of _____, 2026.



_____

Notary Public


10

MR RUSSELL G ALESI

**MERRILL**
A BANK OF AMERICA COMPANY

## YOUR CMA ASSETS

November 29, 2025 - December 31, 2025

### CASH/MONEY ACCOUNTS

| Description | Quantity | Total Cost Basis | Estimated Market Price | Estimated Market Value | Estimated Annual Income | Est. Annual Yield% |
|---|---|---|---|---|---|---|
| CASH | 0.12 | 0.12 | | .12 | | |
| ✛ML DIRECT DEPOSIT PROGRAM | 1.00 | 1.00 | 1.0000 | 1.00 | | .01 |
| ✛FDIC INSURED NOT SIPC COVERED | | | | | | |
| **TOTAL** | | 1.12 | | **1.12** | | |

### EQUITIES

| Description | Symbol | Quantity | Total Cost Basis | Estimated Market Price | Estimated Market Value | Unrealized Gain/(Loss) | Estimated Annual Income |
|---|---|---|---|---|---|---|---|
| AUDIOEYE INC | AEYE | 4.0000 | 58.88 | 9.9900 | 39.96 | (18.92) | |
| **TOTAL** | | | 58.88 | | **39.96** | (18.92) | |

Equity Cost Basis details are available on the Statements and Documents page of www.merrilledge.com.

### LONG PORTFOLIO

| | Adjusted/Total Cost Basis | Estimated Market Value | Unrealized Gain/(Loss) | Estimated Accrued Interest | Estimated Annual Income |
|---|---|---|---|---|---|
| **TOTAL** | 60.00 | **41.08** | (18.92) | | |

## YOUR CMA TRANSACTIONS

### REALIZED GAINS/(LOSSES)

| Description | Quantity | Acquired Date | Liquidation Date | Sale Amount | Cost Basis | Gains/(Losses)❂ This Statement | Year to Date |
|---|---|---|---|---|---|---|---|
| Subtotal (Short-Term) | | | | | | | 2.41 |
| **TOTAL** | | | | | | | 2.41 |

❂ - Excludes transactions for which we have insufficient data

The capital gains and losses shown above may not reflect all transactions which must be reported on your 2025 tax return. These reportable transactions will appear on your January statement.

✛



---------- Forwarded message ---------
From: **MERRILL LYNCH** <id@proxyvote.com>
Date: Fri, May 22, 2026, 2:59 AM
Subject: Vote now! AUDIOEYE, INC. Annual Meeting
To: <russellalesi@gmail.com>





# Your proxy materials are now available

You elected to receive shareholder communications and submit voting instructions via the Internet. This email notification contains information specific to your holding(s) in the security identified below. Please read the instructions carefully before proceeding.

---

# AUDIOEYE, INC.

JUNE 22, 2026 ANNUAL MEETING

Vote Shares by June 21, 2026

**Vote Now →**

## Learn Before You Vote

---

Notice of Meeting and Proxy Statement →

Annual Report on Form 10-K →

## Ways to vote

---



ProxyVote



800.454.8683



**Attend the Meeting**

## Important information

For holders as of May 6, 2026

**Account Number: ****4W23**

**CUSIP:** 050734201



### ProxyVote App

Did you know you can access all of your proxy events in one place? Go to the Apple App Store or Google Play and search for "ProxyVote."

Once you install the app, just create an account to get started.

 

This message w/attachments ("Message") is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this Message is prohibited. Unless specifically indicated, this Message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Sender. Subject to applicable law, Sender may intercept, monitor, review and retain e-communications ("EC") traveling through its networks/systems and may produce any such EC to regulators, law enforcement, in litigation and as required by law. The laws of the country of each sender/recipient may impact the handling of EC, and EC may be archived, supervised and produced in countries other than the country in which you are located. This Message cannot be guaranteed to be secure or free of errors or viruses.

References to "Sender" are references to any subsidiary or affiliate of Bank of America Corporation. Securities and Insurance Products: * Are Not FDIC Insured* Are Not Bank Guaranteed * May Lose Value * Are Not a Bank Deposit * Are Not a Condition to Any Banking Service or Activity * Are Not Insured by Any Federal Government Agency. Attachments that are part of this EC may have additional important disclosures and disclaimers, which you should read. This Message is subject to terms available at the following link: www.bankofamerica.com/emaildisclaimer. By messaging with Sender you consent to the foregoing.

Merrill Lynch, Pierce, Fenner & Smith, Incorporated is a registered broker-dealer and a wholly-owned subsidiary of Bank of America Corporation.

**Securities Products: - Are Not FDIC Insured - Are Not Bank Guaranteed - May Lose Value**

Merrill Lynch makes available investment products and services sponsored, managed, provided or distributed by companies that are affiliates of or in which Bank of America Corporation has an economic interest, including Columbia Management, BlackRock, and Nuveen investments.

**Email Preferences**
This is a service email from Merrill Lynch. Please note that you may receive service email in accordance with your Merrill Lynch service agreements, whether or not you elect to receive promotional email.

**About this email**
Please do not reply to this email with sensitive information, such as an account number, User ID or password. If you believe you received this e-mail in error, or have other questions about receiving it, please contact Merrill Lynch customer. Merrill Lynch does not send unsolicited e-mail messages.

**Privacy and Security**
Keeping your financial information secure is one of our most important responsibilities. If you have any questions, please review the Merrill Lynch Privacy Statement.

Use of Merrill Lynch's trademarks without the express written consent of Merrill Lynch & Co., Inc. is strictly prohibited.

To view Portable Document Format (PDF) files on our site, please download Adobe(r) Acrobat(r) Reader(tm)

(c) 2009 Merrill Lynch, Pierce, Fenner & Smith Incorporated. All rights reserved. Member Securities Investor Protection Corporation (SIPC).