# John H. Snyder

157 East 81st Street, #3A · New York, NY 10028 · john@jhs.nyc · jhs.nyc

June 17, 2026

By ECF

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    *Kovacs v. Moradi*, No. 25-CV-10336 (JPO) — ECF No. 73, 74

Dear Judge Oetken:

This letter responds to ECF 73 and 74. On behalf of the Plaintiffs as well as proposed intervenor Daniel Kovacs, we ask that briefing on our Motion to Amend (ECF 70–72) proceed on the normal briefing schedule according to the Local Rules.

This is a shareholder derivative case brought on behalf of AudioEye to recover $34 million. That money is held by the four Insider Sellers (Moradi, Bettis, Tahir, and Georgevich); it rightfully belongs to AudioEye. On the merits, Defendants have no defense.

In their motion to dismiss, Defendants did not address the merits. They pointed instead to four purported technical deficiencies – none going to the merits.

Two events prompted Plaintiffs to formally move to amend, both happening after Plaintiffs' April 6, 2026 opposition to the motion to dismiss. First, Defendants' own sworn testimony (April 21–22, 2026) locks in the elements of the derivative claim. Second, very recently, a new shareholder plaintiff emerged – with documented standing to sue derivatively for AudioEye.

## Defendants' First Objection: Standing

Defendants argued that the derivative plaintiffs lacked standing: Alesi acquired shares after the challenged period, Ducheine was a former AudioEye stockholder, and David Kovacs's shareholder status was disputed. ECF 23 at 16–19.

*Objection Resolved by Amended Complaint*

The proposed Amended Complaint removes the dispute. Daniel Kovacs would be the lead derivative plaintiff. He has submitted proof of contemporaneous and continuous AudioEye ownership beginning no later than December 11, 2023 – spanning the November 12–14 and December 4, 2024 transactions, through the present. Proposed Am. Compl. ¶¶ 8, 51, 54–55.

He has no individual claim against any Defendant, no assignment, and no side agreement requiring him to act other than in AudioEye's and its shareholders' interests. Id. ¶¶ 8, 55. Alesi remains only as a current-shareholder governance and Rule 23.1 process plaintiff; David Kovacs no longer serves as the derivative representative. Id. ¶¶ 9–10, 56–57.

## Defendants' Second Objection: Demand Futility

Defendants argued that Plaintiffs had not made demand or pleaded demand futility with particularity. ECF 23 at 12–16.

### *Objection Resolved by Amended Complaint*

The Amended Complaint pleads demand futility director-by-director. Of AudioEye's five-member board – Moradi, Tahir, Georgevich, Fleming, and Hawkins – three are interested or lack independence. Proposed Am. Compl. ¶¶ 49, 60. Moradi sold through Sero Capital for $25,367,224.65 and is the transaction's principal beneficiary. Id. ¶ 61. Tahir sold through TurnMark for about $3 million, holds his seat through Sero-held designation rights, and is not independent of Moradi. Id. ¶ 62. Georgevich sold about $303,500 while CFO, was then elevated to CEO and the board by the Moradi-controlled board, completing the three-to-two interested majority. Id. ¶ 63. AudioEye created no independent process – no special committee, no independent counsel, no investigation, no shareholder notice. Id. ¶¶ 64–66. That cures any Rule 23.1 objection.

## Defendants' Third Objection: Transaction Specificity

Defendants argued that the original pleading lacked transaction-level specificity, invoking the prior state-court dismissal and contending that Kovacs had not identified the trades in the alleged insider-trading or pump-and-dump scheme. ECF 23 at 10–11, 24–28. They also argued that the derivative allegations about insider sales and material nonpublic information were conclusory – silent on what was known, when, and why the sales were improper. ECF 23 at 14–15.

### *Objection Resolved by Amended Complaint*

The prior state-court dismissal has no preclusive effect. Res judicata reaches only claims that were or could have been raised before; this one could not have been. The corporate-opportunity claim arises from the November 12–14 and December 4, 2024 Insider Sales – transactions that occurred more than half a year after the prior action, Kovacs I, was filed in April 2024. A claim built on conduct that had not yet happened could not have been litigated there. The claim also belongs to AudioEye and is advanced by Daniel Kovacs, who was no party to any prior proceeding.

On specificity, the Amended Complaint identifies the transactions with particularity. In November and December 2024, Moradi, Tahir, Georgevich, and Bettis sold AudioEye stock, each sale documented on their own publicly filed Form 4s. The largest was the December 4, 2024 non-issuer offering, in which Moradi (through Sero Capital), Bettis (through CSB IV), and Tahir (through TurnMark) sold 900,000, 225,000, and 125,000 shares at $24.00 – $30 million in a single day – through the Company's registration machinery, with no proceeds to AudioEye. Proposed Am. Compl. ¶¶ 45–48. With the insiders' additional November sales, the pleading accounts for the proceeds to the dollar – $25,367,224.65 to Moradi/Sero, $5,400,000 to Bettis/CSB IV, $3,000,000 to Tahir/TurnMark, and $303,500 to Georgevich, totaling $34,070,724.65 – names the entities holding them, and seeks disgorgement, an accounting, and a constructive trust. Id. ¶¶ 16–18, 47, 52, 88–98.

**Defendants' Fourth Objection: Adequacy of Representative**

Defendants argued that David Kovacs was an inadequate derivative representative because he was simultaneously suing AudioEye directly for large personal damages and litigating against AudioEye and Moradi elsewhere. ECF 23 at 17–20.

*Objection Resolved by Amended Complaint*

The Amended Complaint separates David Kovacs's individual claims from AudioEye's corporate claim: David brings only his individual federal claims. Proposed Am. Compl. ¶¶ 10, 57. Daniel Kovacs prosecutes the derivative corporate-opportunity claims and has no individual claim against any Defendant; recovery runs to AudioEye's treasury, not to any individual plaintiff. Id. ¶¶ 8, 53, 54–55.

* * *

Under Rule 15(a)(2), leave to amend is to be freely given when justice so requires. It does here.

Defendants' letter-motions make the extraordinary request that the Court dismiss the entire case – including the $34 million derivative claim – without even considering the proposed amended pleading.

As shown above, Defendants offer no defense on the merits. In effect, they ask for a ruling that would launder the $34 million misappropriation – cutting off AudioEye's claims without independent counsel, and vitiating the rights of hundreds of shareholders who have had no notice of this claim and no opportunity to be heard.

In support of this manifestly unjust result, Defendants assert that Plaintiffs were not permitted to move to amend. Nothing in the June 1, 2026 transcript or the Federal Rules supports that.

The Court said only that a motion to amend would be denied as untimely "unless I find that there is good cause for it as I go through the papers." Tr. 18:3–5; see also Tr. 17:5–7 ("I'm not going to grant leave to file a surreply or any additional amended complaint unless I find that there is a basis for it"). The proposed Amended Complaint supplies that basis and explains why "good cause" exists.

Humble's added argument – that pages 11–13 of Plaintiffs' memorandum (ECF 71) are an improper sur-reply on his release defense (ECF 74 at 1–2) – misapprehends Rule 15. Leave may be denied for futility, measured by the Rule 12(b)(6) standard. Whether the amended complaint survives Humble's release is a futility question Plaintiffs had to address; pages 11–13 explain why the narrowed claim survives the release – the futility analysis by definition, not a re-argument of his motion-to-dismiss opposition.

Finally, as for Defendants' complaints of being "harassed": this case involves a whistleblower who accurately and truthfully reported insider misconduct and was met with massive retaliation, as is detailed in both the original and proposed amended pleadings, and supported by 19 sworn statements and 113 exhibits. That retaliation included three separate lawsuits against Kovacs – in Florida (Moradi and AudioEye), Arizona (Bettis), and the Southern District of New York (Humble). In the Florida case, Moradi and AudioEye falsely accused Kovacs in public filings of falsifying his background, then retreated from those smears when they had to prove them.

Defendants cannot now be heard to complain of the "burden" of litigation, when they decided to wage a war of economic attrition against Kovacs, funded by all the resources of a public company, with credible threats of physical harm – all to protect that $34 million.

The Court should order briefing on the Motion to Amend in the ordinary course under the Local Rules and consider the briefing together with all the other pending motions. We note our continued objection to AudioEye and Moradi appearing through the same counsel.

Respectfully Yours,

John H. Snyder
Counsel for Plaintiffs & Proposed Intervenor Daniel Kovacs

4