UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID KOVACS, *et al.*,
Plaintiffs,

-v-

DAVID MORADI, *et al.*,
Defendants.

25-CV-10336 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs David Kovacs, Russell Alesi, Julian Ducheine, and Demian Lichtenstein bring this action against Defendants David Moradi, Carr Bettis, Jason Humble, AudioEye, Inc., and a number of other named and unnamed Defendants who have not appeared in this action. (*See generally* ECF No. 1 ("Compl.").) Before the Court are: a motion to dismiss filed by Moradi and AudioEye (ECF No. 22), which is joined by Bettis (ECF Nos. 32-33); a motion to dismiss filed by Humble (ECF No. 25); Plaintiffs' motion for leave to amend the complaint (ECF No. 70); AudioEye and Moradi's motion for sanctions (ECF No. 45); and various other motions (*see* ECF Nos. 57, 62). For the reasons stated below, the motions to dismiss are granted, the motion for leave to amend the complaint is denied in part, the motion for sanctions is denied, and the remaining motions are denied.

## I. Background

### A. Factual Background

The Court recites only those facts contained in the complaint (the "Complaint") that are relevant to resolving the present motions. Those alleged facts are accepted as true for purposes of resolving the motions to dismiss. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam). The Court also considers facts contained in documents incorporated in or

attached to the Complaint or of which the Court can take judicial notice. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Kovacs is a former senior executive of AudioEye, who also held ownership interests in First Contact Entertainment ("First Contact"), Formulus Black LLC, and Eternal Sources Tech Partners, LLC ("ESTP"). (Compl. ¶ 61.) Moradi was appointed Chief Executive Officer of AudioEye in 2020 and was a member of its Board of Directors. (*Id.* ¶ 65.) Bettis served as Executive Chairman of AudioEye. (*Id.* ¶ 73.) Humble is affiliated with Humble Philanthropy and previously worked for AudioEye. (*Id.* ¶ 82.)

Plaintiffs allege that Moradi and Bettis led an enterprise in which they became involved with promising companies, centralized control over the companies, looted the companies, and then responded to pushback with suppression and lawfare. (*Id*. ¶ 5.) Moradi and Bettis "ran their playbook" at Formulus Black and First Contact before targeting AudioEye. (*Id.* ¶¶ 7-10.) In 2023, Moradi, who was Kovacs's boss at that time, instructed Kovacs to assist in a fraudulent pump-and-dump scheme. (*Id.* ¶ 16.) Kovacs refused. (*Id.* ¶¶ 17, 135.) On November 13, 2023, Kovacs reached out to human resources to report securities fraud, but the meeting never happened; shortly thereafter, Bettis, the Chairman of AudioEye, warned Kovacs that Moradi would now ruin his life. (*Id.* ¶ 20.) In December 2023, Humble, acting under the direction of Bettis, telephoned Ducheine with a request "to find someone to take care of Kovacs," which Kovacs understood to mean murder. (*Id.* ¶¶ 43-44.) Humble again approached Ducheine about hiring a hitman to kill Kovacs in January 2024, and Humble made clear that he was operating at the direction of Bettis. (*Id.* ¶ 46.) Humble then tried to solicit another investor in Formulus Black to murder Kovacs in exchange for recovering his lost investments. (*Id.* ¶ 150.)

On January 17, 2024, Kovacs called Bettis and told him about Moradi's insider trading.[1] (Compl. ¶ 25.) Bettis took no investigative or corrective steps and Kovacs was promptly fired "for cause." (*Id.* ¶¶ 25-27, 29 (quotation marks omitted).) On February 8, 2024, after Kovacs's termination, he reported the fraud to the Department of Justice. (*Id.* ¶ 30.) On February 20, 2024, AudioEye revoked Kovacs's vested restricted stock units ("RSUs"). (*Id.* ¶¶ 31, 142.) Bettis then sent a letter to Kovacs warning that Moradi would do "unfathomable physical harm" if Kovacs did not settle his dispute with Moradi. (*Id.* ¶ 143 (quotation marks omitted).) On April 8, 2024, Kovacs filed a whistleblower complaint with the Securities and Exchange Commission (the "SEC"). (*Id.* ¶ 33.) Two days later, AudioEye and Moradi sued Kovacs in Florida state court for defamation (the "Florida Action"). (*Id.* ¶¶ 34, 144.) On May 2, 2024, Humble filed his own defamation suit against Kovacs in this district. (*Id.* ¶¶ 36, 145.) On June 28, 2024, Humble and Kovacs settled the lawsuit and it was dismissed with prejudice. (ECF No. 27-1.) On May 8, 2024, Kovacs learned that Bettis had ousted him from ESTP, depriving him of economic interests valued at more than $80 million. (*Id.* ¶¶ 37, 146.) Bettis then filed another lawsuit against Kovacs in Arizona state court. (*Id.* ¶ 38.)

By the end of 2024, AudioEye's stock price increased from approximately $4 per share to over $30 per share, and Moradi, Bettis, and other insiders proceeded to sell $35,218,799 of AudioEye stock in coordinated transactions. (*Id.* ¶ 139.) The Complaint alleges that "[t]he insiders possessed Material Nonpublic Information when they sold, including undisclosed

---

[1] Although the Complaint is not clear, it appears that this is the same call in which Bettis informed Kovacs that the latter will be terminated and Kovacs made multiple inflammatory statements, including declarations that Moradi "doesn't belong to be fucking breathing on this fucking planet," that he is "going to do smear campaigns" against Moradi, and that he is "going to destroy [Moradi] and [he is] going to tear fucking AudioEye fucking into shreds." (ECF No. 2-3 at 55-57.) The Court can take the transcript into consideration because it is attached as an exhibit in support of the Complaint.

regulatory exposure, retaliatory litigation expenditures, whistleblower complaints, and governance failures." (*Id.*) Public shareholders of AudioEye suffered losses estimated in the Complaint to be between $125.5 million and $358.0 million. (*Id.* ¶ 156.)

In December 2024, Humble recorded a phone call with Ducheine that portrayed Kovacs as dishonest. (*Id.* ¶ 166.) Humble then provided the recording to counsel at Quinn Emanuel, who used it to pressure Ducheine into saying that Kovacs tried to bribe him to falsify the murder plot. (*Id.* ¶¶ 167-68.) On January 2, 2025, Humble texted Ducheine in an attempt to calm him. (*Id.* ¶¶ 170-71.) On July 24, 2025, Humble left a voicemail message confirming that he had previously recorded his phone call with Ducheine and that the recording was being used in litigation involving Kovacs. (*Id.* ¶ 172.)

**B. Procedural History**

Plaintiffs filed the present Complaint on December 12, 2025. (Compl.) In it, they assert the following claims: (1) a civil RICO claim asserted by Kovacs, individually, and all plaintiffs derivatively on behalf of AudioEye, Formulus Black, First Contact, and ESTP; (2) securities fraud, asserted by Kovacs and Alesi, individually and on behalf of similarly situated parties, against AudioEye, the Board of AudioEye, and the executives of AudioEye; (3) whistleblower retaliation under the Sarbanes-Oxley Act, the Dodd-Frank Act, and the Employee Retirement Income Security Act ("ERISA"), asserted by Kovacs; (4) interference with ERISA-protected benefits, asserted by Kovacs against AudioEye, Moradi, and Bettis; (5) direct breach of fiduciary duty, asserted by Kovacs against Moradi and Bettis; (6) derivative breach of fiduciary duty, asserted on behalf of AudioEye, Formulus Black, and First Contact against Moradi, Bettis, the AudioEye Board of Directors, and Georgevich; (7) breach of fiduciary duty, asserted by Kovacs on behalf of ESTP against Bettis, Vivid, and John Does; (8) unjust enrichment, asserted by Kovacs, individually, and all Plaintiffs derivatively on behalf of AudioEye, Formulus Black,

First Contact, and ESTP against all Defendants; (9) malicious prosecution and abuse of process, asserted by Kovacs against AudioEye, Moradi, Bettis, and Humble; (10) intentional infliction of emotional distress ("IIED"), asserted by Kovacs and Ducheine against Moradi, Bettis, and Humble; and (11) various common law torts, asserted by Lichtenstein against Bettis and Moradi. (*See id*. ¶¶ 192-325.) The Complaint seeks declaratory and injunctive relief as well as damages.[2] (*Id.* at 69-72.)

Concurrent with their filing of the Complaint, Plaintiffs filed a motion for a temporary restraining order. (ECF No. 2.) In a telephonic conference held on December 17, 2025, the Court denied the motion. (ECF No. 10.) On February 27, 2026, AudioEye and Moradi filed their motion to dismiss (ECF No. 22), accompanied by a memorandum of law (ECF No. 23 ("AudioEye Mem."), and Humble filed his own motion to dismiss (ECF No. 25), also accompanied by a memorandum of law (ECF No. 26 ("Humble Mem.")). That same day, Bettis filed a motion to dismiss (ECF No. 32) and a declaration indicating that Bettis adopted the arguments made in Moradi and AudioEye's memorandum of law (ECF No. 33). Plaintiffs failed to timely respond to the motions to dismiss, and on March 30, 2026, moved for an extension of time to amend the complaint. (ECF No. 36.) Plaintiffs also withdrew their motion for preliminary injunction. (*Id.*) The Court denied the motion for an extension of time and ordered Plaintiffs to respond to the pending motions to dismiss. (ECF No. 40.) On April 6, 2026,

[2] Although the Complaint styles the request for declaratory and injunctive relief as a cause of action, "[i]t is black-letter law that the federal Declaratory Judgment Act 'is procedural only and does not create an independent cause of action.'" *Weingot v. Unison Agreement Corp.*, No. 21-CV-4542, 2023 WL 5152478, at *5 (E.D.N.Y. July 20, 2023) (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)), *report and recommendation adopted as modified,* No. 21-CV-4542, 2024 WL 1191106 (E.D.N.Y. Mar. 20, 2024). The Court therefore treats this "cause of action" as a request for a remedy that depends on the plausibility of the underlying claims for relief. *See id.*

Plaintiffs filed an opposition to the AudioEye and Moradi motion (ECF No. 41 ("Opp. to AudioEye Mot.")) and an opposition to the Humble motion (ECF No. 42 ("Opp. to Humble Mot.")). On April 23, 2026, AudioEye and Moradi, Humble, and Bettis all filed replies in further support of their motions. (ECF No. 50 ("AudioEye Reply"); ECF No. 51 ("Humble Reply"); ECF No. 52 ("Bettis Reply").)

On April 13, 2026, AudioEye and Moradi filed a motion for sanctions (ECF No. 45), alongside an accompanying memorandum of law (ECF No. 46 ("Sanctions Mem.")). Plaintiffs filed an opposition on April 27, 2026. (ECF No. 53 ("Sanctions Opp.").) AudioEye and Moradi filed a reply in further support on May 8, 2026. (ECF No. 56 ("Sanctions Reply").)

On May 11, 2026, Plaintiffs moved for leave to file transcripts of depositions of Kovacs, Moradi, and Georgevich taken in the Florida Action. (ECF No. 57.) AudioEye and Moradi filed an opposition (ECF No. 58), as did Humble (ECF No. 59). Plaintiffs filed letters in further support. (ECF Nos. 60, 61.) Plaintiffs then filed a motion to compel AudioEye to retain unconflicted counsel (ECF No. 62), alongside an accompanying memorandum of law (ECF No. 63). In a conference held on June 1, 2026, the Court held that it would resolve the motion for recusal and the motion for leave to file certain transcripts in conjunction with resolution of the pending motions to dismiss and denied Plaintiffs' motion for leave to file a surreply. (*See* ECF No. 77.)

On June 11, 2026, Plaintiffs filed a motion for leave to file an amended complaint (ECF No. 70), accompanied by a memorandum of law (ECF No. 71). The Court adjourned briefing on the motion pending its resolution of the pending motions to dismiss. (ECF No. 76.)

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Accordingly, courts need not credit speculative inferences or "bald assertions and conclusions of law." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quotation marks omitted).

In deciding a motion to dismiss, courts may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id*. (quotation marks omitted). The Court may also take judicial notice of court filings and other matters of public record. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

### B. Abandoned Claims

As an initial matter, AudioEye, Moradi, Humble, and Bettis argue that Plaintiffs abandoned several claims in response to the motions to dismiss. (*See* AudioEye Reply at 8-9;

Humble Reply at 5; Bettis Reply at 2 (incorporating arguments from AudioEye Reply).) "[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage." *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order).

Plaintiffs failed to respond to Defendants' arguments in support of dismissing several claims. In opposition to AudioEye and Moradi's motion to dismiss, which Bettis joins, Plaintiffs respond substantively to only the RICO, securities fraud, whistleblower retaliation, and ERISA interference claims. (*See generally* Opp. to AudioEye Mem.) Although Plaintiffs provide only short responses to the arguments for dismissing their claims for breach of fiduciary duty, IIED, and unjust enrichment (*id.* at 26), the Court will not consider these claims abandoned. However, Plaintiffs entirely fail to respond to the arguments to dismiss their claims for malicious prosecution and abuse of process and for "various common law torts." (*See generally id.*; AudioEye Mem. at 50-53.) In opposition to Humble's motion to dismiss, Plaintiffs preserve only their RICO claim. (*See* Opp. to Humble Mot. at 2, 13-20.)

Accordingly, as to Humble, Plaintiffs abandon all but count I, for civil RICO, and as to AudioEye, Moradi, and Bettis, Plaintiffs abandon their claims under counts IX and XI, for malicious prosecution and common law torts. *See Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405, 423 (S.D.N.Y. 2022) ("At the motion to dismiss stage, a plaintiff abandons a claim by failing to respond to defendant's arguments in support of dismissing that claim.").

### C. Derivative Claims

Under counts I, VI, VII, and VIII of the Complaint, Plaintiffs assert civil RICO, breach of fiduciary duty, and unjust enrichment claims derivatively on behalf of AudioEye, Formulus Black, First Contact, and ESTP (collectively, the "Companies"). (*See generally* Compl.) When

"one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert," the derivative plaintiffs must allege that they were shareholders or members at the time of the challenged transaction and must "state with particularity . . . any effort by the plaintiff[s] to obtain the desired action from the directors or comparable authority" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1. In other words, "Rule 23.1 bars a derivative suit against a corporation without a prior demand that the Board of Directors take remedial action" or a showing that such demand would have been futile. *Canty v. Day*, 599 F. App'x 20, 21 (2d Cir. 2015) (summary order).

Here, the Complaint does not allege that Plaintiffs made a prior demand to the Companies' boards of directors. It also fails to allege "with particularity" why Plaintiffs failed to make such a demand. Plaintiffs do not contest that the Complaint fails to allege demand or demand futility. Instead, they state in conclusory fashion that "[d]emand on a board half-composed of interested directors would have been futile" because two of AudioEye's four directors were directly interested in the challenged conduct. (Opp. to AudioEye Mem. at 27.) As a preliminary matter, this bare assertion does not address demand futility as to Formulus Black, First Contact, and ESTP. Moreover, this assertion made in unsworn briefing does not cure the lack of allegations in the Complaint. Accordingly, Plaintiffs' derivative claims on behalf of the Companies are dismissed.

In any event, the derivative claims fail for other reasons as well. Plaintiffs lack standing to bring derivative claims on behalf of AudioEye. The Complaint alleges that Alesi acquired AudioEye shares only *after* the relevant period. (Compl. ¶ 62.) He was therefore not "a shareholder or member at the time of the transaction complained of." Fed. R. Civ. P. 23.1. As

for Ducheine, the Complaint alleges that he is only a *former* shareholder of AudioEye. (Compl. ¶ 64.) "Once a plaintiff ceases to be a member or shareholder, he or she loses standing to maintain the lawsuit." *Brooks-McCollum v. Emerald Ridge Bd. of Dir.*, 29 A.3d 245, at *2 (Del. 2011); *see also Berni v. Int'l Gourmet Restaurants of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988) ("[F]ormer shareholders . . . cannot pursue a derivative action.").[3] Kovacs, meanwhile, alleges only that he has been *deprived* of AudioEye stock, and he does not allege that he holds any interest in AudioEye. Plaintiffs do not contest the lack of derivative standing to bring claims on behalf of AudioEye. (Opp. to AudioEye Mem. at 26.)

Kovacs alleges that he can bring derivative claims on behalf of ESTP and Formulus Black because he has ownership interests. (Opp. to AudioEye Mem. at 26.) However, Plaintiffs' opposition fails to respond to the argument that claims brought on behalf of Formulus Black should be dismissed based on the statute of limitations and that claims brought on behalf of ESTP should be dismissed based on the existence of a certificate of cancellation filed with the Delaware Secretary of State. (*See* AudioEye Mem. at 47-49; Opp. to AudioEye Mem. at 26.) Plaintiffs also entirely abandon their claims as to First Contact. Plaintiffs' abandonment of these claims serves as yet another basis for dismissal. *See Colbert*, 824 F. App'x at 11.

Accordingly, the derivative claims asserted under counts I, VI, VII, and VIII of the Complaint are dismissed.

---

[3] The Court applies Delaware law to Plaintiffs' state-law derivative claims because AudioEye is incorporated in Delaware. *See Seidl v. Am. Century Companies, Inc.*, 713 F. Supp. 2d 249, 255 (S.D.N.Y. 2010) (applying the law of the state of incorporation to question of shareholder standing), *aff'd*, 427 F. App'x 35 (2d Cir. 2011).

**D. Remaining Claims Against AudioEye, Moradi, and Bettis**

The only remaining claims against AudioEye, Moradi, and Bettis are: civil RICO, asserted by Kovacs (count I); securities fraud under the Exchange Act, asserted by Kovacs and Alesi (count II); whistleblower retaliation, asserted by Kovacs (count III); interference with ERISA-protected benefits, asserted by Kovacs (count IV); breach of fiduciary duty, asserted by Kovacs (count V); unjust enrichment, asserted by Kovacs (count VIII); and IIED, asserted by Kovacs and Ducheine (count X). The Court first considers those claims brought by Kovacs which may be claim precluded before turning to the remaining claims.

**1. Claim Preclusion**

AudioEye, Moradi, and Bettis argue that prior litigation precludes Kovacs from asserting his claims against them for civil RICO (count I), breach of fiduciary duty (count V), unjust enrichment (count VIII), and IIED (count X). (*See generally* AudioEye Mem.) On April 5, 2024, Kovacs commenced an action in the New York Supreme Court ("*Kovacs I*") against AudioEye, Moradi, and Bettis. (ECF No. 2-6 at 51.) Kovacs filed an amended complaint in that action on June 26, 2024, which asserted four causes of action in connection with his termination from AudioEye: retaliation under New York Labor Law § 740; tortious interference with prospective business relations; defamation; and IIED. (*Id.*) On January 31, 2025, the New York Supreme Court dismissed the amended complaint with prejudice. (*Id.* at 49-55.) Like here, Kovacs argued in *Kovacs I* that "his termination was in retaliation for raising objections to and refusing to participate in an alleged securities fraud scheme." (*Id.* at 49.) The New York Supreme Court held that Kovacs had failed to state a retaliation claim because he did not provide specific allegations showing the defendants were aware of his protected activity, that Kovacs had failed to state an IIED claim because he did not provide any allegations that bear on the claim, and that he had abandoned his remaining claims. (*Id.* at 51-55.) Two months after the resolution

of *Kovacs I*, Kovacs brought a second case against AudioEye and Moradi in New York Supreme Court ("*Kovacs II*") for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, and conversion arising out of AudioEye's alleged failure to provide Kovacs with his vested RSUs after his termination. (ECF No. 2-6 at 57.) On October 8, 2025, the New York Supreme Court dismissed *Kovacs II* on the basis of claim preclusion. (*Id.* at 58-59.)

The doctrine of claim preclusion, or res judicata, "prevents 'parties or their privies from relitigating issues that were or could have been raised in' a previous action that was adjudicated on the merits." *Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, No. 23-CV-6391, 2024 WL 2058382, at *5 (S.D.N.Y. May 8, 2024) (quoting *Simmons v. Trans Express Inc.*, 955 F.3d 325, 328 (2d Cir. 2020)). "It is well settled law that 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the [s]tate in which the judgment was rendered.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). "Under New York preclusion law, 'a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.'" *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) (quoting *In re Hunter*, 4 N.Y.3d 260, 269 (N.Y. 2005)). "[A]ny subsequent claim that 'aris[es] out of the same transaction or series of transactions' as the adjudicated claim is barred, 'even if based upon different theories or if seeking a different remedy'" and even if it was not raised in the prior litigation, as long as it could have been. *Id.* (quoting *In re Hunter*, 794 N.Y.S.2d at 269). "To bar a subsequent claim, however, the prior judgment must have been 'on the merits' and 'rendered by a court of competent jurisdiction,' in the context of a proceeding to which 'the party against whom the

doctrine [of *res judicata*] is invoked was a party.'" *Id.* (quoting *People ex rel. Spitzer v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 122 (N.Y. 2008)). "A district court may consider the affirmative defense of *res judicata* on a Rule 12(b)(6) motion where all relevant facts are shown in the plaintiff's complaints, attachments thereto," and judicially noticeable filings in other relevant cases. *Fischer v. Brushy Mountain Bee Farm, Inc.*, No. 17-CV-10094, 2023 WL 8603027, at *6 (S.D.N.Y. Dec. 12, 2023); *see also Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-CV-8974, 2019 WL 859042, at *2 n.4 (S.D.N.Y. Feb. 22, 2019).

Like the present case, *Kovacs I* concerned AudioEye, Moradi, and Bettis's roles in various fraudulent schemes and Kovacs's termination as a result of his refusal to participate. (*See* ECF No. 2-6 at 49-55.) Both this case and *Kovacs I* involve Kovacs, AudioEye, Moradi, and Bettis. Moreover, "[b]ecause the state court granted the motion to dismiss with prejudice, the decision was decided on the merits and preclusive for res judicata purposes." *Nampiaparampil*, 2024 WL 2058382, at *5; *see also Fuschi v. JPMorgan*, 223 A.D.3d 409, 409 (1st Dep't 2024) ("[A] dismissal with prejudice is a determination on the merits for res judicata purposes[.]"). *Kovacs II* involved Kovacs, AudioEye, and Moradi, and was dismissed on claim preclusion grounds, which, contrary to Kovacs's naked assertion (Opp. to AudioEye Mem. at 14), "itself creates a preclusive effect." *Hameed v. Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008) (summary order). Accordingly, the sole question for the Court is whether the claims asserted here were, or could have been, raised in the prior actions.

As a preliminary matter, the parties dispute the operative date for preclusion under *Kovacs I*, with Kovacs arguing that preclusion applies only to events that occurred before he commenced *Kovacs I* and Defendants arguing that preclusion also applies to events that occurred before the filing of the amended complaint in *Kovacs I*. (*See* Opp. to AudioEye Mem. at 14;

AudioEye Reply at 9.) Claim preclusion typically "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit," and plaintiffs have "no continuing obligation to file amendments to the complaint to stay abreast of subsequent events." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). However, "[b]y choosing to file the amended complaint, [Kovacs] bound himself to bring all existing claims, against all related defendants, stemming from the events at issue in that complaint." *Clark v. Kitt*, 619 F. App'x 34, 36-37 (2d Cir. 2015) (summary order). Accordingly, June 26, 2024 controls in the claim preclusion analysis as to *Kovacs I*. *See Fischer*, 2023 WL 8603027, at *9 (collecting cases).

Most of the events alleged in the Complaint occurred before June 26, 2024. For example, Moradi's stock manipulation, Kovacs's termination, the seizure of Kovacs's vested RSUs, Bettis's threatening letter to Kovacs, the commencement of AudioEye and Moradi's lawsuit, the commencement of Humble's lawsuit, and Kovacs's ouster from ESTP all occurred before June 26, 2024. (Compl. ¶¶ 131-46.) Kovacs also learned of the alleged attempts to commission a murder-for-hire against him before June 26, 2024. (*Id.* ¶¶ 163-65.) These events all arose in connection to the alleged insider trading scheme, Kovacs's termination, and the retaliation that he faced for refusing to participate in and attempting to report Defendants' purported scheme—the very series of transactions that Kovacs had challenged in *Kovacs I* and *Kovacs II*. (ECF No. 2-6 at 49-55.) Indeed, Kovacs's amended complaint in *Kovacs I* recites many of the same facts related to Moradi's "pump and dump" scheme, Kovacs's attempts to report the scheme, and resulting retaliation. Amended Complaint ¶¶ 27-32, 39-41, 43, 47-49, 54, 56-59, *Kovacs v. AudioEye, Inc.*, No. 651810/2024 (N.Y. Sup. Ct. June 26, 2024), Dkt. No. 13. Kovacs also raised IIED in *Kovacs I*, just as he does here. *Id.* ¶¶ 83-87.

Because Kovacs challenges actions here that arise from the same "common nucleus of operative facts" as those that he challenged in *Kovacs I* and *Kovacs II*, his claims under the civil RICO statute[4] and state law all either were raised or could and should have been raised in the prior actions. *See Clark*, 619 F. App'x at 36 (quotation marks omitted). This is true notwithstanding the fact that some of the facts alleged here, such as the murder-for-hire plot, were not alleged in *Kovacs I* or *Kovacs II*, given that Kovacs knew about those events before filing of his amended complaint. *See id.* at 37 (holding preclusion applies where the plaintiff's own pleadings "reveal that he *did* discover at least some of [the defendant's] alleged misconduct before filing his amended complaint" in the prior case).

Kovacs attempts to cast this case as materially different from the prior actions, based on the fact that he now brings a RICO claim that he did not bring in state court. (Opp. to AudioEye Mem. at 13-14.) This argument is unavailing. Under New York's transactional approach, "separately asserted legal theories that depend on different shadings of the facts or that emphasize different elements of the facts may nevertheless arise out of the same transaction or series of transactions if those legal theories are grounded on the same gravamen of the wrong upon which the actions are brought." *Beijing Neu Cloud Oriental Sys. Tech. Co*, 110 F.4th at 114 (cleaned up). Fundamentally, Kovacs's allegations here concern the same series of transactions that he challenged in *Kovacs I* (namely, securities fraud, his termination, and subsequent retaliation for his attempts to report or stop the fraud) and in *Kovacs II* (namely, the seizure of his benefits). It is a "well-established rule that a plaintiff cannot avoid the effects of

[4] The state courts in *Kovacs I* and *Kovacs II* were competent to hear the civil RICO claim. *See Pantoja v. Banco Popular*, No. 11-CV-3636, 2012 WL 4069297, at *4 (S.D.N.Y. Aug. 9, 2012) (dismissing RICO claim that plaintiff could have raised in prior state court action based on claim preclusion), *aff'd*, 545 F. App'x 47 (2d Cir. 2013).

res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000). Kovacs "cannot seek to relitigate [the same issues] by recasting his allegations as a federal RICO claim." *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990).

Kovacs also argues that several events at issue here post-dated June 24, 2024.[5] (Opp. to AudioEye Mem. at 15-16.) Although claims that arise subsequent to a prior action are not barred by claim preclusion, "to avoid claim preclusion, the alleged new conduct must have given rise to a new claim—one that was not only not brought, but could not have been brought, in the prior action." *Fischer*, 2023 WL 8603027, at *9. "A suit can be claim precluded even if it is based in part on facts that occurred after the initial suit." *Amid v. Chase*, 720 F. App'x 6, 10 (2d Cir. 2017) (summary order). "For purposes of claim preclusion, the key question is whether 'the facts *essential* to the second [suit] were [already] present' at the time of the first suit." *Id.* (quoting *Waldman*, 207 F.3d at 110-11). Here, the core facts essential to Kovacs's state-law and civil RICO claims against AudioEye, Moradi, and Bettis—including the insider trading scheme, Kovacs's attempts to stop the scheme and his subsequent termination, the murder-for-hire plot, the seizure of his benefits, the commencement of two lawsuits, and various verbal threats—predated June 26, 2024. (Compl. ¶¶ 135-36, 142-46, 149, 156-58, 163-65.) Those are the facts essential to Kovacs's civil RICO, unjust enrichment, fiduciary duty, and IIED claims. (*See, e.g., id.* ¶ 200 (describing the RICO period as "[f]rom at least June 22 through April 2025"); *id.* ¶ 255 (discussing how Moradi and Bettis breached their fiduciary duties to Kovacs by terminating him,

[5] Defendants argue that Kovacs is precluded from being all of his claims not just by *Kovacs I* but also *Kovacs II*. (AudioEye Reply at 11.) But given that *Kovacs II* concerned the narrower question of Kovacs's RSUs, the Court declines to preclude Kovacs's other claims, unrelated to his benefits, based on that decision.

organizing smear campaigns, and retaliating against him); *id.* ¶ 284 (asserting unjust enrichment claim based on insider trading proceeds and misappropriated benefits).)

In contrast, the Complaint alleges only that the following conduct post-dates June 26, 2024: a continuation of the insider trading scheme; discussions about the scheme, Kovacs's whistleblower efforts, and the murder-for-hire plot; attempts to convince Ducheine to admit that the murder-for-hire plot was falsified; a lawsuit Bettis commenced against Kovacs; various communications between Kovacs and an advisor to Mayor Eric Adams; and pressure from Miami Mayor Francis Suarez for Kovacs to abandon his claims. (Compl. ¶¶ 139, 147, 151-53, 168-88.) Plaintiffs do not explain why these later-occurring facts give rise to *new* claims. Rather, these allegations only demonstrate "an ongoing course of illegal conduct continuing past the date [Kovacs] filed his [amended complaint]" in *Kovacs I*. *Fisher*, 2023 WL 8603027, at *10. If Kovacs's claims were "based . . . primarily upon a cumulation of events occurring *after* the first suit," claim preclusion would be inappropriate. *Waldman*, 207 F.3d at 114 (emphasis added). But the bulk of these later events are just continuations of and discussions about the prior conduct. *Accord id.* at 113 (holding that new instances of ongoing discrimination and new admissions of prior conduct did not bar claim preclusion). Such events are "nothing more than additional instances of what was previously asserted," and Kovacs cannot "use the mere inclusion of a few post-[*Kovacs I*] acts . . . to resurrect a claim, grounded almost entirely upon [events preceding the prior litigation]." *Id.* at 113-14 (cleaned up).

In short, Kovacs's state-law and civil RICO claims (counts I, V, VIII, and X) are claim precluded by the dismissals in *Kovacs I* and *Kovacs II*. But as Plaintiffs points out (Opp. to AudioEye Mem. at 13-14), federal courts enjoy exclusive jurisdiction over his remaining federal-law claims under the Exchange Act, the Dodd-Frank Act, and ERISA, or counts II, III, and IV of

the Complaint. Because claim preclusion applies only when the prior action was before a court of competent jurisdiction, claim preclusion cannot bar these claims. Likewise, there remains one individual claim against AudioEye, Moradi, and Bettis that is not brought by Kovacs—Ducheine's IIED claim. The Court considers each remaining claim in turn.

**2. Securities Fraud**

Kovacs and Alesi fail to state a claim for securities fraud under the Exchange Act. Actions brought under Section 10(b) and Rule 10b-5 can be brought only by "the class of plaintiffs . . . who purchased or sold the securities about which a material misstatement was made." *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 85 (2d Cir. 2022). As discussed above, Alesi acquired AudioEye shares only after the conclusion of the alleged fraud (Compl. ¶ 62), rendering him ineligible. (Opp. to AudioEye Mem. at 21 (conceding as much).) As to Kovacs, although he claims to be "a significant long-term shareholder of AudioEye," he alleges only ever having RSUs, which were awarded to him as part of his employment package. (Compl. ¶ 61 (citing exhibits concerning his RSUs); *see also id.* ¶¶ 142, 241, 244; ECF No. 2-4 at 21-25.) In fact, Kovacs states in a declaration attached in support of his Complaint that, "[o]ther than the [RSUs] and equity awards granted to [him] by AudioEye in connection with [his] work for the Company, . . . [he has] never held any company stock since 2020 or 2021." (ECF No. 2-2 at 61.) "[W]hen an employee does not give anything of value for stock other than the continuation of employment nor independently bargains for stock, there is no 'purchase or sale' of securities." *Fraser v. Fiduciary Tr. Co., Int'l*, No. 04-CV-6958, 2005 WL 6328596, at *4 (S.D.N.Y. June 23, 2005) (cleaned up). That said, some courts have held that a plaintiff typically has standing if "defendant's misrepresentations about the stock options offered to plaintiff substantially affected plaintiff's decision whether to accept the defendant's employment

offer—that is, whether to 'purchase' the 'security.'" *Egan v. TradingScreen, Inc.*, No. 10-CV-8202, 2011 WL 1672066, at *11 (S.D.N.Y. May 4, 2011) (cleaned up).

Kovacs argues in his briefing that he accepted a lower baser salary "in exchange for" shares of equity. (Opp. to AudioEye Mem. at 21.) That unsworn assertion is not borne out in the Complaint. Even if it were, however, Kovacs would have to establish that material misrepresentations were made when he accepted the job offer in 2014. (Compl. ¶ 140.) The Complaint lacks such allegations. In fact, it alleges that Kovacs was hired in 2014, before Moradi was even involved at AudioEye. (*Id.* ¶ 140; *see also id.* at 75 (defining the Class Period to start in 2022).) Kovacs therefore "has not alleged facts showing that [Defendants'] misconduct occurred" in 2014. *Egan*, 2011 WL 1672066, at *11 ("Plaintiff cannot assert loss causation where the misrepresentations or omissions he pleads took place after he allegedly purchased the securities at issue.").[6]

Because the Court dismisses the § 10(b) claims, it also dismisses the § 20(a) claims. *See In re Agnico-Eagle Mines Ltd. Sec. Litig.*, No. 11-CV-7698, 2013 WL 144041, at *21 (S.D.N.Y. Jan. 14, 2013) ("Because the Court has dismissed the § 10(b) claims in this case, there is no longer a primary violation upon which the § 20(a) claims might be predicated.").

---

[6] In briefing, Plaintiffs argue that this defect can be cured through an amended complaint naming Ducheine as the plaintiff for this claim because he sold his AudioEye stock at a loss during the Class Period. (Opp. to AudioEye Mem. at 22.) But as Defendants point out (AudioEye Reply at 16 n.5), the Complaint alleges that Ducheine made that sale in reliance only on Humble's oral statement to him, not on the market price or any false statements made by AudioEye, Moradi, or Bettis (Compl. ¶ 64). *Cf. Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) ("Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." (quotation marks omitted)).

### 3. Dodd-Frank Act

Kovacs's claims for whistleblower retaliation under the Sarbanes-Oxley Act, the Dodd-Frank Act, and ERISA likewise fail. Kovacs concedes that § 806 of the Sarbanes-Oxley Act requires filing with the Secretary of Labor, and he does not contest that the Court lacks jurisdiction because Kovacs failed to exhaust such administrative remedies. (Opp. to AudioEye Mem. at 23.) He has therefore abandoned that claim. Because the Court discusses Kovacs's ERISA claims in the next section, it considers only the Dodd-Frank claim here.

Dodd-Frank prohibits employers from retaliating against any individual who provides information relating to a violation of the securities laws to the SEC. *See Chui v. Publicis Groupe S.A.*, No. 24-CV-6767, 2025 WL 2711197, at *6 (S.D.N.Y. Sept. 23, 2025) (citing 15 U.S.C. § 78u-6(a)(6)). Kovacs concedes that he was terminated before he filed a report with the SEC on April 8, 2024, but he alleges that Defendants engaged in certain retaliatory acts against him after he engaged in whistleblowing conduct, such as the filing of various lawsuits against him, his ouster from ESTP, ongoing insider trading, and witness tampering. (Opp. to AudioEye Mem. at 23.)

None of these alleged retaliatory acts relate to Kovacs's employment with AudioEye. Dodd-Frank prohibits retaliatory conduct against a whistleblower "in the terms and conditions of employment." 15 U.S.C. § 78u-6(h)(1)(A); *see also LiveVideo.AI Corp. v. Redstone*, No. 24-CV-6290, 2025 WL 2933706, at *16 (S.D.N.Y. Aug. 12, 2025) (dismissing Dodd-Frank claim where, among other things, plaintiff did not allege that it suffered an adverse employment action), *report and recommendation adopted sub nom. Livevideo.AI Corp v. Redstone*, No. 24 CIV. 6290, 2025 WL 2778110 (S.D.N.Y. Sept. 30, 2025), *appeal dismissed* (Apr. 13, 2026). Because Kovacs does not demonstrate an adverse *employment* action following his engagement in whistleblower activity, Kovacs's Dodd-Frank claim is dismissed.

**4. ERISA Claims**

Kovacs brings ERISA claims under count III for whistleblower retaliation pursuant to Section 510 and under count VI for interference with ERISA benefits, in violation of Sections 502(a)(1)(B), 502(a)(3), and 510. (Compl. ¶¶ 227-49.) "ERISA section 502(a)(1)(B) . . . permits a participant or beneficiary of an ERISA-covered benefits plan to bring a civil action 'to recover benefits due to him under the terms of his plan.'" *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting 29 U.S.C. § 1132(a)(1)(B)). Section 510 "makes it 'unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.'" *Pelosi v. Schwab Cap. Markets, L.P.*, 462 F. Supp. 2d 503, 511-12 (S.D.N.Y. 2006) (quoting 29 U.S.C. § 1140). "To state a claim under ERISA, a plaintiff must allege and establish the existence of an 'employee benefit plan' that is governed by ERISA." *Forte v. BNP Paribas*, No. 14-CV-8556, 2015 WL 3604317, at *3 (S.D.N.Y. June 8, 2015) (quotation marks omitted). "There are two types of employee benefit plans under ERISA: 'employee welfare benefit plans' and 'employee pension benefit plans.'" *Id.* (quoting 29 U.S.C. § 1002).

Kovacs fails to allege that he was part of an ERISA-covered benefit plan. He concedes that the only relevant "benefits" at issue are RSUs granted to him under a 2016 Incentive Compensation Plan and a 2019 Equity Incentive Plan. (Opp. to AudioEye Mem. at 24.) He also concedes that "Defendants may ultimately contend that the equity awards are [not] ERISA plans," but he asserts, without supporting citations, that this "is a merits characterization argument." (*Id.* at 25.) Contrary to Kovacs's assertion, a Rule 12(b)(6) motion is an appropriate vehicle for challenging whether the awards are covered by ERISA. *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 410 (S.D.N.Y. 2015) ("Where

the record contains the undisputed terms of the disputed plan, a court *may* decide the applicability of ERISA as a matter of law." (cleaned up)).

Defendants readily demonstrate that equity compensation, such as RSUs, does not fall within the scope of ERISA. "[C]ourts have held that employee stock option plans are not employee benefit plans subject to ERISA because their purpose is to operate as an incentive and bonus program, and not as a means to defer compensation or provide retirement benefits." *Matiella v. DIRECTV, Inc.*, No. 11-CV-02458, 2012 WL 363037, at *8 (S.D.N.Y. Jan. 31, 2012) (quotation marks omitted); *see also Graphic Packaging Holding Co. v. Humphrey*, 416 F. App'x 1, 3 (11th Cir. 2010) (unpublished) (holding that a plan that "provides for the award of . . . [RSUs]" is "not covered by ERISA"). Courts have consistently differentiated plans that grant equity awards, including restricted shares and RSUs, from ERISA welfare benefit plans, which are established for the purpose of "providing its participants or their beneficiaries benefits such as health care, vacation, disability, and unemployment." *Timian v. Johnson & Johnson*, No. 15-CV-06125, 2015 WL 6454766, at *3 (W.D.N.Y. Oct. 26, 2015).

Such plans also do not qualify as employee pension benefit plans unless payments contemplated under the plan "are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." *Id.* at *4 (quoting 29 C.F.R. § 2510.3–2(c)). Here, the RSU agreements clearly contemplate that the RSUs will vest throughout Kovacs's employment (*see, e.g.*, ECF No. 2-4 at 22; ECF No. 2-6 at 2, 8), and are thus materially indistinguishable from other cases in which courts have dismissed ERISA claims on this basis. *See, e.g.*, *Pasciutti v. LiquidPiston, Inc.*, No. 20-CV-1243, 2021 WL 4502950, at *3 (D. Conn. Sept. 30, 2021) ("Courts considering similar stock option plans have held that when vesting schedules allow and encourage employees to exercise their options before

retirement . . . ERISA does not apply."); *Adams v. Intralinks, Inc.*, No. 03-CV-5384, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004).

Accordingly, Kovacs's ERISA claims under counts III and IV of the Complaint are dismissed.

**5. IIED (Ducheine)**

Lastly, the Complaint asserts an IIED claim against Moradi and Bettis by both Kovacs and Ducheine. (Compl. ¶¶ 300-07.) As discussed above, Kovacs's IIED claim is precluded by his prior litigation. That leaves Ducheine's claim. Although Plaintiffs address the IIED claim in their opposition to AudioEye and Moradi's motion to dismiss, the opposition discusses only Kovacs's claim. (Opp. to AudioEye Mem. at 26.) Accordingly, Ducheine has abandoned his IIED claim. *Colbert*, 824 F. App'x at 11.

**E. Remaining Claims Against Humble**

Plaintiffs abandon all but their civil RICO claim against Humble. (*See generally* Opp. to Humble Mem.) As to the remaining claim, Humble urges dismissal principally based on the Settlement Agreement and Mutual Release (the "Release") entered into by Kovacs and Humble to resolve Humble's prior litigation against Kovacs (the "Humble lawsuit"). (ECF No. 27-1.)

The Court can consider the terms of the Release, even though it was not filed in the prior case, because Plaintiffs do not dispute the authenticity of the Release or that Kovacs signed it. *See Doe 1 v. Gov't of United States Virgin Islands*, 771 F. Supp. 3d 379, 388 (S.D.N.Y. 2025) (collecting cases). Humble filed his complaint against Kovacs on May 2, 2024, alleging that Kovacs made defamatory statements about him, including that Humble had committed fraud. Compl. ¶¶ 21-24, *Humble v. Kovacs*, No. 24-CV-3404 (S.D.N.Y. May 2, 2024), ECF No. 1. The parties stipulated to a voluntary dismissal on July 3, 2024. Stipulation of Voluntary Dismissal, *Humble v. Kovacs*, No. 24-CV-3404 (S.D.N.Y. May 2, 2024), ECF No. 19. The parties agreed

to the Release on June 28, 2024, which provides that "Kovacs . . . forever releases and discharges Humble . . . from any and all liability for any and all Claims from the beginning of time until the Effective Date of this Settlement Agreement relating to or arising in any way out of the allegations asserted, or which could have been asserted, by Kovacs (whether known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or not asserted) in this Lawsuit." (ECF No. 27-1 § 2.D.) The Release defines "Claims" to include "any . . . cause of action of whatsoever kind." (*Id.* § 2.A.)

Kovacs does not contest that the Release bars any claims he might bring against Humble based on events preceding the Release. (Opp. to Humble Mem. at 9.) Rather, he argues that his RICO claim against Humble is based only on conduct post-dating the Release, and that the pre-Release conduct is admissible to prove an enterprise and pattern. (*Id.* at 13-15.) The only case that he cites in support of this latter proposition, *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335 (S.D.N.Y. 2022), does not support his position. In *Wade*, the plaintiffs had signed agreements containing broad releases not unlike the one at issue here. *Wade Park Land Holdings*, 589 F. Supp. 3d at 363-64. The Court held that the agreements precluded all of the plaintiffs' claims that relied predominantly on allegations preceding the date of the agreements. *Id.* at 364. The Court's later discussion of plaintiffs' RICO claim on the merits was only in the alternative. *Id.* at 369-70. In contrast to Plaintiffs' half-hearted attempt to support their position, the Second Circuit has explicitly rejected "attempts to premise RICO liability on predicate acts" that were covered by a release clause. *Pasternack v. Shrader*, 863 F.3d 162, 173-74 (2d Cir. 2017). Other courts to reach the issue have agreed. *See, e.g.*, *MCM Partners, Inc. v. Andrews–Bartlett & Assocs., Inc.*, 161 F.3d 443, 448-49 (7th Cir. 1998) (rejecting the plaintiff's argument that "each act in furtherance of a conspiracy gives rise to a separate [RICO] cause of action"

post-dating the release, given that the scheme was "clearly based on pre-[release] conduct"). Indeed, the broad language of the Release—barring claims "relating to or *arising in any way*" out of events preceding the Release date (ECF No. 27-1 § 2.D (emphasis added))—supports an expansive reading.

Accordingly, the Court considers only whether the conduct alleged to post-date the Release plausibly states a RICO claim against Humble. The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To establish a claim for a civil violation of 18 U.S.C. § 1962(c) through a pattern of racketeering activity, 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise; (3) through a pattern (4) of racketeering activity.'" *Wade Park Land Holdings*, 589 F. Supp. 3d at 374 (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)). "A 'pattern of racketeering activity' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 63–64 (E.D.N.Y. 2020) (quoting 18 U.S.C. § 1961(5)). Under the statute, racketeering activity includes certain acts indictable under federal law, including witness tampering. *Id.* at 64 (citing 18 U.S.C. § 1961(1)).

Kovacs alleges that he has plausibly stated a civil RICO claim against Humble for witness tampering conduct that post-dates the Release, based on the following allegations against Humble: in December 2024, Humble secretly recorded a phone call with Ducheine; in January 2025, Quinn Emanuel used the recording to pressure Ducheine to testify; that same month, Humble texted Ducheine, attempting to calm and influence him; in July 2025, Humble left a

voicemail for Ducheine confirming the existence of the recording and its use in litigation involving Kovacs. (Opp. to Humble Mem. at 13-14; Compl. ¶¶ 166-74.) These sparse allegations hardly plead a violation of the federal witness tampering statute, and Kovacs does not cite any case that suggests they would (Opp. to Humble Mem. at 14). Federal law prohibits, in relevant part, the knowing use of intimidation, threats, or corrupt persuasion, with intent to influence, delay, or prevent the testimony of any person in an official proceeding. 18 U.S.C. § 1512(b). The statute also prohibits intentional harassment of another person that hinders, delays, prevents, or dissuades any person from testifying in an official proceeding or reporting a violation of federal law to a law enforcement officer or judge. *Id.* § 1512(d).

The Complaint's post-Release witness tampering allegations fail to explain what, exactly, was threatening, harassing, or corrupt about recording a phone call—in which Ducheine made statements that are not alleged to be the result of coercion or intimidation—or the subsequent communications about that recording, which encouraged Ducheine to repeat what he had said on the call and confirmed that the recording existed and would be used in litigation. (*See* Compl. ¶¶ 166-74.) Although Humble may well have been trying to persuade Ducheine to confirm, per his prior call, that Kovacs had made up the murder-for-hire plot, nothing in the Complaint establishes that such efforts were corrupt or threatening. Likewise, Humble gave a law firm a recording of Ducheine speaking voluntarily, and the law firm tried to use that recording to encourage Ducheine to state that the plot was falsified: This does not give rise to a claim of witness tampering. Even if the statements that Humble asked Ducheine to make were false, the Second Circuit has held that "the nonmisleading, nonthreatening, nonintimidating attempt to have a person give false information to the government" is not covered by § 1512. *United States v. King*, 762 F.2d 232, 238 (2d Cir. 1985). Indeed, the Complaint itself indicates that Humble's

communications with Ducheine were polite and friendly, not threatening. (Compl. ¶ 171 (alleging that Humble told Ducheine "my apologies" and "It's all love").)

The RICO claim fails for an additional reason. A plaintiff must allege a "an injury cognizable under RICO" resulting from Humble's post-Release conduct. *Rapaport v. Epstein*, No. 24-CV-7439, 2026 WL 878714, at *12 (S.D.N.Y. Mar. 31, 2026). Although Kovacs alleges substantial damages resulting from his termination, the seizure of his RSUs, and his costs in battling the Florida lawsuit brought against him by AudioEye and Moradi, the Complaint contains no allegations as to how Humble's post-Release conduct caused Kovacs concrete financial harm. *See id.* Although Plaintiffs argue in briefing that they "were forced to expend resources responding to that false accusation" and that "Ducheine's willingness to cooperate as a witness was chilled" (Opp. to Humble Mem. at 19), none of that is supported by allegations contained in the Complaint. Instead, Ducheine's declaration, attached to Plaintiffs' submissions, indicates that he continues to cooperate with Kovacs. (ECF No. 2-2 at 101 (stating that Ducheine provided Kovacs's lawyers with audio recording of Humble's voicemail).)

In sum, Plaintiffs' claims against AudioEye, Moradi, Bettis, and Humble are dismissed.[7]

[7] The Court also denies Plaintiffs' motion to compel AudioEye to retain unconflicted counsel. (ECF No. 62.) As the Court understands it, settlement is no longer on the table. (*See* ECF No. 77 at 7.) Accordingly, the only potential conflict is the result of the motion to dismiss, and "in derivative actions, there exists no conflict of interest between a corporation and individual director defendants at the motion to dismiss stage[;] therefore, a law firm may represent all defendants without impropriety." *Respler on Behalf of Magnum Hunter Res. Corp. v. Evans*, 17 F. Supp. 3d 418, 421 (D. Del. 2014). "At this stage of the litigation, . . . the Court is satisfied that any potential conflict which may exist has no bearing on the Court's conclusion that, as a matter of law, Plaintiffs' claims must be dismissed." *Voss v. Sutardja*, No. 14-CV-01581, 2015 WL 349444, at *12 (N.D. Cal. Jan. 26, 2015).

### F. Leave to Amend

Having dismissed the Complaint as to AudioEye, Moradi, Bettis, and Humble, the Court now turns to Plaintiffs' request for leave to amend their Complaint. (ECF No. 70.) Only after motion to dismiss briefing had concluded, Plaintiffs sought leave to file an amended complaint that adds a new plaintiff, Kovacs's brother Daniel Kovacs, to lead the derivative claims, and drops many of the claims contained in the Complaint. (*See generally* ECF No. 70-2.) The proposed amended complaint asserts the following claims: (1) civil RICO, brought by Kovacs individually and his brother Daniel Kovacs derivatively on behalf of AudioEye against Moradi, Bettis, and Humble; (2) Dodd-Frank retaliation, brought by Kovacs against AudioEye; (3) breach of fiduciary duty and other state common law duties, brought by Daniel Kovacs derivatively on behalf of AudioEye against various defendants; (4) unjust enrichment, in alternative to the claims brought in count III, brought by Daniel Kovacs derivatively; (5) accounting and equitable relief, brought by Daniel Kovacs derivatively on behalf of AudioEye against various defendants. (*See generally* ECF No. 70-1.)

Rule 15 counsels that leave to amend should be given freely, but it also provides that district courts have "the discretion to deny leave if there [is] a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015) (quotation marks omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente* v. *Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

For the reasons discussed above, Kovacs's civil RICO claim is precluded as to AudioEye and Moradi, and therefore amendment is futile, especially given that the proposed amended complaint relies on the same transaction and series of transactions. (*See* ECF No. 70-1 ¶ 70.) The proposed amended complaint also does not cure the defects in Kovacs's civil RICO claim as

to Humble, as Kovacs is limited to challenging Humble's post-Release conduct, and that conduct does not sustain a claim, for reasons discussed above. (*See id.* ¶ 44.) As to the Dodd-Frank claim, Kovacs continues to rely largely on post-report conduct that is unrelated to his employment, such as a settlement demand. (*Id.* ¶ 78.) To the extent he alleges potentially employment-related conduct, such as interference with employment verification, the proposed amended complaint lacks any detail as to the nature of the verification or the "interference" with that verification. (*See id.* ¶¶ 39, 41, 52, 78.) "This bare assertion, without more, does not adequately state a claim[.]" *Walker v. City of New York*, 367 F. Supp. 3d 39, 64 (S.D.N.Y. 2019) (holding that allegations that defendants retaliated against plaintiff by "den[ying] him handicapped housing, den[ying] him reasonable accommodations, [and] increasingly hinder[ing] his access to handicap housing and assistance" did not sufficiently state a claim). Kovacs's proposed amendments are therefore futile, and the motion for leave to amend is denied as to all of Kovacs's claims.[8]

That leaves the proposed amended derivative claims. The addition of Daniel Kovacs may resolve the standing issues identified in this Opinion, and the proposed amended complaint makes an attempt at alleging demand futility, unlike the Complaint here. Because the Court had adjourned briefing on this motion pending resolution of the motions to dismiss (*see* ECF No. 76), it now directs Defendants to file a response to the motion for leave to amend, on only the question of the proposed derivative claims, and defers decision as to leave to amend those claims

[8] The Court also has serious reservations about granting Kovacs leave to amend when it would be his fourth bite at the apple and, as discussed in further detail with respect to Defendants' motion for sanctions, there is evidence of bad faith and dilatory motive. *See, e.g.*, *Gitzis ex rel. Galanova v. Chen*, No. 20-CV-1149, 2020 WL 1140422, at *3 (E.D.N.Y. Mar. 9, 2020) (dismissing initial complaint without leave to amend where plaintiff had a "history of filing frivolous and vexatious lawsuits"); *Papaya Gaming Ltd. v. Fair Play For Mobile Games*, No. 25-CV-5573, 2026 WL 558698, at *12-13 (S.D.N.Y. Feb. 27, 2026).

until briefing is completed. Defendants shall file their opposition within fourteen days of the date of this order and Plaintiffs shall file a reply, if any, within seven days of the opposition.

## III. Sanctions

AudioEye and Moradi have filed a motion for sanctions, urging the Court to award them attorney's fees and costs incurred in defending the action and bringing the sanctions motion. (ECF No. 45.)

"Rule 11(c) of the Federal Rules of Civil Procedure[] allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2d Cir. 2008). Because "Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed,'" it can be the basis for sanctioning an attorney, a client, or both. *Weiss v. Yotta Techs., Inc.*, No. 22-CV-8569, 2024 WL 4285849, at *2 (S.D.N.Y. Sept. 25, 2024) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

AudioEye and Moradi argue that Kovacs and his counsel knew, or had every reason to know, that the claims were frivolous and pursued for improper purposes. (*See* Sanctions Mem. at 10-15.) To demonstrate frivolity, AudioEye and Moradi rely on their arguments for dismissal. To demonstrate improper purpose, AudioEye and Moradi rely largely on a transcript of Kovacs's recorded statements to Bettis, which are attached to the Complaint and in which Kovacs states his intent to "tear [Moradi] to shreds in every way [he] could," to "do smear campaigns," and "to tear that fucking company to shreds." (ECF No. 2-3 at 55-57.) The transcript of the call reveals a concerning level of vitriol and an explicit intent to smear Moradi and AudioEye. Indeed, at one point in the call, Kovacs states, "You say it enough, it becomes true," the implication of which seems to be an intent to bring false claims. (*Id.* at 56; *see also id.* at 58 ("I got to call my

lawyers . . . . I got to call my smear campaigns.”).) Elsewhere, Kovacs declares that Moradi “doesn’t belong to be fucking breathing on this fucking planet,” that he hates Moradi, and that he’ll “rip him to fucking half with [his] fucking hands.” (*Id.* at 57.)

There is no question that the transcript of the call seriously calls into question Kovacs’s credibility and casts doubt on Kovacs’s attorney’s judgment and good faith in certifying Kovacs’s claims. That said, “[i]n the Second Circuit, improper purpose is not a valid basis for sanctions unless the complaint has been found to be frivolous.” *JM Holdings 1 LLC v. Quarters Holding GmbH*, No. 20-CV-3480, 2021 WL 860516, at *8 (S.D.N.Y. Mar. 8, 2021); *see Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (“[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure.”). And here, although the Court ultimately dismissed Kovacs’s claims, it cannot conclude that those claims were entirely frivolous. Although the majority of Kovacs’s claims are barred by claim preclusion, the Complaint contained some allegations of events post-dating Kovacs’s prior complaints, which made it *possible*, although not plausible, that Kovacs could state a claim not barred by claim preclusion. Likewise, although most of Kovacs’s allegations against Humble were barred by the Release, certain acts post-dated the effective date of the Release and raised a question as to whether Kovacs could state a plausible claim. As to Kovacs’s securities fraud, ERISA, and whistleblower retaliation claims, which were not barred by claim preclusion, the bases for dismissal of those claims—which turned on statutory standing and the failure to meet certain elements of the Dodd-Frank Act and ERISA—were not so far afield from a typical basis for dismissal as to be “patently void of any legal or factual basis.” *JM Holdings 1 LLC*, 2021 WL 860516, at *8 (quotation marks omitted). Kovacs’s claims failed, but “merely incorrect legal

statements are not sanctionable under Rule 11(b)(2)." *Ammann v. Sharestates, Inc.*, No. 21-CV-2766, 2024 WL 1956237, at *3 (E.D.N.Y. Mar. 21, 2024) (cleaned up). Because the Court cannot say that Kovacs's "legal position ha[d] *no* chance of success," *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quotation marks omitted), it concludes that sanctions are not warranted.

Accordingly, the motion for sanctions is denied.[9] Although the Court declines to grant sanctions, Kovacs and his counsel, John H. Snyder, are cautioned that their conduct has come dangerously close to sanctionable. If a pattern of vexatious and harassing litigation continues, this Court or others may well be within their discretion to issue sanctions against them.

## IV. Remaining Defendants

Neither party addresses the fact that Plaintiffs also sue a number of other Defendants, both named and unnamed (the "Remaining Defendants"). (*See* Compl.) There is no indication that any of the Remaining Defendants received service of the summons and complaint, even though nearly eight months has passed since the commencement of this case. Plaintiffs are accordingly ordered to indicate within fourteen days of the date of this order whether there is good cause for the failure to timely serve the Remaining Defendants. If good cause is not established, the Court will *sua sponte* dismiss the Complaint as to the Remaining Defendants. *See* Fed. R. Civ. P. 4(m) (stating that a court may *sua sponte* dismiss the action upon notice to the plaintiff if a defendant is not timely served).

---

[9] The Court also denies Plaintiffs' motion to file transcripts of various depositions taken in the Florida matter. (ECF No. 57.) As Defendants point out (ECF No. 58 at 2-3), resolution of the motions to dismiss turns on the pleadings before this Court and not any admissions made elsewhere. And as discussed here, the Court denies the motion for sanctions without reliance on the transcripts.

## V. Conclusion

For the foregoing reasons, AudioEye, Moradi, Bettis, and Humble's motions to dismiss are GRANTED. AudioEye and Moradi's motion for sanctions is DENIED.

Plaintiffs' motions to file final transcripts of depositions taken in the Florida action and to compel AudioEye to retain unconflicted counsel are DENIED.

Plaintiffs' motion for leave to amend is DENIED as to all but the derivative claims. Defendants are directed to file a response to Plaintiffs' memorandum in support of their motion for leave to amend, as to only the derivative shareholder claims, within fourteen days of the date of this order. Plaintiffs are directed to file any reply in further support within seven days of the filing of Defendants' opposition.

Plaintiffs are directed to indicate within fourteen days of the date of this Order whether there exists good cause for the failure to timely serve the Remaining Defendants.

The Clerk of Court is directed to close the motions at Docket Numbers 22, 25, 32, 45, 57, and 62.

SO ORDERED.

Dated: August 19, 2026
New York, New York

J. PAUL OETKEN
United States District Judge