UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID KOVACS, *et al.*,
Plaintiffs,

-v-

DAVID MORADI, *et al.*,
Defendants.

25-CV-10336 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs David Kovacs, Russell Alesi, Julian Ducheine, and Demian Lichtenstein brought this action against Defendants David Moradi, Dr. Carr Bettis, Jason Humble, AudioEye, Inc. ("AudioEye") and several other named and unnamed Defendants who have not appeared in this action. (*See generally* ECF No. 1 ("Compl.").) On August 19, 2026, this Court issued an opinion and order granting AudioEye and Moradi's, Bettis's, and Humble's motions to dismiss. (ECF No. 79 ("Op.").) In that opinion, the Court deferred decision in part as to Plaintiffs' motion for leave to amend the complaint. (*Id.* at 29-30; *see also* ECF No. 70 ("Mot.").) The remainder of that motion is now before the Court. For the reasons that follow, the motion is denied.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiffs' proposed amended complaint. (*See* ECF No. 70-1 ("PAC").) Because familiarity with the facts of this case is presumed, the Court relates only those facts that are necessary for the disposition of this motion.

AudioEye is a web accessibility services company incorporated in Delaware. (*Id.* ¶¶ 10, 19; *see also* ECF No. 80 at 9, 23.) In 2024, after AudioEye's short-form registration statement became effective, AudioEye's stock price rose from $4 to $30 per share. (PAC ¶ 46.) That

November, at a time when AudioEye would have benefitted from "at least $21 million of additional capital," Kelly Georgevich (AudioEye's Chief Financial Officer) sold $303,500 worth of AudioEye stock. (*Id.* ¶¶ 15, 46, 84; *see also* ECF No. 72-5.) On December 4, 2024, during a non-issuer secondary offering, David Moradi (AudioEye's Chief Executive Officer ("CEO")), Carr Bettis (the Executive Chairman of AudioEye's Board), and Jamil Tahir (another AudioEye Board member) did the same through entities they controlled. (PAC ¶¶ 16-18, 45-47.) Specifically, Moradi sold 900,000 shares of AudioEye stock through Sero Capital LLC, Bettis sold 225,000 shares through CSB IV US Holdings LLC, and Tahir sold 125,000 shares through Turnmark Partners L.P. (*Id.* ¶ 47.) All told, Georgevich, Moradi, Bettis, and Tahir earned $34,070,724.65 from their combined stock sales. (*Id.* ¶ 2.)

**B. Procedural History**

On December 12, 2025, Kovacs, Alesi, Ducheine, and Lichenstein asserted civil RICO, breach of fiduciary duty, and unjust enrichment claims derivatively on behalf of AudioEye based in part on those stock sales. (Compl. ¶¶ 192-209, 260-271, 282-289.) Kovacs also asserted civil RICO, securities fraud, whistleblower retaliation, ERISA, breach of fiduciary duty, unjust enrichment, malicious prosecution, and intentional infliction of emotional distress claims against various Defendants directly. (*See id.* ¶¶ 192-259, 282-307.) On February 27, 2026, AudioEye and Moradi, Bettis, and Humble filed motions to dismiss the complaint. (ECF Nos. 22, 25, 32.)

On June 11, 2026, while AudioEye and Moradi's, Bettis's, and Humble's motions to dismiss were pending, Plaintiffs moved for leave to file an amended complaint (Mot.), along with an accompanying memorandum of law (ECF No. 71 ("Mem.").) On June 22, 2026, the Court adjourned briefing on Plaintiffs' motion for leave to amend pending the Court's decision on Defendants' motions to dismiss. (ECF No. 76.)

On August 19, 2026, this Court granted Defendants' motions to dismiss in full and denied Plaintiffs' motion for leave to amend in part. (Op. at 33.) Specifically, the Court dismissed Kovacs's direct claims for reasons of abandonment, claim preclusion, or failure to state a claim (*id.* at 7-8, 11-27) and denied Kovacs leave to amend those claims because the proposed amendments would be futile (*id.* at 28-29). The Court also dismissed Plaintiffs' derivative claims on behalf of AudioEye for failure to plead demand futility "with particularity" and for lack of derivative standing. (*Id.* at 9-10 (quoting Fed. R. Civ. P. 23.1).) But the Court deferred decision as to Plaintiffs' motion for leave to amend the derivative claims and directed Defendants to file an opposition to Plaintiffs' motion, if any, within fourteen days of the Court's order. (*Id.* at 29-30.) AudioEye and Moradi, Bettis, and Humble did so on September 2, 2026. (ECF Nos. 80, 81, 83.) Plaintiffs filed a reply in further support of their motion on September 9, 2026. (ECF No. 84 ("Reply").)

## II. Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs courts to "freely give" parties leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, district courts have discretion to deny leave to amend if granting it would be futile. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). An amendment is futile when the Court would lack subject matter jurisdiction over the proposed claim, *Ambati v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-5712, 2025 WL 1906093, at *4 (S.D.N.Y. July 10, 2025), or "the proposed claim could not withstand a motion to dismiss" for failure to state a claim, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

## III. Discussion

The gravamen of Plaintiffs' motion for leave to amend is that, even if *they* do not have standing to assert derivative claims against Georgevich, Moradi, Bettis, and Tahir on behalf of

AudioEye, a new proposed plaintiff—Daniel Kovacs, David Kovacs's brother and a longtime AudioEye shareholder—does. (Mem. at 10; *see* PAC ¶¶ 10, 51.) And, Plaintiffs contend, what Georgevich, Moradi, Bettis, and Tahir achieved between November and December 2024 was not, as previously alleged, pure insider trading (*see* Compl. ¶¶ 137-139; Op. at 3-4)—it was actually a usurpation of a corporate-financing opportunity that belonged to AudioEye (PAC ¶¶ 45-48, 52, 59, 81-95; *see also* ECF No. 72 ¶ 16). So according to Plaintiffs, Daniel Kovacs should be permitted to join David Kovacs's lawsuit as a plaintiff, and to bring derivative civil RICO, breach of fiduciary duty, unjust enrichment, "accounting," and "declaratory and injunctive relief" claims premised on this corporate-opportunity theory on AudioEye's behalf. (*See generally* PAC.)

The Court agrees—and Defendants do not appear to contest—that adding Daniel Kovacs as a plaintiff would cure the derivative standing issue that resulted in the dismissal of the derivative claims brought on behalf of AudioEye. (*See* Op. at 9-10, 29. *See generally* ECF Nos. 80, 81, 83.) Nevertheless, because Plaintiffs still do not sufficiently plead demand futility, the proposed amended complaint would not withstand a motion to dismiss, and granting leave to amend would be futile.[1]

**A. Demand Futility**

Ordinarily, the Board of Directors' "authority to govern corporate affairs extends to decisions about what remedial actions a corporation should take after being harmed, including whether the corporation should file a lawsuit against its directors, its officers, its controller, or an

[1] Any proposed amendments as to Plaintiffs' claims for an accounting and declaratory and injunctive relief (PAC ¶¶ 96-105) would also be futile because those terms describe remedies, not "stand-alone cause[s] of action." *In re Estate of DeGroat*, No. 12738, 2020 WL 2078992, at *23 (Del. Ch. Apr. 30, 2020); *see also Weingot v. Unison Agreement Corp.*, No. 21-CV-4542, 2023 WL 5152478, at *5 (E.D.N.Y. 2023).

outsider." *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-St. Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021) (en banc). A plaintiff seeking to bring a derivative suit on behalf of a corporation must therefore make a pre-suit demand that the Board take remedial action or plead, "with particularity," the reasons why so doing would have been futile. *Canty v. Day*, 599 F. App'x 20, 21 (2d Cir. 2015) (summary order) (quoting Fed. R. Civ. P. 23.1). Demand is futile if a majority of the Board members who would have entertained a litigation demand could not have disinterestedly considered it—that is, if they (1) "received a material personal benefit from the alleged misconduct that is the subject of the litigation demand," (2) "face[] a substantial likelihood of liability on any of the claims that are the subject of the litigation demand," or (3) "lack[] independence from" another Board member who is conflicted under (1) or (2). *Zuckerberg*, 262 A.3d at 1059.[2]

Here, as before, Plaintiffs do not allege that they made a pre-suit demand of AudioEye's Board. (PAC ¶ 59; *see* Op. at 9.) Rather, Plaintiffs argue that it would have been futile to do so because three of the five members of the Board that was in place at the time the amended complaint was proposed—Moradi, Tahir, and Georgevich—participated in the stock sales underlying the derivative claims.[3] (PAC ¶¶ 59-63, 66.) The Court disagrees.

---

[2] The Court applies Delaware law for purposes of the demand futility analysis because "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief," *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004), and AudioEye is a Delaware corporation (PAC ¶ 19).

[3] The June 2026 composition of the AudioEye Board of Directors is the relevant one because "the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed," *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006), and Plaintiffs moved to amend their complaint on June 11, 2026 (Mot.). Accordingly, although Bettis served as Executive Chairman of AudioEye's Board at the time the stock sales giving rise to these derivative claims were made (and is thus named as a defendant to those claims), he is not a member of the AudioEye Board that would have entertained a litigation demand because he left that position in May 2025. (PAC ¶¶ 12, 47, 49, 60.) Plaintiffs do not

### 1. Substantial Likelihood of Liability

Plaintiffs argue that Georgevich, Tahir, and Moradi each face a substantial likelihood of liability on the derivative civil RICO, breach of fiduciary duty, unjust enrichment, accounting, and declaratory and injunctive relief claims because they sold large amounts of stock at a time when AudioEye could have done the same. (*Id.* ¶¶ 2, 59.) In so doing, Plaintiffs argue, Georgevich, Tahir, and Moradi usurped a corporate-financing opportunity that belonged to AudioEye. (*Id.* ¶ 3.)

The problem with that argument is simple. Plaintiffs must "make a threshold showing, through the allegation of particularized facts, that the claims" that would subject Tahir, Georgevich, and Moradi to liability in this lawsuit "[have] some merit." *Cent. Laborers' Pension Fund v. Karp*, 349 A.3d 1165, 1183 (Del. Ch. 2025) (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). But "[a]bsent special circumstances, Delaware law permits officers and directors to freely trade their corporations' stock." *Karp*, 349 A.3d at 1183 (cleaned up); *accord Brophy v. Cities Serv. Co.*, 70 A.2d 5, 8 (Del. Ch. 1949). (Otherwise, "directors of every Delaware corporation would be faced with the ever-present specter of suit for breach of their duty of loyalty if they sold stock in the company on whose Board they sit." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 974 (Del. Ch. 2003).) The fact that Georgevich, Tahir, and Moradi sold large amounts of stock—and made millions of dollars doing so—therefore is not enough to expose them to liability. *See Karp*, 349 A.3d at 1175. And it is not enough to make them interested directors for purposes of demand futility accordingly.

---

dispute that the two remaining members of AudioEye's demand board—Katherine Fleming and James Hawkins—are disinterested directors for litigation demand purposes. (*Id.* ¶¶ 49, 64.)

That Georgevich's, Tahir's, and Moradi's stock sales occurred at a time when "additional cash would have materially improved [AudioEye's] financial condition" does not change the analysis. (Mem. at 8; PAC ¶ 46.) Beyond vague, repeated allegations that AudioEye "needed capital" in late 2024 (PAC ¶¶ 26, 46, 84), it is not clear from Plaintiffs' proposed amended complaint *why* AudioEye "promptly needed funds through an equity offering" conducted in December 2024 or, put differently, why AudioEye could not sell shares at a heightened stock price one month earlier.[4] *In re Molycorp, Inc. S'holder Derivative Litig.*, No. 7282, 2015 WL 3454925, at *10 (Del. Ch. May 27, 2015). And to the extent Plaintiffs contend that the "December [2024] window" for selling AudioEye stock was the more profitable one, but AudioEye itself was not allowed to sell shares during that non-issuer secondary offering (*see* Mem. at 8; PAC ¶ 47), Georgevich—who did not sell any shares in December 2024—played no part in that alleged usurpation at all.[5]

AudioEye principally argues that AudioEye's dramatic rise in share price throughout 2024 created "an opportunity for the company to raise capital on advantageous terms," that Georgevich, Moradi, and Tahir took that opportunity for themselves when they sold their shares, and that those directors face a substantial likelihood of liability on Plaintiffs' derivative claims as

---

[4] Indeed, Plaintiffs' own demonstrative exhibit suggests that AudioEye's stock price was higher when Georgevich sold shares in November 2024 than when Tahir and Moradi did so in December 2024. (*See* ECF No. 72-5.)

[5] In reply, AudioEye insists that Georgevich nevertheless does face a substantial likelihood of liability on an insider-trading theory (rather than a corporate-opportunity theory) because she sold shares while in possession of material nonpublic information ("MNPI"). (Reply at 4.) But Plaintiffs' proposed amended complaint contains only conclusory assertions that Georgevich possessed MNPI in November 2024 (*see* PAC ¶ 15)—it does not allege, with "particularized facts," what that information actually was. And Delaware law has no "common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information." *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003).

a result. (PAC ¶ 2.) But Plaintiffs have not alleged particularized facts sufficient to infer anything more than that Georgevich, Moradi, and Tahir sold large amounts of stock at a profit. Georgevich, Moradi, and Tahir therefore do not face a "real threat of liability" from those stock sales, and they would not have been prevented from impartially considering a litigation demand arising from them. *Guttman v. Huang*, 823 A.2d 492, 504 (Del. Ch. 2003).

**2. Material Personal Benefit**

Taking a different tack, Plaintiffs argue that demand was futile because Moradi, Tahir, and Georgevich received a material personal benefit—millions of dollars—from their November and December 2024 stock sales. (PAC ¶¶ 61-63). And according to Plaintiffs, that pecuniary benefit likewise would have prevented Tahir, Moradi, and Georgevich from impartially considering a litigation demand challenging those sales. (*Id.*; Reply at 3-4.)

To be sure, Moradi, Tahir, and Georgevich did benefit from selling AudioEye stock: they earned more than $25 million, $3 million, and $300,000, respectively, from their sales. (PAC ¶ 47.) But to qualify as an interested director under this prong of Delaware's *Zuckerberg* test, a director must earn a material personal benefit "from . . . alleged *misconduct*." *Karp*, 349 A.3d at 1196 (quoting *Zuckerberg*, 262 A.3d at 1059). And again, because "Delaware law permits officers and directors to freely trade their corporations' stock," merely "selling company stock at a profit" is not misconduct. *Id.* at 1196-97. Moradi, Tahir, and Georgevich thus do not qualify as interested directors under *Zuckerberg*'s first prong (material personal benefit) for the same reason they did not qualify under the second (substantial likelihood of liability): Plaintiffs have not alleged, with particularized facts, that Moradi, Tahir, and Georgevich did something wrong when they sold large amounts of AudioEye stock.

3. **Independence**

Finally, Plaintiffs argue that Tahir and Georgevich are not disinterested directors for demand futility purposes because both of them have Moradi to thank for their Board seats, and Georgevich also has a "Moradi-controlled board" to thank for her CEO role. (PAC ¶¶ 62-63.) But a director does not become compromised for demand futility purposes simply by being elected or appointed to their executive or Board position by an interested director. *See In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996 (Del. Ch. 2014); *see also City of Miami Gen. Emps. & Sanitation Emps. Ret. Tr. v. Dimon*, 711 F. Supp. 3d 208, 217 (S.D.N.Y. 2024). Rather, a derivative plaintiff must allege particularized facts sufficient to demonstrate that the challenged directors share a professional or personal relationship that "border[s] on or even exceed[s] familial loyalty and closeness," *Beam*, 833 A.2d at 979, or that the director is otherwise so "beholden to an interested director that his or her discretion would be sterilized," *F5 Cap. v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017) (quoting *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007)). Plaintiffs have not done so here. And regardless, because Plaintiffs have not adequately pleaded that Moradi himself faces a substantial likelihood of liability from his December 2024 stock sales or that those sales amounted to misconduct, Tahir and Georgevich are not conflicted by virtue of their relationship with Moradi.

In short, Plaintiffs still have not sufficiently pled demand futility as to any of their derivative claims,[6] and their proposed amendments would be futile as a result.

[6] Plaintiffs contend that, if this Court holds that their civil RICO claim cannot proceed, the Court should deny leave to amend as to the derivative civil RICO claim and then decline to exercise supplemental jurisdiction over the remaining state-law derivative claims (that is, the Court should dismiss those state-law claims without prejudice to refiling in Delaware). (Reply at 10-11.) But the question at this juncture is whether it would be futile to grant Plaintiffs leave to amend their complaint, and Plaintiffs have not pleaded enough facts that would allow this Court to determine whether it can exercise diversity jurisdiction over Plaintiffs' state-law claims. *See Ambati*, 2025 WL 1906093, at *4 (denying leave to amend as futile when plaintiff would have

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to amend the complaint is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 70, to enter judgment of dismissal,[7] and to close this case.

SO ORDERED.

Dated: November 10, 2026
New York, New York

J. PAUL OETKEN
United States District Judge

"no basis to invoke this Court's subject matter jurisdiction" (quotation marks omitted)). Indeed, although Plaintiffs' proposed amended complaint makes clear that the amount in controversy is at least $34 million (*see* PAC ¶¶ 2-3, 47, 89, 94), Plaintiffs have not pleaded the citizenship of any non-corporate defendant or of Daniel Kovacs himself (*see id.* ¶¶ 8, 11-15). It is therefore possible that the Court could have subject matter jurisdiction to entertain Plaintiffs' state-law claims. Out of an abundance of caution, the Court thus concludes that amendment would be futile regardless of whether Plaintiffs can plead facts sufficient to invoke this Court's diversity jurisdiction because Plaintiffs also cannot satisfy Rule 23.1's demand futility requirement as to their state-law claims. *See also Gamoran v. Neuberger Berman, LLC*, No. 11-CV-7957, 2012 WL 2148217, at *4 (S.D.N.Y. June 12, 2012) (holding that derivative civil RICO claims are subject to the same demand requirements as other derivative claims under Rule 23.1 and Delaware law).

[7] James Hawkins, Katherine Fleming, Tony Coelho, Kelly Georgevich, James Spolar, Malone Bailey LLC, Vivid Strategies, LLC were named as defendants in the initial complaint but were never served, and Plaintiffs have not shown good cause for failure to serve them. (*See* Op. at 32-33; ECF No. 82 at 1.) Accordingly, any remaining claims against those defendants are dismissed without prejudice. *See* Fed. R. Civ. P. 4(m). Any remaining claims against the nominal defendants named in the initial complaint—Eternal Sources Tech Partners, LLC, First Contact Entertainment, Inc., and Formulus Black, Inc.—are dismissed without prejudice for the same reason. *Id.*